# EXHIBIT A

**Chubb Group of Insurance Companies**

15 Mountain View Road, Warren, New Jersey 07059

**DECLARATIONS**
**FINANCIAL INSTITUTION BOND**
**FORM 14**

**Item 1.**   Name of Insured (herein called Insured):

RAYMOND JAMES FINANCIAL INC

Bond Number: 70436970  BOND

**FEDERAL INSURANCE COMPANY**
(herein called the Underwriter)

Principal Address:
880 CARILLON PARKWAY
SAINT PETERSBURG, FL 33716

**Item 2.**   Bond Period:   from 12:01 a.m. on October 1, 2015
to 12:01 a.m. on October 1, 2016 standard time.

**Item 3.**   The Aggregate Limit of Liability of the Underwriter during the Bond Period shall be $20,000,000

**Item 4.**   Subject to Sections 4 and 11 hereof,
the Single Loss Limit of Liability is:     $     10,000,000
and Single Loss Deductible is:     $     1,000,000

Provided, however, that if any amounts are inserted below opposite specified Insuring Agreements or Coverage, those amounts shall be controlling. Any amount set forth below shall be part of and not in addition to amounts set forth above. (If an Insuring Agreement or Coverage is to be deleted, insert "Not Covered.")

Amount applicable to:

|  | Single Loss Limit of Liability | Single Loss Deductible |
|---|---|---|
| Insuring Agreement (D)--FORGERY OR ALTERATION | $ 10,000,000 | $1,000,000 |
| Insuring Agreement (E)--SECURITIES | $ 10,000,000 | $1,000,000 |
| Coverage on Partners | $ 10,000,000 | $1,000,000 |
| Optional Insuring Agreements and Coverages: |  |  |
| Insuring Clause A - Fidelity | $10,000,000 | $1,000,000 |
| -Disclosed Agents | $5,000,000 | $1,000,000 |
| Insuring Clause B – On Premises | $10,000,000 | $1,000,000 |
| Insuring Clause C – In Transit | $10,000,000 | $1,000,000 |
| Insuring Clause F – Counterfeit Currency | $10,000,000 | $1,000,000 |
| Insuring Clause G – Facsimile Signature | $10,000,000 | $1,000,000 |
| Insuring Clause H – Fraudulent Mortgages | $10,000,000 | $1,000,000 |
| Insuring Clause I – Servicing Contractors | $10,000,000 | $1,000,000 |

If "Not Covered" is inserted above opposite any specified Insuring Agreement or Coverage, such Insuring Agreement or Coverage and any other reference thereto in this bond shall be deemed to be deleted therefrom.

**Item 5.**   The liability of the Underwriter is subject to the terms of the following riders attached hereto:
Endorsements 1 - 35

**Item 6.**   The Insured by the acceptance of this bond gives notice to the Underwriter terminating or canceling prior bond(s) or policy(ies) No.(s) N/A such termination or cancelation to be effective as of the time this bond becomes effective.

By _____
Authorized Representative

The Underwriter, in consideration of an agreed premium, and in reliance upon all statements made and information furnished to the Underwriter by the Insured in applying for this bond, and subject to the Declarations, Insuring Agreements, General Agreements, Conditions and Limitations and other terms hereof, agrees to indemnify the Insured for:

## Insuring Agreements

Fidelity

(A) Loss resulting directly from dishonest or fraudulent acts committed by an Employee acting alone or in collusion with others.

Such dishonest or fraudulent acts must be committed by the Employee with the manifest intent:

(a) to cause the Insured to sustain such loss; and

(b) to obtain financial benefit for the Employee and which, in fact, result in obtaining such benefit.

As used throughout this Insuring Agreement, financial benefit does not include any employee benefits earned in the normal course of employment, including: salaries, commissions, fees, bonuses, promotions, awards, profit sharing or pensions.

On Premises

(B) (1) Loss of Property resulting directly from

(a) robbery, burglary, misplacement, mysterious unexplainable disappearance and damage thereto or destruction thereof, or

(b) theft, false pretenses, common-law or statutory larceny, committed by a person present in an office or on the premises of the Insured,

while the Property is lodged or deposited within offices or premises located anywhere.

(2) Loss of or damage to

(a) furnishings, fixtures, supplies or equipment within an office of the Insured covered under this bond resulting directly from larceny or theft in, or by burglary or robbery of, such office, or attempt thereat, or by vandalism or malicious mischief, or

(b) such office resulting from larceny or theft in, or by burglary or robbery of such office or attempt thereat, or to the interior of such office by vandalism or malicious mischief,

provided that

(i) the Insured is the owner of such furnishings, fixtures, supplies, equipment, or office or is liable for such loss or damage, and

(ii) the loss is not caused by fire.

*In Transit*

(C) Loss of Property resulting directly from robbery, common-law or statutory larceny, theft, misplacement, mysterious unexplainable disappearance, being lost or made away with, and damage thereto or destruction thereof, while the Property is in transit anywhere in the custody of

    (a) a natural person acting as a messenger of the Insured (or another natural person acting as messenger or custodian during an emergency arising from the incapacity of the original messenger), or

    (b) a Transportation Company and being transported in an armored motor vehicle, or

    (c) a Transportation Company and being transported in a conveyance other than an armored motor vehicle provided that covered Property transported in such manner is limited to the following:

        (i) records, whether recorded in writing or electronically, and

        (ii) Certificated Securities issued in registered form and not endorsed, or with restrictive endorsements, and

        (iii) Negotiable Instruments not payable to bearer, or not endorsed, or with restrictive endorsements.

Coverage under this Insuring Agreement begins immediately upon the receipt of such Property by the natural person or Transportation Company and ends immediately upon delivery to the designated recipient or its agent.

*Forgery Or Alteration*

(D) Loss resulting directly from

    (1) Forgery or alteration of, on or in any Negotiable Instrument (except an Evidence of Debt), Acceptance, Withdrawal Order, receipt for the withdrawal of Property, Certificate of Deposit or Letter of Credit,

    (2) transferring, paying or delivering any funds or Property or establishing any credit or giving any value on the faith of any written instructions or advices directed to the Insured and authorizing or acknowledging the transfer payment, delivery or receipt of funds or Property, which instructions or advices purport to have been signed or endorsed by any customer of the Insured or by any financial institution but which instructions or advices either bear a signature which is a Forgery or have been altered without the knowledge and consent of such customer or financial institution.

A mechanically reproduced facsimile signature is treated the same as a handwritten signature.

*Securities*

(E) Loss resulting directly from the Insured having, in good faith, for its own account or for the account of others,

    (1) acquired, sold or delivered, or given value, extended credit or assumed liability, on the faith of, any original

        (a) Certificated Security,

## Insuring Agreements

*Securities*
*(continued)*

(b) deed, mortgage or other instrument conveying title to, or creating or discharging a lien upon, real property,

(c) Evidence of Debt,

(d) Instruction to a Federal Reserve Bank of the United States, or

(e) Statement of Uncertificated Security of any Federal Reserve Bank of the United States.

which

    (i) bears a signature of any maker, drawer, issuer, endorser, assignor, lessee, transfer agent, registrar, acceptor, surety, guarantor, or of any person signing in any other capacity which is a Forgery, or

    (ii) is altered, or

    (iii) is lost or stolen;

(2) guaranteed in writing or witnessed any signature upon any transfer, assignment, bill of sale, power of attorney, Guarantee, or any items listed in (a) through (c) above;

(3) acquired, sold or delivered, or given value, extended credit or assumed liability, on the faith of any item listed in (a) and (6) above which is a Counterfeit.

A mechanically reproduced facsimile signature is treated the same as a handwritten signature.

*Counterfeit Currency*   (F) Loss resulting directly from the receipt by the Insured, in good faith, of any Counterfeit Money of the United States of America, Canada or of any other country in which the Insured maintains a branch office.

## General Agreements

*Nominees*   A. Loss sustained by any nominee organized by the Insured for the purpose of handling certain of its business transactions and composed exclusively of its Employees shall, for all the purposes of this bond and whether or not any partner of such nominee is implicated in such loss, be deemed to be loss sustained by the Insured.

## General Agreements
*(continued)*

**Additional Offices Or Employees - Consolidation, Merger Or Purchase Of Assets-Notice**

B. If the Insured shall, while this bond is in force, establish any additional offices, other than by consolidation or merger with, or purchase or acquisition of assets or liabilities of, another institution, such offices shall be automatically covered hereunder from the date of such establishment without the requirement of notice to the Underwriter or the payment of additional premium for the remainder of the premium period.

If the Insured shall, while this bond is in force, consolidate or merge with or purchase or acquire assets or liabilities of, another institution, the Insured shall not have such coverage as is afforded under this bond for loss which

(a) has occurred or will occur in offices or premises, or

(b) has been caused or will be caused by an employee or employees of such institution, or

(c) has arisen or will arise out of the assets or liabilities

acquired by the Insured as a result of such consolidation, merger or purchase or acquisition of assets or liabilities unless the Insured shall

(i) give the Underwriter written notice of the proposed consolidation, merger or purchase or acquisition of assets or liabilities prior to the proposed effective date of such action, and

(ii) obtain the written consent of the Underwriter to extend the coverage provided by this bond to such additional offices or premises, Employees and other exposures, and

(iii) upon obtaining such consent, pay to the Underwriter an additional premium.

**Change Of Control - Notice**

C. When the Insured learns of a change in control, it shall give written notice to the Underwriter.

As used in this General Agreement, control means the power to determine the management or policy of a controlling holding company or the Insured by virtue of voting stock ownership. A change in ownership of voting stock which results in direct or indirect ownership by a stockholder or an affiliated group of stockholders of ten percent (10%) or more of such stock shall be presumed to result in a change of control for the purpose of the required notice.

Failure to give the required notice shall result in termination of coverage for any loss involving a transferee, to be effective upon the date of the stock transfer.

**Representation Of Insured**

D. The Insured represents that the information furnished in the application for this bond is complete, true and correct. Such application constitutes part of this bond.

Any misrepresentation, omission, concealment or any incorrect statement of a material fact, in the application or otherwise, shall be grounds for the rescission of this bond.

## General Agreements
*(continued)*

Joint Insured      E.    If two or more Insureds are covered under this bond, the first named Insured shall act for all Insureds. Payment by the Underwriter to the first named Insured of loss sustained by any Insured shall fully release the Underwriter on account of such loss. If the first named Insured ceases to be covered under this bond, the Insured next named shall thereafter be considered as the first named Insured. Knowledge possessed or discovery made by any Insured shall constitute knowledge or discovery by all Insureds for all purposes of this bond. The liability of the Underwriter for loss or losses sustained by all Insureds shall not exceed the amount for which the Underwriter would have been liable had all such loss or losses been sustained by one Insured.

Notice Of Legal Proceedings Against Insured - Election To Defend      F.    The Insured shall notify the Underwriter at the earliest practicable moment, not to exceed 30 days after notice thereof, of any legal proceeding brought to determine the Insured's liability for any loss, claim or damage, which, if established, would constitute a collectible loss under this bond. Concurrently, the Insured shall furnish copies of all pleadings and pertinent papers to the Underwriter.

The Underwriter, at its sole option, may elect to conduct the defense of such legal proceeding, in whole or in part. The defense by the Underwriter shall be in the Insured's name through attorneys selected by the Underwriter. The Insured shall provide all reasonable information and assistance required by the Underwriter for such defense.

If the Underwriter elects to defend the Insured, in whole or in part, any judgment against the Insured on those counts or causes of action which the Underwriter defended on behalf of the Insured or any settlement in which the Underwriter participates and all attorneys' fees, costs and expenses incurred by the Underwriter in the defense of the litigation shall be a loss covered by this bond.

If the Insured does not give the notices required in subsection (a) of Section 5 of this bond and in the first paragraph of this General Agreement, or if the Underwriter elects not to defend any causes of action, neither a judgment against the Insured, nor a settlement of any legal proceeding by the Insured, shall determine the existence, extent or amount of coverage under this bond for loss sustained by the Insured, and the Underwriter shall not be liable for any attorneys' fees, costs and expenses incurred by the Insured.

With respect to this General Agreement, subsections (b) and (d) of Section 5 of this bond apply upon the entry of such judgment or the occurrence of such settlement instead of upon discovery of loss. In addition, the Insured must notify the Underwriter within 30 days after such judgment is entered against it or after the Insured settles such legal proceeding, and, subject to subsection (e) of Section 5, the Insured may not bring legal proceedings for the recovery of such loss after the expiration of 24 months from the date of such final judgment or settlement.

## Conditions And Limitations

*Definitions*

Section 1. As used in this bond:

(a) Acceptance means a draft which the drawee has, by signature written thereon, engaged to honor as presented.

(b) Certificate of Deposit means an acknowledgment in writing by a financial institution of receipt of Money with an engagement to repay it.

(c) Certificated Security means a share, participation or other interest in property of or an enterprise of the issuer or an obligation of the issuer, which is:

    (1) represented by an instrument issued in bearer or registered form;

    (2) of a type commonly dealt in on securities exchanges or markets or commonly recognized in any area in which it is issued or dealt in as a medium for investment; and

    (3) either one of a class or series or by its terms divisible into a class or series of shares, participation's, interests or obligations.

(d) Counterfeit means an imitation of an actual valid original which is intended to deceive and to be taken as the original.

(e) Employee means

    (1) a natural person in the service of the Insured, at any of the Insured's offices or premises covered hereunder whom the Insured compensates directly by salary or commissions and whom the Insured has the right to direct and control while performing services for the Insured;

    (2) an attorney retained by the Insured and an employee of such attorney while either is performing legal services for the Insured;

    (3) a person provided by an employment contractor to perform employee duties for the Insured under the Insured's supervision at any of the Insured's offices or premises covered hereunder; and a guest student pursuing studies or duties in any of said offices or premises;

    (4) an employee of an institution merged or consolidated with the Insured prior to the effective date of this bond;

    (5) each natural person, partnership or corporation authorized by the Insured to perform services as data processor of checks or other accounting records of the Insured (not including preparation or modification of computer software or programs), herein called Processor. (Each such Processor, and the partners, officers and employees of such Processor shall, collectively, be deemed to be one Employee for all the purposes of this bond, excepting, however, the second paragraph of Section 12. A Federal Reserve Bank or clearing house shall not be construed to be a processor); and

    (6) a Partner of the Insured, unless not covered as stated in Item 4 of the Declarations.

(f) Evidence of Debt means an instrument, including a Negotiable Instrument, executed by a customer of the Insured and held by the Insured which in the regular course of business is treated as evidencing the customer's debt to the Insured.

(g) Financial Interest in the Insured of the Insured's general partner(s), or limited partner(s), committing dishonest or fraudulent acts covered by this bond or concerned or implicated therein means:

(1) as respects general partners the value of all right, title and interest of such general partner(s), determined as of the close of business on the date of discovery of loss covered by this bond, in the aggregate of:

(a) the "net worth" of the Insured, which for the purposes of this bond, shall be deemed to be the excess of its total assets over its total liabilities, without adjustment to give effect to loss covered by this bond, (except that credit balances and equities in proprietary accounts of the Insured, which shall include capital account of partners, investment and trading accounts of the Insured, participations of the Insured in joint accounts, and accounts of partners which are covered by agreements providing for the inclusion of equities therein as partnership property, shall not be considered as liabilities) with securities, spot commodities, commodity future contracts in such proprietary accounts and all other assets marked to market or fair value and with adjustment for profits and losses at the market of contractual commitments for such proprietary accounts of the Insured; and

(b) the value of all other Money, securities and property belonging to such general partner(s), or in which such general partner(s) have a pecuniary interest, held by or in the custody of and legally available to the Insured as set-off against loss covered by this bond;

provided, however, that if such "net worth" adjusted to give effect to loss covered by this bond and such value of all other Money, securities and property as set forth in (g)(1)(b) preceding, plus the amount of coverage afforded by this bond on account of such loss, is not sufficient to enable the Insured to meet its obligations, including its obligations to its partners other than to such general partner(s), then the Financial Interest in the Insured, as above defined, of such general partner(s) shall be reduced in an amount necessary, or eliminated if need be, in order to enable the Insured upon payment of loss under this bond to meet such obligations, to the extent that such payment will enable the Insured to meet such obligations, without any benefit accruing to such general partner(s) from such payment; and

(2) as respects limited partners the value of such limited partners(') investment in the Insured.

(h) Forgery means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

## Conditions And Limitations

*Definitions*
*(continued)*

(i) Guarantee means a written undertaking obligating the signer to pay the debt of another to the Insured or its assignee or to a financial institution from which the Insured has purchased participation in the debt, if the debt is not paid in accordance with its terms.

(j) Instruction means a written order to the issuer of an Uncertificated Security requesting that the transfer, pledge, or release from pledge of the Uncertificated Security specified be registered.

(k) Letter of Credit means an engagement in writing by a bank or other person made at the request of a customer that the bank or other person will honor drafts or other demands for payment upon compliance with the conditions specified in the Letter of Credit.

(l) Money means a medium of exchange in current use authorized or adopted by a domestic or foreign government as a part of its currency.

(m) Negotiable Instrument means any writing

    (1) signed by the maker or drawer; and

    (2) containing any unconditional promise or order to pay a sum certain in Money and no other promise, order, obligation or power given by the maker or drawer; and

    (3) is payable on demand or at a definite time; and

    (4) is payable to order or bearer.

(n) Partner means a natural person who

    (1) is a general partner of the Insured, or

    (2) is a limited partner and an Employee (as defined in Section 1(e)(1) of the bond) of the Insured.

(o) Property means Money, Certificated Securities, Uncertificated Securities of any Federal Reserve Bank of the United States, Negotiable Instruments, Certificates of Deposit, documents of title, Acceptances, Evidences of Debt, security agreements, Withdrawal Orders, certificates of origin or title, Letters of Credit, insurance policies, abstracts of title, deeds and mortgages on real estate, revenue and other stamps, tokens, unsold state lottery tickets, books of account and other records whether recorded in writing or electronically, gems, jewelry, precious metals of all kinds and in any form, and tangible items of personal property which are not hereinbefore enumerated.

(p) Statement of Uncertificated Security means a written statement of the issuer of an Uncertificated Security containing:

    (1) a description of the Issue of which the Uncertificated Security is a part;

    (2) the number of shares or units:

        (a) transferred to the registered owner;

        (b) pledged by the registered owner to the registered pledgee;

        (c) released from pledge by the registered pledgee;

*Definitions
(continued)*

    (d) registered in the name of the registered owner on the date of the statement; or

    (e) subject to pledge on the date of the statement;

    (3) the name and address of the registered owner and registered pledgee;

    (4) a notation of any liens and restrictions of the issuer and any adverse claims to which the Uncertificated Security is or may be subject or a statement that there are none of those liens, restrictions or adverse claims; and

    (5) the date:

        (a) the transfer of the shares or units to the new registered owner of the shares or units was registered;

        (b) the pledge of the registered pledgee was registered; or

        (c) of the statement, if it is a periodic or annual statement.

(q) Transportation Company means any organization which provides its own or leased vehicles for transportation or which provides freight forwarding or air express services.

(r) Uncertificated Security means a share, participation or other interest in property of or an enterprise of the issuer or an obligation of the Issuer, which is:

    (1) not represented by an instrument and the transfer of which is registered upon books maintained for that purpose by or on behalf of the issuer;

    (2) of a type commonly dealt in on securities exchanges or markets; and

    (3) either one of a class or series or by its terms divisible into a class or series of shares, participation's, interests or obligations.

(s) Withdrawal Order means a non-negotiable instrument, other than an Instruction, signed by a customer of the Insured authorizing the Insured to debit the customer's account in the amount of funds stated herein.

*Exclusions*

Section 2. This bond does not cover:

(a) loss resulting directly or indirectly from forgery or alteration, except when covered under Insuring Agreements (A), (D), (E);

(b) loss due to riot or civil commotion outside the United States of America and Canada; or loss due to military, naval or usurped power, war or insurrection unless such loss occurs in transit in the circumstances recited in Insuring Agreement (C), and unless, when such transit was initiated, there was no knowledge of such riot, civil commotion, military, naval or usurped power, war or insurrection on the part of any person acting for the Insured in initiating such transit;

(c) loss resulting directly or indirectly from the effects of nuclear fission or fusion or radioactivity; provided, however, that this paragraph shall not apply to loss resulting from industrial uses of nuclear energy;

*Exclusions (continued)*

(d) loss resulting directly or indirectly from any act or acts of any person who is a member of the Board of Directors of the Insured or a member of any equivalent body by whatsoever name known unless such person is also an Employee or an elected official of the Insured in some other capacity, nor, in any event, loss resulting from the act or acts of any person while acting in the capacity of a member of such Board or equivalent body;

(e) loss resulting directly or indirectly from the complete or partial nonpayment of, or default upon, any loan or transaction involving the Insured as a lender or borrower, or extension of credit, including the purchase, discounting or other acquisition of false or genuine accounts, invoices, notes, agreements or Evidences of Debt, whether such loan, transaction or extension was procured in good faith or through trick, artifice, fraud or false pretenses; except when covered under Insuring Agreements (A), (D) or (E);

(f) loss resulting from any violation by the Insured or by any Employee

    (1) of law regulating (i) the issuance, purchase or sale of securities, (ii) securities transactions upon security exchanges or over the counter market, (iii) investment companies, or (iv) investment advisers, or

    (2) of any rule or regulation made pursuant to any such law,

unless it is established by the Insured that the act or acts which caused the said loss involved fraudulent or dishonest conduct which would have caused a loss to the Insured in a similar amount in the absence of such laws, rules or regulations;

(g) loss resulting directly or indirectly from the failure of a financial or depository institution, or its receiver or liquidator, to pay or deliver, on demand of the Insured, funds or Property of the Insured held by it in any capacity, except when covered under Insuring Agreement (A) or (B)(1)(a);

(h) loss caused by an Employee, except when covered under Insuring Agreement (A) or when covered under Insuring Agreement (B) or (C) and resulting directly from misplacement, mysterious unexplainable disappearance or destruction of or damage to Property;

(i) loss resulting directly or indirectly from transactions in a customer's account, whether authorized or unauthorized, except the unlawful withdrawal and conversion of Money, securities or precious metals, directly from a customer's account by an Employee provided such unlawful withdrawal and conversion is covered under Insuring Agreement (A);

(j) damages resulting from civil, criminal or other legal proceeding in which the Insured is alleged to have engaged in racketeering activity except when the Insured establishes that the act or acts giving rise to such damages were committed by an Employee under circumstances which result directly in a loss to the Insured covered by Insuring Agreement (A). For the purposes of this exclusion, "racketeering activity" is defined in 18 United States Code 1961 et seq., as amended;

## Conditions And Limitations

*Exclusions*
*(continued)*

(k) loss resulting directly or indirectly from the use or purported use of credit, debit, charge, access, convenience, identification or other cards

　　(1)　in obtaining credit or funds, or

　　(2)　in gaining access to automated mechanical devices which, on behalf of the Insured, disburse Money, accept deposits, cash checks drafts or similar written instruments or make credit card loans, or

　　(3)　in gaining access to point of sale terminals, customer-bank communication terminals, or similar electronic terminals of electronic funds transfer systems,

whether such cards were issued, or purport to have been issued, by the Insured or by anyone other than the Insured, except when covered under Insuring Agreement (A);

(l) loss involving automated mechanical devices which, on behalf of the Insured, disburse Money, accept deposits, cash checks, drafts or similar written instruments or make credit card loans, except when covered under Insuring Agreement (A);

(m) loss through the surrender of Property away from an office of the Insured as a result of a threat

　　(1)　to do bodily harm to any person, except loss of Property in transit in the custody of any person acting as messenger provided that when such transit was initiated there was no knowledge by the Insured of any such threat, or

　　(2)　to do damage to the premises or property of the Insured,

except when covered under Insuring Agreement (A);

(n) loss resulting directly or indirectly from payments made or withdrawals from a depositor's or customer's account involving erroneous credits to such account, unless such payments or withdrawals are physically received by such depositor or representative of such depositor who is within the office of the Insured at the time of such payment or withdrawal, or except when covered under Insuring Agreement (A);

(o) loss involving items of deposit which are not finally paid for any reason, including but not limited to Forgery or any other fraud, except when covered under Insuring Agreement (A);

(p) loss resulting directly or indirectly from counterfeiting, except when covered under Insuring Agreements (A), (E) or (F);

(q) loss of any tangible item of personal property which is not specifically enumerated in the paragraph defining Property if such property is specifically insured by other insurance of any kind and in any amount obtained by the Insured, and in any event, loss of such property occurring more than 60 days after the Insured takes possession of such property shall have become aware that it is liable for the safekeeping of such property, except when covered under Insuring Agreements (A) or (B)(2);

*Exclusions (continued)*

(r)  loss of Property while

    (1)  in the mail, or

    (2)  in the custody of any Transportation Company, unless covered under Insuring Agreement (C),

    except when covered under Insuring Agreement (A);

(s)  potential income, including but not limited to interest and dividends, not realized by the Insured or by any customer of the Insured;

(t)  damages of any type for which the Insured is legally liable, except compensatory damages, but not multiples thereof, arising directly from a loss covered under this bond;

(u)  all fees, costs and expenses incurred by the Insured

    (1)  in establishing the existence of or amount of loss covered under this bond, or

    (2)  as a party to any legal proceeding whether or not such legal proceeding exposes the Insured to loss covered by this bond;

(v)  indirect or consequential loss of any nature;

(w)  loss involving any Uncertificated Security except an Uncertificated Security of any Federal Reserve Bank of the United States or when covered under Insuring Agreement (A);

(x)  loss resulting directly or indirectly from any dishonest or fraudulent act or acts committed by any non-Employee who is a securities, commodities, money, mortgage, real estate, loan, insurance, property management, investment banking broker, agent or other representative of the same general character;

(y)  loss caused directly or indirectly by a Partner of the Insured unless the amount of such loss exceeds the Financial Interest in the Insured of such Partner and the Deductible Amount applicable to this bond, and then for the excess only;

(z)  loss resulting directly or indirectly from any actual or alleged representation, advice, warranty or guarantee as to the performance of any investments;

(aa) loss due to liability imposed upon the Insured as a result of the unlawful disclosure of non-public material information by the Insured or any Employee, or as a result of any Employee acting upon such information, whether authorized or unauthorized.

*Discovery*

### Section 3.

This bond applies to loss discovered by the Insured during the Bond Period. Discovery occurs when the Insured first becomes aware of facts which would cause a reasonable person to assume that a loss of a type covered by this bond has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

## Conditions And Limitations

*Discovery*
*(continued)*

Discovery also occurs when the Insured receives notice of an actual or potential claim in which it is alleged that the Insured is liable to a third party under circumstances which, if true, would constitute a loss under this bond.

---

*Limit Of Liability*

Section 4.

*Aggregate Limit Of Liability*

The Underwriter's total liability for all losses discovered during the Bond Period shown in Item 2 of the Declarations shall not exceed the Aggregate Limit of Liability shown in Item 3 of the Declarations. The Aggregate Limit of Liability shall be reduced by the amount of any payment made under the terms of this bond.

Upon exhaustion of the Aggregate Limit of Liability by such payments:

(a) The Underwriter shall have no further liability for loss or losses regardless of when discovered and whether or not previously reported to the Underwriter, and

(b) The Underwriter shall have no obligation under General Agreement F to continue the defense of the Insured, and upon notice by the Underwriter to the Insured that the Aggregate Limit of Liability has been exhausted, the Insured shall assume all responsibility for its defense at its own cost.

The Aggregate Limit of Liability shall not be increased or reinstated by any recovery made and applied in accordance with subsections (a), (b) and (c) of Section 7. In the event that a loss of Property is settled by the Underwriter through the use of a lost instrument bond, such loss shall not reduce the Aggregate Limit of Liability.

*Single Loss Limit Of Liability*

Subject to the Aggregate Limit of Liability, the Underwriter's liability for each Single Loss shall not exceed the applicable Single Loss Limit of Liability shown in Item 4 of the Declarations. If a Single Loss is covered under more than one Insuring Agreement or Coverage, the maximum payable shall not exceed the largest applicable Single Loss Limit of Liability.

*Single Loss Defined*

Single Loss means all covered loss, including court costs and attorneys' fees incurred by the Underwriter under General Agreement F, resulting from

(a) any one act or series of related acts of burglary, robbery or attempt thereat, in which no Employee is implicated, or

(b) any one act or series of related unintentional or negligent acts or omissions on the part of any person (whether an Employee or not) resulting in damage to or destruction or misplacement of Property, or

(c) all acts or omissions other than those specified in (a) and (b) preceding, caused by any person (whether an Employee or not) or in which such person is implicated, or

(d) any one casualty or event not specified in (a), (b) or (c) preceding.

**Conditions And
Limitations**
(continued)

*Notice/Proof – Legal
Proceedings Against
Underwriter*

Section 5.

(a) At the earliest practicable moment, not to exceed 30 days, after discovery of loss, the Insured shall give the Underwriter notice thereof.

(b) Within 6 months after such discovery, the Insured shall furnish to the Underwriter proof of loss, duly sworn to, with full particulars.

(c) Lost Certificated Securities listed in a proof of loss shall be identified by certificate or bond numbers if such securities were issued therewith.

(d) Legal proceedings for the recovery of any loss hereunder shall not be brought prior to the expiration of 60 days after the original proof of loss is filed with the Underwriter or after the expiration of 24 months from the discovery of such loss.

(e) If any limitation embodied in this bond is prohibited by any law controlling the construction hereof, such limitation shall be deemed to be amended so as to equal the minimum period of limitation provided by such law.

(f) This bond affords coverage only in favor of the Insured. No suit, action or legal proceedings shall be brought hereunder by any one other than the named Insured.

*Valuation*

Section 6.

Any loss of Money, or loss payable in Money, shall be paid, at the option of the Insured, in the Money of the country in which the loss was sustained or in the United States of America dollar equivalent thereof determined at the rate of exchange at the time of payment of such loss.

*Securities*

The Underwriter shall settle in kind its liability under this bond on account of a loss of any securities or, at the option of the Insured, shall pay to the Insured the cost of replacing such securities, determined by the market value thereof at the time of such settlement. However, if prior to such settlement the Insured shall be compelled by the demands of a third party or by market rules to purchase equivalent securities, and gives written notification of this to the Underwriter, the cost incurred by the Insured shall be taken as the value of those securities. In case of a loss of subscription, conversion or redemption privileges through the misplacement or loss of securities, the amount of such loss shall be the value of such privileges immediately preceding the expiration thereof. If such securities cannot be replaced or have no quoted market value, or if such privileges have no quoted market value, their value shall be determined by agreement or arbitration.

If the applicable coverage of this bond is subject to a Deductible Amount and/or is not sufficient in amount to indemnify the Insured in full for the loss of securities for which claim is made hereunder, the liability of the Underwriter under this bond is limited to the payment for, or the duplication of, so much of such securities as has a value equal to the amount of such applicable coverage.

## Conditions And Limitations

**Valuation**
**(continued)**

In case of loss of, or damage to, any books of account or other records used by the Insured in its business, the Underwriter shall be liable under this bond only if such books or records are actually reproduced and then for not more than the cost of the blank books, blank pages or other materials plus the cost of labor for the actual transcription or copying of data which shall have been furnished by the Insured in order to reproduce such books and other records.

**Books Of Account And**
**Other Records**

**Property Other Than**
**Money, Securities or**
**Records**

In case of loss of, or damage to, any Property other than Money, securities, books of account or other records, or damage covered under Insuring Agreement (B)(2), the Underwriter shall not be liable for more than the actual cash value of such Property, or of items covered under Insuring Agreement (B)(2). The Underwriter may, at its election, pay the actual cash value of, replace or repair such property. Disagreement between the Underwriter and the Insured as to the cash value or as to the adequacy of repair or replacement shall be resolved by arbitration.

**Set-Off**

Any loss covered under this bond shall be reduced by a set-off consisting of any amount owed to the Employee causing the loss if such loss is covered under Insuring Agreement (A).

**Assignment-Subrogation-**
**Recovery-Cooperation**

Section 7.

(a) In the event of payment under this bond, the Insured shall deliver, if so requested by the Underwriter, an assignment of such of the Insured's rights, title and interest and causes of action as it has against any person or entity to the extent of the loss payment.

(b) In the event of payment under this bond, the Underwriter shall be subrogated to all of the Insured's rights of recovery therefor against any person or entity to the extent of such payment.

(c) Recoveries, whether effected by the Underwriter or by the Insured, shall be applied net of the expense of such recovery first to the satisfaction of the Insured's loss which would otherwise have been paid but for the fact that it is in excess of either the Single or Aggregate Limit of Liability, secondly, to the Underwriter as reimbursement of amounts paid in settlement of the Insured's claim, and thirdly, to the Insured in satisfaction of any Deductible Amount. Recovery on account of loss of securities as set forth in the second paragraph of Section 6 or recovery from reinsurance and/or indemnity of the Underwriter shall not be deemed a recovery as used herein.

(d) Upon the Underwriter's request and at reasonable times and places designated by the Underwriter the Insured shall

(1) submit to examination by the Underwriter and subscribe to the same under oath; and

## Conditions And Limitations

*Assignment-Subrogation-Recovery-Cooperation (continued)*

(2) produce for the Underwriter's examination all pertinent records; and

(3) cooperate with the Underwriter in all matters pertaining to the loss.

(e) The Insured shall execute all papers and render assistance to secure to the Underwriter the rights and causes of action provided for herein. The Insured shall do nothing after discovery of loss to prejudice such rights or causes of action.

---

*Limit Of Liability Under This Bond And Prior Insurance*

Section 8.

With respect to any loss set forth in sub-section (c) of Section 4 of this bond which is recoverable or recovered in whole or in part under any other bonds or policies issued by the Underwriter to the Insured or to any predecessor in interest of the Insured and terminated or canceled or allowed to expire and in which the period for discovery has not expired at the time any such loss thereunder is discovered, the total liability of the Underwriter under this bond and under such other bonds or policies shall not exceed, in the aggregate, the amount carried hereunder on such loss or the amount available to the Insured under such other bonds or policies, as limited by the terms and conditions thereof, for any such loss if the latter amount be the larger.

If the coverage of this bond supersedes in whole or in part the coverage of any other bond or policy of insurance issued by an Insurer other than the Underwriter and terminated, canceled or allowed to expire, the Underwriter with respect to any loss sustained prior to such termination, cancellation or expiration and discovered within the period permitted under such other bond or policy for the discovery of loss thereunder, shall be liable under this bond only for that part of such loss covered by this bond as is in excess of the amount recoverable or recovered on account of such loss under such other bond or policy, anything to the contrary in such other bond or policy notwithstanding.

---

*Other Insurance Or Indemnity*

Section 9.

Coverage afforded hereunder shall apply only as excess over any valid and collectible insurance or indemnity obtained by the Insured, or by one other than the Insured on Property subject to exclusion (q) or by a Transportation Company, or by another entity on whose premises the loss occurred or which employed the person causing the loss or the messenger conveying the Property involved.

---

*Ownership*

Section 10. This bond shall apply to loss of Property

(1) owned by the Insured,

(2) held by the Insured in any capacity, or

(3) for which the Insured is legally liable.

This bond shall be for the sole use and benefit of the Insured named in the Declarations.

---

**Conditions And
Limitations**
*(continued)*

`Deductible Amount`          Section 11.

The Underwriter shall be liable hereunder only for the amount by which any single loss, as defined in Section 4, exceeds the Single Loss Deductible amount for the Insuring Agreement or Coverage applicable to such loss, subject to the Aggregate Limit of Liability and the applicable Single Loss Limit of Liability.

The Insured shall, in the time and in the manner prescribed in this bond, give the Underwriter notice of any loss of the kind covered by the terms of this bond, whether or not the Underwriter is liable therefor, and upon the request of the Underwriter shall file with it a brief statement giving the particulars concerning such loss.

*Termination Or
Cancelation*

Section 12.    This bond terminates as an entirety upon occurrence of any of the following:

(a)    60 days after the receipt by the Insured of a written notice from the Underwriter of its desire to cancel this bond, or

(b)    immediately upon the receipt by the Underwriter of a written notice from the Insured of its desire to cancel this bond, or

(c)    immediately upon the taking over of the Insured by a receiver or other liquidator or by State or Federal officials, or

(d)    immediately upon the taking over of the Insured by another institution, or

(e)    immediately upon exhaustion of the Aggregate Limit of Liability, or

(f)    immediately upon expiration of the Bond Period as set forth in Item 2 of the Declarations.

This bond terminates as to any Employee or any partner, officer or employee of any Processor

(a)    as soon as any Insured, or any director or officer not in collusion with such person, learns of any dishonest or fraudulent act committed by such person at any time, whether in the employment of the Insured or otherwise, whether or not of the type covered under Insuring Agreement (A), against the Insured or any other person or entity, without prejudice to the loss of any Property then in transit in the custody of such person, or

(b)    15 days after the receipt by the Insured of a written notice from the Underwriter of its desire to cancel this bond as to such person.

Termination of the bond as to any Insured terminates liability for any loss sustained by such Insured which is discovered after the effective date of such termination.

In witness whereof, the Underwriter has caused this bond to be executed on the Declarations page.

Effective date of
this endorsement/rider: October 1, 2015

FEDERAL INSURANCE COMPANY

Endorsement/Rider No. 1

To be attached to and
form a part of Bond No. 70436970

Issued to: RAYMOND JAMES FINANCIAL INC

## AMEND NAME OF INSURED RIDER

In consideration of the premium charged, it is agreed that:

(1)     The complete Named Insured under the attached bond is as follows:

### RAYMOND JAMES FINANCIAL, INC.

And/or any subsidiary, or acquired company or corporation, or other business entity which is
more than 50% owned by the Insured or any of its subsidiary companies covered hereunder;

And any company or corporation, or other business entity, which is owned 50% or less by the
Insured or any of its subsidiary companies covered hereunder provided the Insured or any of its
subsidiary companies covered hereunder has management control through contractual
arrangement;

In the event that 50% or less is owned but the Insured or any of its subsidiary companies does
not have management control, coverage is limited to the equity interest of the Insured or any of
its subsidiary companies covered hereunder in that entity.

(2)     Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, limitations,
conditions or agreements of the attached bond other than as stated above.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and
conditions of coverage.

All other terms, conditions and limitations of this Bond shall remain unchanged.

Authorized Representative

Effective date of
this endorsement/rider: October 1, 2015          FEDERAL INSURANCE COMPANY

                                                 Endorsement/Rider No. 2

                                                 To be attached to and
                                                 form a part of Bond No. 70436970

Issued to:  RAYMOND JAMES FINANCIAL INC

---

## BROAD FORM ERISA RIDER

In consideration of the premium charged, it is agreed that:

(1)   The following shall be included as Insured:

      Any of the Insured's Employee Welfare or Pension Benefit Plans now existing or hereafter
      created or acquired whether or not required to be bonded under the Employee Retirement
      Income Security Act of 1974.

(2)   An Employee, as used in the attached bond, shall include any natural person who is a fiduciary,
      director or trustee is engaged in handling funds or other property of any Employee Welfare or
      Pension Benefit Plan owned, controlled or operated by the Insured or any natural person who is a
      trustee, manager, officer or employee of such Plan.

(3)   If the bond or policy, in accordance with the agreement, limitation and conditions thereof, convers
      Loss sustained by two or more Employee Welfare or Pension Benefit Plans or sustained by such
      Plan in addition to loss sustained by an Insured other than such Plan, it is the obligation of the
      Insured or the Plan Administrator(s) of such Plans under Regulations published by the Secretary
      of Labor implementing Section 13 of the Welfare and Pension Plans Disclosure Act of 1958 to
      obtain under one or more bonds or policies issued  by one or more Insurers an amount of
      coverage for each such Plan at least equal to that which would be required if such Plans were
      bonded separately.

(4)   In compliance with the forgoing, payment by the Underwriter in accordance with the agreements,
      limitations and conditions of the bond or policy shall be held by the Insured, or if more than one,
      by the Insured first named, for the use and benefit of any Employee Welfare or Pension Benefit
      Plan sustaining loss so covered and to the extent that such payment is in excess of the amount of
      coverage required by such Regulations to be carried by said Plan sustaining such loss such
      excess shall be held for the use and benefit of any other such Plan also covered in the event that
      such other Plan discovers that it has sustained loss covered thereunder.

(5)   If money or other property of two or more Employee Welfare or Pension Benefit Plans covered
      under the bond or policy is commingled, recovery for loss of such money or other property
      through fraudulent or dishonest acts of Employees shall be shared by such Plan on a pro rata
      basis in accordance with the amount for which each such Plan is required to carry bonding
      coverage in accordance with applicable provisions of said Regulations.

(6)    The Single Loss Deductible of this bond applicable to loss sustained by a Plan through acts committed by an Employee of the Plan shall not apply to loss sustained by any Plan covered through acts or defaults committed by any Employee of any such Plan.

(7)    Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the bond or policy, other than as stated herein.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

Effective date of
this endorsement/rider: October 1, 2015

FEDERAL INSURANCE COMPANY

Endorsement/Rider No. 3

To be attached to and
form a part of Bond No. 70436970

Issued to: RAYMOND JAMES FINANCIAL INC

## AMEND FIDELITY INSURING AGREEMENT ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1) Insuring Agreement (A) Fidelity is deleted and replaced with the following:

Fidelity

Loss resulting directly from dishonest or fraudulent acts committed by an Employee, acting alone or in collusion with others, with the intent:

(a) to cause the Insured to sustain such loss, or

(b) to obtain financial benefit for the Employee, or another person or entity.

Notwithstanding the foregoing, however, it is agreed that with regard to Loans and Trading this bond covers only loss resulting directly from dishonest or fraudulent acts committed by an Employee with the intent to cause the Insured to sustain such loss and to obtain financial benefit for the Employee.

Financial benefit shall not include salary, salary increases, commissions, fees, bonuses, promotions, awards, profit sharing, incentive plans, pension or other emoluments earned in the normal course of employment.

Notwithstanding the above, it is agreed that in determining the amount of any loss payable under this bond, the Insured may include payments to individual employees which are bonuses, commissions or profit sharing as part of such loss provided that such payments have been made solely as the result of the employee committing a dishonest or fraudulent act as described in this Insuring Agreement.

(2) It is also agreed that Section 1., Definitions, of the Conditions and Limitations section, is amended to include the following:

Loan means all extensions of credit by the Insured and all transactions creating a creditor or lessor relationship in favor of the Insured and all transactions by which the Insured assumes an existing creditor or lessor relationship.

Trading means trading or other dealings in securities, commodities, futures, options, foreign or Federal funds, currencies, foreign exchange and the like.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Bond shall remain unchanged.

_Authorized Representative_

Effective date of
this endorsement/rider: October 1, 2015

FEDERAL INSURANCE COMPANY

Endorsement/Rider No. 4
To be attached to and
form a part of Bond No. 70436970

Issued to: RAYMOND JAMES FINANCIAL INC

MALICIOUS DESTRUCTION OF DATA ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     The following will be added to the end of Insuring Agreement (A), Fidelity, of this Bond:

Malicious Destruction of Data

Loss resulting from the malicious destruction of or the malicious damage of **Property**, **Electronic Data** or
**Electronic Data Processing Media** committed by an **Employee** whether committed alone or in collusion with
others, which acts are committed with the intent to cause such loss.

(2)     For the purpose of the coverage afforded by this endorsement, the following definitions are
added:

**Electronic Data** means a presentation of information, knowledge, facts, concepts, or instructions
which are being processed or have been processed in a computer.

**Electronic Data Processing Media** means punched cards, magnetic tapes, punched tapes,
magnetic discs, or other optical storage disks or other bulk media on which **Electronic Data** is
recorded.

(3)     The following will be added to the end of Section 6., Valuation, of the Conditions and Limitations of this Bond:

Electronic Data Processing Media and Electronic Data

In case of loss of, or damage to, **Electronic Data Processing Media** used by the ASSURED in its
business, the COMPANY shall be liable under this bond only if such items are actually reproduced
by other **Electronic Data Processing Media** of the same kind or quality and then for not more than
the cost of the blank media plus the cost of labor for the actual transcription or copying of data which
shall have been furnished by the ASSURED in order to reproduce such **Electronic Data
Processing Media**, subject to the applicable Single Loss Limit of Liability.

In case of loss of **Electronic Data**, the COMPANY shall be liable under this bond only if such data is
actually reproduced by other **Electronic Data** of the same kind or quality and then for not more than
the cost of labor for the actual transcription or copying of data which shall have been furnished by the
ASSURED in order to reproduce such **Electronic Data** subject to the applicable Single Loss Limit of
Liability.

However, if such **Electronic Data** cannot be reproduced and said **Electronic Data** represents securities or financial instruments having a value, then said loss will be valued as indicated in the **Securities** and Other Property paragraphs of Section 6.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Bond shall remain unchanged.

Authorized Representative

Effective date of
this endorsement/rider: October 1, 2015          FEDERAL INSURANCE COMPANY

Endorsement/Rider No. 5

To be attached to and
form a part of Policy No. 70436970

Issued to:  RAYMOND JAMES FINANCIAL INC

## AUDIT EXPENSE COVERAGE RIDER

In consideration of the premium charged, it is agreed that:

(1)     The following paragraph is added to Insuring Agreement (A), Fidelity:

Audit Expense Coverage: $100,000 in the aggregate as part of, and not in addition to, the Aggregate Limit of Liability shown on the Declarations Page of this Bond. The deductible of $10,000 applies to each and every loss.

Expense incurred by the Insured for that part of the cost of audits or examinations required by State or Federal supervisory authorities to be conducted either by such authorities or by independent accountants by reason of the discovery of Loss sustained by the Insured through dishonest or fraudulent acts of any of the Employees. The total limit of the Underwriter for such expense by reason of such acts of any Employee or in which such Employee is concerned or implicated or opposite Audit Expense Coverage, it being understood, however that such expense shall be deemed to be loss sustained by the Insured through dishonest or fraudulent acts of one or more of the Employees and the limit of the Underwriter under this paragraph of Insuring Agreement (A) shall be part of, and not in addition to, the Single Loss Limit of Liability stated in Item 4 of the Declarations.

(2)     Exclusion 2.(d) of this bond is deleted and replaced with the following:

(d)     loss resulting directly or indirectly from any acts of any director or trustee of the Insured other than one employed as salaried, pensioned or elected official or an Employee of the Insured, except when performing acts coming within the scope of the usual duties of any Employee, or while acting as a member of any duly elected or appointed by resolution of the board of directors or trustees of the Insured to perform specific, as distinguished from general, directorial acts on behalf of the Insured;

(3)     Exclusion 2.(u) of this bond is deleted and replaced with the following:

(u)     all fees, costs and expenses incurred by the Insured

(1)     in establishing the existence of or amount of loss covered under this bond, except to the extent covered under the portion of Insuring Agreement (A) entitled Audit Expense; or

Q14-75 (07/2015)                    Page 1

(2)    as party to any legal proceeding whether or not such legal proceeding exposes the Insured to loss covered by this bond;

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

Effective date of
this endorsement/rider: October 1, 2015

FEDERAL INSURANCE COMPANY

Endorsement/Rider No. 6

To be attached to and
form a part of Bond No. 70436970

Issued to:  RAYMOND JAMES FINANCIAL INC

## ADD CLAIMS EXPENSE INSURING AGREEMENT RIDER

In consideration of the premium charged, it is agreed that:

1.    The following Insuring Agreement is added:

CLAIMS EXPENSE

Reasonable expensed necessarily incurred and paid by the Insured in preparing any valid claim
for loss, as defined in Insuring Agreements A,B, C,D,E, and F and any other valid coverage
added by Rider. The Underwriter's aggregate liability for such expenses paid by the Insured in
preparing all such claims shall be $100,000 which is part of, and not in addition to, the Aggregate
Limit of Liability stated on the Declaration Page of this Bond. This coverage is subject to a
deductible of $10,000 each and every loss.

2.    With respect to the Claims Expense Insuring Agreement, Exclusion (u)(1) is hereby deleted in its
entirety.

3.    Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, limitations,
conditions or agreements of the attached bond other than as above stated.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the
terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

**FEDERAL INSURANCE COMPANY**

Rider No.:    7

Bond Number:  70436970 BOND

Name of Insured:   RAYMOND JAMES FINANCIAL INC

---

It is agreed that:

1.    Those premises of Depositories listed in the following Schedule shall be deemed to be premises of the Insured but only as respects coverage on Certificated Securities:

<div align="center">

SCHEDULE

</div>

DEPOSITORY                                      LOCATION COVERED

All depositories used by the Insured

2.    Certificated Securities held by such Depository shall be deemed to be Property as defined in the attached bond to the extent of the Insured's interest therein as effected by the making of appropriate entries on the books and records of such Depository.

3.    The attached bond does not afford coverage in favor of any Depository listed in the Schedule above. When the Underwriter indemnifies the Insured for a loss covered hereunder, the Insured will assign the rights and causes of action to the extent of the claim payment against the Depository, or any other entity or person against whom it has a cause of action, to the Underwriter.

4.    If the rules of the Depository named in the Schedule above provide that the Insured shall be assessed for a portion of the judgment (or agreed settlement) taken by the Underwriter based upon the assignment set forth in part 3. above and the Insured actually pays such assessment, then the Underwriter will reimburse the Insured for the amount of the assessment but not exceeding the amount of the loss payment by the Underwriter.

5.    This rider shall become effective as of 12:01 a.m. on October 1, 2015 standard time.

Date:  October 14, 2015                    By_____

                                                       Authorized Representative

CENTRAL HANDLING OF SECURITIES
FOR USE WITH FINANCIAL INSTITUTION BONDS, STANDARD FORMS
NOS. 14, 24 AND 25 TO SCHEDULE THE PREMISES OF DEPOSITORIES

REVISED TO OCTOBER, 1987.

Effective date of
this endorsement/rider: October 1, 2015

FEDERAL INSURANCE COMPANY

Endorsement/Rider No. 8

To be attached to and
form a part of Policy No. 70436970

Issued to:     RAYMOND JAMES FINANCIAL INC

AMEND SPACE SHARING RIDER

In consideration of the premium charged, it is agreed that:

(1)     The Underwriter hereby extends coverage under the attached bond to each office or branch of
        the Insured which is shared with any other broker or dealer, investment advisor, or other person
        who conducts a securities or commodities business with the public, as described in Financial
        Industry Regulatory Authority (FINRA) Rule 343 (a).

(2)     Accordingly, the Underwriter hereby grants clearance to the Insured for all space-sharing
        arrangements, as specified in FINRA Rule 343 (a)(2)(E).

(3)     Nothing contained here shall be held to vary, alter, waive or extend any of the terms, limitations,
        conditions, or agreements of the attached bond other than as above stated.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the
terms and conditions of coverage.

All other terms, conditions and limitations of this Bond shall remain unchanged.

Authorized Representative

Effective date of
this endorsement/rider: October 1, 2015          FEDERAL INSURANCE COMPANY

                                                 Endorsement/Rider No. 9

                                                 To be attached to and
                                                 form a part of Bond No. 70436970

Issued to:  RAYMOND JAMES FINANCIAL INC

---

## AMEND INSURING AGREEMENTS (D) AND (E) RIDER

In consideration of the premium charged, it is agreed that:

(1)   Insuring Agreement (D) FORGERY OR ALTERATION is amended by adding the following
      sentence at the end of paragraph (2):

      Telegraphic, cable or teletype instruction or advices as aforesaid, exclusive of transmissions of
      electronic funds transfer systems, sent by a person other than the said customer or employee of
      the Insured or financial institution purporting to send such instructions or advices, shall be
      deemed to bear a signature which is a Forgery

(2)   Insuring Agreement (E) SECURITIES  is amended as follows:

      A.   By deleting the subparagraphs (a) through (e) in paragraph (1) and replacing them with
           the following:

           (a) Certificated Security,
           (b) Deed, mortgage or other instrument conveying title to or creating or discharging a lien
               upon real property,
           (c) Document of Title,
           (d) Certificate of Origin or Title,
           (e) Evidence of Debt,
           (f) Corporate, partnership or personal Guarantee,
           (g) Security Agreement,
           (h) written instruction,
           (i) Statement of Uncertificated Security in any book entry form, or
           (j) Initial Transaction Statement

      B.   Paragraph (2) is amended by adding the word "endorsement" after the word "Guarantee".

      C.   Paragraph (2) is further amended by deleting "listed in (a) through (c) above" and replacing it
           with "listed in (a) through (h) above".

      D.   Paragraph (3), by deleting "listed in (a) and (b) above" and replacing it with "listed in (a)
           through (d) above".

E. By adding the following new paragraph immediately after paragraph (e):

Actual physical possession, and continued actual physical possession if taken as collateral, of the items listed in (a) through (j) above by the Insured, or by the Insured's authorized agent or representative, or by it correspondent Federal or State chartered deposit institution, is a precedent to the Insured's having relied on the faith of such items.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Bond shall remain unchanged.

Authorized Representative

Name of Insured:       RAYMOND JAMES FINANCIAL INC

---

It is agreed that:

1.  The attached bond is amended by deleting Insuring Agreement (F), Counterfeit Currency, in its entirety and substituting the following:

    Counterfeit Currency

    (F)  Loss resulting directly from the receipt by the Insured, in good faith, of any Counterfeit Money of any country.

2.  This Rider shall become effective as of 12:01 a.m. standard time on October 1, 2015.

Date:  October 14, 2015                                  By _____
                                                                  Authorized Representative

Amending Counterfeit Currency Rider
For use with Surety Association Financial Institution Bond, Standard Form 14, 15 & 24
Form 17-02-2867 (Ed. 1-02)

Effective date of
this endorsement/rider: October 1, 2015          FEDERAL INSURANCE COMPANY

                                                 Endorsement/Rider No. 11

                                                 To be attached to and
                                                 form a part of Bond No. 70436970

Issued to:  RAYMOND JAMES FINANCIAL INC

_____

## ADD FACSIMILE SIGNATURE COVERAGE RIDER

In consideration of the premium charged, it is agreed that:

(1)     The attached bond is hereby amended by adding the following additional Insuring Agreement:

        Loss resulting directly from the fact that an issuer of securities, transfer agent, bank banker or
        trust company received from the Insured or the New York Stock Exchange or any other exchange
        specimen copies of the Insured's mechanically reproduced facsimile signature and acted in
        reliance upon any false, fraudulent or unauthorized reproduction of such facsimile signature,
        whether such facsimile signature is the facsimile signature, regardless of by whom or by what
        means the same may have been imprinted, and whether or not such loss is sustained by reason
        of the Insured's having entered into an agreement to be legally liable when such facsimile
        signature or one resembling or purporting to be such facsimile signature is used, provided,
        however that:

        (a)     Such facsimile signature is used on a document

                (1)     as the signature to an assignment or other instrument authorizing or effecting the
                        transfer of shares of stock , or other registered securities, which may now or at
                        any time hereafter be registered in the mane of the Insured on the books of the
                        association, company or corporation issuing the same: or
                (2)     as the signature to a power of substitution, designating a substitute or substitutes
                        to make the actual transfer on the books of the issuer of shares of stock, or other
                        reregistered securities, in respect of which the Insured may now or at any time
                        hereafter be named as attorney to effect said transfer, whether said power of
                        substitution is embodied in an endorsement on the certificate for said shares of
                        stock or other registered security or in a separate instrument.

        (b)     The New York Exchange has not interposed any objections to the use by the Insured of
                such facsimile signature and such agreement, if any, was required by said Exchange as
                a condition to its filing to interpose any such objection.

        (c)     This Insuring Agreement shall not apply to any Certificated Securities which are
                Counterfeit.

(2)     Exclusions 2.(a) and 2.(e) of the attached bond shall not apply to the Facsimile Signature Insuring
        Agreement.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Bond shall remain unchanged.

_____
Authorized Representative

**FEDERAL INSURANCE COMPANY**

Rider No.:    12

Bond Number:  70436970

Name of Insured:  RAYMOND JAMES FINANCIAL INC

---

It is agreed that:

1.  The attached bond is amended by inserting an additional Insuring Agreement as follows:

### FRAUDULENT MORTGAGES

"(H)   Loss resulting directly from the Insured's having, in good faith and in the course of business in connection with any Loan, accepted or received or acted upon the faith of any real property mortgages, real property deeds of trust or like instruments pertaining to realty or assignments of such mortgages, deeds of trust or instruments which prove to have been defective by reason of the signature thereon of any person having been obtained through trick, artifice, fraud or false pretenses or the signature on the recorded deed conveying such real property to the mortgagor or grantor of such mortgage or deed of trust having been obtained by or on behalf of such mortgagor or grantor through trick, artifice, fraud or false pretenses."

2.  The Loan Exclusion Clause, Section 2(e), shall not apply to the Insuring Agreement set forth in paragraph 1 of this rider.

3.  The Single Loss Limit of Liability for the Fraudulent Mortgages Insuring Agreement is limited to the amount shown on the Declarations Page, or amendment thereto.

4.  This rider shall become effective as of 12:01 a.m. on October 1, 2015.

Date: October 14, 2015                            By _____

                                                       Authorized Representative

FRAUDULENT MORTGAGES INSURING AGREEMENT
FOR USE WITH FINANCIAL INSTITUTION BOND, STANDARD FORM NO. 24,
"DISCOVERY" FORM, TO ADD AN INSURING AGREEMENT COVERING REAL
PROPERTY MORTGAGES AND ASSIGNMENTS THEREOF WHICH ARE DEFECTIVE
BY REASON OF FRAUD WITH RESPECT TO THE SIGNATURE ON SPECIFIED INSTRUMENTS.

REVISED TO JUNE, 1990.

Effective date of
this endorsement/rider: October 1, 2015     FEDERAL INSURANCE COMPANY

Endorsement/Rider No. 13

To be attached to and
form a part of Bond No. 70436970

Issued to: RAYMOND JAMES FINANCIAL INC

---

SERVICING CONTRACTORS RIDER

In consideration of the premium charged, it is agreed that:

1.   The attached bond is hereby amended by adding an additional Insuring Agreement as follows:

SERVICING CONTRACTORS

A.   Loss through any dishonest or fraudulent act committed by any Servicing Contractor, as hereinafter defined, acting alone or in collusion with others.

Dishonest or fraudulent acts as used in this Insuring Agreement shall mean any dishonest or fraudulent acts committed by such Servicing Contractor with the intent:

(a)   to cause the Insured to sustain such loss; and

(b)   to obtain financial benefit for the Servicing Contractor or for another person or entity.

As used in this Insuring Agreement, financial benefit does not include any benefits earned in the normal course of employment, or performance of the servicing contract, including salaries, commissions, fees, bonuses, promotions, awards, profit sharing or pensions.

B.   Loss of Money (including obligations of the United States of America) collected or received for the Insured by any such Servicing Contractor through the failure of such Servicing Contractor to pay to the Insured the Money so collected or received as is discovered to be due and payable while this Insuring Agreement is in force, except, however, Money disbursed by such Servicing Contractor in accordance with instructions from the Insured.

The term Servicing Contractor, as used in this bond, shall mean a natural person, partnership or corporation, other than an officer or employee of the Insured, duly authorized by the Insured to perform any or all of the following:

(a) collect and record payments on real estate mortgage or home improvement loans made, held or assigned to the Insured, and establish tax and insurance escrow accounts,

(b) manage real property owned by or under the supervision or control of the Insured,

(c) perform other acts directly related to the above, but only while such natural person, partnership or corporation is actually performing such services within the United States of America, the Virgin Islands, Puerto Rico or Canada. In no event shall any activity described in (a), (b) or (c) above include the sale of real property mortgages to the Insured by the Servicing Contractor or by any affiliate of the Servicing Contractor.

The term Servicing Contractor shall include the partners, officers and employees of such

Contractors and each such Servicing Contractor and its partners, officers and employees shall collectively be deemed to be one person for all purposes of subsection (c) of the last paragraph of the Section captioned LIMIT OF LIABILITY.

2.  In addition to the exclusions in the attached bond, the Servicing Contractors Insuring Agreement does not cover:

    (a) Loss resulting from the insolvency, bankruptcy or taking over by a receiver or other liquidator or by State or Federal Officials of any depository institution, unless such depository is a Servicing Contractor covered under this bond and unless such insolvency, bankruptcy or taking over results from fraud or dishonesty of officers or employees of such depository institution, or

    (b) Under paragraph B, loss through the failure of any Servicing Contractor covered under this bond to collect or receive Money for the account of the Insured, any agreement between such Servicing Contractor and the Insured to the contrary notwithstanding, or

    (c) Under paragraph B, loss of Money collected or received for the account of the Insured by any Servicing Contractor covered under this bond unless such Servicing Contractor is legally liable to the Insured on account of the loss of such Money, or

    (d) Loss resulting directly or indirectly from the complete or partial non-payment of, or default upon, any Loan made to a Servicing Contractor, including any such Loan established to provide funds for interim financing or "warehousing" of mortgage loans, whether procured in good faith or through fraud or false pretenses, or loss resulting directly or indirectly from the failure of the Servicing Contractor to pay over Property held as security for any such Loan.

3.  The attached bond shall be deemed canceled as to any Servicing Contractor: (a) immediately upon discovery by the Insured of any dishonest or fraudulent act on the part of such Servicing Contractor unless within five days after discovery of such act, the Insured shall give the Underwriter written notice thereof and in such event this bond shall be deemed canceled as to such Servicing Contractor at the expiration of thirty days after such discovery of such act; or (b) at 12:01 a.m., as aforesaid, upon the effective date specified in a written notice served upon the Insured or sent by mail. Such date, if the notice be served, shall be not less than thirty days after such service, or if sent by mail, not less than thirty-five days after the date of mailing. The mailing by the Underwriter of notice, as aforesaid, to the Insured at its Principal Office shall be sufficient proof of notice.

4.  The Single Loss Limit of Liability of the Underwriter under the foregoing Servicing Contractors Insuring Agreement, is limited to the amount shown in the Declarations or amendment thereto.

5.  The attached bond does not afford coverage in favor of any Servicing Contractor, as aforesaid, and upon payment to the Insured by the Underwriter on account of any loss for which such Contractor is liable to the Insured, an assignment of such of the Insured's rights and causes of action as it may have against such Contractor by reason of such liability shall, to the extent of such payment, be given by the Insured to the Underwriter, and the Insured shall execute all papers necessary to secure to the Underwriter the rights herein provided for.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

Effective date of
this endorsement/rider: October 1, 2015

FEDERAL INSURANCE COMPANY

Endorsement/Rider No. 14

To be attached to and
form a part of Policy No. 70436970

Issued to: RAYMOND JAMES FINANCIAL INC

AUTOMATED TELLER MACHINE RIDER

In consideration of the premium charged, it is agreed that:

(1) Exclusion (l) of Section 2. of the Conditions and Limitations of this bond is deleted and replaced with the following:
  (l) loss involving automated mechanical devices which, on behalf of the Insured, disburse Money, accept deposits, cash checks, drafts or similar written instruments or make credit card loans unless:
    (a) such automated mechanical devices are situated within an office of the Insured which is permanently staffed by an Employee whose duties are those usually assigned to a teller, even though public access to such devices is from outside the confines of such office, or
    (b) such automated mechanical devices are not situated within an office covered under (a) above, but are situated on premises at any other location except as noted in the Schedule below, but in no event shall the Underwriter be liable under the attached bond for loss (including loss of Property):
      (i) as a result of damage to such automated mechanical devices situated within any office referred to in (a) above resulting from vandalism or malicious mischief perpetrated from outside such office, or
      (ii) as a result of damage to such automated mechanical devices situated on any premises referred to in (b) above resulting from vandalism or malicious mischief, or
      (iii) as a result of damage to the interior of that portion of a building on any premises referred to in (b) above to which the public has access resulting from vandalism or malicious mischief, or
      (iv) as a result of failure of such automated mechanical devices to function properly, or
      (v) through misplacement or mysterious unexplainable disappearance while such Property is located within any such automated mechanical devices, or
      (vi) to any customer of the Insured or to any representative of such customer while such person is on any premises referred to in (b) above, or
      (vii) as a result of the use of credit, debit, charge, access, convenience, identification or other cards in gaining access to such automated mechanical devices whether such cards were issued, or purport to have been issued, by the Insured or by anyone other than the Insured,

    except when such loss is covered under Insuring Agreement (A).

(2) The liability of the Underwriter is limited to $120,000       for each device location as set forth in (b) above, after the application of a Deductible Amount of $5,000. Such liability shall be a part of and not in addition to the Single Loss Limit of Liability stated in the Declarations.

Q14-305 (02/2014)                    Page 1

(3)     Schedule of Excluded Locations

        NONE

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: October 1, 2015

FEDERAL INSURANCE COMPANY

Endorsement/Rider No. 15

To be attached to and
form a part of Policy No. 70436970

Issued to: RAYMOND JAMES FINANCIAL INCAccount Name]

## AMEND GENERAL AGREEMENT B RIDER

In consideration of the premium charged, it is agreed that the attached bond is amended by deleting General Agreement B., Additional Offices or Employees-Consolidation, Merger or Purchase of Assets-Notice, of this bond and replacing it with the following:

Additional Offices or Employees-Consolidation, Merger or Purchase of Assets-Notice

B.   If the Insured shall, while this bond is in force, establish any additional offices, other than by consolidation or merger with, or purchase or acquisition of assets or liabilities of, another institution, such offices shall be automatically covered hereunder from the date of such establishment without the requirement of notice to the Underwriter or the payment of additional premium for the remainder of the premium period.

Any newly created entities, which are majority owned or management controlled by the Insured, shall be automatically covered hereunder from the date of incorporation.

If the Insured shall, while this bond is in force, consolidate or merge with, or purchase or acquire assets or liabilities of, another entity whose assets are valued at less than 10% of the Insured's total assets said entity shall be automatically covered hereunder from the date of such consolidation or merger with, or purchase or acquisition

If the Insured shall, while this bond is in force, consolidate or merge with, or purchase or acquire assets or liabilities of, another entity whose assets are valued at more than 10% of the Insured's total assets , the Insured shall not have such coverage as is afforded under this bond for loss which:

(a)   has occurred or will occur in offices or premises, or

(b)   has been caused or will be caused by an employee or employees of such institution, or

(c)   has arisen or will arise out of the assets or liabilities, acquired by the Insured as a result of such consolidation, merger or purchase or acquisition of assets or liabilities unless the Insured shall

(i)   give the Underwriter written notice of the proposed consolidation, merger or purchase or acquisition of assets or liabilities within sixty (60) days of the proposed effective date of such action, during which coverage will be automatic and

(ii)   obtain the written consent of the Underwriter to extend the coverage provided by this bond to such additional offices or premises, Employees and other exposures, and

> (iii) upon obtaining such consent, pay to the Underwriter an additional premium if the assets of the entity to be consolidated or merged with, purchases or acquired are valued at 10% or more of the Insured's total assets.
>
> Notwithstanding the above, coverage under this Bond shall apply to loss discovered during the Bond period but which was sustained by entities sold by the Insured prior to the sale date, provided, however, that the Insured is legally liable for such loss. Such additional discovery period shall be for one year from the date of sale of such entities by the Insured.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

Effective date of
this endorsement/rider: October 1, 2015          FEDERAL INSURANCE COMPANY

Endorsement/Rider No. 16

To be attached to and
form a part of Bond No. 70436970

Issued to: RAYMOND JAMES FINANCIAL INC

---

AMEND GENERAL AGREEMENT C RIDER

In consideration of the premium charged, it is agreed that General Agreement C., Change of Control –
Notice, is amended by deleting the first sentence and replacing it with the following:

When the Vice President of Corporate Insurance and/or Legal Department of the Insured learns
of a change in control, he/she shall give written notice to the Underwriter.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and
conditions of coverage.

All other terms, conditions and limitations of this Bond shall remain unchanged.

Authorized Representative

Rider No.:    17

Bond Number:   70436970  BOND

Name of Insured:    RAYMOND JAMES FINANCIAL INC

It is agreed that:

1.    The attached bond is hereby amended by deleting General Agreement D, Representation Of Insured, in its entirety and substituting the following:

Representation Of Insured

(D)    The Insured represents that the information furnished in the application for this bond is complete, true and correct. Such application constitutes part of this bond.

Any intentional misrepresentation, omission, concealment or incorrect statement of a material fact, in the application or otherwise, shall be grounds for the rescission of this bond.

2.    This Rider shall become effective as of 12:01 a.m. standard time on October 1, 2015.

Date: October 14, 2015

By _____
Authorized Representative

Intentional Misrepresentation Rider
For use with all Surety Association Financial Institution Bonds
Form 17-02-2884 (Ed. 1-02)

Name of Insured:        RAYMOND JAMES FINANCIAL INC

It is agreed that the attached bond is amended as follows:

1.  By deleting in its entirety the first paragraph from General Agreement F., Notice Of Legal Proceedings Against Insured-Election To Defend, and substituting the following:

    The Insured shall notify the Underwriter at the earliest practicable moment, not to exceed sixty (60) days after notice thereof, of any legal proceeding brought to determine the Insured's liability for any loss, claim or damage, which, if established, would constitute a collectible loss under this bond. Concurrently, the Insured shall furnish copies of all pleadings and pertinent papers to the Underwriter.

2.  This Rider shall become effective as of 12:01 a.m. standard time on October 1, 2015.

Date:  October 14, 2015                                    By _____
                                                                        Authorized Representative

Amending Notice of Legal Proceedings Against Insured-Election to Defend Rider (Number of Days)
For use with all Surety Association Financial Institution Bonds
Form 17-02-2873 (Ed. 1-02)

Effective date of
this endorsement/rider: October 1, 2015

FEDERAL INSURANCE COMPANY

Endorsement/Rider No. 19

To be attached to and
form a part of Bond No. 70436970

Issued to: RAYMOND JAMES FINANCIAL INC

## AMEND DEFINITIONS RIDER

In consideration of the premium charged, it is agreed that Section 1., Definitions, of the Conditions and Limitations of this bond is amended as follows:

(1)    The following terms are added:

Certificate of Origin or Title means a document issued by a manufacturer of personal property or a governmental agency evidencing the ownership of the personal property and by which ownership is transferred.

Document of Title means a bill of lading, dock warrant, dock receipt, warehouse receipt or order of the delivery of goods and also any other document which in the regular course of business or financing is treated as adequately evidencing that the person in possession of it is entitled to receive, hold and dispose of the document and goods it covers and must purport to be issued by or addressed to a bailee and purport to cover goods in the bailee's possession which are either identified or are fungible portions of an identified mass.

Disclosed Agent(s) means a natural person in the immediate employment of agencies as hereinafter defined and also the individual agents or partners of those named agencies where such agencies are co-partnerships; the word "agencies" as used herein shall be deemed to mean those named firms, corporations and/or individuals that do business with the Insured on a disclosed account basis whereby the Insured executes orders or clears executed orders for (a) the purchase and sale of securities (b) contracts for the future delivery of commodities on any commodity exchange, and (c) spot transactions in such commodities, in customers' accounts carried on the Insured's books, which orders, contracts and transactions are transmitted to the Insured by said agencies on behalf of the respective customers.

Registered Representative means a person who is a registered representative or a registered principal associated with the Insured except a: (i) sole proprietor, (ii) sole stockholder, (iii) director or a trustee of an insured who is not performing acts coming within the scope of the usual duties of an officer or an employee, or (iv) partner.

Initial Transaction Statement means the first written statement signed by or on behalf of the issuer of an Uncertificated Security and sent to the registered owner or registered pledgee containing: (i) a description of the issue of which the Uncertificated Security is a part and (ii) the number of shares or units which are transferred to the registered owner, pledged by the registered owner to the registered pledgee or released from pledge by the registered pledgee and (iii) the name, address and taxpayer identification number, if any, of the registered owner or the registered pledgee and (iv) the date the transfer, pledge or release was registered.

Q14-89 (01/2014)                    Page 1

Security Agreement means an agreement which creates an interest in personal property or fixtures and which secures payment or performance of an obligation.

(2)     The definition of Employee is amended to include the following:

    (7)     Disclosed Agent(s);

    (8)     Registered Representatives;

    (9)     A person who resigns or is terminated from the service of the Insured during the Bond Period subject to the following: (i) for a period of sixty (60) days subsequent to such resignation or termination (but not beyond the date of expiration or termination of the Bond and (ii) if such resignation or termination has not arisen from or in connection with the discovery by the Insured of any actual or alleged dishonest, fraudulent or criminal act(s) of such person;

    (10)    an independent contractor working under a written agreement with the Insured;

    (11)    Each natural person, partnership or corporation authorized under written contract with the Insured to design, prepare, supply or service electronic computer instructions for computer systems of the Insured, herein called independent software contractor, each such independent software contractor and the partners, officers and employees of such independent software contractor shall, collectively, be deemed to be one employee.

(3)     The definition of Property is deleted and replaced by the following:

Property means Money, Certificated Securities, Uncertificated Securities of any issuer, Initial Transaction Statement, Negotiable and non- negotiable instruments, Certificate of Deposit, Documents of Title, Acceptances, Evidences of Debt, Security Agreements, Withdrawal Orders, Certificates of Origin or Title, Letters of Credit, Electronic Data, Electronic Data Processing Media, insurance policies, abstracts of title, deeds and mortgages on real estate, revenue and other stamps, tokens, unsold state lottery tickets, books of account and other records whether recorded in writing or electronically, gems jewelry, precious metals of all kinds and in any form and articles made therefrom and tangible items of personal property which are not hereinbefore enumerated.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

Effective date of
this endorsement/rider: October 1, 2015          FEDERAL INSURANCE COMPANY

Endorsement/Rider No. 20

To be attached to and
form a part of Bond No. 70436970

Issued to: RAYMOND JAMES FINANCIAL INC

## AMEND EXCLUSIONS RIDER

In consideration of the premium charged, it is agreed that:

(1)     The following are added to Section 2., Exclusions, of this bond:

      (bb)     Loss resulting directly or indirectly from trading with or without the knowledge of the Insured, whether or not represented by any indebtedness or balance shown to be due the Insured on any customer's account, actual or fictitious, and notwithstanding any act or omission on the part of any Employee in connection with any account relating to such trading, indebtedness, or balance, except when covered under Insuring Agreements (D) or (E) if coverage is carried thereunder or Insuring Agreement (A) to the extent that the loss does not exceed the Single Loss Limit of Liability for Trading Loss Coverage as set forth on the Declaration Page or amendment thereto:

      (cc)     loss of Property contained in customers safe deposit boxes, except when the Insured is legally liable therefore and the loss is covered under Insuring Agreement (A);

      (dd)     loss through cashing or paying forged or altered travelers' checks or travelers' checks bearing forged endorsement, except when covered under Insuring Agreement (A) loss of unsold travelers' checks or unsold money orders placed in the custody of the Insured with authority to sell, unless (a) the Insured is legally liable for such loss and (b) such checks or money orders are later paid or honored by the drawer thereof, except when covered under Insuring Agreement (A);

      (ee)     shortage in any teller's cash due to error regardless of the amount of such shortage, and any shortage in any teller's cash which is not in excess of the normal shortage shall occur shall be presumed to be due to error.

(2)     Exclusion (j) is amended by deleting the word "alleged" and replacing it with the word "adjudicated".

(3)     Exclusion (x) is amended by adding the words "under Insuring Agreement (A)" before the words "loss resulting directly or indirectly".

(4)     Exclusion (w) is deleted in its entirety.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Bond shall remain unchanged.

_____

Authorized Representative

Effective date of
this endorsement/rider: October 1, 2015          FEDERAL INSURANCE COMPANY

                                                  Endorsement/Rider No. 21

                                                  To be attached to and
                                                  form a part of Bond No. 70436970

Issued to: [RAYMOND JAMES FINANCIAL INCAccount Name]

_____

## AMEND EXCLUSION (s) RIDER

In consideration of the premium charged, it is agreed that Section 2., Exclusion (s), of this bond is deleted and replaced
with the following:

(s)     potential income, include but not limited to interest and dividends, not realized by the Insured or by any customer
        of the Insured, except for loss of accrued interest and/or dividends for which the Insured is legally liable;

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and
conditions of coverage.

All other terms, conditions and limitations of this Bond shall remain unchanged.

_____
Authorized Representative

Effective date of
this endorsement/rider: October 1, 2015          FEDERAL INSURANCE COMPANY

Endorsement/Rider No. 22

To be attached to and
form a part of Bond No. 70436970

Issued to: RAYMOND JAMES FINANCIAL INC

---

AMEND EXCLUSION (v) RIDER

In consideration of the premium charged, it is agreed that Exclusion (v) of Section 2. of the Conditions and
Limitations of this bond is deleted and replaced with the following:

(v)     indirect or consequential loss of any nature; provided, however, that this exclusion shall not apply to
        loss of accrued interest and/or dividends for which the Insured is legally liable;

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and
conditions of coverage.

All other terms, conditions and limitations of this Bond shall remain unchanged.


_____
Authorized Representative

Effective date of
this endorsement/rider: October 1, 2015          FEDERAL INSURANCE COMPANY

Endorsement/Rider No. 23

To be attached to and
form a part of Bond No. 70436970

Issued to:  RAYMOND JAMES FINANCIAL INC

_____

AMEND DISCOVERY RIDER

In consideration of the premium charged, it is agreed that Section 3., Discovery, of the Conditions and
Limitations of this bond is deleted and replaced with the following:

Section 3.          This bond applies to loss discovered by the Vice President of Corporate Insurance and/or
                    Legal Department of the Insured located at the Insured's principal address as stated in
                    Item 1 of the Declarations during the Bond Period.  Discovery occurs when the Vice
                    President of Corporate Insurance and/or Legal Department of the Insured first becomes
                    aware of facts which would cause a reasonable person to assume that a loss of a type
                    covered by this bond has been or will be incurred, regardless of when the act or acts
                    causing or contributing to such loss occurred, even though the exact amount or details of
                    loss may not then be known.

                    Discovery also occurs when the Vice President of Corporate Insurance and/or Legal
                    Department of the Insured receives notice of an actual or potential claim in which it is
                    alleged that the Insured is liable to a third party under circumstances which, if true, would
                    constitute a loss under this bond.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and
conditions of coverage.

All other terms, conditions and limitations of this Bond shall remain unchanged.

_____

Authorized Representative

Name of Insured: RAYMOND JAMES FINANCIAL INC

---

It is agreed that in addition to this bond, the Underwriter has issued to the Insured all policies and bonds listed below. It is expressly acknowledged by the Insured that the premium for this bond and all policies and bonds listed below has been negotiated with the understanding that this bond and all policies and bonds listed below combine and share a single aggregate limit of liability. Therefore, in consideration of the premium charged:

1.  The Underwriter and the Insured agreed that the Underwriter's maximum aggregate limit of liability for all **Loss** under this bond, and for all payments of **Loss** under all policies and bonds listed below, in the aggregate, shall not exceed $20,000,000.

2.  It is agreed that the Underwriter shall have no obligation under this bond to make any payment of **Loss** to the extent that the amount of such **Loss**, when added to the amount of any **Loss** paid under this bond and any **Loss** paid under any policies and bonds listed below, would exceed $20,000,000. Any payment of **Loss** under any policies and bonds listed below shall reduce the Limits of Liability available under this bond for the payment of any **Loss** during the Bond Period.

3.  If the Underwriter shall have paid **Loss** under this bond and **Loss** under any policies and bonds listed below in an aggregate amount equaling $20,000,000, any and all obligations of the Underwriter under this bond and the policies and bonds listed below shall be completely fulfilled and extinguished, and the Underwriter shall have no further obligations of any kind or nature under this bond and the policies and bonds listed below.

4.  If a **Loss** is covered by this bond and one or more of the policies and bonds listed below, and if more than one deductible amount applies to such **Loss**, the largest applicable deductible amount shall be the deductible amount applicable to such **Loss**.

| Policy/Bond Type | Policy/Bond Number |
|---|---|
| Computer Crime Policy For Financial Institutions | 7043-6971 |

For the purposes of this Rider, **Loss** shall include Single Loss as defined in this bond and any bond or policy listed above and **Loss** as defined in any policy listed above.

THIS RIDER DOES NOT INCREASE THE LIMITS OF LIABILITY, AS SET FORTH IN THE DECLARATIONS.

Name and Address of Insured:

RAYMOND JAMES FINANCIAL INC

Shared Aggregate Limits Rider
For use with all Surety Association Financial Institution Bonds
Form 17-02-5462 (Ed. 2-04)                                                                                 Page 1

880 CARILLON PARKWAY
SAINT PETERSBURG, FL 33716

_____
Signature of Insured's Representative

_____
Position/Title

_____
Date

5.    This Rider shall become effective as of 12:01 a.m. standard time on October 1, 2015.

Date: October 14, 2015

By _____
                     Authorized Representative

Effective date of
this endorsement/rider: October 1, 2015          FEDERAL INSURANCE COMPANY

Endorsement/Rider No. 25

To be attached to and
form a part of Bond No. 70436970

Issued to: RAYMOND JAMES FINANCIAL INC

---

## AMEND SECTION 5 RIDER

In consideration of the premium charged, it is agreed that Section 5., Notice/Proof-Legal Proceedings Against Underwriter, of the attached bond in amended as follows:

1.    Paragraph (a) is deleted and replaced with the following:

  (a)    At the earliest practical moment, not to exceed sixty (60) days, after discovery of loss, the Vice

    President of Corporate Insurance and/or Legal Department located at the Insured's principal

    address as stated in Item 1 of the Declarations shall give the Underwriter notice thereof in an

    amount that is in excess of 50% of the applicable Single Loss Deductible amount, as stated in Item

    4 of the Declarations.

2.    Paragraph (c) is deleted and replaced with the following:

  (c)    Lost Certificated Securities listed in a proof of loss may be identified by certificate or
       Bond numbers if such securities were issued therewith and Uncertificated Securities may
       be identified by a Statement of Uncertificated Security.

3.    The following paragraph is added as follows:

  (g)    If the Insured is an institution under the supervision of the Federal Home Loan Bank
       Board, it is understood and agreed that in case of any loss hereunder discovered either
       by the Insured or the Federal Home Bank of which the Insured is a member, the said
       Federal Home Bank is empowered to give notice of the loss to the Underwriter within the
       period limited thereof.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: October 1, 2015

FEDERAL INSURANCE COMPANY

Endorsement/Rider No. 26

To be attached to and
form a part of Bond No. 70436970

Issued to: RAYMOND JAMES FINANCIAL INC

---

AMEND SECTION 6 VALUATION RIDER

In consideration of the premium charged, it is agreed that Section 6., Valuation, of this bond is amended as follows:

(1) By deleting the phrase "rate of exchange at time of payment" from the first sentence of Section 6., and replacing it with the following:

"rate of exchange at the time of discovery of such loss"

(2) By deleting the first two sentences of the second paragraph of Section 6 and replacing them with the following:

The value of any securities for the loss of which claim shall be made hereunder, shall be determined by the average market value of such securities at the time of discovery of such loss. However, if prior to the settlement of the claim by the Underwriter, the Insured shall be compelled by the demands of a third party or by market rules to purchase equivalent securities, and gives written notification of this to the Underwriter, the cost incurred by the Insured shall be taken as the value of those securities.

(3) By deleting the title "Property other than Money, Securities or Records" and replacing it with the following:

Property other than Money, Securities, Books of Account and Other Records, Electronic Data and Electronic Data Processing Media

The title and any headings in this endorsement/rider are solely
All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

Effective date of
this endorsement/rider: October 1, 2015          FEDERAL INSURANCE COMPANY

Endorsement/Rider No. 27

To be attached to and
form a part of Bond No. 70436970

Issued to: RAYMOND JAMES FINANCIAL INC

---

### AMEND DEDUCTIBLE RIDER

In consideration of the premium charged, it is agreed that:

1.    All references to "Single Loss Deductible" are deleted from the Declarations Page.

2.    Subject to the provisions of the attached bond with respect to the Single Loss Limit of Liability and
      Single Loss Deductible amounts, the Single Loss Deductible shown for each of the following
      deductible groups applies to each of the Insureds listed within each group.

JOINT INSURED SINGLE LOSS DEDUCTIBLE GROUPS

GROUP A          SINGLE LOSS DEDUCTIBLE:          $1,000,000

                 INSUREDS:  Raymond James Financial, Inc. and all wholly or majority-owned
                            subsidiaries with the exception of Raymond James Bank FBS, Raymond
                            James (USA) Ltd and
                            Raymond James Trust Company

GROUP B          SINGLE LOSS DEDUCTIBLE:          $250,000

                 INSUREDS:  Raymond James Bank FBS, Raymond James (USA) Ltd and
                            Raymond James Trust Company

3.    In the event of a loss involving two or more Insureds with different Single Loss Deductibles, the
      average of the two deductibles will be applied to the loss.

4.    Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions,
      provisions, agreements or limitations of the attached bond, other than as stated herein.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and
conditions of coverage.

All other terms, conditions and limitations of this Bond shall remain unchanged.

Authorized Representative

Effective date of
this endorsement/rider: October 1, 2015          FEDERAL INSURANCE COMPANY

Endorsement/Rider No. 28

To be attached to and
form a part of Bond No. 70436970

Issued to: [RAYMOND JAMES FINANCIAL INC

---

## AMEND TERMINATION OR CANCELATION RIDER

In consideration of the premium charged, it is agreed that:

(1)     The second paragraph of Section 12., Termination or Cancelation, is amended to state that
        dishonest or fraudulent acts of any Employee, independent contractor, Disclosed Agent or of any
        partner, officer or employee of any Processor will not require notification to the Underwriter if the
        act involved an amount of less than Ten Thousand ($10,000) Dollars; occurred prior to three (3)
        years from the Insured's discovery or knowledge; and did not occur during employment with the
        Insured.

(2)     Further, "dishonest or fraudulent acts" for purposes of Section 12., shall not include any default
        on a personal loan by an Employee due to the insolvency or bankruptcy of such Employee.

(3)     Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, limitations,
        conditions or agreements of the attached bond other than as above stated.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and
conditions of coverage.

All other terms, conditions and limitations of this Bond shall remain unchanged.


_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: October 1, 2015

FEDERAL INSURANCE COMPANY

Endorsement/Rider No. 29

To be attached to and
form a part of Bond No. 70436970

Issued to: RAYMOND JAMES FINANCIAL INC

CANCELATION ENDORSEMENT

In consideration of the premium charged, it is agreed that the Underwriter will mark its records to indicate that The
Financial Industry Regulatory Authority is to be notified promptly concerning the cancelation or substantial
modification of the attached bond, whether at the request of the Insured or the Underwriter, and will use its best efforts
to so notify said Authority but failure to so notify said Authority shall not impair or delay the effectiveness of any such
cancelation or modification.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and
conditions of coverage.

All other terms, conditions and limitations of this Bond shall remain unchanged.

Authorized Representative

Effective date of
this endorsement/rider: October 1, 2015

FEDERAL INSURANCE COMPANY

Endorsement/Rider No. 30

To be attached to and
form a part of Policy No. 70436970

Issued to:     RAYMOND JAMES FINANCIAL INC

CANCELLATION NOTICES RIDER

In consideration of the premium charged, it is agreed that:

(1)     The Underwriter will marks its records to indicate that the Federal Home Loan Bank, Arkansas
        Securities Department, Philadelphia Stock Exchange and the Chicago Board of Options are to be
        notified promptly concerning the cancellation or substantial modification of the attached bond,
        whether at the request of the Insured or the Underwriter, and will use its best efforts to so notify
        said entities but failure to so notify said entities shall not impair or delay the effectiveness of any
        such cancellation or modification.

(2)     Nothing herein contained shall be held to vary, alter, waive, extend any of the terms, limitations,
        conditions or agreements of the attached bond other than as above stated.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the
terms and conditions of coverage.

All other terms, conditions and limitations of this Bond shall remain unchanged.

Authorized Representative

Effective date of
this endorsement/rider: October 1, 2015          FEDERAL INSURANCE COMPANY

Endorsement/Rider No: 31

To be attached to and
form a part of Policy No: 70436970

Issued to: RAYMOND JAMES FINANCIAL INC

---

## CANCELATION RIDER

In consideration of the premium charged, it is agreed that the Underwriter will mark its records to indicate that the Department of Member Firms of the New York Stock Exchange is to be notified promptly concerning substantial modification of the attached bond, or the cancelation of the attached bond as an entirety as provided under parts (a) and (b) of Section 12, or as to any Employee or Partner covered thereunder, whether such modification or cancelation be effected by notice from the Insured or the Underwriter. The Underwriter will use its best efforts to so notify said Department but failure to so notify said Department shall not impair or delay the effectiveness of any such modification or cancelation.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Bond shall remain unchanged.

Authorized Representative

Name of Insured: RAYMOND JAMES FINANCIAL INC

It is agreed that:

1.   The term "Underwriter" as used in the attached bond shall be construed to mean, unless otherwise specified in this bond, all the Companies executing the attached bond.

2.   Each of said Companies shall be liable only for such proportion of any Single Loss under the attached bond as the amount underwritten by such Company as specified in the Schedule forming a part hereof, bears to the Aggregate Limit of Liability of the attached bond, but in no event shall any of said Companies be liable for an amount greater than that underwritten by it.

3.   In the absence of a request from any of said Companies to pay premiums directly to it, premiums for the attached bond may be paid to the Controlling Company for the account of all of said Companies.

4.   In the absence of a request from any of said Companies that notice of claim and proof of loss be given to or filed directly with it, the giving of such notice to and the filing of such proof with, the Controlling Company shall be deemed to be in compliance with the conditions of the attached bond for the giving of notice of loss and the filing of proof of loss, if given and filed in accordance with said conditions.

5.   The Controlling Company may give notice in accordance with the terms of the attached bond, terminating or canceling the attached bond as an entirety or as to any Employee, and any notice so given shall terminate or cancel the liability of all of said Companies as an entirety or as to such Employee, as the case may be.

6.   Any Company other than the Controlling Company may give notice in accordance with the terms of the attached bond, terminating or canceling the entire liability of such other Company under the attached bond or as to any Employee.

7.   In the absence of a request from any of said Companies that notice of termination or cancelation by the Insured of the attached bond in its entirety be given to or filed directly with it, the giving of such notice in accordance with the terms of the attached bond to the Controlling Company shall terminate or cancel the liability of all of said Companies as an entirety. The Insured may terminate or cancel the entire liability of any Company, other than the Controlling Company, under the attached bond by giving notice of such termination or cancelation to such other Company, and shall send copy of such notice to the Controlling Company.

COSURETY RIDER FOR
USE WITH ALL FORMS OF STANDARD BONDS.

REVISED TO OCTOBER, 1987.

8.     In the event of the termination or cancelation of the attached bond as an entirety, no Company shall be liable to the Insured for a greater proportion of any return premium due the Insured than the amount underwritten by such Company bears to the Aggregate Limit of Liability of the attached bond.

9.     In the event of the termination or cancelation of the attached bond as to any Company, such Company alone shall be liable to the Insured for any return premium due the Insured on account of such termination or cancelation. The termination or cancelation of the attached bond as to any Company other than the Controlling Company shall not terminate, cancel or otherwise affect the liability of the other Companies under the attached bond.

10.    This rider shall become effective as of 12:01 a.m. on October 1, 2015 standard time.

Underwritten for the sum of
$5,000,000 part of $10,000,000 Single Loss & $10,000,000 part of $20,000,000 Aggregate Limit of Liability

**FEDERAL INSURANCE COMPANY**
**Controlling Company**

CHUBB & SON
A Division of Federal Insurance Company
Manager

Date:  October 14, 2015

By _____
Authorized Representative

Underwritten for the sum of
$5,000,000 part of $10,000,000 Single Loss & $10,000,000 part of $20,000,000 Aggregate Limit of Liability

Beazley Insurance Company

By _____
Attorney-in-Fact

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: October 1, 2015

FEDERAL INSURANCE COMPANY

Endorsement/Rider No. 33

To be attached to and
form a part of Bond No. 70436970

Issued to: RAYMOND JAMES FINANCIAL INC

---

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

COVERAGE TERRITORY ENDORSEMENT

Payment of loss under this policy shall only be made in full compliance with all United States of America
economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations
administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

Authorized Representative

Effective date of
this endorsement/rider: October 1, 2015          FEDERAL INSURANCE COMPANY

Endorsement/Rider No. 34

To be attached to and
form a part of Bond No. 70436970

Issued to: RAYMOND JAMES FINANCIAL INC

## TERMINATION OR CANCELATION RIDER

In consideration of the premium charged, it is agreed that notwithstanding anything to the contrary set
forth in Section 12, Termination or Cancelation, of this Bond (and any endorsement or rider amending
such cancellation or termination clause, including but not limited to any state cancellation/non-renewal
amendatory attached to this Bond), if this Bond shall be cancelled by the Insured, the Underwriter shall
return to the Insured the unearned pro rata proportion of the premium as of the effective date of
cancellation.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and
conditions of coverage.

All other terms, conditions and limitations of this Bond shall remain unchanged.


Authorized Representative

Effective date of
this endorsement/rider:   October 1, 2015          FEDERAL INSURANCE COMPANY

Endorsement/Rider No.  35

To be attached to and
form a part of Bond No.  70436970

Issued to:   RAYMOND JAMES FINANCIAL INC

## FRAUDULENT TRANSFER INSTRUCTIONS RIDER
(For use with the Form 14)

In consideration of the premium charged, it is agreed that this bond is amended as follows:

(1)     The following Insuring Agreement is added:

FRAUDULENT TRANSFER INSTRUCTIONS

Loss resulting directly from the Insured having, in good faith, transferred Money on deposit in a
Customer's account, or a Customer's Certificated Security or Uncertificated Security, in reliance
upon a fraudulent instruction transmitted to the Insured via telefacsimile, telephone or electronic
mail; provided, however, that:

A.  the fraudulent instruction purports, and reasonably appears, to have originated from:
   i.   such Customer, or
   ii.  an Employee acting on instructions of such Customer, or
   iii. another financial institution acting on behalf of such Customer with authority to make such
        instructions;  and

B.  the sender of the fraudulent instruction verified the instruction with the password, PIN, or
    other security code of such Customer; and

C.  the sender was not, in fact, such Customer, was not authorized to act on behalf of such
    Customer, and was not an Employee; and

D.  the instruction was received by an Employee specifically authorized by the Insured to receive
    and act upon such instructions; and

E.  for any transfer exceeding the amount set forth in paragraph (9) of this Rider, the Insured
    verified the instructions via a call back to a predetermined telephone number set forth in the
    Insured's written agreement with such Customer or other verification procedure approved in
    writing by the Underwriter; and

14-02-21332 (10/2014)          Page 1

F. the Insured preserved a contemporaneous record of the call back, if any, and the instruction which verifies use of the authorized password, PIN or other security code of the Customer.

(2) For the purposes of the coverage afforded by this Rider, Customer means any corporation, partnership, proprietor, trust or natural person having an account with the Insured and having a written agreement with the Insured authorizing the Insured to transfer Money on deposit in an account or Certificated Security or Uncertificated Security in reliance upon instructions transmitted to the Insured via telefacsimile, telephone or electronic mail to transmit the fraudulent instruction.

(3) It shall be a condition precedent to coverage under this Insuring Agreement that the Insured assert any available claims, offsets or defenses against such Customer, any financial institution or any other party to the transaction.

(4) Solely with respect to the Fraudulent Transfer Instruction Insuring Agreement, the following Exclusions are added:

A. Loss resulting directly or indirectly from a fraudulent instruction if the sender, or anyone acting in collusion with the sender, ever had authorized access to such Customer's password, PIN or other security code; and

B. Loss resulting directly or indirectly from the fraudulent alteration of an instruction to initiate an automated clearing house (ACH) entry, or group of ACH entries, transmitted as an electronic message, or as an attachment to an electronic message, sent via the internet, unless:

   i. each ACH entry was individually verified via the call back procedure without regard to the amount of the entry; or
   ii. the instruction was formatted, encoded or encrypted so that any altercation in the ACH entry or group of ACH entries would be apparent to the Insured.

(5) Exclusions 2.(i) and 2.(w) are deleted and replaced with the following:

   (i) loss resulting directly or indirectly from transactions in a customer's account, whether authorized or unauthorized, except the unlawful withdrawal and conversion of Money, securities or precious metals, directly from a customer's account by an Employee provided such unlawful withdrawal and conversion is covered under Insuring Agreement (A) or the Fraudulent Transfer Instruction Insuring Agreement;

   (w) loss involving any Uncertificated Security except an Uncertificated Security of any Federal Reserve Bank of the United States or when covered under Insuring Agreement (A) or the Fraudulent Transfer Instruction Insuring Agreement;

(6) Liability of the Underwriter under the Fraudulent Transfer Instruction Insuring Agreement shall be part of, not in addition to, the Aggregate Limit of Liability of this bond.

(7) For the purposes of the Fraudulent Transfer Instruction Insuring Agreement, all loss or losses involving one natural person or entity, or one group of natural persons or entities acting together, shall be a Single Loss without regard to the number of transfers or the number of instructions involved.

(8)     For the purposes of the Fraudulent Transfer Instruction Insuring Agreement, the Single Loss Limit of Liability shall be $ 10,000,000. The Single Loss Deductible Amount shall be $ 1,000,000.

(9)     The amount of any single transfer for which verification via call back will be required is: $ 50,000.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Bond shall remain unchanged.

Authorized Representative

# IMPORTANT NOTICE TO POLICYHOLDERS

All of the members of the Chubb Group of Insurance companies doing business in the United States (hereinafter "Chubb") distribute their products through licensed insurance brokers and agents ("producers"). Detailed information regarding the types of compensation paid by Chubb to producers on US insurance transactions is available under the Producer Compensation link located at the bottom of the page at www.chubb.com, or by calling 1-866-588-9478. Additional information may be available from your producer.

Thank you for choosing Chubb.

10-02-1295 (ed. 6/2007)

# POLICYHOLDER
# DISCLOSURE NOTICE OF
# TERRORISM INSURANCE COVERAGE
**(for policies with no terrorism exclusion or sublimit)**

You are hereby notified that, under the Terrorism Risk Insurance Act (the "Act"), effective December 26, 2007, this policy makes available to you insurance for losses arising out of certain acts of terrorism. Terrorism is defined as any act certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States Mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that the insurance provided by your policy for losses caused by acts of terrorism is partially reimbursed by the United States under the formula set forth in the Act. Under this formula, the United States pays 85% of covered terrorism losses that exceed the statutorily established deductible to be paid by the insurance company providing the coverage.

However, if aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

10-02-1281 (Ed. 1/2003)

If aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

The portion of your policy's annual premium that is attributable to insurance for such acts of terrorism is: $ -0-.

If you have any questions about this notice, please contact your agent or broker.

## POLICYHOLDER INFORMATION NOTICE

### IMPORTANT NOTICE

To obtain information or make a complaint:

You may call Chubb & Son, Inc. toll-free telephone number for information or to make a complaint at:

1-800-36-CHUBB

**ATTACH THIS NOTICE TO YOUR POLICY:**
**This notice is for information only and does not become a part or condition of the attached document.**

Form 99-10-0353 (Ed. 3-94)

# CHUBB GROUP OF INSURANCE COMPANIES

6200 Courtney Campbell Causeway, Tampa, FL 33607-1489 Phone (813) 281-7400

NOTICE OF RISK MANAGEMENT PROGRAM AVAILABILITY

Insured:      RAYMOND JAMES FINANCIAL INC

Policy No.:   70436970

Date:         October 14, 2015

In accordance with Florida law, we are pleased to advise you that we have established a "Risk Management Program" for the use of our clients in the handling of certain risks. Our overall "Risk Management Program" includes measures, services, guidelines and plans developed by us for our customers. The general scope of our "Risk Management Program" is intended to include the following:

1.  Safety measures, including, as applicable, the following areas:

    a.  Pollution and environmental hazards;

    b.  Disease hazards;

    c.  Accidental occurrences;

    d.  Fire hazards and fire prevention and detection;

    e.  Liability for acts from the course of business;

    f.  Slip and fall hazards;

    g.  Products injury; and

    h.  Hazards unique to a particular class or category of policyholders.

2.  Training to policyholders in safety management techniques.

3.  Safety management counseling services.

As part of our overall "Risk Management Program", we have developed general "Guidelines" concerning the establishment of individual "Risk Management Plans", dealing with specific aspects of risk handling appropriate to our clients.

If you are interested in obtaining general "Guidelines" from us as a guide to developing your own "Risk Management Plan", please contact your agent. At your request, we will send you a copy of applicable "Guidelines" at no charge.

Again, if you are interested in obtaining more details on this subject, please contact your agent.

Form 14-02-1387 (Ed. 2/98)

# CHUBB GROUP OF INSURANCE COMPANIES

6200 Courtney Campbell Causeway, Tampa, FL 33607-1489 Phone (813) 281-7400

MEMORANDUM

TO:

FROM:    R. H. ZINN

SUBJECT:    FLORIDA: RULE 4-75.001 - RISK MANAGEMENT PLANS

---

To comply with the above rule which became effective January 1, 1989, we are attaching a copy of a "Notice of Risk Management Program Availability" for our insured.

Please ensure that this Notice is delivered to the client.

As you can see, we have designated you as our contact representative to receive the initial request for the "Guidelines."

Once you have received a request, please contact Ron Lynch, our Loss Control Manager in Tampa, so that we can promptly respond to the insured's request.

RHZ/ckb
Enclosure

Form 14-02-1388 (Ed. 2/98)

# Countersignature/Signature Statement

**Countersignature/Signature Agent:**
Paul Morrissette
Chubb & Son A Div. Of Federal Ins. Co.
15 Mountain View Rd.
Warren, NJ 07061-1615

**Effective Date** October 1, 2015
**Policy No.** 70436970
**Issued by** FEDERAL INSURANCE COMPANY

**Policy Period**
October 1, 2015 **to**
October 1, 2016

**Name and address of Insured:**

RAYMOND JAMES FINANCIAL INC

880 CARILLON PARKWAY
SAINT PETERSBURG, FL 33716

**Producer of Record**

MARSH USA, INC
1166 AVE OF AMERICAS 37F

**Countersignature for policy no.** 70436970
**State** FL
**Name of Insured** RAYMOND JAMES FINANCIAL INC

It is agreed that the signature appearing on this document is the signature of a person duly authorized to countersign on behalf of the company in the state indicated above and that this document constitutes countersignature of the attached policy in compliance with state law.

Authorized Representative

Form 99-10-0797 (Ed. 3/04)

 

**Excess Bond Coverage Declarations**

| POLICY NO. | 106384318 |
|---|---|

**Travelers Casualty and Surety Company of America**
**One Tower Square**
**Hartford, Connecticut 06183**
(A Stock Insurance Company, herein called the Company)

---

**ITEM 1** THE COMPANY ISSUES THIS EXCESS BOND COVERAGE TO:

NAMED INSURED:
**RAYMOND JAMES FINANCIAL INC**

Principal Address:
**880 CARILLON PARKWAY**
**SAINT PETERSBURG, FL 33716**

(herein called Insured).

---

**ITEM 2** EXCESS BOND COVERAGE PERIOD:

The Excess Bond Coverage Period shall be effective at:

Inception Date: **October 01, 2015**        Expiration Date: **October 01, 2016**
12:01 A.M on standard time both dates at the Principal Address stated in ITEM 1, subject to **SECTION 5. EXCESS BOND COVERAGE PERIOD** of the *TERMS, CONDITIONS AND LIMITATIONS* of this Excess Bond Coverage.

---

**ITEM 3** ALL NOTICES OF CLAIM OR LOSS MUST BE SENT TO THE COMPANY BY EMAIL, FACSIMILE, OR MAIL AS SET FORTH BELOW:

Email: **BSIclaims@travelers.com**
FAX: **(888) 460-6622**
Mail: **Travelers Bond & Specialty Insurance Claim**
        **385 Washington St. – Mail Code 9275-NB03F**
        **St Paul, MN 55102**

---

**ITEM 4** LIMIT OF INSURANCE:

A.    SINGLE LOSS LIMIT OF INSURANCE:        $10,000,000

B.    AGGREGATE LIMIT OF INSURANCE:        $20,000,000

---

**ITEM 5** SCHEDULE OF UNDERLYING INSURANCE:

| | Bond or Policy Number | Bond or Policy Period | Single Loss Limit of Insurance | Aggregate Limit of Insurance | Single Loss Deductible |
|---|---|---|---|---|---|
| A. Issuer of Primary Bond or Policy | | | | | |

---

© 2012 The Travelers Indemnity Company. All rights reserved.

| Beazley Insurance Company, Inc. | 70436970 / 70436971 | 10/01/2015 to 10/01/2016 | $5,000,000 p/o $10,000,000 | $10,000,000 p/o $20,000,000 | $1,000,000 |
|---|---|---|---|---|---|
| Federal Insurance Company | 70436970 / 70436971 | 10/01/2015 to 10/01/2016 | $5,000,000 p/o $10,000,000 | $10,000,000 p/o $20,000,000 | $1,000,000 |

**B. Other Underlying Insurers**

| | | | | | |
|---|---|---|---|---|---|
| | | | | | |

**C.**     **TOTAL AMOUNT OF UNDERLYING SINGLE LOSS LIMIT OF INSURANCE:**

The total amount of Underlying Single Loss Limit of Insurance is **$10,000,000** plus any Single Loss Deductible under the Bond or Policy identified in ITEM 5 A. of the Declarations of this Excess Bond Coverage

**D.**     **TOTAL AMOUNT OF UNDERLYING AGGREGATE LIMIT OF INSURANCE EACH EXCESS BOND COVERAGE PERIOD:**

The total amount of Underlying Aggregate Limit of Insurance each Excess Bond Coverage Period is **$20,000,000** plus any Single Loss Deductible under the Bond or Policy identified in ITEM 5 A. of the Declarations of this Excess Bond Coverage

**ITEM 6**     **SUBJECT TO THE DECLARATIONS, *INSURING AGREEMENT, TERMS, CONDITIONS AND LIMITATIONS,* AND ENDORSEMENTS OF THIS EXCESS BOND COVERAGE AND AS EXCEPTED BELOW, THIS EXCESS BOND COVERAGE FOLLOWS THE FORM OF:**

Insurer's Name:                    **Federal Insurance Company**
Bond or Policy Number:        **70436970 / 70436971**
Policy Period:                        From: **October 01, 2015**      To:      **October 01, 2016**
Except as provided below:

**None**

**ITEM 7**     **PREVIOUS BONDS OR POLICIES:**

The Insured, by acceptance of this Excess Bond Coverage, gives notice to the Company canceling or terminating prior bond or policy numbers:

**51M15818**

such cancellation or termination to be effective as of the time this bond becomes effective.

**ITEM 8**     **FORMS AND ENDORSEMENTS ATTACHED AT ISSUANCE:**

**XSB-3001-0112**

**PRODUCER INFORMATION:**

© 2012 The Travelers Indemnity Company. All rights reserved.

Countersigned By

IN WITNESS WHEREOF, the Company has caused this policy/bond to be signed by its authorized officers.

Thomas M. Kunkel

President, Bond & Specialty Insurance

Wendy C. Skyi

Corporate Secretary

© 2012 The Travelers Indemnity Company. All rights reserved.



*SelectOne+sm*

*Excess Bond Coverage*

## INSURING AGREEMENT

**IN CONSIDERATION** of the payment of an agreed premium, and in reliance upon completeness and accuracy of the statements and disclosures made to the Company and any issuer of Underlying Insurance by application, including all attachments, subject to the Declarations, Insuring Agreements, Terms, Conditions And Limitations, and Endorsements of this Excess Bond Coverage, this Excess Bond Coverage is subject to the same Insuring Agreements, Terms, Conditions And Limitations, and Endorsements as provided by the Bond or Policy identified in ITEM 6 of the Declarations of this Excess Bond Coverage. In no event shall this Excess Bond Coverage provide broader coverage than would be provided by the most restrictive Underlying Insurance.

This Excess Bond Coverage is not subject to the same premium or the Limit of Insurance of the Bond or Policy identified in ITEM 6 of the Declarations.

## TERMS, CONDITIONS AND LIMITATIONS

### SECTION 1.   UNDERLYING COVERAGE

A.   The Insured(s) shall notify the Company in writing, as soon as practicable, of a failure to maintain in full force and effect, without alteration, the coverage and provisions of the Bond(s) or Policy(ies) identified in ITEM 5 A. and B. of the Declarations.

B.   In the event there is no recovery available to the Insured as a result of the insolvency of any Underlying Insurer or the Insured's failure to comply with the maintenance of any Underlying Insurance, the coverage hereunder shall apply as excess of the amount of all Underlying Insurance plus the amount of any applicable deductible to the same extent as if the Underlying Insurance were maintained in full force and effect.

C.   If the coverage and provisions of the Bond or Policy identified in ITEM 6 of the Declarations are altered, the Insured shall, as soon as practicable, give the Company written notice of such alteration(s); and upon receipt of written consent to such alteration(s) from the Company, the Insured shall pay any additional premium required by the Company. This Excess Bond Coverage shall not follow the form of any alteration(s) to the Bond or Policy identified in ITEM 6 of the Declarations unless such written notice thereof is given by the Insured(s) to the Company, the Company gives written consent to such alteration(s) and the Insured(s) pay(s) any additional premium required by the Company.

D.   Except as provided in Section 2. Limit Of Insurance, D. and E. below, in no event shall the Company be liable to pay loss under this Excess Bond Coverage until the total amount of the Underlying Single Loss Limit of Insurance as stated in ITEM 5 C. of the Declarations has been exhausted solely by reason of the payment of loss by the Underlying Insurer(s) as covered loss under the applicable Underlying Insurance.

E.   Any claim, loss or coverage that is subject to a Sublimit in any Underlying Insurance shall not be considered covered loss under this Excess Bond Coverage, but shall, for purposes of this Excess Bond Coverage, reduce or exhaust the Underlying Limit of Insurance to the extent such payment reduces or exhausts the aggregate limit(s) of insurance of such Underlying Insurance.

### SECTION 2.   LIMIT OF INSURANCE

A.   Payment by the Company of loss covered under this Excess Bond Coverage shall reduce the Aggregate Limit of Insurance of this Excess Bond Coverage set forth in ITEM 4 B. of the Declarations. In the event of exhaustion of the Aggregate Limit of Insurance of this Excess Bond Coverage set forth in ITEM 4 B. of the Declarations, the Company shall be relieved of all further liability under this Excess Bond Coverage.

© 2012 The Travelers Indemnity Company. All rights reserved.

**B.** The Company's maximum liability for a Single Loss covered under this Excess Bond Coverage shall not exceed the amount of the Single Loss Limit of Insurance stated in ITEM 4 A. of the Declarations. Also, the Company's maximum liability for all loss(es) in the aggregate covered under this Excess Bond Coverage shall not exceed the amount of the Aggregate Limit of Insurance stated in ITEM 4 B. of the Declarations, which shall be the maximum liability of the Company in the Excess Bond Coverage Period stated in ITEM 2 of the Declarations.

**C.** Except as provided in Section 2. Limit Of Insurance, D. and E. below, the Company shall only be liable to make payment for a Single Loss covered under this Excess Bond Coverage after the total amount of the Underlying Single Loss Limit of Insurance as stated in ITEM 5 C. of the Declarations has been paid solely by reason of the payment of loss by the Underlying Insurer(s) as covered loss under the applicable Underlying Insurance.

**D.** In the event the total amount of the Underlying Aggregate Limit of Insurance as stated in ITEM 5 D. of the Declarations is reduced solely by reason of the payment of covered loss by any Underlying Insurer to an amount less than the total amount of the Underlying Single Loss Limit of Insurance as stated in ITEM 5 C. of the Declarations, this Excess Bond Coverage shall pay covered loss excess of the reduced total amount of Underlying Aggregate Limit of Insurance, but not to exceed the amount of the Single Loss Limit of Insurance stated in ITEM 4 A. of the Declarations, and subject always to the remaining Aggregate Limit of Insurance of this Excess Bond Coverage.

**E.** In the event of exhaustion of the total amount of Underlying Aggregate Limit of Insurance as set forth in ITEM 5 D. of the Declarations, solely by reason of the payment of covered loss by the Underlying Insurer(s), this Excess Bond Coverage shall continue in force as primary insurance, provided always that this policy shall only pay covered loss excess over any retention or deductible amount otherwise applicable under the Underlying Insurance scheduled in ITEM 5 A. of the Declarations, such amount not to exceed the Single Loss Limit of Insurance stated in ITEM 4 A. of the Declarations and subject always to the remaining Aggregate Limit of Insurance of this Excess Bond Coverage.

### SECTION 3.    JOINT INSUREDS

If two or more Insureds are covered under this Excess Bond Coverage, the first named Insured shall act for all Insureds. Payment by the Company to the first named Insured or to any named Insured of loss covered under this Excess Bond Coverage shall fully release the Company on account of such loss. The liability of the Company for loss(es) sustained by all Insureds shall not exceed the amount for which the Company would have been liable had all such loss(es) been sustained by one Insured.

### SECTION 4.    NOTICE/PROOF OF LOSS – LEGAL PROCEEDINGS AGAINST COMPANY

**A.** The Insured(s) shall, within the time and manner prescribed in the Bond or Policy identified in ITEM 6 of the Declarations, give the Company notice of any loss of the kind covered by this Excess Bond Coverage, whether or not the Company is liable therefor in whole or in part, and upon request of the Company, the Insured(s) shall file with the Company a written statement of such loss and a copy of all correspondence between the Insured(s) and any Insurer identified in ITEM 5 A. and B. of the Declarations. Notice given to any Insurer identified in ITEM 5 A. and B. of the Declarations of this Excess Bond Coverage shall not constitute notice as required under Section 4. Notice/Proof Of Loss – Legal Proceedings Against Company.

**B.** The Insured(s) shall, within the time and manner prescribed in the Bond or Policy identified in ITEM 6 of the Declarations, file with the Company a proof of loss for any loss of the kind covered by this Excess Bond Coverage, whether or not the Company is liable therefore in whole or in part, and upon request of the Company the Insured(s) shall furnish a copy of all documents provided to or made available to any Insurer identified in ITEM 5 A. and B. of the Declarations in support of any proof of loss filed with such Insurer. Filing of a proof of loss with any Insurer identified in ITEM 5 A. and B. of the Declarations shall not constitute filing a proof of loss with the Company as required in Section 4. Notice/Proof Of Loss – Legal Proceedings Against Company.

© 2012 The Travelers Indemnity Company. All rights reserved.

**C.** Legal proceedings against the Company shall be commenced within the time prescribed in the Bond or Policy identified in ITEM 6 of the Declarations and only after complying with all the Terms, Conditions And Limitations of this Excess Bond Coverage.

**D.** Notice and proof of loss under this Excess Bond Coverage shall be given as set forth in ITEM 3 of the Declarations.

**SECTION 5.     EXCESS BOND COVERAGE PERIOD**

**A.** The term Excess Bond Coverage Period as used in this Excess Bond Coverage shall mean the lesser of the period stated in ITEM 2 of the Declarations or the time between the effective date and the termination date of this Excess Bond Coverage.

**B.** The Aggregate Limit of Insurance set forth in ITEM. 4 B. of the Declarations shall not be cumulated regardless of the number of Excess Bond Coverage Periods this Excess Bond Coverage has been in force; the number of renewals of this Excess Bond Coverage by the Company; any extensions of the Excess Bond Coverage Period of this Excess Bond Coverage by the Company; the number of and amount of premiums paid by the Insured, or the number of Excess Bond Coverage Periods of this Excess Bond Coverage in which the acts giving rise to a loss(es) were committed or occurred.

**SECTION 6.     SINGLE LOSS DEFINED**

As used herein, Single Loss shall be defined as that term, or any similar term, as defined in the Bond or Policy identified in ITEM 6 of the Declarations.

**SECTION 7.     CANCELLATION OF THIS EXCESS BOND COVERAGE BY THE COMPANY OR THE INSURED**

This Excess Bond Coverage terminates as an entirety upon occurrence of any of the following:

**A.** after the receipt by the Insured of a written notice from the Company of its desire to cancel this Excess Bond Coverage in accordance with the conditions and limitations of any Bond or Policy identified in ITEM 5 A. and B. of the Declarations,

**B.** immediately upon the receipt by the Company of a written notice from the Insured of its desire to cancel this Excess Bond Coverage, or

**C.** immediately upon cancellation, termination or nonrenewal of the Underlying Bond or Policy identified in ITEM 6 of the Declarations, whether by the Insured or the underwriter.

© 2012 The Travelers Indemnity Company. All rights reserved.

# IMPORTANT NOTICE REGARDING INDEPENDENT AGENT AND BROKER COMPENSATION

For information on how Travelers compensates independent agents, brokers, or other insurance producers, please visit this website: www.travelers.com/w3c/legal/Producer_Compensation_Disclosure.html

If you prefer, you can call the following toll-free number: 1-866-904-8348. Or you can write to us at Travelers, Agency Compensation, One Tower Square, Hartford, CT 06183.

© 2015 The Travelers Indemnity Company. All rights reserved.

# FLORIDA IMPORTANT NOTICE

To present inquiries, obtain information about coverage or make a complaint:

You may contact your agent first, or you may call us for information or to make a complaint at:

860-954-2382

You may also write to us at:

Travelers
Consumer Affairs
One Tower Square 5GS
Hartford, CT 06183-9079

ATTACH THIS NOTICE TO YOUR POLICY:

This notice is for information only and does not become a part or condition of the attached document.

ACF-4002 Ed. 01-09 Printed in U.S.A.
©2009 The Travelers Companies, Inc. All Rights Reserved



# HOW TO REPORT ACTUAL OR POTENTIAL LOSS OR CLAIM TO TRAVELERS

**ALL NOTICES OF ACTUAL OR POTENTIAL LOSS OR CLAIM MUST BE SENT TO TRAVELERS BY EMAIL, FACSIMILE OR MAIL AS SET FORTH BELOW:**

This is a general notice of how to report actual or potential losses or claims under this policy or bond. This notice if for information only and does not replace or add to the terms of this policy or bond. The policy or bond alone determines the scope of coverage. Please read it carefully for complete information on coverage. Contact your agent or broker if you have any questions about coverage.

© 2012 The Travelers Indemnity Company. All rights reserved.

**Chubb Group of Insurance Companies**

15 Mountain View Road, Warren, New Jersey 07059

## DECLARATIONS
## FINANCIAL INSTITUTION
## EXCESS BOND FORM E

NAME OF ASSURED:

RAYMOND JAMES FINANCIAL INC

880 CARILLON PARKWAY
SAINT PETERSBURG, FL 33716

Bond Number: 82126526

**FEDERAL INSURANCE COMPANY**
Incorporated under the laws of Indiana,
a stock insurance company, herein called the COMPANY

Capital Center, 251 North Illinois, Suite 1100
Indianapolis, IN 46204-1927

---

**ITEM 1.**   BOND PERIOD:   from   12:01 a.m. on October 1, 2015
                             to    12:01 a.m. on October 1, 2016

**ITEM 2.**   AGGREGATE LIMIT OF LIABILITY: $20,000,000  excess of $40,000,000

**ITEM 3.**   SINGLE LOSS LIMIT OF LIABILITY:      $10,000,000 excess of $20,000,000

**ITEM 4.**   DEDUCTIBLE AMOUNT: $ 21,000,000

**ITEM 5.**   PRIMARY BOND:

| | |
|---|---|
| Insurer: | Federal Insurance Company |
| Form and Bond No. | Form 14/Policy # 70436970 |
| Limit | $20,000,000 aggregate |
| | $10,000,000 single loss |
| Deductible: | $1,000,000 |
| Bond Period | October 1, 2015 – October 1, 2016 |

| | |
|---|---|
| Insurer: | Federal Insurance Company |
| Form and Bond No. | ECCP Form/Policy# 70436971 |
| Limit | $20,000,000 aggregate |
| | $10,000,000 single loss |
| Deductible: | $1,000,000 |
| Bond Period | October 1, 2015 – October 1, 2016 |

**ITEM 6.**   COVERAGE EXCEPTIONS TO PRIMARY BOND:

NOTWITHSTANDING ANY COVERAGE PROVIDED BY THE PRIMARY BOND, THIS EXCESS BOND
DOES NOT DIRECTLY OR INDIRECTLY COVER: NONE

**ITEM 7.**   TOTAL OF LIMITS OF LIABILITY OF OTHER UNDERLYING BONDS, EXCESS OF PRIMARY BOND:

**ITEM 8.**   THE LIABILITY OF THE COMPANY IS ALSO SUBJECT TO THE TERMS OF THE FOLLOWING
ENDORSEMENTS EXECUTED SIMULTANEOUSLY HEREWITH:
1-7

**IN WITNESS WHEREOF, THE COMPANY** issuing this Bond has caused this Bond to be signed by its authorized
officers, but it shall not be valid unless also signed by a duly authorized representative of the Company.

---

Maureen A. Brundage

Secretary

Carl J. Krump

President

Authorized Representative

<u>February 22, 2016</u>

Date

The COMPANY, in consideration of the required premium, and in reliance on the statements and information furnished to the COMPANY by the ASSURED, and subject to the DECLARATIONS made a part of this bond and to all other terms and conditions of this bond, agrees to pay the ASSURED for:

**Insuring Clause**

Loss which would have been paid under the **Primary Bond** but for the fact the loss exceeds the **Deductible Amount**.

Coverage under this bond shall follow the terms and conditions of the **Primary Bond**, except with respect to:

a.  The coverage exceptions in ITEM 6. of the DECLARATIONS; and

b.  The limits of liability as stated in ITEM 2. and ITEM 3. of the DECLARATIONS.

With respect to the exceptions stated above, the provisions of this bond shall apply.

## General Agreements

*Change Or Modification Of Primary Bond*

A.  If after the inception date of this bond the **Primary Bond** is changed or modified, written notice of any such change or modification shall be given to the COMPANY as soon as practicable, not to exceed thirty (30) days after such change or modification, together with such information as the COMPANY may request. There shall be no coverage under this bond for any loss related to such change or modification until such time as the COMPANY is advised of and specifically agrees by written endorsement to provide coverage for such change or modification.

*Representations Made By Assured*

B.  The ASSURED represents that all information it has furnished to the COMPANY for this bond or otherwise is complete, true and correct. Such information constitutes part of this bond.

The ASSURED must promptly notify the COMPANY of any change in any fact or circumstance which materially affects the risk assumed by the COMPANY under this bond.

Any misrepresentation, omission, concealment or incorrect statement of a material fact by the ASSURED to the COMPANY shall be grounds for recision of this bond.

*Notice To Company Of Legal Proceedings Against Assured - Election To Defend*

C.  The ASSURED shall notify the COMPANY at the earliest practical moment, not to exceed thirty (30) days after the ASSURED receives notice, of any legal proceeding brought to determine the ASSURED'S liability for any loss, claim or damage which, if established, would constitute a collectible loss under this bond or any of the **Underlying Bonds**. Concurrent with such notice, and as requested thereafter, the ASSURED shall furnish copies of all pleadings and pertinent papers to the COMPANY.

## General Agreements

**Notice To Company Of Legal Proceedings Against Assured - Election To Defend**
*(continued)*

If the COMPANY elects to defend all or part of any legal proceeding, the court costs and attorneys' fees incurred by the COMPANY and any settlement or judgment on that part defended by the COMPANY shall be a loss under this bond. The COMPANY'S liability for court costs and attorneys' fees incurred in defending all or part of such legal proceeding is limited to the proportion of such court costs and attorneys' fees incurred that the amount recoverable under this bond bears to the amount demanded in such legal proceeding.

If the COMPANY declines to defend the ASSURED, no settlement without the prior written consent of the COMPANY or judgment against the ASSURED shall determine the existence, extent or amount of coverage under this bond, and the COMPANY shall not be liable for any costs, fees and expenses incurred by the ASSURED.

## Conditions And Limitations

*Definitions*

1. As used in this bond:

   a. **Deductible Amount** means the amount stated in ITEM 4. of the DECLARATIONS. In no event shall this **Deductible Amount** be reduced for any reason, including but not limited to, the non-existence, invalidity, insufficiency or uncollectibility of any of the **Underlying Bonds**, including the insolvency or dissolution of any Insurer providing coverage under any of the **Underlying Bonds**.

   b. **Primary Bond** means the bond scheduled in ITEM 5. of the DECLARATIONS or any bond that may replace or substitute for such bond.

   c. **Single Loss** means all covered loss, including court costs and attorneys' fees incurred by the COMPANY under General Agreement C., resulting from:

      (1) any one act of burglary, robbery or attempt either, in which no employee of the ASSURED is implicated, or

      (2) any one act or series of related acts on the part of any person resulting in damage to or destruction or misplacement of property, or

      (3) all acts other than those specified in c.(1) and c.(2), caused by any person or in which such person is implicated, or

      (4) any one event not specified above, in c.(1), c.(2) or c.(3).

   d. **Underlying Bonds** means the **Primary Bond** and all other insurance coverage referred to in ITEM 7. of the DECLARATIONS.

**Conditions And
Limitations**
*(continued)*

*Limit Of Liability*

*Aggregate Limit Of
Liability*

2.    The COMPANY'S total cumulative liability for all **Single Losses** of all ASSUREDS discovered during the BOND PERIOD shall not exceed the AGGREGATE LIMIT OF LIABILITY as stated in ITEM 2. of the DECLARATIONS. Each payment made under the terms of this bond shall reduce the unpaid portion of the AGGREGATE LIMIT OF LIABILITY until it is exhausted.

On exhausting the AGGREGATE LIMIT OF LIABILITY by such payments:

a.    the COMPANY shall have no further liability for loss or losses regardless of when discovered and whether or not previously reported to the COMPANY, and

b.    the COMPANY shall have no obligation under General Agreement C. to continue the defense of the ASSURED, and on notice by the COMPANY to the ASSURED that the AGGREGATE LIMIT OF LIABILITY has been exhausted, the ASSURED shall assume all responsibility for its defense at its own cost.

The unpaid portion of the AGGREGATE LIMIT OF LIABILITY shall not be increased or reinstated by any recovery made and applied in accordance with Section 4. In the event that a loss of property is settled by indemnity in lieu of payment, then such loss shall not reduce the unpaid portion of the AGGREGATE LIMIT OF LIABILITY.

*Single Loss Limit Of
Liability*

The COMPANY'S liability for each **Single Loss** shall not exceed the SINGLE LOSS LIMIT OF LIABILITY as stated in ITEM 3. of the DECLARATIONS or the unpaid portion of the AGGREGATE LIMIT OF LIABILITY, whichever is less.

*Discovery*

3.    This bond applies only to loss first discovered by the ASSURED during the BOND PERIOD. Discovery occurs at the earlier of the ASSURED being aware of:

a.    facts which may subsequently result in a loss of a type covered by this bond, or

b.    an actual or potential claim in which it is alleged that the ASSURED is liable to a third party,

regardless of when the act or acts causing or contributing to such loss occurred, even though the amount of loss does not exceed the applicable **Deductible Amount**, or the exact amount or details of loss may not then be known.

*Subrogation-Assignment-
Recovery*

4.    In the event of a payment under this bond, the COMPANY shall be subrogated to all of the ASSURED'S rights of recovery against any person or entity to the extent of such payments. On request, the ASSURED shall deliver to the COMPANY an assignment of the ASSURED'S rights, title and interest and causes of action against any person or entity to the extent of such payment.

## Conditions And Limitations

*Subrogation-Assignment-*
*Recovery*
*(continued)*

Recoveries, whether effected by the COMPANY or by the ASSURED, shall be applied net of the expense of such recovery, first, to the satisfaction of the ASSURED'S loss which would otherwise have been paid but for the fact that it is in excess of the AGGREGATE LIMIT OF LIABILITY, second, to the COMPANY in satisfaction of amounts paid in settlement of the ASSURED'S claim and third, to the ASSURED in satisfaction of the DEDUCTIBLE AMOUNT. Recovery from reinsurance and/or indemnity of the COMPANY shall not be deemed a recovery under this Section.

---

*Cooperation Of Assured* 5. At the COMPANY'S request and at reasonable times and places designated by the COMPANY the ASSURED shall:

    a.   submit to examination by the COMPANY and subscribe to the same under oath, and

    b.   produce for the COMPANY'S examination all pertinent records, and

    c.   cooperate with the COMPANY in all matters pertaining to the loss.

The ASSURED shall execute all papers and render assistance to secure to the COMPANY the rights and causes of action provided for under this bond. The ASSURED shall do nothing after loss to prejudice such rights or causes of action.

---

*Termination* 6. This bond terminates as an entirety on the earliest occurrence of any of the following:

    a.   sixty (60) days after the receipt by the ASSURED of a written notice from the COMPANY of its decision to terminate this bond, or

    b.   immediately on the receipt by the COMPANY of a written notice from the ASSURED of its decision to terminate this bond, or

    c.   immediately on the appointment of a trustee, receiver or liquidator to act on behalf of the ASSURED, or the taking over of the ASSURED by State or Federal officials, or

    d.   immediately on the dissolution of the ASSURED, or

    e.   immediately on exhausting the AGGREGATE LIMIT OF LIABILITY, or

    f.   immediately on expiration of the BOND PERIOD, or

    g.   immediately on cancellation, termination or recision of the **Primary Bond**.

---

*Conformity* 7. If any limitation within this bond is prohibited by any law controlling this bond's construction, such limitation shall be deemed to be amended so as to equal the minimum period of limitation provided by such law.

***Conditions And***
***Limitations***
*(continued)*

*Change Or Modification*    8.    This bond or any instrument amending or affecting this bond may not be changed
*Of This Bond*               or modified orally. No change in or modification of this bond shall be effective
except when made by written endorsement to this bond signed by an Authorized
Representative of the COMPANY.

Effective date of
this endorsement/rider:  October 1, 2015          **FEDERAL INSURANCE COMPANY**

Endorsement/Rider No.  1

To be attached to and
form a part of Bond No.  82126526

Issued to:  RAYMOND JAMES FINANCIAL INC

---

## AMEND GENERAL AGREEMENT A. ENDORSEMENT

In consideration of the premium charged, it is agreed that this bond is amended by deleting GENERAL AGREEMENT A., CHANGE OR MODIFICATION OF PRIMARY BOND in its entirety and substituting the following:

If after the inception date of this bond the **Primary Bond** is changed or modified, written notice of any such change or modification shall be given to the COMPANY as soon as practicable, not to exceed thirty (30) days after such change or modification, together with such information as the COMPANY may request.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Bond shall remain unchanged.

_____
Authorized Representative

Effective date of
this endorsement/rider: October 1, 2015          FEDERAL INSURANCE COMPANY

Endorsement/Rider No.  2

To be attached to and
form a part of Policy No.  82126526

Issued to:     RAYMOND JAMES FINANCIAL INC

---

### AMENDING REPRESENTATIONS MADE BY ASSURED ENDORSEMENT

In consideration of the premium charged, it is agreed that this bond is amended by deleting in its entirety
General Agreement B., Representations Made By Assured, and substituting the following:

B.      The ASSURED represents that all information it has furnished to the COMPANY for this bond or
        otherwise is complete, true and correct.  Such information constitutes part of this bond.

                Any intentional misrepresentation, omission, concealment or incorrect statement of a
                material fact by the ASSURED to the COMPANY shall be grounds for recision of this bond.


The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms
and conditions of coverage.

All other terms, conditions and limitations of this Bond shall remain unchanged.


Authorized Representative

Effective date of
this endorsement/rider:  October 1, 2015          **FEDERAL INSURANCE COMPANY**

Endorsement/Rider No. .3

To be attached to and
form a part of Bond No.  82126526

Issued to:  RAYMOND JAMES FINANCIAL INC

---

AMEND DISCOVERY ENDORSEMENT

In consideration of the premium charged, it is agreed that this bond is amended by deleting CONDITIONS
AND LIMITATIONS SECTION 3., DISCOVERY in its entirety and substituting the following:

This bond applies only to loss first discovered by the Vice President of Corporate Insurance and/or Legal
Department of the ASSURED during the BOND PERIOD.  Discovery occurs at the earlier of the Vice
President of Corporate Insurance and/or Legal Department of the ASSURED being aware of:

a.     facts which may subsequently result in a loss of a type covered by this bond, or

b.     an actual or potential claim in which it is alleged that the ASSURED is liable to a third party,

regardless of when the act or acts causing or contributing to such loss occurred, even though the amount of
loss does not exceed the applicable **Deductible Amount**, or the exact amount or details of loss may not then
be known.


The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms
and conditions of coverage.

All other terms, conditions and limitations of this Bond shall remain unchanged.

Authorized Representative

Effective date of
this endorsement/rider: October 1, 2015          **FEDERAL INSURANCE COMPANY**

Endorsement/Rider No. 4

To be attached to and
form a part of Bond No. 82126526

Issued to: RAYMOND JAMES FINANCIAL INC

---

## AMEND GENERAL AGREEMENT C. ENDORSEMENT

In consideration of the premium charged, it is agreed that this bond is amended by deleting the first paragraph of GENERAL AGREEMENT C., NOTICE TO COMPANY OF LEGAL PROCEEDINGS AGAINST ASSURED – ELECTION TO DEFEND in its entirety and substituting the following:

The ASSURED shall notify the COMPANY at the earliest practical moment, not to exceed sixty (60) days after the Vice President of Corporate Insurance and/or Legal Department receives notice, of any legal proceeding brought to determine the ASSURED'S liability for any loss, claim or damage which, if established, would constitute a collectible loss under this bond or any of the **Underlying Bonds**. Concurrent with such notice, and as requested thereafter, the ASSURED shall furnish copies of all pleadings and pertinent papers to the COMPANY.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Bond shall remain unchanged.

Authorized Representative

NAME OF ASSURED:  RAYMOND JAMES FINANCIAL INC

---

## AMENDED DEDUCTIBLE/DROP DOWN ENDORSEMENT

It is agreed that this bond is amended by deleting ITEM 4., DEDUCTIBLE AMOUNT of the DECLARATIONS, in its entirety and substituting the following:

**"ITEM 4.** DEDUCTIBLE AMOUNT

   a.   $1,000,000, plus any unpaid portion of the AGGREGATE LIMIT OF LIABILITY of the **Underlying Bonds** on the date of payment of any **Single Loss** under this bond.

   b.   The ASSURED shall notify the COMPANY immediately of any payment made or intended to be made under any of the **Underlying Bonds**.

   c.   This bond shall drop down but only by the amount paid under the **Underlying Bonds**."

This Endorsement applies to loss discovered after 12:01 a.m. on October 1, 2015.

ALL OTHER TERMS AND CONDITIONS OF THIS BOND REMAIN UNCHANGED.

Date:  February 22, 2016              By  _____
                                              Authorized Representative

Excess Bond
Form 17-02-1003 (Ed. 7-92)

**FEDERAL INSURANCE COMPANY**

Endorsement No:   6

Bond Number:     82126526

NAME OF ASSURED:     RAYMOND JAMES FINANCIAL INC

---

**PREMIUM ENDORSEMENT**

It is agreed that:

1.     The premium for this bond for the period   October 1, 2015 to October 1, 2016 is:

Premium:     One hundred two thousand three hundred dollars  ($102,300.00)

2.     It is further agreed that this premium is subject to change during this period if amendments are made to this bond at the request of the ASSURED.

This Endorsement applies to loss discovered after 12:01 a.m. on October 1, 2015.

ALL OTHER TERMS AND CONDITIONS OF THIS BOND REMAIN UNCHANGED.

Date:  February 22, 2016                              By _____
                                                                                    Authorized Representative

Excess Bond
Form 17-02-0735 (Rev. 1-97)

Effective date of
this endorsement/rider: October 1, 2015          FEDERAL INSURANCE COMPANY

Endorsement/Rider No. 7

To be attached to and
form a part of Policy No. 82126526

Issued to:  RAYMOND JAMES FINANCIAL INC

---

## COMPLIANCE WITH APPLICABLE TRADE SANCTION LAWS

It is agreed that this insurance does not apply to the extent that trade or economic sanctions or other similar laws or regulations prohibit the coverage provided by this insurance.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

# POLICYHOLDER
# DISCLOSURE NOTICE OF
# TERRORISM INSURANCE COVERAGE
### (for policies with no terrorism exclusion or sublimit)
### Insuring Company:

You are hereby notified that, under the Terrorism Risk Insurance Act (the "Act"), this policy makes available to you insurance for losses arising out of certain acts of terrorism. Terrorism is defined as any act certified by the Secretary of the Treasury of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States Mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that the insurance provided by your policy for losses caused by acts of terrorism is partially reimbursed by the United States under the formula set forth in the Act. Under this formula, the United States pays 85% of covered terrorism losses that exceed the statutorily established deductible to be paid by the insurance company providing the coverage. Beginning in 2016, the Federal share will be reduced by 1% per year until it reaches 80%, where it will remain.

However, if aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

If aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

The portion of your policy's annual premium that is attributable to insurance for such acts of terrorism is: $ **-0-.**

If you have any questions about this notice, please contact your agent or broker.

# IMPORTANT NOTICE TO POLICYHOLDERS

All of the members of the Chubb Group of Insurance companies doing business in the United States (hereinafter "Chubb") distribute their products through licensed insurance brokers and agents ("producers"). Detailed information regarding the types of compensation paid by Chubb to producers on US insurance transactions is available under the Producer Compensation link located at the bottom of the page at www.chubb.com, or by calling 1-866-588-9478. Additional information may be available from your producer.

Thank you for choosing Chubb.

# Countersignature/Signature Statement

**Countersignature/Signature Agent:**
Paul Morrissette
Chubb & Son A Div. Of Federal Ins. Co.
15 Mountain View Rd.
Warren, NJ 07061-1615

**Effective Date** October 1, 2015
**Policy No.** 82126526
**Issued by** FEDERAL INSURANCE COMPANY

**Policy Period**
October 1, 2015 **to**
October 1, 2016

**Name and address of Insured:**

RAYMOND JAMES FINANCIAL INC

880 CARILLON PARKWAY
SAINT PETERSBURG, FL 33716

**Producer of Record**

MARSH USA, INC
1166 AVE OF AMERICAS 37F

'

**Countersignature for policy no.** 82126526
**State** FL
**Name of Insured** RAYMOND JAMES FINANCIAL INC

It is agreed that the signature appearing on this
document is the signature of a person duly authorized
to countersign on behalf of the company in the state
indicated above and that this document constitutes
countersignature of the attached policy in compliance
with state law.

_____
Authorized Representative

Form 99-10-0797 (Ed. 3/04)

## POLICYHOLDER INFORMATION NOTICE

## IMPORTANT NOTICE

To obtain information or make a complaint:

You may call Chubb & Son, Inc. toll-free telephone number for information or to make a complaint at:

1-800-36-CHUBB

**ATTACH THIS NOTICE TO YOUR POLICY:**
**This notice is for information only and does not become a part or condition of the attached document.**

| Chubb Group of Insurance Companies | DECLARATIONS |
|---|---|
| | FINANCIAL INSTITUTION |
| 15 Mountain View Road, Warren, New Jersey 07059 | EXCESS BOND FORM E |

NAME OF ASSURED:

Bond Number: 82210871

RAYMOND JAMES FINANCIAL INC

**FEDERAL INSURANCE COMPANY**
Incorporated under the laws of Indiana,

880 CARILLON PARKWAY
SAINT PETERSBURG, FL 33716

a stock insurance company, herein called the COMPANY

Capital Center, 251 North Illinois, Suite 1100
Indianapolis, IN 46204-1927

---

**ITEM 1.** BOND PERIOD: from 12:01 a.m. on October 1, 2015
to 12:01 a.m. on October 1, 2016

**ITEM 2.** AGGREGATE LIMIT OF LIABILITY:$40,000,000 excess of $60,000,000

**ITEM 3.** SINGLE LOSS LIMIT OF LIABILITY: $20,000,000 excess of $30,000,000

**ITEM 4.** DEDUCTIBLE AMOUNT: $ 31,000,000

**ITEM 5.** PRIMARY BOND:

| | |
|---|---|
| Insurer: | Federal Insurance Company |
| Form and Bond No. | Form 14/Policy# 70436970 |
| Limit | $20,000,000 aggregate |
| | $10,000,000 single loss |
| Deductible: | $1,000,000 |
| Bond Period | October 1, 2015 – October 1, 2016 |
| | |
| Insurer: | Federal Insurance Compay |
| Form and Bond No. | 70436971 |
| Limit | $20,000,000 aggregate |
| | $10,000,000 single loss |
| Deductible: | $1,000,000 |
| Bond Period | October 1, 2015 – October 1, 2016 |

**ITEM 6.** COVERAGE EXCEPTIONS TO PRIMARY BOND:

NOTWITHSTANDING ANY COVERAGE PROVIDED BY THE PRIMARY BOND, THIS EXCESS BOND
DOES NOT DIRECTLY OR INDIRECTLY COVER: NONE

**ITEM 7.** TOTAL OF LIMITS OF LIABILITY OF OTHER UNDERLYING BONDS, EXCESS OF PRIMARY BOND:
$20,000,000

**ITEM 8.** THE LIABILITY OF THE COMPANY IS ALSO SUBJECT TO THE TERMS OF THE FOLLOWING
ENDORSEMENTS EXECUTED SIMULTANEOUSLY HEREWITH:
1-8

IN WITNESS WHEREOF, THE COMPANY issuing this Bond has caused this Bond to be signed by its authorized
officers, but it shall not be valid unless also signed by a duly authorized representative of the Company.

*Maureen A. Brundage*
Secretary

*Paul J. Krump*
President

Authorized Representative

December 7, 2015
Date

The COMPANY, in consideration of the required premium, and in reliance on the statements and information furnished to the COMPANY by the ASSURED, and subject to the DECLARATIONS made a part of this bond and to all other terms and conditions of this bond, agrees to pay the ASSURED for:

## Insuring Clause

Loss which would have been paid under the **Primary Bond** but for the fact the loss exceeds the **Deductible Amount**.

Coverage under this bond shall follow the terms and conditions of the **Primary Bond**, except with respect to:

a.   The coverage exceptions in ITEM 6. of the DECLARATIONS; and

b.   The limits of liability as stated in ITEM 2. and ITEM 3. of the DECLARATIONS.

With respect to the exceptions stated above, the provisions of this bond shall apply.

## General Agreements

*Change Or Modification Of Primary Bond*

A.   If after the inception date of this bond the **Primary Bond** is changed or modified, written notice of any such change or modification shall be given to the COMPANY as soon as practicable, not to exceed thirty (30) days after such change or modification, together with such information as the COMPANY may request. There shall be no coverage under this bond for any loss related to such change or modification until such time as the COMPANY is advised of and specifically agrees by written endorsement to provide coverage for such change or modification.

*Representations Made By Assured*

B.   The ASSURED represents that all information it has furnished to the COMPANY for this bond or otherwise is complete, true and correct. Such information constitutes part of this bond.

The ASSURED must promptly notify the COMPANY of any change in any fact or circumstance which materially affects the risk assumed by the COMPANY under this bond.

Any misrepresentation, omission, concealment or incorrect statement of a material fact by the ASSURED to the COMPANY shall be grounds for recision of this bond.

*Notice To Company Of Legal Proceedings Against Assured - Election To Defend*

C.   The ASSURED shall notify the COMPANY at the earliest practical moment, not to exceed thirty (30) days after the ASSURED receives notice, of any legal proceeding brought to determine the ASSURED'S liability for any loss, claim or damage which, if established, would constitute a collectible loss under this bond or any of the **Underlying Bonds**. Concurrent with such notice, and as requested thereafter, the ASSURED shall furnish copies of all pleadings and pertinent papers to the COMPANY.

## General Agreements

*Notice To Company Of Legal Proceedings Against Assured - Election To Defend (continued)*

If the COMPANY elects to defend all or part of any legal proceeding, the court costs and attorneys' fees incurred by the COMPANY and any settlement or judgment on that part defended by the COMPANY shall be a loss under this bond. The COMPANY'S liability for court costs and attorneys' fees incurred in defending all or part of such legal proceeding is limited to the proportion of such court costs and attorneys' fees incurred that the amount recoverable under this bond bears to the amount demanded in such legal proceeding.

If the COMPANY declines to defend the ASSURED, no settlement without the prior written consent of the COMPANY or judgment against the ASSURED shall determine the existence, extent or amount of coverage under this bond, and the COMPANY shall not be liable for any costs, fees and expenses incurred by the ASSURED.

## Conditions And Limitations

*Definitions*

1. As used in this bond:

   a. **Deductible Amount** means the amount stated in ITEM 4. of the DECLARATIONS. In no event shall this **Deductible Amount** be reduced for any reason, including but not limited to, the non-existence, invalidity, insufficiency or uncollectibility of any of the **Underlying Bonds**, including the insolvency or dissolution of any Insurer providing coverage under any of the **Underlying Bonds**.

   b. **Primary Bond** means the bond scheduled in ITEM 5. of the DECLARATIONS or any bond that may replace or substitute for such bond.

   c. **Single Loss** means all covered loss, including court costs and attorneys' fees incurred by the COMPANY under General Agreement C., resulting from:

      (1) any one act of burglary, robbery or attempt either, in which no employee of the ASSURED is implicated, or

      (2) any one act or series of related acts on the part of any person resulting in damage to or destruction or misplacement of property, or

      (3) all acts other than those specified in c.(1) and c.(2), caused by any person or in which such person is implicated, or

      (4) any one event not specified above, in c.(1), c.(2) or c.(3).

   d. **Underlying Bonds** means the **Primary Bond** and all other insurance coverage referred to in ITEM 7. of the DECLARATIONS.

| | |
|---|---|
| *Limit Of Liability*<br><br>*Aggregate Limit Of Liability* | 2. The COMPANY'S total cumulative liability for all **Single Losses** of all ASSUREDS discovered during the BOND PERIOD shall not exceed the AGGREGATE LIMIT OF LIABILITY as stated in ITEM 2. of the DECLARATIONS. Each payment made under the terms of this bond shall reduce the unpaid portion of the AGGREGATE LIMIT OF LIABILITY until it is exhausted. |

On exhausting the AGGREGATE LIMIT OF LIABILITY by such payments:

a.   the COMPANY shall have no further liability for loss or losses regardless of when discovered and whether or not previously reported to the COMPANY, and

b.   the COMPANY shall have no obligation under General Agreement C. to continue the defense of the ASSURED, and on notice by the COMPANY to the ASSURED that the AGGREGATE LIMIT OF LIABILITY has been exhausted, the ASSURED shall assume all responsibility for its defense at its own cost.

The unpaid portion of the AGGREGATE LIMIT OF LIABILITY shall not be increased or reinstated by any recovery made and applied in accordance with Section 4. In the event that a loss of property is settled by indemnity in lieu of payment, then such loss shall not reduce the unpaid portion of the AGGREGATE LIMIT OF LIABILITY.

*Single Loss Limit Of Liability*   The COMPANY'S liability for each **Single Loss** shall not exceed the SINGLE LOSS LIMIT OF LIABILITY as stated in ITEM 3. of the DECLARATIONS or the unpaid portion of the AGGREGATE LIMIT OF LIABILITY, whichever is less.

*Discovery*   3.   This bond applies only to loss first discovered by the ASSURED during the BOND PERIOD. Discovery occurs at the earlier of the ASSURED being aware of:

a.   facts which may subsequently result in a loss of a type covered by this bond, or

b.   an actual or potential claim in which it is alleged that the ASSURED is liable to a third party,

regardless of when the act or acts causing or contributing to such loss occurred, even though the amount of loss does not exceed the applicable **Deductible Amount**, or the exact amount or details of loss may not then be known.

*Subrogation-Assignment-Recovery*   4.   In the event of a payment under this bond, the COMPANY shall be subrogated to all of the ASSURED'S rights of recovery against any person or entity to the extent of such payments. On request, the ASSURED shall deliver to the COMPANY an assignment of the ASSURED'S rights, title and interest and causes of action against any person or entity to the extent of such payment.

## Conditions And Limitations

| | |
|---|---|
| *Subrogation-Assignment-Recovery (continued)* | Recoveries, whether effected by the COMPANY or by the ASSURED, shall be applied net of the expense of such recovery, first, to the satisfaction of the ASSURED'S loss which would otherwise have been paid but for the fact that it is in excess of the AGGREGATE LIMIT OF LIABILITY, second, to the COMPANY in satisfaction of amounts paid in settlement of the ASSURED'S claim and third, to the ASSURED in satisfaction of the DEDUCTIBLE AMOUNT. Recovery from reinsurance and/or indemnity of the COMPANY shall not be deemed a recovery under this Section. |

*Cooperation Of Assured*   5.   At the COMPANY'S request and at reasonable times and places designated by the COMPANY the ASSURED shall:

    a.   submit to examination by the COMPANY and subscribe to the same under oath, and

    b.   produce for the COMPANY'S examination all pertinent records, and

    c.   cooperate with the COMPANY in all matters pertaining to the loss.

The ASSURED shall execute all papers and render assistance to secure to the COMPANY the rights and causes of action provided for under this bond. The ASSURED shall do nothing after loss to prejudice such rights or causes of action.

*Termination*   6.   This bond terminates as an entirety on the earliest occurrence of any of the following:

    a.   sixty (60) days after the receipt by the ASSURED of a written notice from the COMPANY of its decision to terminate this bond, or

    b.   immediately on the receipt by the COMPANY of a written notice from the ASSURED of its decision to terminate this bond, or

    c.   immediately on the appointment of a trustee, receiver or liquidator to act on behalf of the ASSURED, or the taking over of the ASSURED by State or Federal officials, or

    d.   immediately on the dissolution of the ASSURED, or

    e.   immediately on exhausting the AGGREGATE LIMIT OF LIABILITY, or

    f.   immediately on expiration of the BOND PERIOD, or

    g.   immediately on cancellation, termination or recision of the **Primary Bond**.

*Conformity*   7.   If any limitation within this bond is prohibited by any law controlling this bond's construction, such limitation shall be deemed to be amended so as to equal the minimum period of limitation provided by such law.

**Conditions And
Limitations**
*(continued)*

*Change Or Modification
Of This Bond*

8. This bond or any instrument amending or affecting this bond may not be changed or modified orally. No change in or modification of this bond shall be effective except when made by written endorsement to this bond signed by an Authorized Representative of the COMPANY.

## POLICYHOLDER INFORMATION NOTICE

### IMPORTANT NOTICE

To obtain information or make a complaint:

You may call Chubb & Son, Inc. toll-free telephone number for information or to make a complaint at:

1-800-36-CHUBB

**ATTACH THIS NOTICE TO YOUR POLICY:**
**This notice is for information only and does not become a part or condition of the attached document.**

# Countersignature/Signature Statement

**Countersignature/Signature Agent:**
Paul Morrissette
Chubb & Son A Div. Of Federal Ins. Co.
15 Mountain View Rd.
Warren, NJ 07061-1615

**Effective Date** October 1, 2015
**Policy No.** 82210871
**Issued by** FEDERAL INSURANCE COMPANY

**Policy Period**
October 1, 2015 **to**
October 1, 2016

**Name and address of Insured:**

RAYMOND JAMES FINANCIAL INC

880 CARILLON PARKWAY
SAINT PETERSBURG, FL 33716

---

**Producer of Record**

MARSH USA, INC
1166 AVE OF AMERICAS 37F

---

**Countersignature for policy no.** 82210871
**State** FL
**Name of Insured** RAYMOND JAMES FINANCIAL INC

It is agreed that the signature appearing on this
document is the signature of a person duly authorized
to countersign on behalf of the company in the state
indicated above and that this document constitutes
countersignature of the attached policy in compliance
with state law.

Authorized Representative

Form 99-10-0797 (Ed. 3/04)

Effective date of
this endorsement/rider: October 1, 2015          **FEDERAL INSURANCE COMPANY**

Endorsement/Rider No. 1

To be attached to and
form a part of Bond No. 82210871

Issued to: RAYMOND JAMES FINANCIAL INC

---

### AMEND GENERAL AGREEMENT A. ENDORSEMENT

In consideration of the premium charged, it is agreed that this bond is amended by deleting GENERAL AGREEMENT A., CHANGE OR MODIFICATION OF PRIMARY BOND in its entirety and substituting the following:

If after the inception date of this bond the **Primary Bond** is changed or modified, written notice of any such change or modification shall be given to the COMPANY as soon as practicable, not to exceed thirty (30) days after such change or modification, together with such information as the COMPANY may request.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Bond shall remain unchanged.

Authorized Representative

Effective date of
this endorsement/rider: October 1, 2015          FEDERAL INSURANCE COMPANY

                                                 Endorsement/Rider No. 2

                                                 To be attached to and
                                                 form a part of Policy No. 82210871

Issued to:     RAYMOND JAMES FINANCIAL INC

---

### AMENDING REPRESENTATIONS MADE BY ASSURED ENDORSEMENT

In consideration of the premium charged, it is agreed that this bond is amended by deleting in its entirety General Agreement B., Representations Made By Assured, and substituting the following:

B.     The ASSURED represents that all information it has furnished to the COMPANY for this bond or otherwise is complete, true and correct. Such information constitutes part of this bond.

> Any intentional misrepresentation, omission, concealment or incorrect statement of a material fact by the ASSURED to the COMPANY shall be grounds for recision of this bond.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Bond shall remain unchanged.

Authorized Representative

Effective date of
this endorsement/rider:  October 1, 2015        **FEDERAL INSURANCE COMPANY**

Endorsement/Rider No. .3

To be attached to and
form a part of Bond No.  82210871

Issued to:  RAYMOND JAMES FINANCIAL INC

---

### AMEND DISCOVERY ENDORSEMENT

In consideration of the premium charged, it is agreed that this bond is amended by deleting CONDITIONS AND LIMITATIONS SECTION 3., DISCOVERY in its entirety and substituting the following:

This bond applies only to loss first discovered by the Vice President of Corporate Insurance and/or Legal Department of the ASSURED during the BOND PERIOD.  Discovery occurs at the earlier of the Vice President of Corporate Insurance and/or Legal Department of the ASSURED being aware of:

a.    facts which may subsequently result in a loss of a type covered by this bond, or

b.    an actual or potential claim in which it is alleged that the ASSURED is liable to a third party,

regardless of when the act or acts causing or contributing to such loss occurred, even though the amount of loss does not exceed the applicable **Deductible Amount**, or the exact amount or details of loss may not then be known.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Bond shall remain unchanged.

Authorized Representative

Q07-108 (01/2007)                    Page 1

Effective date of
this endorsement/rider: October 1, 2015      **FEDERAL INSURANCE COMPANY**

Endorsement/Rider No. 4

To be attached to and
form a part of Bond No. 82210871

Issued to: RAYMOND JAMES FINANCIAL INC

---

### AMEND GENERAL AGREEMENT C. ENDORSEMENT

In consideration of the premium charged, it is agreed that this bond is amended by deleting the first
paragraph of GENERAL AGREEMENT C., NOTICE TO COMPANY OF LEGAL PROCEEDINGS AGAINST
ASSURED – ELECTION TO DEFEND in its entirety and substituting the following:

The ASSURED shall notify the COMPANY at the earliest practical moment, not to exceed sixty (60) days after
the Vice President of Corporate Insurance and/or Legal Department receives notice, of any legal proceeding
brought to determine the ASSURED'S liability for any loss, claim or damage which, if established, would
constitute a collectible loss under this bond or any of the **Underlying Bonds**. Concurrent with such notice,
and as requested thereafter, the ASSURED shall furnish copies of all pleadings and pertinent papers to the
COMPANY.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms
and conditions of coverage.

All other terms, conditions and limitations of this Bond shall remain unchanged.

Authorized Representative

Q07-109 (01/2007)                Page 1

**FEDERAL INSURANCE COMPANY**

Endorsement No.  5

Bond Number:    82210871

NAME OF ASSURED:  RAYMOND JAMES FINANCIAL INC

___

## AMENDED DEDUCTIBLE/DROP DOWN ENDORSEMENT

It is agreed that this bond is amended by deleting ITEM 4., DEDUCTIBLE AMOUNT of the DECLARATIONS, in its entirety and substituting the following:

**"ITEM 4. DEDUCTIBLE AMOUNT**

a.    $1,000,000, plus any unpaid portion of the AGGREGATE LIMIT OF LIABILITY of the **Underlying Bonds** on the date of payment of any **Single Loss** under this bond.

b.    The ASSURED shall notify the COMPANY immediately of any payment made or intended to be made under any of the **Underlying Bonds**.

c.    This bond shall drop down but only by the amount paid under the **Underlying Bonds**."

This Endorsement applies to loss discovered after 12:01 a.m. on October 1, 2015.

ALL OTHER TERMS AND CONDITIONS OF THIS BOND REMAIN UNCHANGED.

Date:  December 7, 2015

By _____
Authorized Representative

Excess Bond
Form 17-02-1003 (Ed. 7-92)

NAME OF ASSURED:      RAYMOND JAMES FINANCIAL INC

---

## PREMIUM ENDORSEMENT

It is agreed that:

1.     The premium for this bond for the period  October 1, 2015 to October 1, 2016 is:

       Premium:    Seventy seven thousand dollars ($77,000.00)

2.     It is further agreed that this premium is subject to change during this period if amendments are
       made to this bond at the request of the ASSURED.

This Endorsement applies to loss discovered after 12:01 a.m. on October 1, 2015.

ALL OTHER TERMS AND CONDITIONS OF THIS BOND REMAIN UNCHANGED.

Date:  December 7, 2015                          By _____
                                                      Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: October 1, 2015

FEDERAL INSURANCE COMPANY

Endorsement/Rider No. 7

To be attached to and
form a part of Policy No. 82210871

Issued to: RAYMOND JAMES FINANCIAL INC

---

### COMPLIANCE WITH APPLICABLE TRADE SANCTION LAWS

It is agreed that this insurance does not apply to the extent that trade or economic sanctions or other similar laws or regulations prohibit the coverage provided by this insurance.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

NAME OF ASSURED:      RAYMOND JAMES FINANCIAL INC

____

## CO-SURETY ENDORSEMENT

It is agreed that this bond is amended as follows:

1.  By adding to Section 1., Definitions, the following:

    "e.   **Controlling Company** means FEDERAL INSURANCE COMPANY.

    f.   **Company** means, unless otherwise specified, each insurance company, including the **Controlling Company**, executing this Endorsement.

    g.   **Companies** means, unless otherwise specified, all of the insurance companies, including the **Controlling Company**, executing this Endorsement."

2.  By adding to Section 2., Limit of Liability, the following:

    "Each **Company** shall be liable only for such proportion of any **Single Loss** as the AGGREGATE LIMIT OF LIABILITY underwritten by such **Company**, as specified in this Endorsement, bears to the AGGREGATE LIMIT OF LIABILITY as stated in ITEM 2. of the DECLARATIONS, but in no event shall any **Company** be liable for an amount greater than that underwritten by it."

3.  By adding to General Agreement C., Notice To Company Of Legal Proceedings Against Assured - Election To Defend, the following:

    "In the absence of a request from any **Company** to pay premiums directly to it, premiums for this bond may be paid to the **Controlling Company** for the account of all **Companies**.

    In the absence of a request from any **Company** that notice of claim and proof of loss be given to or filed directly with it, the ASSURED giving such notice to and the filing of such proof with the **Controlling Company** shall be deemed to be in compliance with the conditions of this bond for the giving of notice of loss and the filing of proof of loss, if given and filed in accordance with said conditions."

4.  By adding to Section 6., Termination, the following:

    "The **Controlling Company** may give notice in accordance with the terms of this bond terminating the bond as an entirety or as to any **Employee** or ASSURED, and any notice so given shall termination the liability of all **Companies** as an entirety or as to such **Employee** or ASSURED, as the case may be.

    Any **Company** other than the **Controlling Company** may give notice in accordance with the terms of this bond, terminating the entire liability of such other **Company** under this bond or as to any person or entity.

    In the absence of a request from any **Company** that notice of termination by the ASSURED of this bond in its entirety may be given to or filed directly with it, the giving of such notice in accordance with the terms of this bond to the **Controlling Company** shall terminate the liability of all **Companies** as an entirety. The ASSURED may terminate the entire liability of any **Company** under this bond by giving notice of such termination to that **Company** and by sending a copy of such notice to the **Controlling Company**.

Excess Bond
Form 17-02-0698 (Rev. 5-02)                                                                                          Page 1

In the event of the termination of this bond as an entirety, no **Company** shall be liable to the ASSURED for a greater proportion of any return premium due the ASSURED than the AGGREGATE LIMIT OF LIABILITY underwritten by that **Company** bears to the AGGREGATE LIMIT OF LIABILITY as stated in ITEM 2. of the DECLARATIONS.

In the event of the termination of this bond as to any **Company**, such **Company** alone shall be liable to the ASSURED for any return premium due the ASSURED on account of such termination. The termination of the attached bond as to any **Company** other than the **Controlling Company** shall not terminate or otherwise affect the liability of the other **Companies** under this bond."

5.   By adding a new Section:

Section 9. **Controlling Company**

"The execution by the **Controlling Company** of the DECLARATIONS, 1-7, shall constitute execution by all the **Companies** signing this Endorsement.

In the event this bond is modified during the BOND PERIOD, the **Controlling Company** shall notify the **Companies** or their respective representatives, in writing, of such change. Each **Company** shall be deemed to agree to such modification, unless such **Company** notifies the **Controlling Company** or the **Controlling Company's** representative in writing, that they do not agree to such modification. If a **Company** fails to object to a modification within fifteen (15) days of receipt of notice from the **Controlling Company**, such **Company** shall be deemed to agree to such modification."

This Endorsement applies to loss discovered after 12:01 a.m. on October 1, 2015.

ALL OTHER TERMS AND CONDITIONS OF THIS BOND REMAIN UNCHANGED.

Underwritten for a SINGLE LOSS LIMIT OF LIABILITY of $10,000,000 and an AGGREGATE LIMIT OF LIABILITY of $20,000,000

**ENTER WRITING COMPANY**
**Controlling Company**
CHUBB & SON,
A DIVISION OF FEDERAL INSURANCE COMPANY
Manager

Date: December 7, 2015

By _____
Authorized Representative

Underwritten for a SINGLE LOSS LIMIT OF LIABILITY of $10,000,000 and an AGGREGATE LIMIT OF LIABILITY of $20,000,000

**ENTER WRITING COMPANY**
**Controlling Company**
Great American Insurance Company

_____
Authorized Representative

In the event of the termination of this bond as an entirety, no **Company** shall be liable to the ASSURED for a greater proportion of any return premium due the ASSURED than the AGGREGATE LIMIT OF LIABILITY underwritten by that **Company** bears to the AGGREGATE LIMIT OF LIABILITY as stated in ITEM 2. of the DECLARATIONS.

In the event of the termination of this bond as to any **Company**, such **Company** alone shall be liable to the ASSURED for any return premium due the ASSURED on account of such termination. The termination of the attached bond as to any **Company** other than the **Controlling Company** shall not terminate or otherwise affect the liability of the other **Companies** under this bond."

5.    By adding a new Section:

Section 9. **Controlling Company**

"The execution by the **Controlling Company** of the DECLARATIONS, 1-7, shall constitute execution by all the **Companies** signing this Endorsement.

In the event this bond is modified during the BOND PERIOD, the **Controlling Company** shall notify the **Companies** or their respective representatives, in writing, of such change.    Each **Company** shall be deemed to agree to such modification, unless such **Company** notifies the **Controlling Company** or the **Controlling Company's** representative in writing, that they do not agree to such modification. If a **Company** fails to object to a modification within fifteen (15) days of receipt of notice from the **Controlling Company**, such **Company** shall be deemed to agree to such modification."

This Endorsement applies to loss discovered after 12:01 a.m. on  October 1, 2015.

ALL OTHER TERMS AND CONDITIONS OF THIS BOND REMAIN UNCHANGED.

Underwritten for a SINGLE LOSS
LIMIT OF LIABILITY of $10,000,000 and an
AGGREGATE LIMIT OF LIABILITY of
$20,000,000

**ENTER WRITING COMPANY**
**Controlling Company**
CHUBB & SON,
A DIVISION OF FEDERAL INSURANCE COMPANY
Manager

Date:  December 7, 2015

By _____
        Authorized Representative

Underwritten for a SINGLE LOSS
LIMIT OF LIABILITY of $10,000,000 and an
AGGREGATE LIMIT OF LIABILITY of
$20,000,000

**ENTER WRITING COMPANY**
**Controlling Company**
Great American Insurance Company
_____
        Authorized Representative

## POLICYHOLDER
## DISCLOSURE NOTICE OF
## TERRORISM INSURANCE COVERAGE
### (for policies with no terrorism exclusion or sublimit)
### Insuring Company:

You are hereby notified that, under the Terrorism Risk Insurance Act (the "Act"), this policy makes available to you insurance for losses arising out of certain acts of terrorism. Terrorism is defined as any act certified by the Secretary of the Treasury of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States Mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that the insurance provided by your policy for losses caused by acts of terrorism is partially reimbursed by the United States under the formula set forth in the Act. Under this formula, the United States pays 85% of covered terrorism losses that exceed the statutorily established deductible to be paid by the insurance company providing the coverage. Beginning in 2016, the Federal share will be reduced by 1% per year until it reaches 80%, where it will remain.

However, if aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

10-02-1281 (Ed. 03/2015)

If aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

The portion of your policy's annual premium that is attributable to insurance for such acts of terrorism is: $ -0-.

If you have any questions about this notice, please contact your agent or broker.

# IMPORTANT NOTICE TO POLICYHOLDERS

All of the members of the Chubb Group of Insurance companies doing business in the United States (hereinafter "Chubb") distribute their products through licensed insurance brokers and agents ("producers"). Detailed information regarding the types of compensation paid by Chubb to producers on US insurance transactions is available under the Producer Compensation link located at the bottom of the page at www.chubb.com, or by calling 1-866-588-9478. Additional information may be available from your producer.

Thank you for choosing Chubb.



## DECLARATIONS

## EXCESS FIDELITY AND CRIME POLICY

**SUBJECT TO THE PROVISIONS OF THE UNDERLYING INSURANCE, THIS POLICY MAY ONLY APPLY TO ANY CLAIM FIRST MADE AGAINST THE INSUREDS OR LOSS DISCOVERED DURING THE POLICY PERIOD PROVIDED THAT SUCH CLAIM OR LOSS IS REPORTED IN WRITING TO THE INSURER PURSUANT TO THE POLICY PROVISIONS. AMOUNTS INCURRED AS DEFENSE COSTS SHALL REDUCE AND MAY EXHAUST THE APPLICABLE LIMIT OF LIABILITY AND ARE SUBJECT TO THE RETENTIONS. THE INSURER SHALL NOT BE LIABLE FOR ANY DEFENSE COSTS OR FOR ANY JUDGMENT OR SETTLEMENT AFTER THE LIMIT OF LIABILITY HAS BEEN EXHAUSTED. PLEASE READ THIS POLICY CAREFULLY.**

These Declarations along with the completed and signed application and the Policy with endorsements shall constitute the contract between the **Insureds** and the Insurer.

Insurer: Beazley Insurance Company, Inc.
Policy Number: V1431F150301

Item 1. **Insured**:

Raymond James Financial, Inc.

Principal Address:

880 Carillon Parkway
St. Petersburg, FL 33716

Item 2. **Policy Period**:

From: 01-Oct-2015

To: 01-Oct-2016

Both dates at 12:01 a.m. Local Time at the Principal Address stated in Item 1.

Item 3. Limit of Liability:

a. $10,000,000 excess of $50,000,000 Single Loss Limit of Liability

b. $20,000,000 excess of $100,000,000 Aggregate Limit of Liability

Item 4. Premium: $55,000

Item 5.    Notification under this Policy:

      a.  Notification pursuant to Clause VII shall     b.  All other notices under this Policy
         be given to:                           shall be given to:

| | |
|---|---|
| Beazley USA Services, Inc. | Beazley USA Services, Inc. |
| 30 Batterson Park Road | 30 Batterson Park Road |
| Farmington, CT 06032 | Farmington, CT  06032 |
| Tel: (860) 677-3700 | Tel: (860) 677-3700 |
| Fax: (860) 679-0247 | Fax: (860) 679-0247 |

Item 7.    Endorsements Effective at Inception:

| | | |
|---|---|---|
| 1. | BICMU00080405 | Countersignature Endorsement |
| 2. | E02804AFL092011 | Sanction Limitation and Exclusion Clause – Florida |
| 3. | BICMU05070406 | War and Civil War Exclusion |
| 4. | BICMU05021207 | Reliance on Another Insurance Company's Application |

Dated: 03-Mar-2016

At:    30 Batterson Park Road

       Farmington

       Connecticut 06032

       (the office of the Correspondent)    by _____

                                        Beazley USA Services, Inc., (Correspondent)

# SCHEDULE OF UNDERLYING COVERAGE

# EXCESS FIDELITY AND CRIME POLICY

Type of Insurance:

**Primary Policy**:

| Insurer: | Federal Insurance Company | |
|---|---|---|
| Policy No.: | Form 14: 70436970 | |
| | ECCP: 70436971 | |
| Limit of Liability: | a. $10,000,000 | Single Loss Limit of Liability |
| | b. $20,000,000 | Aggregate Limit of Liability |
| Retention: | $1,000,000 | |

**Excess Policies**:

| Insurer: | Travelers Casualty and Surety Company of America |
|---|---|
| Policy No.: | 106384318 |
| Limit of Liability: | a. $10,000,000 excess of $10,000,000  Single Loss Limit of Liability |
| | b. $20,000,000 excess of $20,000,000  Aggregate Limit of Liability |

| Insurer: | Federal Insurance Company |
|---|---|
| Policy No.: | 82126526 |
| Limit of Liability: | a. $10,000,000 excess of $30,000,000  Single Loss Limit of Liability |
| | b. $20,000,000 excess of $40,000,000  Aggregate Limit of Liability |

| Insurer: | Federal Insurance Company |
|---|---|
| Policy No.: | 82210871 |
| Limit of Liability: | a. $10,000,000 excess of $40,000,000  Single Loss Limit of Liability |
| | b. $20,000,000 excess of $60,000,000  Aggregate Limit of Liability |

**Effective date of this Endorsement: 01-Oct-2015**
**This Endorsement is attached to and forms a part of Policy Number: V1431F150301**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## COUNTERSIGNATURE ENDORSEMENT

This endorsement modifies insurance provided under the following:
**Excess Fidelity and Crime Policy**

The Excess Fidelity and Crime Policy Declarations is amended by the addition of the following:

_____        03-Mar-2016____
Authorized Representative                        Date

**Effective date of this Endorsement: 01-Oct-2015**
**This Endorsement is attached to and forms a part of Policy Number: V1431F150301**
**Beazley Insurance Company, Inc., referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## SANCTION LIMITATION AND EXCLUSION CLAUSE- FLORIDA

This endorsement modifies insurance provided under the following:

**Excess Fidelity and Crime Policy**

Beazley Insurance Company, Inc. shall not be deemed to provide coverage and shall not be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such coverage, payment of such claim or provision of such benefit would expose Beazley Insurance Company, Inc. to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, law or regulations of the European Union, United Kingdom or United States of America.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 01-Oct-2015**
**This Endorsement is attached to and forms a part of Policy Number: V1431F150301**
**Beazley Insurance Company, Inc., referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## WAR AND CIVIL WAR EXCLUSION

This endorsement modifies insurance provided under the following:

**Excess Fidelity and Crime Policy**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that notwithstanding anything to the contrary contained herein this Policy does not cover loss or damage directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalisation or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 01-Oct-2015**
**This Endorsement is attached to and forms a part of Policy Number: V1431F150301**
**Beazley Insurance Company, Inc., referred to in this endorsement as either the "Insurer"**
**or the "Underwriters"**

<div align="center">

**RELIANCE ON ANOTHER INSURANCE COMPANY'S APPLICATION**

</div>

This endorsement modifies insurance provided under the Policy referenced above.

**EXCESS FIDELITY AND CRIME POLICY**

In consideration of the premium charged for this Policy, it is hereby understood and agreed that the Insurer has relied upon the statements in the following application(s):

Chubb
Form 17-03-0112 (Ed. 12-97)

including materials attached thereto, completed by the entity designated in Item 1. of the Declarations and such application is made a part of this insurance Policy and operates as the Insurer's own **Application**.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative



**EXCESS FIDELITY AND CRIME POLICY**


In consideration of the payment of the premium, in reliance on all statements made and information provided to the Underwriters by the **Insured**, and subject to all of the provisions of this Policy, the Underwriters agree:

**I.      INSURING AGREEMENT**

To indemnify the **Insured** excess of the **Underlying Coverage**, for any loss which triggers coverage under the **Underlying Coverage**, and is not otherwise excluded by the terms, conditions or endorsements of this Policy. Coverage will apply only when the loss is reported to the Underwriters in accordance with Clause VI. of this Policy. Coverage under this Policy shall attach only after all of the **Underlying Limits** has been exhausted by the actual payment of loss(es).

**II.      DEFINITIONS**

The following terms whenever used in this Policy in boldface type shall have the meanings indicated.

A.      "**Insured**" means the entity set forth in Item 1. of the Declarations.

B.      "**Policy Period**" means the period set forth in Item 2. of the Declarations.

C.      "**Primary Policy**" means the policy designated as such in the Schedule of Underlying Coverage.

D.      "**Sublimit**" means the limit(s) of liability under any **Underlying Coverage** which:

1.      applies only to a particular grant of coverage under such **Underlying Coverage**; and

2.      reduces and is part of the otherwise applicable limit(s) of liability of such **Underlying Coverage**.

E.      "**Underlying Coverage**" means all policies designated in the Schedule of Underlying Coverage.

F.      "**Underlying Limits**" means the limit(s) of liability under all **Underlying Coverage**.

**III.      LIMIT OF LIABILITY**

A.      The Limit of Liability shown in Item 3.a. of the Declarations shall apply separately to each loss under this Policy.  If the **Underlying Coverage** is written with an "Aggregate Limit of Liability" then the Underwriters' Limit of Liability shown in Item 3.b. of the Declarations shall be the maximum Limit of Liability of the Underwriters under this Policy for all losses.

B       Payment by the Underwriters of any amount shall reduce the Limits of Liability available under this Policy.

C.      If any **Underlying Limits** are subject to a **Sublimit** then coverage hereunder shall not apply to any loss which is subject to such **Sublimit**.

## IV.    MAINTENANCE OF UNDERLYING COVERAGE

It is a condition of this Policy that the **Underlying Coverage** shall be maintained in full effect during the **Policy Period** except for any reduction of the **Underlying Limits** solely by payment of any losses where the **Underlying Coverage** is written with an "Aggregate Limit of Liability". If this condition is breached then this Policy shall automatically and immediately terminate with effect from the date when the **Underlying Coverage** ceases to be maintained or is deemed to have ceased to be maintained.

In the event the insurer under one or more of the **Underlying Coverages** fails to pay any loss as a result of the insolvency, bankruptcy or liquidation of said insurer, then the **Insured** shall be deemed self-insured for any amount of the limit of liability of said insurer which is not paid as a result of such insolvency, bankruptcy or liquidation.

## V.    REDUCTION / EXHAUSTION OF THE UNDERLYING COVERAGES

If by reason of the payment of any losses by the insurers of the **Underlying Coverages** where the **Underlying Coverages** are written with an "Aggregate Limit of Liability", the amounts of the **Underlying Limits** are:

A.      Partially reduced, then this Policy shall continue to apply in excess of the reduced amounts of the **Underlying Limits**; or

B.      Totally exhausted, then this Policy shall continue in force as primary insurance with respect to any subsequent loss; provided, however that this Policy shall only pay in excess of the retention or deductible applicable to the **Primary Policy** and in conformance with the terms, conditions and limitations of the **Primary Policy** except as stated herein, which shall be applied to any subsequent loss in the same manner as specified in the **Primary Policy**.

## VI.    NOTICE OF LOSS

For all losses, the **Insured** must provide written notice (in the same manner as required by the **Primary Policy**) to the Underwriters via the entity named in Item 5.a. of the Declarations. Notice to any insurer of the **Underlying Coverages** is not notice to the Underwriters.

## VII.    CONDITIONS

A.      In the event of a loss for which the Underwriters may be liable to contribute, no costs or expenses shall be incurred without the Underwriters' written consent being first obtained (such consent not to be unreasonably withheld). No settlement of a loss shall be effected by the **Insured** for any sum that will involve this Policy, without the prior written consent of the Underwriters.

B.    All recoveries or payments recovered or received subsequent to a loss settlement under this Policy shall be distributed as follows:

1.    first, to subrogation expenses;

2.    second, to the **Insured** for the amount of loss otherwise covered but in excess of the Limits of Liability;

3.    third, to the Underwriters for the amount paid to the **Insured** for covered loss;

4.    fourth, to losses paid by the insurers of the **Underlying Coverage**;

5.    fifth, to the **Insured** for the applicable retention or deductible under the **Primary Policy**.

Recovery from reinsurance or indemnity of the Underwriters shall not be deemed a recovery hereunder.

Provided always that nothing in this Policy shall be construed to mean that loss settlements under this Policy are not payable until the **Insured's** ultimate net loss has been finally ascertained.

C.    If the **Insured** shall proffer any loss knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all losses hereunder shall be forfeited.

D.    By acceptance of this Policy, the **Insured** agrees the Underwriters may at their own discretion and expense retain counsel to associate in the defense or settlement of any claim, and to cooperate fully with such counsel.

E.    If during the **Policy Period** the provisions of the **Primary Policy** are changed in any manner, as a condition precedent to coverage under this Policy the **Insured** shall give written notice to the Underwriters of the full particulars of such change as soon as practicable but in no event later than thirty (30) days following the effective date of such change.   No amendment to any **Primary Policy** or **Underlying Coverage** during the **Policy Period** shall be effective in broadening or extending the coverage afforded by this Policy or extending or increasing the Limits of Liability afforded by this Policy unless the Underwriters so agree in writing.  The Underwriters may, in their sole discretion, condition their agreement to follow any changes to the **Primary Policy** or the **Underlying Coverage** upon the **Insured** paying any additional premium required by the Underwriters for such change.   As soon as practicable, but in no event later than thirty (30) days thereafter, the **Insured** must give the Underwriters written notice of any additional or return premiums charged or allowed in connection with any **Underlying Coverage.**