UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 20-21707-CV-MARTINEZ/BECERRA

RAYMOND JAMES FINANCIAL, INC.,

      Plaintiff,

vs.

FEDERAL INSURANCE COMPANY;
TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA; GREAT
AMERICAN INSURANCE COMPANY;
BEAZLEY INSURANCE COMPANY, INC.;
and ST. PAUL MERCURY INSURANCE
COMPANY,

      Defendants.

**PLAINTIFF RAYMOND JAMES FINANCIAL, INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT GREAT
AMERICAN INSURANCE COMPANY AND SUPPORTING MEMORANDUM OF LAW**

Plaintiff, Raymond James Financial, Inc. ("Raymond James"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 56, moves for partial summary judgment against Defendant Great American Insurance Company ("GAIC") on GAIC's Third, Thirteenth, Seventeenth, Eighteenth, and Twentieth Affirmative Defenses [ECF No. 48]. In support thereof, Raymond James submits the following memorandum of law.

### I.    INTRODUCTION

This is an insurance coverage dispute arising from GAIC and the other defendant-insurers failure to indemnify Raymond James for covered losses under a series of Financial Institution Bonds (the "Bonds") that Raymond James purchased from the Defendants providing a total of $60 million in "single loss" employee fidelity coverage. GAIC insured Raymond James under the Third Excess Bond (as defined in the First Amended Complaint). Raymond James suffered a

covered loss under the Bonds resulting directly from dishonest and fraudulent acts committed by a Raymond James employee, Joel Burstein ("Burstein"), while acting in collusion with his former father-in-law Ariel Quiros ("Quiros"), in connection with the purchase, improvement and expansion of the Jay Peak Resort in Jay Peak, Vermont by Quiros. As part of their dishonest and fraudulent scheme, Burstein and Quiros, with the intent to financially benefit themselves and entities operated and controlled by Quiros and others, misappropriated over $60 million in limited partnership funds for purposes unrelated to any of the Jay Peak limited partnerships and for Quiros' personal benefit.

Upon discovery of the fraud, the SEC initiated litigation against Quiros on April 12, 2016, which resulted in the appointment of Michael Goldberg as the Receiver for the Jay Peak limited partnerships and related entities (the "SEC Receiver"). *See* (Plaintiff Raymond James Financial, Inc.'s Local Rule 56.1 Statement of Material Facts in Support of Motions for Partial Summary Judgment ("Stmt. Mat. Facts") at ¶ 6).[1] Soon thereafter, numerous lawsuits were filed against Raymond James and Burstein, including an action filed by the SEC Receiver on May 20, 2016, and a consolidated class action lawsuit filed on May 3, 2016 by individual EB-5 investors who were seeking to recover, among other damages, the limited partnership funds that had been misappropriated by Burstein and Quiros using accounts at Raymond James. (*Id.* at ¶ 7). After months of confidential negotiations, Raymond James agreed to settle with the SEC Receiver and class counsel. (*Id.* at ¶ 8). The Settlement Agreement, which was subsequently approved by the Court in the receivership action, provided for the dismissal of all Jay Peak related civil litigation against Raymond James and a bar of future litigation (other than actions brought directly by

---

[1] Pursuant to S.D. Fla. L.R. 56.1, Raymond James' Local Rule 56.1 Statement of Material Facts is being filed contemporaneously with this Motion. Pursuant to this Court's Order [ECF No. 96], Raymond James further refers the Court to the parties' Joint Statement of Undisputed Facts.

government entities) in exchange for payment of $150 million from Raymond James.  (*Id.* at ¶¶ 8, 9).

On or about May 4, 2016, Raymond James' Legal Department received notice that the *Daccache* class action lawsuit had been filed against Raymond James and Burstein.  (*Id.* at ¶ 10). At that time, Raymond James received notice of an actual claim in which it was alleged that Raymond James was liable to a third party under circumstances which, if true, would constitute a loss under the Bonds.  (*Id.*).  Raymond James then reported to the Defendants a claim under the Bonds on May 16, 2016.  (*Id.* at ¶ 11).  Raymond James, as requested by the Defendants and pursuant to agreed-upon extensions, submitted a narrative proof of loss to the Defendants on February 27, 2018.  (*Id.* at ¶ 12).  Over two years later, on April 20, 2020, Federal Insurance Company ("Federal"), as the primary insurer in a follow form tower, denied coverage under the Bonds.  (*Id.* at ¶ 13).  GAIC denied coverage on April 29, 2020.  (*Id.*).

Raymond James then filed this lawsuit on April 23, 2020.  (*Id.* at ¶ 14).  Raymond James filed a First Amended Complaint for Damages on July 8, 2020.  (*Id.*).  The lawsuit asserts claims for breach of contract and declaratory relief, and seeks to recover the $60 million in insurance coverage that Raymond James purchased from the Defendants under the Bonds at issue.  (*Id.*).  In response to the First Amended Complaint, GAIC filed its Answer and Affirmative Defenses to the First Amended Complaint [ECF No. 48], and asserted numerous affirmative defenses, certain of which, as addressed herein, are not supported by any record evidence in this case or otherwise are legally inapplicable to Raymond James' claims in this lawsuit.  Accordingly, and for the reasons discussed herein, Raymond James is entitled to partial summary judgment on GAIC's Third, Thirteenth, Seventeenth, Eighteenth, and Twentieth Affirmative Defenses.

## II.    ARGUMENT

### A.    Summary Judgment Standard

"Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "When the non-moving party bears the burden of proof on an issue at trial, the moving party need not 'support its motion with affidavits or other similar material *negating* the opponent's claim" to meet its initial burden on summary judgment. *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 840 (11th Cir. 2000) (quoting *Celotex Corp.*, 477 U.S. at 323) (emphasis in original). Instead, the moving party simply may "point out to the district court" . . . "that there is an absence of evidence to support the nonmoving party's case." *Id.*; *Young v. City of Augusta ex rel. DeVaney*, 59 F.3d 1160, 1170 (11th Cir. 1995) (to prevail, moving party may "may show that the non-moving party has no evidence to support [an essential element] of its case"). Once the moving party makes this showing, "the burden shift[s] to the nonmoving party to designate, through affidavits or otherwise . . . , specific facts showing that there is a genuine issue for trial." *Young*, 59 F.3d at 1170. "The existence of a mere scintilla of evidence in support of the non-movant's position is insufficient; there must be evidence on the basis of which a jury could reasonably find for the nonmovant." *Yacht Club on the Intracoastal Condo. Ass'n v. Lexington Ins. Co.*, 944 F. Supp. 2d 1258, 1261 (S.D. Fla. 2013).

### B.    Principles of Insurance Policy Interpretation

Florida law is well-settled that insuring or coverage clauses must be read in the broadest possible manner to afford the greatest extent of coverage. *Hudson v. Prudential Prop. & Cas. Ins. Co.*, 450 So. 2d 565, 568 (Fla. Dist. Ct. App. 1984). Exclusionary clauses, in contrast, are always

4

strictly construed. *Westmoreland v. Lumbermens Mut. Cas. Co.*, 704 So. 2d 176, 179 (Fla. Dist. Ct. App. 1997). Because exclusions are fundamentally contrary to the purpose of insurance, Florida courts hold insurers "responsible for clearly setting forth what [is] excluded from coverage under the terms of the policy." *Fayad v. Clarendon Nat'l Ins. Co.*, 899 So. 2d 1082, 1086 (Fla. 2005). Accordingly, if an insurer intends to exclude or limit coverage, it must do so unambiguously. *Anderson*, 756 So. 2d at 34. Where policy language is susceptible to more than one reasonable interpretation, it is considered to be ambiguous. *Washington Nat'l Ins. Corp. v. Ruderman*, 117 So. 3d 943, 948 (Fla. 2013). Any ambiguity must be liberally construed in favor of coverage and strictly against the insurer. *Id.* at 949-50. In other words, where "one reasonable interpretation of the policy provisions would provide coverage, that is the construction which must be adopted." *Id.* at 950.

C. **Raymond James is Entitled to Partial Summary Judgment on GAIC'S Third, Thirteenth, Seventeenth, Eighteenth, and Twentieth Affirmative Defenses**

The "burden of proving each element of an affirmative defense rests on the party that asserts the defense." *Paladin Shipping Co. v. Star Capital Fund, Ltd. Liab. Co.*, 491 F. App'x 42, 44 (11th Cir. 2012) (quoting *Custer Med. Ctr. v. United Auto. Ins. Co.*, 62 So. 3d 1086, 1097 (Fla. 2010)). Accordingly, GAIC bears the burden of establishing the elements of each asserted affirmative defense. *Regions Bank v. Old Jupiter, LLC,* No. 10-80188-CIV, 2010 WL 5148467, at *2 (S.D. Fla. Dec. 13, 2010). Because GAIC cannot meet that burden with respect to its Third, Thirteenth, Seventeenth, Eighteenth, and Twentieth Affirmative Defenses, Raymond James is entitled to summary judgment on those defenses.

i. *Third Affirmative Defense – Aggregate Limit of Liability is Inapplicable*

GAIC asserted for its Third Affirmative Defense that Raymond James' "claim under the Third Excess Bond is subject to an AGGREGATE LIMIT OF LIABILITY of $40,000,000 excess

of $60,000,000," and "Raymond James cannot recover in excess of this AGGREGATE LIMIT OF LIABILITY under the Third Excess Bond."  [ECF No. 49 at pp. 18-19].  Raymond James is entitled to summary judgment on this defense, because the aggregate limits of liability in the Third Excess Bond is completely inapplicable.  As the First Amended Complaint makes clear, Raymond James is only seeking to recover the $60 million in "single loss" employee fidelity coverage under the Bonds resulting from Burstein's dishonesty.  [ECF No. 39 at ¶¶ 1, 74].  And, indeed, the Primary Bond expressly provides that "[s]ingle loss" means "all acts or omissions . . . caused by any person (whether an Employee or not) or in which such person is implicated."  [ECF No. 39 at Ex. A, Primary Bond, Limit of Liability, p. 13].  There is no record evidence to even suggest that the aggregate limits of liability under the Bonds are applicable in this case.

To be sure, GAIC's Rule 30(b)(6) corporate representative confirmed at deposition that only the *single* loss limit of liability, and *not* the aggregate limit of liability, was applicable in this case.[2]  *See* (Stmt. Mat. Facts at Ex. C, Archbold Dep. at pp. 123:19-124:15).  GAIC's corporate representative further confirmed at deposition that GAIC is "not aware of claims that have gone to the aggregate limit of the underlying policies."  (*Id.* at pp. 124:17-125:5). Therefore, because the aggregate limit of liability is not applicable, Raymond James is entitled to partial summary judgment on GAIC's Third Affirmative Defense.

> ii.  ***GAIC's Thirteenth Affirmative Defense – Raymond James is Entitled to Recover its Attorneys' Fees and Costs Pursuant to Fla. Stat. § 627.428 if it Prevails***

GAIC asserted for its Thirteenth Affirmative Defense that Raymond James seeks to recover fees and costs not covered under the Bonds, relying on Exclusion (u) (as amended by Endorsement No. 5) of the Primary Bond.  That exclusion provides that there is no coverage for "all fees, costs,

---

[2] GAIC asserted the single loss limit of liability under the Third Excess Bond as its Second Affirmative Defense.  [ECF No. 48 at p. 18].

and expenses incurred by the Insured (1) in establishing the existence or amount of loss covered under this bond, except to the extent covered under the portion of Insuring Agreement (a) entitled Audit Expense; or (2) as a party to legal proceeding whether or not such legal proceeding exposes the Insured to loss covered by this bond." [ECF No. 48 at pp. 22-23]. At deposition, GAIC's corporate representative confirmed that this defense purports to say that Raymond James is not entitled to seek attorney's fees or costs in this litigation. (Stmt. Mat. Facts at Ex. C, Archbold Dep. at p. 130:6-11).

But, if Raymond James prevails in this action against GAIC, the Court is required by law to award Raymond James its attorneys' fees and costs pursuant to Florida Statutes Section 627.428. *See* Fla. Stat. § 627.428(1) ("Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court *shall* adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had") (emphasis added). Indeed, an award of fees under Fla. Stat. § 627.428 "is a mandatory, non-discretionary requirement of law." *Sanchez v. AN Luxury Imports of Pembroke Pines, Inc.*, 216 So. 3d 723, 730 (Fla. Dist. Ct. App. 2017).

Therefore, if successful against GAIC in this litigation, Raymond James is, as a matter of law, entitled to recover its attorneys' fees and costs from GAIC. Accordingly, Raymond James is entitled to summary judgment on GAIC's Thirteenth Affirmative Defense.

### *iii.     GAIC's Seventeenth Affirmative Defense – Raymond James Timely Filed this Action*

GAIC asserted for its Seventeenth Affirmative Defense that "Raymond James claim is barred by the applicable statute of limitations and/or contractual limitations period as outlined in the Primary Bond." [ECF No. 48 at p. 24]. This defense fails as a matter of law and undisputed fact.

Under Florida law, the statute of limitations for an action for breach of a written instrument is five (5) years. Fla. Stat. § 95.11(2)(b). A cause of action accrues when the last element constituting the cause of action occurs. Fla. Stat. § 95.031(1). "Florida case law consistently holds that a cause of action for breach of contract accrues and the limitations period commences at the time of the breach." *Clark v. Estate of Elrod*, 61 So. 3d 416, 418 (Fla. Dist. Ct. App. 2011) (internal quotation marks omitted). As such, "a breach of contract action on an insurance contract accrues on the date the contract is breached." *Dinerstein v. Paul Revere Life Ins. Co.*, 173 F.3d 826, 828 (11th Cir. 1999) (citing *State Farm Mut. Auto. Ins. Co. v. Lee*, 678 So. 2d 818, 821 (Fla. 1996)); *Saenz v. State Farm Fire & Cas. Co.*, 861 So. 2d 64 (Fla. Dist. Ct. App. 2003) (statute of limitations period in breach of insurance contract actions begins running from the date of the alleged breach). To that end, "a specific refusal to pay a claim is the breach which triggers the cause of action and begins the statute of limitations running" in actions predicated upon insurance contracts. *Donovan v. State Farm Fire & Cas. Co.*, 574 So. 2d 285, 286 (Fla. Dist. Ct. App. 1991) (citations omitted); *Roth v. State Farm Mut. Auto. Ins. Co.*, 581 So. 2d 981, 983 (Fla. Dist. Ct. App. 1991) (insurer's notification to insureds that claim was denied triggered the running of the statute of limitations).

Federal, as the primary insurer in a follow form tower, denied coverage on April 20, 2020. (Stmt. Mat. Facts at ¶ 13). GAIC sent its declination later on April 29, 2020. (*Id.*). This denial of coverage triggering the running of the statute of limitations. *Donovan*, 574 So. 2d at 286; *Roth*,

581 So. 2d at 983. Raymond James filed this action on April 23, 2020 – within days of Defendants' denial of coverage. (Stmt. Mat. Facts at ¶ 14). Raymond James timely brought this action within the five-year statute of limitations.

When asked for the factual basis for this defense, GAIC referred Raymond James to co-defendant Federal's response to a similar interrogatory. *See* [Great American Insurance Company's Amended and Supplemental Responses and Objections to Raymond James Financial, Inc.'s First Set of Interrogatories at No. 4, a copy of which is attached hereto as Exhibit "1"]. In its response, Federal asserted that Raymond James' claim under the Bonds was barred either by the statute of limitations in Fla. Stat. 95.11 or the two-year suit limitation imposed by the Bonds. *See* [Federal Insurance Company's Objections and Responses to Raymond James Financial, Inc.'s First Set of Interrogatories at No. 4, a copy of which is attached hereto as Exhibit "2"].

As to the former, Federal (and therefore GAIC) contended that Raymond James' claim is untimely because Fla. Stat. 95.11(2)(e) provides that in an "action for breach of a property insurance contract," the period runs from the date of loss. But this is *not* a property insurance claim governed by Fla. Stat. § 95.11(2)(e); it is an action for indemnification under a tower of fidelity bonds. To be sure, the published decisions that have referenced Fla. Stat. § 95.11(2)(e) all involved lawsuits for damage to *real property*, typically in the context of hurricane damage.[3] Fla.

---

[3] *See McMillan v. Cincinnati Ins. Co.*, No. 5:20-cv-72-Oc-30PRL, 2020 WL 5947656 (M.D. Fla. June 12, 2020) (breach of contract action based on failure to pay insurance proceeds for damage to plaintiff's home); *The Jacqueline Norris Huggett v. Ironshore Specialty Ins. Co.*, No. 18-21467-CIV-ALTONAGA/Goodman, 2018 WL 8359643, at *1 (S.D. Fla. July 18, 2018) (damage to plaintiff's home from Hurricane Irma); *Siegel v. Tower Hill Signature Ins. Co.*, 225 So. 3d 974 (Fla. Dist. Ct. App. 2017) (claim under homeowners' insurance policy arising from drain line collapse under foundation of home); *Harco Co. of Jacksonville, LLC v. Chubb Custom Ins. Co.*, No. 3:15-CV-818-J-39MCR, 2016 WL 7206177 (M.D. Fla. Mar. 18, 2016) (breach of contract for failing to pay for structural damages to apartment); *N.P.V. Realty Corp. v. Nationwide Mut. Assur. Co.*, No. 8:14–CV–03235–T–17MAP, 2015 WL 3494127 (M.D. Fla. June 3, 2015) (action for damage to real property); *Luciano v. United Prop. & Cas. Ins. Co.*, 156 So. 2d 1108 (Fla. Dist. Ct.

Stat. § 95.11(2)(e) simply has no applicability here. The five-year statute of limitations began to run on the date of GAIC's breach, not the date of Raymond James' loss. Raymond James plainly brought this action within five-years of GAIC's breach of the Bonds.

Alternatively, Federal (and therefore GAIC) contended that Raymond James' claim is barred by the two-year suit limitation imposed by the Bonds. Florida law is clear, however, that any contract provision that seeks to reduce the limitations period is void. *See* Fla. Stat. 95.03 ("Any provision in a contract fixing the period of time within which an action arising out of the contract may be begun at a time less than that provided by the applicable statute of limitations is void"); *Montroy v. State Farm. Mut. Auto. Ins. Co.*, No. 8:12-CV-1871-T-24EAJ, 2012 WL 4746407, at *4 (M.D. Fla. Oct. 4, 2012) (limitations period in insurance policy reducing statute of

---

App. 2015) (action for breach of homeowner's insurance based on denial of claim for hurricane damage to home); *Donovan v. Fla. Peninsula Ins. Co.*, 147 So. 3d 566 (Fla. Dist. Ct. App. 2014) (action against property insurer for failing to pay costs to comply with building codes in the repair of hurricane damage to insured's property); *Linares v. Universal Prop. & Cas. Ins. Co.*, 141 So. 3d 719 (Fla. Dist. Ct. App. 2014) (breach of contract arising from denial of insureds' claim for hurricane damage to home); *Rizo v. State Farm Florida Ins. Co.*, 133 So.3d 1114 (Fla. Dist. Ct. App. 2014) (action arising from damages caused by Hurricane Wilma); *Cypress Chase Condo. Ass'n A v. QBE Ins. Corp.*, No. 10–61987–CIV, 2013 WL 1191413 (S.D. Fla. Mar. 22, 2013) (property damage arising from Hurricane Wilma); *Regency 288, LLC v. Glencoe Ins. Ltd.*, No. 12-62461-Civ-SCOLA, 2013 WL 12092098 (S.D. Fla. Aug. 16, 2013) (damage to property resulting from Hurricane Wilma); *Olear Org. v. North Pointe Ins. Co.*, No. 6:12–cv–850–Orl–28KRS, 2012 WL 5471789 (M.D. Fla. Nov. 9, 2012) (plaintiff's property was damaged by Hurricane Charley); *Garden-Aire South Condo. Ass'n Inc. v. QBE Ins. Corp.*, 10-61985-CIV-DIMITROULEAS/SNOW, 2012 WL 12861091 (S.D. Fla. Nov. 20, 2012) (property damage from Hurricane Wilma); *West Palm Gardens Villas Condo. Ass'n, Inc. v. Aspen Specialty Ins. Co.*, No. 11-23912-Civ, 2012 WL 3017083 (S.D. Fla. June 25, 2012) (homeowner's insurance dispute involving loss from Hurricane Wilma); *Kelly v. Balboa Ins. Co.*, 897 F. Supp. 2d 1262 (M.D. Fla. 2012) (dispute involving loss to real property); *Allstate Ins. Co. v. Country Club Apartments*, NO. 11-61907-CIV-SEITZ/SIMONTON, 2012 WL 13008297 (S.D. Fla. Jan. 13, 2012) (claim for damages to property as a result of Hurricane Wilma).

limitations to two years was void under Florida law); *N.P.V. Realty Corp. v. Nationwide Mut. Assur. Co.*, No. 8:14–CV–03235–T–17MAP, 2015 WL 3494127, at * 4 (M.D. Fla. June 3, 2015) (provision in policy requiring legal action within five years of when loss occurred is void).

Simply put, an insurance policy that is subject to Florida law cannot reduce the statute of limitations to file an insurance coverage lawsuit to less than five years. "Therefore, the Florida rule governing the statute of limitations for claims made under an insurance policy applies, and [Raymond James] ha[d] five years to bring suit." *Montroy*, 2012 WL 4746407. Because Raymond James brought this action within five years of GAIC's breach, Raymond James' claims are not barred by the applicable statute of limitations or the void contractual limitations period in the Bonds. Raymond James thus is entitled to summary judgment on GAIC's Seventeenth Affirmative Defense.

    *iv.*    ***GAIC's Eighteenth Affirmative Defense – Laches Does Not Apply***

GAIC asserted for its Eighteenth Affirmative Defense that "Raymond James claim is barred by the doctrine of laches." [D.E. 48 at p. 24]. It did not allege any facts to support this defense. [*Id.*]. In response to an interrogatory asking for the specific facts upon which GAIC basis its defense of laches, GAIC responded as follows:

> **RESPONSE:** Great American further objects to this Interrogatory on the grounds that it is premature in that it requires identification of all facts and bases for its defense prior to the completion of discovery, that it seeks information protected by the attorney-client and/or attorney-work product doctrine, and that it is overly broad and unduly burdensome in that it can be read to require Great American to recite literally all facts and all documents that touch upon when Raymond James' filed suit. Subject to and without waiving these objections, GAIC states that an affirmative defense of laches is based on the fact that Raymond James' personnel were aware as far back as 2008 that the fact that Ariel Quiros ("Quiros") purchased the Jay Peak resort using a margin loan that was collateralized by treasury bills that were purchased with EB-5 investor funds. Facts and documents supporting this awareness are detailed and cited in Scott Schmookler's April 20, 2020 letter to you ("April 20 Letter") at pages 3 to 7 and are incorporated herein by reference. GAIC's defense of laches is also supported by those parts of Joel Burstein's deposition

>transcript where, in the presence of Raymond James' counsel, he states that investor funds were used as collateral for the Quiros margin loans, and which are quoted in pages 16-17 of the Schmookler letter. Separately citing literally ever fact and document that would support Raymond James' awareness of the use of investor funds as collateral would be repetitive, overly broad and unduly burdensome.

[Ex. 1 at No. 5].

But these purported "facts" do not, as a matter of law, support a laches defense. The doctrine of laches is premised "upon unreasonable delay in enforcing a right, coupled with a disadvantage to the person against whom the right is sought to be asserted." *Bethea v. Langford*, 45 So. 2d 496, 498 (Fla. 1949). "The test in determining whether laches exists is whether the delay has resulted in injury, embarrassment, or disadvantage to any person, and particularly to the person against whom the relief is sought." *Id.*; *see also Dean v. Dean*, 665 So. 2d 244, 247 (Fla. Dist. Ct. App. 1995) (laches requires proof by the defendant of, among other things, delay on the part of the plaintiff and injury or prejudice to the defendant). "Delay alone in asserting a right does not constitute laches, and the burden is on the party who asserts the doctrine of laches to prove prejudice." *Ticktin v. Kearin*, 807 So. 2d 659, 663 (Fla. Dist. Ct. App. 2001).

As evidenced by its interrogatory answer, GAIC's laches defense is premised entirely on the contention that Raymond James supposedly knew of Quiros' use of investor funds as collateral for margin loans to purchase the Jay Peak resort. GAIC's corporate representative confirmed at deposition, however, that this assertion was not factually accurate. Instead, Burstein permitted Quiros to purchase the resort directly using EB-5 investor funds. (Stmt. Mat. Facts at Ex. C, Archbold Dep. at p. 117:4-18). But even if these asserted "facts" were true (and they are not), GAIC has not identified *any* alleged injury or prejudice to it as a result of any unspecified delay. The burden is on GAIC to prove prejudice. Mere delay alone is not enough. Because GAIC cannot identify *any* prejudice to it, GAIC's laches defense fails as a matter of law. *Ticktin*, 807 So. 2d at

663. Therefore, Raymond James is entitled to summary judgment on GAIC's Eighteenth Affirmative Defense of laches.

### v. *GAIC's Twentieth Affirmative Defense – Unclean Hands/In Pari Delicto Do Not Apply*

GAIC asserted for its Twentieth Affirmative Defense that "Raymond James claim is barred by the doctrines of unclean hands/or *in pari delicto*." [ECF No. 48 at p. 24]. Raymond James is entitled to summary judgment on these distinct legal defenses.

Unclean hands is an equitable doctrine that "applies when a party seeking equitable relief has committed an unconscionable act immediately related to the equity the party seeks in respect to the litigation." *Regions Bank v. Old Jupiter, LLC*, No. 10-80188-CIV, 2010 WL 5148467, at *5 (S.D. Fla. Dec. 13, 2010) (citations omitted). To establish an unclean hands defense, a defendant must demonstrate that "(1) 'a plaintiff's wrongdoing is directly related to the claim against which it is asserted' and (2) 'if directly related, the plaintiff's wrongdoing does not bar relief unless the defendant can show that it was personally injured by [the plaintiff's] conduct.'" *Warren v. Delvista Towers Condo. Ass'n, Inc.*, No. 13-23074-CIV, 2014 WL 12802867, at *3 (S.D. Fla. June 30, 2014) (Martinez, J.) (quoting *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 450-51 (11th Cir. 1993)). Because it is an equitable doctrine, moreover, unclean hands traditionally applies only to claims for equitable relief. *See Adana Investing, Inc. v. Wells Fargo Bank, N.A.*, No. 1:16-CV-21562-UU, 2017 WL 3668553, at *16 (S.D. Fla. Apr. 10, 2017) (granting plaintiff's motion for summary judgment on unclean hands defense where plaintiff only sought monetary damages); *Regions Bank*, 2010 WL 5148467, at *6 (granting summary judgment for plaintiff in breach of contract action on defendant's unclean hands defense); *Cong. Park Office Condos II, LLC v. First-Citizens Bank & Trust Co.*, 105 So. 2d 602, 609 (Fla. Dist. Ct. App. 2013) (unclean hands is an equitable defense).

GAIC's unclean hands defense fails for multiple reasons. First, Raymond James is not asserting a claim for equitable relief. It asserts claims for breach of contract and declaratory judgment and seeks to recover monetary damages. Therefore, the equitable defense of unclean hands is inapplicable as a matter of law. *Adana Investing, Inc.*, 2017 WL 3668553, at *16; *Regions Bank*, 2010 WL 5148467, at *6.

Second, even if the equitable defense of unclean hands applied here (it does not), GAIC has not shown that it was personally injured by Raymond James' alleged wrongful conduct. *Warren*, 2014 WL 12802867, at *3 (for defense to apply, defendant must have been "personally injured by the plaintiff's conduct"). As explained in its interrogatory response asking for the factual basis for this defense, GAIC's unclean hands defense is premised entirely on the contention that "Raymond James is at least potentially equally at fault for its loss as the individuals in positions of authority at Raymond James approved of Burstein's acts upon which Raymond James' claim is based." [Ex. 1 at No. 9]. GAIC did not, and indeed cannot, offer any evidence that Raymond James' alleged conduct somehow caused GAIC damages. *Adana Investing, Inc.*, 2017 WL 3668553, at *16 (even if unclean hands was a viable defense to action for monetary damages, summary judgment proper because there was no record evidence that plaintiff was engaged in conduct that caused damage to defendants); *Calloway*, 986 F.2d at 451 (unclean hands did not bar claim where defendant failed to demonstrate that it was injured by plaintiff's alleged wrongdoing).

Because there is no record evidence to support each of the required elements for GAIC to maintain an unclean hands defense, and because the equitable defense of unclean hands is inapplicable to Raymond James' claims for monetary damages, GAIC's unclean hands defense fails as a matter of law.

So too does GAIC's affirmative defense of *in pari delicto*. The defense of *in pari delicto* is premised on "[t]he principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1152 (11th Cir. 2006) (quoting Black's Law Dictionary 794 (7th ed. 1999)). "The defense of *in pari delicto,* however, does not require simply that both parties be to some degree wrongdoers. Rather, the parties must participate in the *same* wrongdoing." *Earth Trades, Inc. v. T & G Corp.*, 108 So. 3d 580, 583 (Fla. 2013) (emphasis added); *Adana Investing, Inc.*, 2017 WL 3668553, at *15.

*Adana Investing, Inc.* is instructive. That case arose from the defendants' alleged involvement in aiding and abetting the conversion of funds the plaintiff deposited into a bank account at Wells Fargo Bank. 2017 WL 3668553, at *1. The plaintiff moved for summary judgment on the defendants' *in pari delicto* defense, arguing that there was no evidence the plaintiff and defendants engaged in the same wrongdoing. *Id.* at * 14. In response, the defendants argued that, under Florida law, it is not necessary for the parties to have been engaged in the same wrongdoing; only that plaintiff was engaged in "any wrongdoing." *Id.* The Court disagreed. As the Court explained, there is well-established precedent in Florida and the Eleventh Circuit that the defendants are required to establish that the plaintiff was engaged in the *same* wrongdoing. *Id.* (citing *Earth Trades, Inc. v. T&G Corp.*, 108 So. 3d 580, 583 (Fla. 2013); *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1308-1309 (11th Cir. 2013)). In *Adana Investing*, the relevant wrongdoing was the misappropriation of money that the plaintiff deposited into a bank account. *Id.* at *15. Because there was no evidence that the plaintiff was engaged in that *same* wrongdoing, the Court granted the plaintiff's motion for summary judgment as to the defendants' *in pari delicto* defense. *Id.*

The same result should be reached here. The relevant wrongdoing is GAIC's (and the other Defendants') breach of their contractual obligation to indemnify Raymond James under the Bonds at issue for covered losses resulting directly from Burstein's fraud and dishonesty. GAIC does not, and plainly cannot, identify *any* evidence that Raymond James somehow was engaged in that *same* wrongdoing. Indeed, it would be nonsensical to even suggest otherwise. GAIC's *in pari delicto* defense thus fails as a matter of law.

Therefore, Raymond James is entitled to summary judgment on GAIC's Twentieth Affirmative Defense of unclean hands and/or *in pari delicto*.

### III.   CONCLUSION

For all the foregoing reasons, the Court should grant the Motion and enter a partial summary judgment in favor of Raymond James and against GAIC on GAIC's Third, Thirteenth, Seventeenth, Eighteenth, and Twentieth Affirmative Defenses.

Dated:  July 30, 2021.                             Respectfully submitted,

*/s/ Jason S. Mazer*
Jason S. Mazer, Esq.
Florida Bar No. 0149871
Joshua R. Alhalel, Esq.
Florida Bar No. 0016320
**CIMO MAZER MARK PLLC**
100 Southeast Second Street, Suite 3650
Miami, Florida  33131
Telephone: (305) 374-6481; Fax: (305)  374-6488
jmazer@cmmlawgroup.com
jalhalel@cmmlawgroup.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 30, 2021, I electronically filed this Motion for Partial Summary Judgment Against Great American Insurance Company and Supporting Memorandum of Law with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on parties listed in the below Service List via transmission of Notices of Electronic Filing generated by CM/ECF or in some other manner.

*/s/ Jason S. Mazer*

**SERVICE LIST**

| | |
|---|---|
| Kristina L. Marsh, Esq.<br>Florida Bar No. 0311080<br>**GORDON REES SCULLY MANSUKHANI**<br>601 S. Harbor Island Blvd., Suite 109<br>Tampa, FL  33602<br>Telephone (Main):  813-444-9700<br>Telephone (Direct)  813-523-4937<br>Facsimile:   813-377-3505<br>kmarsh@grsm.com<br>and<br>Scott L. Schmookler, Esq.<br>Sarah Riedl Clark, Esq.<br>**GORDON REES SCULLY MANSUKHANI**<br>One North Franklin, Suite 800<br>Chicago, IL  60606<br>Telephone:  312-980-6779<br>sschmookler@grsm.com<br>srclark@grsm.com<br><br>*Counsel for Federal Insurance Company* | James M. Kaplan, Esq.<br>Florida Bar No. 921040<br>**KAPLAN ZEENA LLP**<br>2 South Biscayne Boulevard, Suite 3050<br>Miami, Florida  33131<br>Telephone: (305)  530-0800<br>Facsimile: (305)  530-0801<br>James.kaplan@kaplanzeena.com<br>Elizabeth.salom@kaplanzeena.com<br>service@kaplanzeena.com<br>and<br>Michael Keeley, Esq.<br>John R. Riddle, Esq.<br>C. Adam Brinkley<br>**Clark Hill Strasburger**<br>901 Main Street, Suite 6000<br>Dallas, Texas  75202-3794<br>Telelphone:  (214)  651-4718<br>Facsimile:   (214) 659-4121<br>mkeeley@clarkhill.com<br>jriddle@clarkhill.com<br>abrinkley@clarkhill.com<br><br>*Counsel for Beazley Insurance Company, Inc.* |
| E.A. "Seth" Mills, Jr., Esq.<br>Florida Bar No. 339652<br>Ryan J. Weeks, Esq.<br>Florida Bar No.  5 7 8 9 7<br>**MILLS PASKERT DIVERS**<br>100 N. Tampa Street, Suite 3700<br>Telephone: (813) 229-3500<br>Facsimile: (813) 229-3502<br>smills@mpdlegal.com<br>rweeks@mpdlegal.com<br>csoltis@mpdlegal.com<br><br>*Counsel for Travelers Casualty and Surety Company of America* | Dustin C. Blumenthal<br>Florida Bar No. 0149871<br>**Goldberg Segalla**<br>222 Lakeview Avenue, Suite 800<br>West Palm Beach, FL  33401<br>Telephone: (561)  618-4485<br>Facsimile:  (561)  618-4549<br>dblumenthal@goldbergsegalla.com<br>lparker@goldbergsegalla.com<br>and<br>Stephen N. Dratch, Esq.<br>**Franzblau Dratch, P.C.**<br>354 Eisenhower Parkway<br>Livingston, New Jersey  07039<br>Telephone:  (973) 992-3700<br><br>*Counsel for Great American Insurance Company* |