**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO: 20-21707-CV-MARTINEZ-BECERRA**

**RAYMOND JAMES FINANCIAL, INC.,**

            **Plaintiff,**

**vs.**

**FEDERAL INSURANCE COMPANY;**
**TRAVELERS CASUALTY AND SURETY**
**COMPANY OF AMERICA; GREAT**
**AMERICAN INSURANCE COMPANY;**
**BEAZLEY INSURANCE COMPANY, INC.;**
**AND ST. PAUL MERCURY INSURANCE**
**COMPANY**

            **Defendants.**

_____

**DEFENDANTS' RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S MOTION TO EXCLUDE DEFENDANTS'**
**EXPERTS AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... I

TABLE OF AUTHORITIES ................................................................................................... II

INTRODUCTION .................................................................................................................. 1

OVERVIEW OF EXPERT OPINIONS ................................................................................ 2

      **A.**   GREGORY HAGARTY ......................................................................... 3

      **B.**   SANDER RESSLER ............................................................................. 4

STANDARD OF REVIEW ................................................................................................... 5

ARGUMENT .......................................................................................................................... 6

I.     HAGARTY'S OPINION ON FRAUD INVESTIGATIONS AND INDICIA OF FRAUD ARE ADMISSIBLE, RELIABLE AND HELPFUL. ........................................... 6

      **A.**   HAGARTY'S LAW ENFORCEMENT EXPERIENCE QUALIFIES HIM AS AN EXPERT. ...................................................................................... 8

      **B.**   HAGARTY'S OPINIONS ARE ADMISSIBLE AND HELPFUL. ..................... 10

      **C.**   HAGARTY RELIED UPON RELIABLE METHODS DERIVED FROM HIS EXPERIENCE. .................................................................................. 12

      **D.**   HAGARTY'S OPINIONS ARE ADMISSIBLE TO REBUT RJF'S PURPORTED EXPERT. ...................................................................................... 15

II.    RESSLER OFFERS ADMISSIBLE EVIDENCE OF INSURANCE PRACTICES. ...... 16

      **A.**   RESSLER IS QUALIFIED TO PROVIDE THE PROPOSED EXPERT TESTIMONY AND HIS TESTIMONY IS RELIABLE. ................................... 18

      **B.**   RESSLER'S PROPOSED EXPERT TESTIMONY IS HELPFUL TO THE JURY AND WILL NOT CONFUSE OR MISLEAD THE JURY. ............................... 19

CONCLUSION ..................................................................................................................... 20

i

# TABLE OF AUTHORITIES

Cases

*Alfalfa Elec. v. Travelers Indem. Co.*, 376 F. Supp. 901 (W.D. Okla. 1973) .............................. 19

*Allison v. McGhan*, 184 F.3d 1300 (11th Cir. 1999) ...................................................... 14

*American General Life Ins. Co. v. Schoenthal Family, LLC*, 555 F.3d 1331 (11th Cir. 2009) .. 4, 6

*Benner v. NCL (Bahamas) Ltd.,* No. 15-20585-civ, 2016 WL 11547583 (S.D. Fla. April 8, 2016). ................................................................................................................. 14

*Braddy v. Infinity Assurance Ins. Co.*, No. 615CV119ORL28GJK, 2016 WL 1446202 (M.D. Fla. Apr. 11, 2016) ........................................................................................... 8

*Branch Banking & Trust Co. v. Witmeyer*, No. 10-cv-55, 2011 WL 3297682 (E.D. Va. Jan. 6, 2011) ................................................................................................ 11

*CGC Holding Company, LLC v. Hutchens*, No. 11-cv-01012, 2017 WL 1435857 (D. Co., Apr. 20, 2017) ....................................................................................... 9, 10

*Clarke v. Healthsouth*, No. 14-cv-778, 2021 WL 129821 (M.D. Fla., Jan. 14, 2021) ................ 10

*Coquina v. Rothstein*, No. 10-60786, 2011 WL 4949191 (S.D. Fla. Oct. 8, 2011).............. passim

*Cordoves v. Miami-Dade Cty.*, 104 F. Supp. 3d 1350 (S.D. Fla. 2015) ........................................ 5

*Corwin v. Walt Disney*, 475 F.3d 1239 (11th Cir. 2007) ............................................................. 5

*Cotromano v. United Tech.*, No. 13-cv-80928, 2018 WL 2047468 (S.D. Fla., May 2, 2018) ....... 5

*Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993) ................................................. 5, 6, 9, 14

*Gomez v. General Nutrition,* 323 F. Supp. 3d 1368 (S.D. Fla. 2018)............................................ 6

*Hemmings v. Tidyman's Inc.*, 285 F.3d 1174 (9th Cir. 2002)...................................................... 14

*Hendrix ex rel G.P. v. Evenflo*, 609 F.3d 1183 (11th Cir. 2010).................................................. 5

*Jack v. Glaxo Wellcome, Inc.*, 239 F. Supp. 2d 1308 (N.D. Ga. 2002) ......................................... 5

*Jennings v. U.S.,* 2005 WL 1387987 (S.D.N.Y. June 6, 2005) ................................................... 11

*King v. Cessna Aircraft*, No. 03- 20482, 2010 WL 1980861 (S.D. Fla. May 18, 2010) ............... 6

*Kirstein v. Parks Corp.*, 159 F.3d 1065 (7th Cir. 1998) ............................................................ 13

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ................................................................. 6

*McClain v. Metabolife Internat'l, Inc.*, 401 F.3d 1233 (11th Cir. 2005)..................................... 13

*Nemir v. Mitsubishi Motors*, 200 F. Supp. 2d 770 (E.D. Mich. 2002), rev'd, 381 F.3d 540 (6th Cir. 2004). ................................................................................................ 8

*New England Petroleum v. Daibes Oil, LLC*, No. 14-cv-726, 2018 WL 1358819 (D. N.J. Mar. 16, 2018) ........................................................................................ 11, 12

*Perlman v. Am. Express Centurion Bank*, No. 19-61386, 2021 WL 2592175 (S.D. Fla. Mar. 26, 2021) ....................................................................................... 2, 7, 11

*Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333 (11th Cir. 2003).................... 14

*Rink v. Cheminova, Inc.*, 400 F.3d 1286, (11th Cir. 2005) ........................................................... 8

*Rosado v. Deters*, 5 F.3d 119 (5th Cir. 1993) ........................................................................... 10

*Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190 (11th Cir. 2011) ......................................... 14

*Royal Trust Bank v. Nat'l Union Fire Ins. Co.*, 788 F.2d 719 (11th Cir. 1986) .......................... 19

*Serrano v. American Airlines, Inc.*, No. 15-23382-Civ, 2016 WL 6600499 (S.D. Fla. Nov. 8, 2016) ................................................................................................ 13

*St. Paul Fire & Marine Ins. Co. v. Bank of Stockton*, 213 F. Supp. 716 (N.D. Calif. 1963)........ 19

*U.S. ex rel. Armfield v. Gills*, No. 07-cv-2374, 2013 WL 371457 (M.D. Fla. Jan. 30, 2013)...... 10

*U.S. v. Benitez*, No. 14-cr-124, 2015 WL 5542449 (M.D. Fla. Sept. 15, 2015)........................ 2, 9

*U.S. v. Brown*, 415 F.3d 1257 (11th Cir. 2005) ....................................................................... 13

*U.S. v. Burchfield*, 719 F.2d 356 (11th Cir. 1983) ..................................................................... 5

*U.S. v. Frazier*, 387 F.3d 1244 (11th Cir. 2004)................................................................... passim

*U.S. v. Long*, 300 F. App'x 804 (11th Cir. 2008) ....................................................................... 10

*U.S. v. Motsenbocker*, No. CR-10-371, 2011 WL 902121 (S.D. Ohio, Mar. 15, 2011)................ 9

*U.S. v. Nelson*, No. 17-cr-00533, 2021 WL 75757 (N.D. Ca., Jan. 8, 2021)................................ 9

*U.S. v. Parkhurst*, 865 F.3d 509 (7th Cir. 2017)......................................................................... 9

*U.S. v. Rouco*, 765 F.2d 983 (11th Cir. 1985).............................................................................. 5

*United States v. Smith*, 919 F.3d 825 (4th Cir. 2019) .................................................................. 9

*USLIFE Savings & Loan Assoc. v. Nat'l Sur. Corp.*, 115 Cal. App. 3d 336 (Cal. Ct. App. 1981)
...................................................................................................................................................... 19

*Utica Mut. Ins. Co. v. Fireman's Fund Ins.*, 748 F.2d 118 (2d Cir. 1984)................................... 19

*Ward v. Carnival Corp.*, No. 17-24628-CN, 2019 WL 1228063  (S.D. Fla. Mar. 14, 2019)....... 14

Statutes

Federal Rule of Evidence 702.......................................................................................................... 5

Federal Insurance Company, Travelers Casualty and Surety Company of America, Great American Insurance Company, Beazley Insurance Company, Inc., and St. Paul Mercury Insurance Company (collectively, the "Insurers") submit the following response in opposition to Plaintiff's motion to exclude the testimony of Gregory Hagarty and Sander Ressler. (D.E. 127).

## INTRODUCTION

Raymond James Financial, Inc. ("RJF") seeks insurance coverage on the theory that Joel Burstein ("Burstein") colluded with Ariel Quiros ("Quiros") to embezzle money from a series of limited partnerships associated with the Jay Peak ski resort. Insurers denied coverage, in part, on the basis that (1) RJF did not prove that Burstein acted dishonestly or colluded with Quiros; and (2) RJF was aware of the conduct it now characterizes as dishonest prior to the inception of its financial institution bonds. In light of these disputed issues, Insurers disclosed two credentialed experts to address these focused issues: Greg Hagarty ("Hagarty") and Sander Ressler ("Ressler").

RJF never addresses the true point of Hagarty's and Ressler's opinions. It unnecessarily emphasizes insurance claim handling, contractual definitions, obligations of good faith, and other contractual duties, even though those issues have nothing to do with Hagarty's or Ressler's opinions. Neither offered any opinions on those topics or purported to offer opinions on those topics. Instead, they offered opinions directed to RJF's allegations of dishonesty and its inaction upon learning of conduct now characterized as dishonest. Both experts opine why RJF's conduct (in accusing Burstein of dishonesty and failing to report a claim upon learning of the alleged dishonesty) deviated from industry standard and why application of industry standards refutes RJF's theory of coverage. Those opinions are intended to help the jury evaluate the basis for RJF's claim and render a decision on two disputed issues above. RJF ignores the relevance of these opinions because Hagarty and Ressler offer admissible, reliable and helpful opinions consistent with local precedent.

First, RJF's manufactured allegation of dishonesty ignores exculpatory facts – including repeated disclosures to and approvals by RJF's executives. Because lay jurors are unfamiliar with indicia of fraud, Insurers disclosed Hagarty, a Certified Fraud Examiner and former FBI agent with over 25 years of experience, to explain to common indicia of dishonesty and collusion. That experience will assist the jury in evaluating the basis for RJF's allegations, whether RJF accounted for exculpatory factors, understand the complex transactions underlying RJF's claim and resolve the disputed issues. While RJF may prefer the jury render an uneducated decision, this Court

1

commonly admits such opinions as helpful and relevant in claims. *Perlman v. Am. Express Centurion Bank*, No. 19-61386, 2021 WL 2592175 at *1 (S.D. Fla. Mar. 26, 2021) (opinion on indicia of fraud admitted to assist jury evaluate fraud claim); *Coquina v. Rothstein,* No. 10-60786, 2011 WL 4949191 at *4 (S.D. Fla. Oct. 8, 2011) (expert allowed to opine on "red flags" of fraud).

Second, Insurers denied coverage because RJF knew about the conduct it characterizes as dishonest prior to the inception of its current financial institution bonds. RJF does not deny such knowledge or its failure to provide notice of a claim upon learning of the conduct it now paints as collusive, but disclosed an expert (Clay Grumke ("Grumke")) to defend its inaction. While Insurers contest the admissibility of Grumke's opinions, they disclosed Ressler as a rebuttal expert to opine on custom and practice in the insurance industry.  That opinion directly rebuts Grumke's opinion and will help the jury understand risk management practices (a subject outside the knowledge of a lay jury) and evaluate RJF's claim.

Faced with focused opinions offered by documented experts that directly undermine its claim, RJF seeks exclusion with disjointed arguments divorced from Ressler's and Hagarty's actual opinions. It over-emphasizes Hagarty's alleged inexperience with insurance, despite the fact that he was not offered as an insurance expert and his law enforcement credentials provide a stand-alone basis for his opinions. *U.S. v. Benitez*, No. 14-cr-124, 2015 WL 5542449, at *3 (M.D. Fla. Sept. 15, 2015).  It criticizes Hagarty and Ressler for failing to identify textbook support for their opinions, despite the fact that their experience alone can (and does) provide sufficient basis for expert opinion.  *U.S. v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004).

Unlike RJF, Insurers disclosed experts to assist the jury with understanding the context of this claim, and industry principles directly relevant to their evaluation of RJF's claim.  Those experts will explain industry practices outside the knowledge of a lay juror – thereby providing context to RJF's claim and enabling the jury to properly weigh the disputed issues.  Because Ressler and Hagarty offer expert opinions helpful to the jury based upon documented expertise, RJF's motion to exclude should be denied.

## OVERVIEW OF EXPERT OPINIONS

RJF's motion glosses over Hagarty's and Ressler's expertise, and mischaracterizes the scope and substance of their opinions. Before explaining the legal flaws in RJF's arguments, Insurers will explain Hagarty's and Ressler's backgrounds, the scope of retention, substance of their opinions and the nexus between their opinions and RJF's allegations.

### A.    GREGORY HAGARTY

Hagarty is a Certified Fraud Examiner in New York. (D.E. 127-1, p. 7).[1] From 1989 through 2015, Hagarty worked as a Special Agent of the FBI.  During his tenure at the FBI, he investigated white-collar crime, and supervised a squad of agents investigating white-collar crimes. *Id.* Hagarty's experience included participating in the investigation of Bernard Madoff's Ponzi scheme and large mortgage fraud scheme. *Id.* Following his work with the FBI, Hagarty worked at a private investigation firm (Alpha Group) from (February 2015 through August 2016), the consulting division of Baker Tilly from (August 2016 through April 2018), and operated his own consulting firm (Lighthouse Strategies LLC). (*Id.* at 8).  In those positions, he was routinely engaged to assist in the investigation of and evaluation of cases involving fraud. *Id.*

Relying upon his law enforcement and consulting experience, Hagarty has experience analyzing evidence for "indicia of collusion, dishonesty, and concealment of relevant information." *Id.* at 7. For example, Hagarty investigated a multi-year mortgage fraud scheme to determine whether individuals were colluders with the alleged fraudulent actor or whether the individuals had fallen for the alleged fraudulent actor's "persuasive, convincing stories." *Id.* He investigated the New York mafia for evidence of "collusion, dishonesty, concealment, and participation in criminal activities." *Id.* He also investigated a public corruption scheme, looking for "collusion among elected officials and an individual seeking to obtain county government contracts through bribery and other corrupt means." *Id.* at 8.

In light of that experience, Insurers retained Hagarty to opine on how investigators identify and evaluate evidence when evaluating allegations of dishonestly and collusion. (D.E. 127-1, p. 9).  Insurers did so as a means of assisting the jury in identifying indicia of fraud/collusion, and factors undermining allegations of fraud/collusion.   As a result of his expertise in acting in the role of an investigator and analyzing available evidence, and through a reasonable degree of professional certainty, Hagarty reached the opinion that RJF (and its expert, Steve Urcia ("Urcia")) "did not adopt a reasonable investigatory approach designed to objectively weigh whether Burstein acted dishonestly and colluded with Quiros," and that they "discounted (or ignored) exculpatory evidence reflecting wide-ranging knowledge and approval of the transactions they now characterize as dishonest." *Id.* Hagarty opines that RJF's failure to apply a reasonable investigatory approach "omits critical context and events that in [his] experience are inconsistent with the

---

[1] Hagarty attested to his qualifications during his deposition.  (Dkt. 127-2, pg. 55-56, 64).

conclusion that Burstein colluded with Quiros." *Id.*

### B.   SANDER RESSLER

Ressler has been the Managing Director of Essential Edge Companies from June 2011 to present, a firm devoted to performing independent investigations of broker-dealers suspected of fraudulent and abusive sales practices. (D.E. 127-3, pp. 7, 21).[2] Prior to forming Essential Edge, Ressler served as the President and Chief Compliance Officer of EMG Capital, Inc. from June 2012 to August 2014.  In that role, he ensured compliance with anti-money laundering and other federal and state regulations. *Id.* Ressler also served as Compliance Officer and Anti-Money Laundering Officer at Summit Brokerage Services, Inc.; Multi-Financial Securities Corporation, and American General. *Id.* at pp. 8, 21. In these roles, Ressler drafted and implemented written supervisory procedures, handled FINRA and SEC examinations, and managed compliance. *Id.*

The Insurers retained Ressler to rebut Grumke's opinion as to "whether [RJF] acted in a prompt and timely manner in reporting a loss to the insurers assuming its allegations of dishonesty as true and in light of facts disclosed to [RJF]'s legal department." (*Id.* at 7). In light of RJF's allegation that it timely disclosed its claim, Ressler opined on:

> A. whether a reasonable securities broker-dealer would expect that the events and transactions disclosed to RFI's legal department would likely result in a loss;
> B. whether a reasonable securities broker-dealer would provide notice after [RJF]'s legal department learned of the specific events and transactions discussed below; C. whether [RJF]'s legal department acted in accordance with industry custom and practice in reporting (or failing to report) an insurance claim after Burstein's SEC testimony in March 27, 2014; and
> D. explain how a reasonable broker-dealer would have reacted after Burstein's SEC testimony on March 27, 2014.

*Id.* As a result of his expertise in acting as a Compliance Officer and AML Officer, and through a reasonable degree of professional certainty, Ressler reached the opinion:

> that attorneys in [RJF]'s legal department learned on at least eight occasions before October 2015, of events that (1) would cause a reasonable securities broker-dealer to assume that a loss of a type covered by the bonds had been or would be incurred; and (2) would lead a reasonable securities broker-dealer to provide notice to its insurers. As detailed below, [RJF]'s legal department was aware as early as March 2014 of questionable transactions in a client account and transactions suggesting that Quiros used partnership funds for personal benefit and to pay his debt to Raymond James. A reasonable securities broker-dealer following industry customs and practices would have appreciated the implications of those transactions, the potential for a loss, and provided notice at the time they first learned of those transactions in order to preserve their rights to recover under the bonds. They would

---

[2] Ressler attested to his qualifications during his deposition.  (Dkt. 127-2, pg. 29).

> have done so because customers commonly pursue claims against securities broker-dealers once they learn of misuse or alleged misuse of their funds.

*Id.* In sum, Ressler opines on how a reasonable securities broker-dealer would handle the events and transactions involved in this matter (D.E. 127-3, p. 7) and whether RJF's Legal Department acted in accordance with industry custom and practice. *Id.*

## STANDARD OF REVIEW

While Federal Rule of Evidence 702 allows expert testimony, an expert can only testify where: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 592 (1993); *Cotromano v. United Tech.*, No. 13-cv-80928, 2018 WL 2047468 at *14 (S.D. Fla., May 2, 2018). The trial court acts as the "gatekeeper" to such testimony. *Corwin v. Walt Disney*, 475 F.3d 1239, 1250 (11th Cir. 2007). To facilitate that analysis, the Eleventh Circuit has established a three-part test: "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Hendrix ex rel G.P. v. Evenflo*, 609 F.3d 1183, 1994 (11th Cir. 2010).

***Qualifications***: A party must demonstrate each of its experts is "qualified as an expert by knowledge, skill, experience, training, or education." *Cordoves v. Miami-Dade Cty.*, 104 F. Supp. 3d 1350, 1356 (S.D. Fla. 2015). This analysis requires the Court to "… examine the credentials of the proposed expert in light of the subject matter of the proposed testimony." *Jack v. Glaxo Wellcome, Inc.*, 239 F. Supp. 2d 1308, 1314 (N.D. Ga. 2002). The expert must demonstrate knowledge of something "beyond the understanding and experience of the average citizen." *U.S. v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985). In effect, the expert must offer testimony of "the kind that enlightens and informs lay persons without expertise in a specialized field." *U.S. v. Burchfield*, 719 F.2d 356, 357 (11th Cir. 1983).

***Reliability***: After determining an expert is qualified to testify competently, the court must determine whether the methodology the expert used in reaching his conclusions is reliable. *Frazier,*

387 F.3d at 1260. The *Daubert* Court specified "[t]he inquiry envisioned by Rule 702 is [] a flexible one." *Daubert*, 509 U.S. 579 at 594; *see also Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 139 (1999) (interpreting *Daubert* and explaining that "reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine"). Expert testimony may be deemed reliable if it is based upon personal knowledge or experience, as "[s]tandards of scientific reliability, such as testability and peer review, do not apply to all forms of expert testimony." *American General Life Ins. Co. v. Schoenthal Family, LLC,* 555 F.3d 1331, 1338 (11th Cir. 2009) (citing *Kumho Tire,* 526 U.S. 137 at 151). When a witness relies "on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Coquina,* 2011 WL 4949191 at *1.

      **Helpfulness**: Expert testimony must assist the trier of fact. Expert testimony is helpful to the trier of fact "if it concerns matters that are beyond the understanding of the average lay person." *Frazier*, 387 F.3d 1244 at 1262; *King v. Cessna Aircraft*, No. 03- 20482, 2010 WL 1980861, at *5 (S.D. Fla. May 18, 2010). Expert testimony is helpful if it is precise, specific, and the factual basis is adequately explained. *Gomez v. General Nutrition,* 323 F. Supp. 3d 1368, 1378 (S.D. Fla. 2018).

## ARGUMENT

## I.   HAGARTY'S OPINION ON FRAUD INVESTIGATIONS AND INDICIA OF FRAUD ARE ADMISSIBLE, RELIABLE AND HELPFUL.

      Although RJF accuses Burstein of dishonesty, RJF could not identify any employees willing to support its false narrative or to testify that they ever witnessed Burstein commit a dishonest act.  In fact, not a single RJF fact witness deposed during discovery testified that Burstein acted dishonestly or was willing to accuse him of conspiring with Quiros.  Unable to identify any percipient witnesses willing to support its claim, RJF manufactured a claim by mischaracterizing Burstein's role and conduct, and ignoring repeated disclosures of Quiros' transactions and executive approval of those transactions.  It then disclosed an alleged expert, Steve Urcia, to narrate its self-serving and subjective allegations.

      Because an expert cannot opine on the ultimate question of dishonesty, Defendants ask this Court to exclude Urcia as an expert and disclosed Hagarty as an expert.  Unlike Urcia, Hagarty does not offer opinions on the ultimate question of Burstein's conduct, but instead, educates the jury on investigatory techniques employed to evaluate allegations of dishonesty and indicia of dishonesty/collusion.  Those opinions will assist the jury with defining a process to evaluate the

allegations of dishonesty, and whether the disclosures and approvals RJF ignores undermine if allegations of dishonesty/collusion. Hagarty will assist the jury in structuring its analysis of RJF's allegations by explaining whether RJF's bald allegations of dishonesty "deviated from reasonable investigatory techniques designed to objectively weigh whether Burstein acted dishonestly or colluded with Quiros…" and assist the jury in identifying indicia of fraud/collusion and identifying "… exculpatory evidence reflecting wide-ranging knowledge and approval of the transactions they now characterize as dishonest." (D.E. 127-1, p. 9).  Such testimony comports with this Court's precedent – which recognizes that former law enforcement officers can offer expert opinions on investigatory techniques and that experts can offer opinions on the indicia of fraud.  *Perlman*, 2021 WL 2592175 at *1; *Coquina Investments,* 2011 WL 4949191, at *4.

Faced with precedent admitting analogous opinions, RJF falsely critiques an educated and experienced expert based upon immaterial arguments. For example, RJF complains that Hagarty lacks insurance experience – an irrelevant fact given that Insurers did not offer Hagarty as an insurance expert and his opinions do not depend upon any insurance experience. RJF treats insurance experience as a mandatory prerequisite, but its own experts lack such experience too. Each of RJF's own experts openly acknowledged that they lack relevant insurance experience:

| Expert | Admission | Citation |
|---|---|---|
| Steve Urcia | Q:  So would you agree that you have no expertise in financial institution bonds or insurance?<br>A:  That would be correct. | Exhibit 1, pp. 261:17-262:02 |
| Clay Grumke | "I've not worked for an insurance company, nor have I practiced in that area, worked in that area." | Exhibit 2, p. 28:05-16 |
| Jorge Baez | Q:  … Do you have any experience with financial institution bonds?<br>A.  No, I have not seen these types of bonds before. | Exhibit 3, p. 12:05-12:08 |

RJF resorts to a hypocritical argument to distract from the admissibility of Hagarty's opinions.

RJF pursued a claim on the false notion that Burstein colluded with Quiros to defraud the Jay Peak partnerships.  That claim, RJF admits in its complaint, depends upon proof that Burstein (1) acted dishonestly; and (2) colluded with Quiros.  While an expert cannot opine on the existence of dishonesty and collusion, he can assist the jury in identifying indicia of dishonesty/collusion and valid investigatory techniques applied when identifying dishonesty/collusion.  Therein lies Hagarty's expertise and helpfulness – assisting the trier of fact in evaluating RJF's allegations and

the merits of those allegations.

### A.   HAGARTY'S LAW ENFORCEMENT EXPERIENCE QUALIFIES HIM AS AN EXPERT.

RJF's challenge to Hagarty's experience and qualifications teeters on a series of false premises.  Seeking to narrowly paint this case as an insurance dispute, RJF argues that Hagarty lacks experience in insurance, at a broker/dealer, with insurance claims handling and the insured's duty under a financial institution bond.  (D.E. 127, pp. 3, 7-8).  This entire discussion is a red herring.  RJF spends pages discussing an Insurers' duty to investigate and act in good faith and claim handling testimony [D.E. 127, pp. 3-4, 9, 11-12], despite the fact that Hagarty provides no opinions about claim handling and claim handling is irrelevant in this contract action. *Braddy v. Infinity Assurance Ins. Co.*, No. 615CV119ORL28GJK, 2016 WL 1446202, at *2 (M.D. Fla. Apr. 11, 2016) (insured's bad faith claim against insurer cannot be pursued until after liability for coverage is determined under the policy).

RJF focuses on immaterial claims because in reality it cannot dispute Hagarty's experience and relevance.  RJF's claim rises and falls on RJF's ability to prove that Burstein acted dishonestly and colluded with Quiros.  That question is not an issue of law, a matter of insurance or a matter of claim handling.  Absent summary judgment, the jury will be asked to weigh Burstein's conduct and identify indicia of fraud.  Hagarty can assist in that process based upon his law enforcement experience, investigatory experience and credentials as Certified Fraud Examiner.  That experience qualifies him to offer an opinion in this case.[3]

Rule 702 permits a person to qualify as an expert based upon knowledge, skill, experience, training, or education. *Frazier*, 387 F.3d at 1261.  Reliability is different than believability or persuasiveness (which are and remain an issue for the trier of fact). *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1293 n. 7 (11th Cir. 2005).  Accordingly, courts recognize that law enforcement experience amply qualifies a witness to offer expert opinion on investigatory techniques and indicia of fraud/collusion. *U.S. v. Nelson*, No. 17-cr-00533, 2021 WL 75757, at *10 (N.D. Ca.,

---

[3] RJF wrongly disputes Hagarty's qualifications as an expert based upon whether he applied scientific methods, or textbook standard.  RJF cites to *Nemir v. Mitsubishi Motors*, 200 F. Supp. 2d 770 (E.D. Mich. 2002) to support the notion that an expert must document how his experience supports his opinions (D.E. 127, pp. 10-11), but the Sixth Circuit reversed *Nemir*. 381 F.3d 540, 554 (6th Cir. 2004). Consistent with that decision, Hagarty explained that his law enforcement and investigatory experience guided his evaluation in this matter and how he applied that to engagement. (D.E. 127-1, pp. 7-8). He demonstrates knowledge beyond the experience of a lay juror and that will assist lay jurors.

Jan. 8, 2021); *CGC Holding Company, LLC v. Hutchens*, No. 11-cv-01012, 2017 WL 1435857, at *4-5 (D. Co., Apr. 20, 2017); *U.S. v. Poulsen*, 543 F. Supp. 2d 809, 811-12 (S.D. Ohio 2008); *U.S. v. Motsenbocker*, No. CR-10-371, 2011 WL 902121, at *4 (S.D. Ohio, Mar. 15, 2011); *U.S. v. Benitez*, No. 14-cr-124, 2015 WL 5542449, at *3 (M.D. Fla., Sept. 15, 2015).

    *Benitez* recognized law enforcement credentials as a basis for expert testimony.  In that case, the witness sought to offer opinions based upon his experience as a police officer. Like RJF, the government challenged the witness' credentials and argued that his law enforcement and investigatory experience did not qualify him as an expert.  The district court rejected that argument:

> And finally the Government states that Olsen's expert opinion does not meet the Daubert standards. … The Government's arguments go to the weight of the testimony offered by Olsen rather than its admissibility. Olson has substantial experience in private investigations and law enforcement. His years of experience can assist the jury in understanding the issues in Count II more than the opinion of the average layman.

2015 WL 5542449, at *3.

    *Benitez* is consonant with that of other courts of appeals. *United States v. Smith*, 919 F.3d 825, 835 (4th Cir. 2019) rejected a *Daubert*-based challenge to admission of opinions upon experience investigating gang-related crimes.  The court explained that the witness was qualified "as an expert in drug and gang terminology" because he "was a twelve-year veteran of the FBI with substantial experience in drug and gang investigations (conducting controlled buys, interviewing drug dealers and gang members, using gang members as confidential sources, listening to thousands of recorded conversations, and so forth)." *Id.*  Finding the witness qualified to testify as an expert, the court next held that he "employed a sound methodology" because he compared the facts at issue in that case with "his experience with other investigations…." *Id. at* 836; *see also U.S. v. Parkhurst*, 865 F.3d 509, 516-17 (7th Cir. 2017) (stating that "(t)raining and experience are proper foundations for expert testimony," that such testimony is admissible "without requiring 'scientific methodologies' or 'peer review,'" and that law-enforcement experts may point to "factors such as the officer's years of experience and number of investigations").

    *CGC Holding Company* applied that rationale while upholding admission of expert opinion on common methodologies employed to commit theft.  In that case, the witness sought to offer opinion testimony about the characteristics of fraud.  Citing the witness' experience with the FBI, the district court held that law enforcement experience (including experience investigating fraud) qualified the witness to testify about the characteristics of fraud: "Baker's FBI career enhanced

his basic accounting background and provided training and hands-on experience at a high level in investigating fraudulent schemes. That is what makes him qualified, perhaps uniquely qualified, to express opinions in this area."  2017 WL 1435857 at *3.[4]

As in *CGC Holding*, Hagarty possesses specialized knowledge and experience investigating and identifying indicia of fraud, dishonesty and collusion.  After being accredited as a Certified Fraud Examiner, Hagarty worked at the FBI and as a private consultant.  During his expansive experience, he investigated organized crimes and white-collar crimes – including participating in the investigation of Bernard Madoff, participating in the investigation of mortgage fraud, and investigating bribery and collusion among public officials. (D.E. 127-1, pp. 7-8).  That documented experience qualifies Hagarty to offer expert opinions about the common indicia of fraud/collusion; common techniques applied to investigate and evaluate allegations of fraud and collusion; and factors commonly weighed when evaluating allegations of fraud and collusion.

### B.   HAGARTY'S OPINIONS ARE ADMISSIBLE AND HELPFUL.

Supported by a single sentence, RJF baldly asserts without support that Hagarty's testimony is not helpful to the trier of fact because Hagarty did not reach an opinion on the ultimate question of whether Burstein acted dishonestly.  (D.E. 127, pp. 17-19).  Hagarty did not offer such an opinion because any such opinion is inadmissible as it infringes on the role of the jury.  *U.S. v. Long*, 300 F. App'x 804, 814–15 (11th Cir. 2008) (statement that company "was an artifice or scheme to defraud" was "plainly inadmissible"); *U.S. ex rel. Armfield v. Gills*, No. 07-cv-2374, 2013 WL 371457, at *3 (M.D. Fla. Jan. 30, 2013) (expert "not be permitted to … testify to whether Defendants committed Medicare fraud or fraud in general"); *Clarke v. Healthsouth*, No. 14-cv-778, 2021 WL 129821, at *6 (M.D. Fla., Jan. 14, 2021) (excluding expert witness from opining on whether defendant acted "fraudulently").

Rather than interfering with the jury's role, Insurers disclosed Hagarty to assist the jury by explaining to them common indicia of fraud and reasonable investigatory techniques used to

---

[4] RJF relies upon *Rosado v. Deters*, 5 F.3d 119 (5th Cir. 1993) to argue that Hagarty's prior compliance experience is outdated. (D.E. 127, p. 8). *Rosado* excluded an accident reconstruction expert solely because he had not practiced for twenty-five years, had not taken any refresher courses, and admitted that he could not establish the bases for his opinion. *Id*. at 124. That is not the case here, as Hagarty is a certified fraud examiner with over twenty years of experience investigating white collar crimes. (D.E. 127-1, pp. 7-8). RJF ignores Hagarty's vast experience including, among others, the investigations into the Bernie Madoff securities fraud scheme and a multi-year mortgage fraud scheme. *Id*.

10

evaluate the existence of dishonesty and collusion.  Unlike opinions on the ultimate question of whether collusion and dishonesty exist, Hagarty's opinions are admissible because indicia of fraud/collusion and weighing allegations of such conduct are beyond the common knowledge of a lay juror.  Courts commonly hold such opinions to be admissible because they are helpful to the jury in weighing allegations of fraud.  *Perlman*, 2021 WL 2592175 at *1; *Coquina Inv.,* 2011 WL 4949191, at *4; *see also Branch Banking & Trust Co. v. Witmeyer*, No. 10-cv-55, 2011 WL 3297682, at *9 (E.D. Va. Jan. 6, 2011); *New England Petroleum v. Daibes Oil, LLC*, No. 14-cv-726, 2018 WL 1358819, at *7 (D. N.J. Mar. 16, 2018); *Jennings v. U.S.,* 2005 WL 1387987, at *3 (S.D.N.Y. June 6, 2005).

This Court upheld the admissibility of an analogous opinion less than six months ago in *Perlman*.  In that case, the plaintiff disclosed a certified fraud examiner to offer an opinion on specific circumstances that exhibited indicia of fraud.  The defendant challenged the admissibility and helpfulness of such an opinion, but this Court rejected that challenge: "Provided that Defendants properly qualify Kapila, he may testify about his observations made during the forensic accounting investigation and identify the specific circumstances that, in his expert opinion, exhibited indicia of fraud."  2021 WL 2592175, at *1.

*Coquina Investments* reached the same conclusion. In that case, a defrauded investor sued a bank alleging that it facilitated a Ponzi scheme.  In support of that claim, the defendant disclosed an expert to offer opinions on "red flags" of fraud.  The plaintiff sought to exclude such opinions as "unhelpful" to the jury.  While the court acknowledged that an expert cannot weigh facts and opine on the existence of fraud, the court allowed the expert to identify indicia of fraud: "I also find that Lessner's opinions regarding due diligence would be helpful to the jury. Whether Coquina adequately performed its due diligence and failed to identify or recognize certain 'red flags' are matters beyond the understanding of the average lay person."  2011 WL 4949191, at *4.

Hagarty's opinions track the decisions in *Perlman* and *Coquina*.  As in those cases, Hagarty reaches the conclusion that RJF "…discounted (or ignored) exculpatory evidence reflecting wide-ranging knowledge and approval of the transactions they now characterize as dishonest."  (D.E. 127-1, p. 9).  He then supports that conclusion and will explain to the jury how RJF's allegations fail to account for exculpatory factors – such as Burstein's disclosures about Quiros's accounts and transactions to his supervisor, in-house counsel, the AML department, and employees in other departments; Burstein's termination of the relationship with Quiros when it no longer served

11

Raymond James; processing and approval of Quiros's allegedly fraudulent transactions by other employees and supervisors; and Burstein's testimony before the SEC and disclosure to in-house counsel. (*Id.* at p. 10). A jury unfamiliar with fraud may not recognize these factors as inconsistent with fraud/collusion and why these factors undermine RJF's claim. That is why this Court admitted analogous opinions in *Perlman* and *Coquina*.

RJF criticizes Hagarty for failing to opine on whether Burstein acted dishonestly and colluded with Quiros, but as this Court recognized in *Coquina* an expert cannot opine on that issue. Accordingly, the fact that Hagarty did not reach an opinion on whether Burstein acted dishonestly does not negatively impact the admissibility of his opinion, but instead reflects faithful adherence to this Court's precedent. That is why *New England Petroleum* considered and rejected that very argument. In that case, the expert offered opinions on the indicia of fraud, without offering an opinion on whether fraud in fact existed. Like RJF, the movant argued that the failure to reach an opinion on whether fraud existed rendered the expert's opinion inadmissible. The district court rejected that argument as "meritless." 2018 WL 1358819, at *6. The district court admitted the opinion because while an expert may not opine on the ultimate question of whether a party engaged in fraud, the expert may assist the jury to identify indicia of fraud:

> Accordingly, although the Spector Defendants contend that Love refused to opine that the Spector Defendants had committed fraud, Love's true contention was that whether the Spector Defendants are in fact guilty of fraud is a question for the jury. For the same reason, Love chose to opine on whether "indicia" of fraud existed in the present case, rather than conclude fraud occurred. The Court does not find that such qualifications make Love's opinion so speculative as to render it excludable.

*Id.* at *7.

Unlike RJF and its experts, Insurers and Hagarty do not seek to infringe on the jury's role as the ultimate arbiter of fact. Instead, Insurers disclosed Hagarty – an experienced investigator with expertise identifying indicia of fraud and collusion – to assist the jury in understanding the context of RJF's claim, factors suggestive of fraud/collusion, and factors inconsistent with fraud/collusion. Such expertise will assist the jury in its evaluation of RJF's allegations and are, under this Court's precedent, the proper subjects of admissible expert opinion.

## C. HAGARTY RELIED UPON RELIABLE METHODS DERIVED FROM HIS EXPERIENCE.

Citing irrelevant cases involving distinguishable opinions,[5] RJF attempts to nail a square peg in a round hole by relying largely upon scientific expert cases in asserting that Hagarty must perform testing, or consult relevant publications or studies, to reach his conclusions. (D.E. 127, pp. 13-14). Hagarty explained his methodology and basis for his opinions in his report.  As detailed therein, Hagarty explained common techniques employed to investigate allegations of fraud – detailing how an investigation into such allegations must be objective, apply a healthy sense of skepticism, look at facts from the accused perspective, consider contemporaneous communication (as memories faded), and organize information chronologically. (D.E. 127-1, p. 9).

That methodology – derived from years of experience – provides a reliable basis for Hagarty's opinions.  Since Hagarty's opinions are based upon experience, and not scientific principles, whether they can be "tested" is beside the point; Hagarty must explain how his experience leads to his conclusions. *Frazier*, 387 F.3d at 1261; *McClain v. Metabolife Internat'l, Inc.*, 401 F.3d 1233, 1237 (11th Cir. 2005); *U.S. v. Brown*, 415 F.3d 1257, 1268 (11th Cir. 2005). Hagarty clearly does so. His report addresses how his experience leads to his conclusions and provides a detailed explanation as to what a reasonable investigator considers under each different analysis of certain facts and why the reasonable investigator considers those items. (D.E. 127-1, pp. 12-50). Thus, Hagarty's testimony is reliable when considered under the appropriate standard.

RJF intends to ask the jury to weigh complex financial transactions and to reach the conclusion that a financial advisor dishonestly colluded in a fraud.  Hagarty cannot and will not offer any opinion on whether the financial advisor acted dishonestly or colluded with Quiros. Instead, he will assist the jury in its consideration of the case by explaining how investigators commonly evaluate allegations of dishonesty, and the indicia of fraud.  Such opinions are admissible and will be helpful to the jury in evaluating RJF's allegations.

RJF attempts to persuade the court by criticizing Hagarty's analysis and falsely accusing him of applying a standard he could not define.  In an effort to manufacture a motion, it falsely alleges that Hagarty could not define "reasonable investigatory techniques." (D.E. 127, p. 11). In

---

[5] RJF cites *Serrano v. American Airlines, Inc.*, No. 15-23382-Civ, 2016 WL 6600499 (S.D. Fla. Nov. 8, 2016) and *Kirstein v. Parks Corp.*, 159 F.3d 1065, 1067 (7th Cir. 1998), but those cases involved scientific opinions not supported by testing or publications. Hagarty's opinions contrast those within *Serrano* and *Kirstein*. Hagarty is not providing scientific opinions that can be tested. He provides nonconclusory opinions, based upon his years of experience investigating dishonest and collusive acts.

fact, Hagarty fully describes what he means by "reasonable investigatory techniques" as "techniques that are commonly employed in investigations." (D.E. 127-2, 82:01-83:07). While RJF criticizes that definition, any such criticisms go to the weight of the testimony, not its admissibility.

It is well-settled that the district court's gatekeeper role under *Daubert* "is not intended to supplant the adversary system or the role of the jury." *Allison v. McGhan*, 184 F.3d 1300, 1311 (11th Cir. 1999). In other words, it is not the role of the trial court to make conclusions about the persuasiveness of the expert's opinions, rather, "[*v*]*igorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [debatable] but admissible evidence***.**" *Daubert*, 509 U.S. at 596 (emphasis added). Challenges to assumptions made by an expert, as well as challenges to the expert's opinions, go to the weight and credibility of the expert's testimony, not to its admissibility. *Ward v. Carnival Corp.*, No. 17-24628-CN, 2019 WL 1228063, at *7 (S.D. Fla. Mar. 14, 2019). "Indeed, 'in most cases, objections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility.'" *Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011) (*quoting Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1188 (9th Cir. 2002)); *see also Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1345 (11th Cir. 2003) (noting that "[n]ormally, failure to include variables will affect the analysis' probativeness, not its admissibility").[6]

RJF cites to *Benner v. NCL (Bahamas) Ltd.,* for support of the proposition that "[p]referred expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." No. 15-20585-civ, 2016 WL 11547583, at *4 (S.D. Fla. April 8, 2016). In that case, the court recommended excluding part of an expert opinion stating the plaintiff was pushed through a door when the jury could see the same through a video capturing the incident. *Id.* The court determined that the expert's opinion regarding whether "the passengers' actions whatever they were (be it pushing, lifting, or some other action), were in fact a *decisive factor* in Plaintiff's fall" was helpful to the trier of fact. *Id.* Here, Hagarty opines on

---

[6] RJF's motion cites to numerous cases on the reliability of an expert's testimony based upon the scientific methodology of an expert. (D.E. 127, pp. 12-13). Hagarty opines on whether RJF and Urcia employed reasonable investigatory techniques commonly employed to objectively weigh allegations of dishonesty and collusion. (D.E. 127-1, p. 9). Because Hagarty's opinions are derived from his experience (not scientific methodology), RJF's cases are irrelevant.

common indicia of fraud and reasonable investigatory techniques used to evaluate the existence of dishonesty and collusion. These are not simple observations based on facts that the jury can see through a video or anywhere else. Similar to the helpful testimony in *Benner,* Hagarty opines on how to identify *decisive factors* in evaluating the existence of dishonesty and collusion.

Hagarty applied his documented experience in law enforcement and compliance to this case, as a means of assisting the jury identify indicia of fraud and collusion and to evaluate whether RJF's allegations are the product of recognized investigatory techniques (or subjective perspective designed to manufacture an insurance claim).  To the extent that RJF seeks to criticize Hagarty's experience, it can do so through cross-examination.  That criticism does not, however, provide a basis for exclusion of his opinions.

   **D.**      **HAGARTY'S OPINIONS ARE ADMISSIBLE TO REBUT RJF'S PURPORTED EXPERT.**

RJF disclosed an expert, Urcia, to opine on whether Burstein acted dishonestly.  Because Urcia simply narrates RJF's theory of coverage and infringes on the role of the jury, Insurers have moved to exclude his opinion.  Without waiving their objections to Urcia's opinion, Insurers alternatively disclosed Hagarty in response to Urcia and to rebut his opinions.  RJF never addresses Hagarty's direct rebuttal of Urcia's opinions or explains why Hagarty cannot directly rebut his opinions because RJF cannot viably admit Urcia's opinions while objecting to the admission of Hagarty's opinions.

As reflected in Urcia's report, RJF has proffered Urcia to purportedly opine on whether Burstein acted dishonestly. Urcia does not offer such testimony based upon any specialized knowledge of bonds or insurance. (Exh. 1, pp. 261:2-4; 261:17-262:2; 339:14-18.) Instead, Urcia subjectively interpreted facts RJF cherry-picked (*Id.* at pp. 338:23-339:7), weighed the credibility of witnesses he never met (*Id.* at pp. 63:3-6 and 116:5-10), and narrated a conclusion RJF spoon-fed to him.  While such opinions are inadmissible for the reasons detailed in Insurers' motion to exclude, RJF cannot offer Urcia and object to Hagarty's opinions because Hagarty expressly responds to Urcia's opinions and explains that the methodology underlying his opinions deviates from commonly applied investigatory techniques.

As explained in Hagarty's opinion, Hagarty evaluated Urcia's opinions and methodology underlying his opinions and reached the conclusion that Urcia reached an unsupported and unreliable conclusion:

> ***While*** Raymond James and ***Mr. Urcia concluded that Burstein committed dishonest acts and colluded with Quiros***, ***their approach deviated from reasonable investigatory techniques*** designed to objectively weigh whether Burstein acted dishonestly and colluded with Quiros in that they failed to factor in the totality of circumstances; Raymond James's policies and procedures; knowledge and approval of Burstein's supervisor (Frank Amigo) and other Raymond James personnel; review and approval by Raymond James's Anti-Money Laundering ("AML") department; and disclosure to and approval from Raymond James's management and legal department. ***Thus, in my opinion, their conclusions are unsupported and unreliable.***

(D.E. 127-1, pp. 9-10) (emphasis added).  RJF never addresses that opinion, let alone explains how it can reasonably object to the admission of a witness to challenge the reliability of its own expert and the methodology its own expert applied.  It cannot do so based upon an alleged inexperience with insurance policies and financial institution bonds because Urcia lacks any such experience:

> Q:    So would you agree that you have no expertise in financial institution bonds or insurance?
> A:    That would be correct.

(Exh. 1, pp. 261:17-262:2.) Nor did Urcia even attempt to educate himself. Incredibly, he did not even read the Bonds themselves: "I didn't read the bond." (*Id.* at pp. 339:14-18; 261:2-4.).

***

Insurers disclosed Hagarty, a Certified Fraud Examiner and experienced fraud investigator, to assist the jury in explaining the indicia of fraud and collusion, and flaws in the methodology RJF applied when accusing Burstein of dishonesty.  Such opinions are admissible, reliable and helpful under this Court's precedent as it will assist the jury in understanding a subject beyond the knowledge of a lay juror.  Alternatively, to the extent that the Court admits RJF's expert (Urcia), Hagarty's response to Urcia's opinions are the proper subject of a rebuttal opinion as Hagarty addresses and responds to flaws in Urcia's methodology.

## II.    RESSLER OFFERS ADMISSIBLE EVIDENCE OF INSURANCE PRACTICES.

The Bonds are written on a "discovery" basis – meaning that they apply to loss first discovered during the bond period. (D.E. 39-1, p. 53). The Bonds define Discovery as occurring "when the Vice President of Corporate Insurance and/or Legal Department of the Insured first becomes aware of facts which would cause a reasonable person to assume that a loss of a type covered by this bond has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then

16

be known." (*Id.*). While RJF alleges that it provided notice of its claim in 2016 after a Receiver and investors filed suit, RJF knew about the conduct it now characterizes as dishonest long before those lawsuits.

Insurers deny that Burstein acted dishonestly, but if RJF's allegations are true, Discovery occurred before the inception of the Bonds because RJF's Legal Department knew about the conduct it now characterizes as dishonest, at the latest, in March 2014. For example, RJF's complaint alleges that Burstein colluded with Quiros by allowing him to use partnership funds to purchase the Jay Peak Resort, despite a directive prohibiting such a transaction: "Burstein then set in motion Quiros' and his scheme, and began facilitating Quiros' use of limited partnership assets to fund Q Resorts' purchase of Jay Peak." (D.E. 39, ¶ 36). Burstein openly disclosed that transaction in testimony before the SEC on March 27, 2014.  RJF's Associate General Counsel, Barracca, attended Burstein's SEC examination and based upon that testimony, acknowledged learning that:

- "...the funds used to purchase the ski resort and other assets were derived from EB-5 assets, EB-5 investments" (Exhibit 3, Vol. II of Barracca Dep., p. 10:21-23);

- "...that Burstein was testifying that investor assets were put up for the purchase of the Jay Peak resort" (*Id.* at p. 11:12-16);

- "...Raymond James issued a margin loan secured by the funds MMSI (sic) transferred to Raymond James simultaneously with the transaction..." (Exhibit 5, Vol. I of Barracca Dep., pp. 84:22-85:2); and

- Burstein recalled the seller advising that investor funds could not be used as collateral for a margin loan. (*Id.* at 88:2-20).

Barracca – and, thus RJF's legal department – was aware of the very transactions RJF now paints as corrupt by, at the latest, March 27, 2014.

Insurers challenge RJF's inconsistency, arguing that knowledge of the conduct RJF now characterizes as dishonest automatically constitutes Discovery – meaning that any claim is subject to the Bonds in effect, at the latest, in 2014.  (D.E. 129, pp. 22-24).  However, to the extent that the Court finds a question of fact, Insurers proactively disclosed Ressler as an expert.  It did so because RJF intends to suggest to the jury that an insured can sit idle while aware of conduct it intends to later rely upon to support its claim.  A jury unfamiliar with insurance could be confused by RJF's tactics and wrongly perceive such conduct is normal and customary – when such conduct

is in fact contrary to recognized insurance practices.

Therein lies the relevance of Ressler's insurance expertise.  Ressler has experience working for financial institutions, conducting investigations into incidents that may implicate insurance and deciding how and when to report such incidents.  He can therefore educate the jury on normal and customary insurance practices within financial institutions and whether it is normal and customary for a financial institution to report a claim upon learning of conduct it may later rely upon to support a claim.  That subject is outside the scope of a lay jury's common knowledge and directly relevant to RJF's intended argument – rendering Ressler's opinions relevant and helpful.  RJF's arguments to the contrary contravene the record.

**A.    RESSLER IS QUALIFIED TO PROVIDE THE PROPOSED EXPERT TESTIMONY AND HIS TESTIMONY IS RELIABLE.**

RJF's critique of Ressler's qualifications focuses on an immaterial fact – namely that he is not an attorney. (D.E. 127, pp. 4, 12). Ressler is not, however, offering any opinions that require a law degree, as he is not seeking to opine on a legal duty.  Instead, Ressler opines about whether, and when, RJF should have provided ***notice*** to the Insurers of a potential claim based upon what RJF claims is dishonest conduct. (D.E. 127-3, p. 7). Ressler has over 15 years of relevant experience in the financial industry. (D.E. 127-3, pp. 7-8, 21-22). It does not matter whether Ressler is an attorney. Ressler opines about the internal operations of a broker/dealers and how they decide whether to provide notice to an insurer.  He does not opine how RJF's Legal Department should have performed its legal duties – only on whether notice should have been provided to the Insurers to preserve RJF's claim. (D.E. 127-3, p. 7). Thus, having a bar license is not a necessary predicate for his opinions.

RJF tries to paint the dispute in legal terms, misleadingly suggesting that Discovery is tied to allegations of "loss of a type covered by this bond."[7]   This is not a matter of law, but logic.  RJF cannot now accuse Burstein of dishonesty, while denying that knowledge of such transactions constitutes Discovery. Either such conduct is not dishonest (in which case RJF is not entitled to coverage) or it is dishonest (and thus constitutes Discovery and triggers the required timely notice to the Insurers, which was not provided). *Royal Trust Bank v. Nat'l Union Fire Ins. Co*., 788 F.2d

---

[7] RJF also challenges Ressler's reliability based upon his scope of opinions as compared to the Bonds' Discovery language. (D.E. 127, pp. 16-17). Just because RJF interprets the Bonds' language one way does not mean Ressler cannot opine on whether RJF needed to provide notice under a similar, but different, interpretation. (D.E. 127-4, pp. 115:09-116:22).

719, 721 (11th Cir. 1986); *Utica Mut. Ins. Co. v. Fireman's Fund Ins*., 748 F.2d 118, 123 (2d Cir. 1984); *Alfalfa Elec. v. Travelers Indem. Co.*, 376 F. Supp. 901, 906 (W.D. Okla. 1973); *St. Paul Fire & Marine Ins. Co. v. Bank of Stockton*, 213 F. Supp. 716, 719–21 (N.D. Calif. 1963); *USLIFE Savings & Loan Assoc. v. Nat'l Sur. Corp*., 115 Cal. App. 3d 336, 344–45 (Cal. Ct. App. 1981).

Ressler does not and will not offer a legal opinion, but he can explain to jury the practical handling of insurance claims and why an insured who desires to preserve a claim will immediately report conduct that it may later cite as a basis for coverage.  (D.E. 127-3, pp. 14, 17-19).  Ressler's compliance experience qualifies him to testify about whether a reasonable insured, upon learning of facts it characterizes as dishonest, would immediately provide notice or await lawsuits. Ressler's knowledge is beyond the understanding of the average citizen – individuals likely to be unfamiliar with commercial insurance policies and the decision-making process underlying the decision to provide notice of a claim under a commercial insurance policy. (D.E. 127-4, pp. 97:16-21, 108:07-109:01).

RJF further contends that Ressler is not qualified to testify as an expert in this matter due to his lack of experience with fidelity bonds and testifying about fidelity bonds. (D.E. 127, p. 10). This argument applies equally to RJF's experts – Urcia, Grumke, and Baez. None of those expert have any experience with financial institution bonds, but RJF nonetheless disclosed them as experts.  RJF never explains why it can introduce experts without such experience, but then argue that such experience is a minimum qualification for Ressler.[8]  That inconsistency aside, RJF's argument fails because Ressler (unlike RJF's experts) has experience with fidelity bonds. (D.E. 127-4, pp. 97:16-21,111:06-112:07).

Given the subject matter of Ressler's proposed testimony, he has sufficient credentials and knowledge beyond the understanding of the average citizen. (D.E. 127-3, pp. 21-22). Moreover, his opinions are reliable because he explains how his experience forms the basis for his opinions. (*Id*. at pp. 10-19). The Insurers retained Ressler solely as a rebuttal expert. To the extent that RJF's expert, Grumke, is permitted to testify on this issue then Ressler should be permitted to rebut his opinions, and methodology.

### B.   RESSLER'S PROPOSED EXPERT TESTIMONY IS HELPFUL TO THE JURY AND WILL NOT CONFUSE OR MISLEAD THE JURY.

---

[8] To the extent that the Court finds that Ressler's experience with fidelity bonds is a basis to exclude his testimony, then it must also exclude the testimony of Urcia, Grumke, and Baez.

RJF contends that Ressler's testimony is not helpful to the jury because his testimony is disconnected from the language of the Bonds. (D.E. 127, p. 18). This argument, however, ignores the fact that Ressler was offered as a rebuttal expert designed to address and respond to arguments RJF's expert, Clay Grumke, offered.   Insurers have moved to exclude Grumke's opinions. However, to the extent that the Court admits Grumke's opinions, Ressler's opinions are necessarily admissible and helpful too.

RJF seeks to offer Grumke to place his imprimatur on its untimely notice and inaction in the face of conduct it now characterizes as dishonest. In effect, it seeks to admit his testimony to suggest that an insured can disclaim dishonesty and later contradict itself by accusing an employee of dishonesty based upon conduct it long ago uncovered.  Such an opinion is inadmissible, but to the extent that the Court allows that opinion, Ressler's opinions are admissible because he directly addresses and rebuts Grumke's premise – offering an opinion that a reasonable insured following industry practices would provide notice of a claim at the time of learning of potential dishonesty. (D.E. 127-3, p. 8). That opinion directly addresses and rebuts Grumke's opinion and therefore is admissible for that purpose.  RJF's critiques about the opinions go to their weight, not their admissibility.

## CONCLUSION

Insurers disclosed two qualified experts to offer expert opinions on subjects beyond the knowledge, skill and expertise of a lay jury.  Their opinions were directed to the heart of RJF's claim and are both reliable, relevant and admissible.  For the reasons set forth herein, Insurers ask this Court to deny Plaintiff's motion and for all other relief the court deems necessary and appropriate.

Dated: August 20, 2021                    Respectfully submitted,

                                          *s/ Chantel Wonder*
                                          Chantel C. Wonder
                                          Florida Bar No. 0087601
                                          **GORDON REES SCULLY MANSUKHANI**
                                          Miami Tower
                                          100 SE Second Street, Suite 3900
                                          Miami, FL 33131
                                          Telephone: 813-523-4945

Facsimile: 813-377-3505
cwonder@grsm.com

and

Scott L. Schmookler, Esq.
Sarah Riedl Clark, Esq.
**GORDON REES SCULLY MANSUKHANI**
One North Franklin, Suite 800
Chicago, IL 60606
Telephone: 312-980-6779
sschmookler@grsm.com
srclark@grsm.com

*Counsel for Federal Insurance Company*


*/s/ Ryan J. Weeks*
E.A. "Seth" Mills, Jr., Esq.
Florida Bar No. 339652
Ryan J. Weeks, Esq.
Florida Bar No. 5 7 8 9 7
**MILLS PASKERT DIVERS**
100 N. Tampa Street, Suite 3700
Telephone: (813) 229-3500
Facsimile: (813) 229-3502
smills@mpdlegal.com
rweeks@mpdlegal.com
csoltis@mpdlegal.com

*Counsel for Travelers Casualty and Surety*
*Company of America & St. Paul Mercury Insurance*

*/s/ James M. Kaplan*
James M. Kaplan
Florida Bar No. 921040
**KAPLAN ZEENA LLP**
2 South Biscayne Boulevard, Suite 3050
Miami, Florida 33131
Telephone: (305) 530-0800
Facsimile: (305) 530-0801
James.kaplan@kaplanzeena.com
Elizabeth.salom@kaplanzeena.com
service@kaplanzeena.com

and

Michael Keeley
*Admitted Pro Hac Vice*
John R. Riddle
*Admitted Pro Hac Vice*
**Clark Hill Strasburger**
901 Main Street, Suite 6000
Dallas, Texas 75202-3794
Telephone: (214) 651-4718
Facsimile: (214) 659-4121
mkeeley@clarkhill.com
jriddle@clarkhill.com
*Counsel for Beazley Insurance Company, Inc.*

*/s/ Dustin C. Blumenthal*
Dustin C. Blumenthal
Florida Bar No. 0149871
**Goldberg Segalla**
222 Lakeview Avenue, Suite 800
West Palm Beach, FL 33401
Telephone: (561) 618-4485
Facsimile: (561) 618-4549
dblumenthal@goldbergsegalla.com
lparker@goldbergsegalla.com

and

Stephen N. Dratch, Esq.
*Admitted Pro Hac Vice*
**Franzblau Dratch, P.C.**
354 Eisenhower Parkway
Livingston, New Jersey 07039
Telephone: (973) 992-3700

*Counsel for Great American Insurance Company*