**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO: 20-21707-CV-MARTINEZ-BECERRA**

**RAYMOND JAMES FINANCIAL, INC.,**

       **Plaintiff,**

**vs.**

**FEDERAL INSURANCE COMPANY;**
**TRAVELERS CASUALTY AND SURETY**
**COMPANY OF AMERICA; GREAT**
**AMERICAN INSURANCE COMPANY;**
**BEAZLEY INSURANCE COMPANY, INC.;**
**AND ST. PAUL MERCURY INSURANCE**
**COMPANY**

       **Defendants.**

_____

**DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERTS AND**
**MEMORANDUM OF LAW IN SUPPORT THEREOF**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

OVERVIEW ........................................................................................................................ 3

STANDARD OF REVIEW .................................................................................................. 5

ARGUMENT ....................................................................................................................... 7

   I.   URCIA IMPERMISSIBLY SEEKS TO ADVOCATE RJF'S THEORY OF COVERAGE BASED UPON HIS SUBJECTIVE VIEW OF THE EVIDENCE. ........................... 7

     **A.**   Urcia Is Unqualified ............................................................................... 7

     **B.**   Urcia Is An Impermissible Factual Narrator ................................................. 9

     **C.**   Urcia Seeks To Offer Impermissible Legal Conclusions ........................................... 11

   II.   RJF PRODUCES BAEZ TO CIRCUMVENT THE TERMS OF THE BONDS.......... 12

   III.   GRUMKE INFRINGES ON THE JURY'S ROLE AS ARBITER OF FACT. ........... 16

CONCLUSION.................................................................................................................... 18

CERTIFICATE OF CONFERENCE.................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*3M Company v. Nat'l Union Fire Ins. Co.,* 858 F.3d 561, 567-68 (8th Cir. 2017) ...................... 12

*ABCO Premium Fin. LLC v. Am. Int'l Group, Inc.*, No. 11-23030-CIV, 2012 WL 3278628, at
  *8-10 (S.D. Fla. Aug. 9, 2012) ..................................................................................................... 16

*Alfalfa Elec. v. Travelers Indem. Co.*, 376 F. Supp. 901, 906 (W.D. Okla. 1973) ...................... 16

*Amari Co. v. Burgess*, 07-cv-01425, 2012 WL 5389787, at *15 (N.D. Ill., Nov. 2, 2012).......... 10

*Asokan v. Am. Gen. Life Ins. Co.*, 15-cv-2048, 2017 WL 4542889, at *2 (M.D. Fla., Aug. 29,
  2017) .......................................................................................................................................... 11

*Beach Comm'y. Bank v. St. Paul Mercury Ins. Co.*, 635 F. 3d 1190, 1195 (11th Cir. 2011)......... 7

*Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)................................................. 8

*Burkhart v. Washington Metropolitan Area Transit Authority,* 112 F.3d 1207, 1212-13 (D.C. Cir.
  1997) .......................................................................................................................................... 18

*City of Tuscaloosa v. Harcros Chems., Inc.,* 158 F.3d 548 (11th Cir. 1999) .............................. 12

*Clarke v. Healthsouth Corp.*, 14-cv-778, 2021 WL 129821, at *6 (M.D. Fla. Jan. 14, 2021)..... 10

*Cook ex rel. Estate of Tessier v. Sheriff of Monroe County*, 402 F.3d 1092, 1113 (11th Cir.2005)6

*Cooper Indus. v. Nat'l Union Fire Ins. Co.*, 876 F.3d 119, 129-130 (5th Cir. 2017).................. 12

*Cordoves v. Miami-Dade Cty.*, 104 F. Supp. 3d 1350, 1358 (S.D. Fla. 2015) .............................. 5

*Corwin v. Walt Disney*, 475 F.3d 1239, 1250 (11th Cir. 2007) ....................................................... 5

*Cotromano v. United Tech.*, 13-cv-80928, 2018 WL 2047468 at *14 (S.D. Fla., May 2, 2018) ... 5

*Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597 (1993) .................................................... 5, 6

*Emerald Investments Ltd. P'ship v. Allmerica Fin. Life Ins. & Annuity Co.,* 516 F.3d 612, 617
  (7th Cir. 2008)........................................................................................................................... 14

*Everett v. Georgia Pacific Corp.*, 949 F. Supp. 856, 858-59 (S.D. Ga. 1996) ............................ 17

*Everhart v. Drake Management*, 627 F.2d 686, 690-91 (5th Cir. 1980) ........................................ 8

*Furmanite Am., Inc. v. T.D. Williamson*, 506 F.Supp.2d 1126, 1130 (M.D. Fla. 2007) ............... 6

*GST Telecommunications v. Irwin*, 192 F.R.D. 109, 111 (S.D. N.Y. 2000) ................................ 10

*Haddad v. Rev Bahamas, Ltd.*, 589 F. Supp. 2d 1302, 1308 (S.D. Fla. 2008) ..................... 14, 15

*Hendrix ex rel G.P. v. Evenflo*, 609 F.3d 1183, 1194 (11th Cir. 2010) ......................................... 5

*Herman v. Seaworld Parks & Entertainment*, 14-cv-3028, 2017 WL 1304302, at *5 (M.D. Fla.,
  Mar. 10, 2017)........................................................................................................................... 11

*Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005)............. 9

*In re Air Crash Disaster at New Orleans, La.,* 795 F.2d 1230, 1233 (5th Cir. 1982).................. 18

*In re Fosamax Prod. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) ............................. 9

*In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004) .............................. 9

*In re Seroquel Prod. Liab. Litig.*, 06-md-1769, 2009 WL 3806436, at *4 (M.D. Fla. July 20,
  2009) ............................................................................................................................................ 9

*Jack v. Glaxo Wellcome, Inc.*, 239 F. Supp. 2d 1308, 1314–16 (N.D. Ga. 2002) ........................ 5

*Kaufman v. Pfizer Pharms., Inc.*, 02-cv-22692, 2011 WL 7659333, at *9, n.8 (S.D. Fla. Aug. 4,
  2011) .......................................................................................................................................... 11

*King v. Cessna Aircraft Co.*, 03-cv-20482, 2010 WL 1980861, *5 (S.D. Fla., May 18, 2010) ..... 6

*King v. Cessna Aircraft Co.,* 03-cv-20482, 2010 WL 1980861, at *6 (S.D. Fla. May 18, 2010) 11

*Kleiman v. Wright*, 18-cv-80176, 2020 WL 6729362, at *23 (S.D. Fla. Nov. 16, 2020)............... 6

*Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1179 (11th Cir. 2019)................................ 6

*Lock Realty v. U.S. Health,* 707 F.3d 764, 771 (7th Cir. 2013)............................................ 14, 15

*McClain v. Metabolife Internat'l, Inc.*, 401 F.3d 1233, 1244 (11th Cir. 2005).............................. 6

iii

*Meterlogic, Inc. v. KLT, Inc.*, 368 F.3d 1017, 1019 (8th Cir. 2004) ........................................ 14, 15

*Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) ..................... 2, 3, 6

*Pyznski v. Thomas & Betts, Corp.*, 16-cv-1998, 2018 WL 3390243, at *3 (M.D. Fla., June 15, 2008) .......................................................................... 17, 18

*Ramjeawan v. Bank of Am.*, 09-cv-20963, 2010 WL 1645097, at *1 (S.D. Fla., Apr. 21, 2010). 11

*RealPage v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 19-cv-1350, 2021 WL 718366 at *8 (N.D. Tex., Feb. 24, 2021) .................................................................. 12

*Royal Trust Bank, N.A. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 788 F.2d 719, 721 (11th Cir. 1986) .......................................................................... 16

*Ruiz v. Safeco Insurance Company of Illinois*, No. 18-21036-CV, 2019 WL 2061093 at *4 (S.D. Fla. 2019) .......................................................................... 18

*Simon v. Healthsouth of Sarasota Ltd. P'ship*, 12-cv-236, 2021 WL 268496, at *4 (M.D. Fla. Jan. 27, 2021) .......................................................................... 10

*St. Louis Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, 18-cv-21365, 2019 WL 2012966, at *8 (S.D. Fla. Mar. 11, 2019), *aff'd sub nom.*, 2021 WL 3046818 (11th Cir. July 20, 2021) .............. 2, 10

*St. Paul Fire & Marine Ins. Co. v. Bank of Stockton*, 213 F. Supp. 716, 719–20 (N.D. Cal. 1963) .......................................................................... 16

*Tindall v. H & S Homes, LLC*, 10-cv-044, 2012 WL 3241885, at *13 (M.D. Ga. Aug. 7, 2012) 10

*U.S. ex rel. Armfield v. Gills*, 07-cv-2374, 2013 WL 371457, at *3 (M.D. Fla. Jan. 30, 2013) ... 10

*U.S. v. Brown*, 415 F.3d 1257, 1261 (11th Cir. 2005) .................................................. 6

*U.S. v. Burchfield*, 719 F.2d 356, 357 (11th Cir. 1983) ............................................. 6

*U.S. v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985) ...................................................... 5

*U.S. v. Scop*, 846 F.2d 135, 142 (2d Cir. 1988) ...................................................... 11

*Umana-Fowler v. NCL (Bahamas) Ltd.*, 49 F. Supp. 3d 1120, 1122 (S.D. Fla. 2014) ...... 6, 17, 18

*United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) ...................... 6, 14, 17

*United States v. Long*, 300 F. App'x 804, 814–15 (11th Cir. 2008) ............................... 10

*USLIFE Savings & Loan Assoc. v. Nat'l Sur. Corp.*, 115 Cal. App. 3d 336, 344–45 (Cal. Ct. App. 1981) .......................................................................... 16

*Utica Mut. Ins. Co. v. Fireman's Fund Ins.*, 748 F.2d 118, 123 (2d Cir. 1984) ..................... 16

*Winn-Dixie v. Dolgencorp*, 746 F. 3d 1008, 1028 (11th Cir. 2014) .................................. 2, 14, 15

Pursuant to the Federal Rules of Evidence 702 and 703, Federal Insurance Company, Travelers Casualty and Surety Company of America, Great American Insurance Company, Beazley Insurance Company, Inc., and St. Paul Mercury Insurance Company (collectively, the "Insurers") move this Honorable Court for an order barring Plaintiff's designated opinion witnesses from testifying at trial because they lack the necessary expertise to offer expert testimony, infringe on the role of the trier of fact, offer legal opinions and otherwise offer inadmissible testimony. In support of their motion, the Insurers submit this memorandum of law.[1]

## INTRODUCTION

Raymond James Financial, Inc. ("RJF") seeks insurance coverage under a tower of financial institution bonds ("Bonds") on the theory that its employee, Joel Burstein ("Burstein") colluded with Ariel Quiros ("Quiros") to embezzle funds from partnerships associated with the Jay Peak ski resort. (D.E. 39, First Amended Compl., ¶1). RJF's current accusations stand in stark contrast with its pre-suit representations to the Insurers. (Exhibits 1 & 2). Despite disclosure of Quiros's fraud and allegations of collusion, RJF initially denied that Burstein acted improperly – representing to the Insurers that it "does not feel that the broker/dealer, the branch manager or the financial advisor participated in the alleged fraud in the complaints" (Exh. 1, pg. 1) and "no employee has engaged in any fraudulent activity as a result of this matter." (Exh. 2, pg. 1).

However, after settling civil claims (D.E. 27, Joint Planning and Scheduling Report, ¶6), RJF reversed course and suddenly accused Burstein of dishonesty. RJF could not identify any employees willing to support its false narrative or to testify that they ever witnessed Burstein commit a dishonest act. In fact, not a single RJF fact witness deposed during discovery testified that Burstein acted dishonestly or was willing to accuse him of conspiring with Quiros.  Unable to present percipient witnesses, RJF seeks to manufacture a claim through testimony of three purported experts. (Exhs. 3-5, Reports of Steve Urcia – "Urcia", Jorge Baez – "Baez", and Clay Grumke – "Grumke").

---

[1] Insurers originally filed this motion and the related exhibits under seal on July 30, 2021. [D.E. 121]. The Court denied the motion without prejudice and required that Insurers file a motion for leave to file under seal. [D.E. 131]. On August 5, 2021, the parties filed a Joint Motion to Seal requesting the Court permit, among other things, the filing of this motion under seal. [D.E. 137]. The parties conferred and Insurers redacted portions of exhibits as requested by Plaintiff. The unredacted versions of the motion and exhibits are available to the Court under the prior filing. [D.E. 121].

RJF's designated experts do not seek to educate the jury on areas beyond the knowledge of a layperson, or to explain the nuances of the financial services industry or any other subject beyond the knowledge of a lay juror. (*Id.*) Instead, RJF seeks to use its putative experts to fill the cavernous holes in its case, and advocate its factual narrative and associated theory of coverage from the witness stand. Such tactics are not permitted under the Federal Rules of Evidence or Eleventh Circuit precedent – both of which recognize that a party cannot use an alleged expert to narrate and advocate its claim. Applying this uncontroversial governing standard, none of RJF's experts offer admissible testimony supported by relevant experience or a reliable method.

First, RJF has proffered Urcia to purportedly opine on whether Burstein acted dishonestly. (Exh. 3, ¶1). Urcia does not offer such testimony based upon any specialized knowledge of bonds or insurance. (Exh. 6, pg. 261:2-4; 261:17-262:2; 339:14-18.) Instead, Urcia subjectively interpreted facts RJF cherry-picked (*id.*, pg. 338:23-339:7), weighed the credibility of witnesses he never met (*id.*, pg. 63:3-6 and 116:5-10), and narrated a conclusion RJF spoon-fed to him (Exh. 3). Urcia admits his intent to "explain to the jury the mechanics of the fraud." (*Id.*, ¶1). Basically, RJF seeks to use Urcia to advocate its case from the witness stand. This slanted presentation of facts by someone unfamiliar with insurance is not admissible because Urcia lacks the necessary qualifications of a testifying expert, offers legal opinions and infringes on the role of the jury. Because Urcia is a paid advocate in an expert's clothing, his testimony should be excluded. *See Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990); *St. Louis Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, 18-cv-21365, 2019 WL 2012966, at *8 (S.D. Fla. Mar. 11, 2019), *aff'd sub nom.*, 2021 WL 3046818 (11th Cir. July 20, 2021).

Second, RJF disclosed Baez as a purported "damages" expert. (Exh. 4). As with Urcia, Baez lacks any experience with financial institution bonds. (Exh. 7, pg. 12:3-15.) Given his lack of relevant expertise, he made no attempt to structure his opinions in accordance with the Bonds or to compute the compensable loss (*id.*, pg. 45:7-21), as defined in the Bonds. (Exh. 4.) Baez acknowledged an ability to perform such a computation, but consciously chose not to do so because he deemed the calculation "useless." (Exh. 7, pg. 53:4-14.) Thus, RJF seeks to use an expert to circumvent the plain terms of the Bonds. Rejecting this strategy, Eleventh Circuit precedent requires exclusion of damage calculations contrary to the governing contract because such opinions are not helpful to the jury and are necessarily more prejudicial than probative. *See Winn-Dixie v. Dolgencorp,* 746 F. 3d 1008, 1028 (11th Cir. 2014).

2

Third, RJF disclosed Grumke to justify its late notice of claim. (Exh. 5). Because RJF did not provide notice when it first learned of the conduct it now characterizes as dishonest, it proffers Grumke to spin the facts and testify about how a "reasonable person" would have viewed those facts. (*Id.*, pg. 3).  Like Urcia and Baez, Grumke possesses no specialized knowledge or expertise to support his "opinion".  (Exh. 8, pg. 249:19-21).  Although he lacks any experience with financial institution bonds (*id.*, pg. 15:1-23 and 28:5-16), RJF offers him to advocate its view on whether the facts known by the RJF legal department would cause a reasonable person to conclude that Burstein was dishonest in his conduct. (Exh. 5, pg. 3-12.) Grumke does not have any percipient knowledge (Exh. 8, pg. 249:5-18), but instead seeks to interpret selected facts and narrate RJF's justification for untimely notice. (Exh. 5, pg. 3-12.) That issue is not the proper subject of expert testimony as it infringes on the role of the jury. *Montgomery,* 898 F.2d at 1541.

RJF cannot use purported experts as a substitute for lay testimony, to advocate its case from the witness stand and to circumvent the plain terms of the Bonds.  Because RJF's purported experts lack relevant expertise, seek to opine on ultimate factual questions – and weigh evidence – which the jury is perfectly capable of doing without "expert" assistance, and give opinions that admittedly do not comport with what the governing contract unambiguously mandates, their opinions should be stricken and they should be barred from testifying at trial.

### OVERVIEW

In 2008, Quiros, a third party, acquired a controlling interest in Jay Peak, a ski resort. (D.E. 39, ¶¶ 10 & 11.) The resort qualified for the federal EB-5 Immigrant Investor Program. (*Id.*, at ¶13.) Quiros marketed investments in eight partnerships relating to the resort to foreign investors. (*Id.*, at ¶¶ 13 & 17-24.) Investor funds were initially deposited at accounts held at People's United Bank and then transferred to RJF upon the issuance of an EB-5 visa. (*Id.*, at ¶15.) Quiros was the father-in-law of RJF's employee, Burstein, until 2010. (*Id.*, at ¶12.)

In 2013, the U.S. Securities and Exchange Commission ("SEC") investigated Jay Peak. (Exh. 9, pg. 21:15-17.) During these investigations, RJF's in-house counsel Mark Barracca ("Barracca") defended Burstein in a related deposition (Exh. 9, pg. 75:12-22), thereby gaining knowledge of the details of Burstein's conduct by March of 2014 (*id.*, pg. 83:3-18, 84:22-85:2, 88:2-20) – RJF learned of the "facts" that it now claims show Burstein's dishonesty back in, at the latest, 2014 and failed to give notice for more than two years. From its investigation, the SEC concluded Quiros misused partnership assets and a court-appointed receiver sued RJF for its role

in the losses suffered by the partnerships. (D.E. 27, ¶5). Approximately a year later, RJF settled with the SEC for $150 million on April 13, 2017. (D.E. 27, ¶6).

Prior to that settlement, RJF repeatedly represented to the Insurers that no fraudulent activity was committed by any of RJF's employees. (Exh. 2, pg. 1) (RJF's opinion is that "no employee has engaged in any fraudulent activity as a result of this matter"); (Exh. 1, pg. 1) (RJF "does not feel that the broker/dealer, the branch manager or the financial advisor participated in the alleged fraud in the complaints."). Contradicting its prior representations, RJF changed its tune after settling its liability and suddenly accused Burstein of dishonesty and collusion with Quiros. (D.E. 27, ¶8.)

After a thorough review, the Insurers denied coverage because, among other things: (1) RJF was unable to establish Burstein engaged in employee dishonesty covered under the Bonds; (2) RJF was unable to establish it suffered a loss of money covered under the Bonds; and (3) in the event RJF would be able to establish dishonesty, RJF failed to timely pursue its claim. (D.E. 27, ¶1.)[2] Faced with documented defenses, RJF offers three experts to advocate the basis for its claim.

First, RJF disclosed Urcia to opine that the Bonds' coverage was triggered as Burstein committed dishonest or fraudulent acts alone or in collusion with Quiros with an intent to obtain financial benefit for himself or Quiros. His opinion (Exh. 3) perfectly tracks the language of the Bonds' Fidelity Insuring Agreement Endorsement. (D.E. 39-1, Amend Fidelity Insuring Agreement Endorsement, pg. 23). Urcia does not opine on the customary practice of any industry, rather he skips that step entirely and tells the jury how to decide a dispositive issue: whether Burstein was dishonest or fraudulent. (Exh. 3, pg. 3).

Second, RJF disclosed Baez to circumvent the terms of the Bonds. (Exh. 4.) Pursuant to the terms of the Bonds, coverage is provided for the theft of property to which RJF had title, possession, or custody. (D.E. 39-1, Section 10. Ownership, pg. 18.) Baez offers a calculation that is divorced from this condition in the Bonds, as he candidly admitted. (Exh. 7, pg. 45:9-46:12.)

---

[2] Insurers asserted a series of other defenses and are moving for summary judgment on the basis that (1) RJF seeks coverage for amounts paid to settle its liability; (2) the Bonds do not cover theft from anyone—they insure direct theft from RJF; (3) Quiros did not steal funds at Raymond James; (4) RJF cannot prove that Burstein illegally withdrew funds from the Jay Peak accounts, and (5) RJF failed to make a timely claim of loss—it made its claim years after being on notice of Burstein's alleged fraudulent/dishonest actions.

Baez improperly calculated all theft of any funds on deposit at any institution. (*Id.*, pg. 45:16-26:12.)

Finally, RJF proffers Grumke, a former in-house attorney, to narrate its explanation for late notice. (Exh. 5, pg. 2.) Instead of providing notice when it learned of Burstein's alleged misdeeds back in March of 2014 (Exh. 9, pg. 83:3-18, 84:22-85:2, 88:2-20), RJF delayed notice of a claim until it received service of a formal lawsuit more than two years later. (D.E. 27, ¶¶ 4-5). To remedy this fatal flaw, RJF seeks to proffer Grumke as an "expert" on whether the facts known to RJF's legal department at the time would cause a reasonable person to assume that a covered loss had or would occur under the Bonds. (Exh. 5, pg. 3). His opinion rotely tracks the Bonds' discovery provision. (D.E.39-1, Amended Discovery Rider, pg. 53).

## STANDARD OF REVIEW

While Federal Rule of Evidence 702 allows expert testimony, an expert can only testify where: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597 (1993); *Cotromano v. United Tech.*, 13-cv-80928, 2018 WL 2047468 at *14 (S.D. Fla., May 2, 2018). The trial court acts as the "gatekeeper" to such testimony, and is "charged with screening out experts whose methods are untrustworthy or whose expertise is irrelevant...." *Corwin v. Walt Disney*, 475 F.3d 1239, 1250 (11th Cir. 2007). To facilitate that analysis, the Eleventh Circuit has established a three-part test requiring RJF[3] to prove: "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Hendrix ex rel G.P. v. Evenflo*, 609 F.3d 1183, 1194 (11th Cir. 2010).

*Qualifications*: RJF must demonstrate each of its experts is "qualified as an expert by

---

[3] The proponent of the expert bears the burden of establishing admissibility by a preponderance of the evidence. *U.S. v. Frazier,* 387 F.3d 1244, 1274 (11th Cir. 2004).

knowledge, skill, experience, training, or education." *Cordoves v. Miami-Dade Cty.*, 104 F. Supp. 3d 1350, 1358 (S.D. Fla. 2015). This analysis requires the Court to "… examine the credentials of the proposed expert in light of the subject matter of the proposed testimony." *Jack v. Glaxo Wellcome, Inc.*, 239 F. Supp. 2d 1308, 1314–16 (N.D. Ga. 2002). The expert must demonstrate knowledge of something "beyond the understanding and experience of the average citizen." *U.S. v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985). In effect, the expert must offer testimony of "the kind that enlightens and informs lay persons without expertise in a specialized field." *U.S. v. Burchfield*, 719 F.2d 356, 357 (11th Cir. 1983).

*Reliability*: An expert must also offer reliable opinions based upon documented experience or reliable sources. *Daubert*, 509 U.S. at 593–94. "Presenting a summary of a proffered expert's testimony in the form of conclusory statements devoid of factual or analytical support is simply not enough" to carry the proponent's burden. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County*, 402 F.3d 1092, 1113 (11th Cir.2005). "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert." *Id.* at 1111. When a witness relies "solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *U.S. v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004); *McClain v. Metabolife Internat'l, Inc.*, 401 F.3d 1233, 1244 (11th Cir. 2005); *U.S. v. Brown*, 415 F.3d 1257, 1261 (11th Cir. 2005). "An expert's unexplained assurance that [his] opinions rest on accepted principles" is not enough. *Furmanite Am., Inc. v. T.D. Williamson*, 506 F.Supp.2d 1126, 1130 (M.D. Fla. 2007).

*Helpfulness*: Expert testimony must assist the trier of fact. An expert witness may not tell the jury what result to reach. *Montgomery*, 898 F.2d at 1541; *see also Umana-Fowler v. NCL (Bahamas) Ltd.*, 49 F. Supp. 3d 1120, 1122 (S.D. Fla. 2014) ("merely telling the jury what result to reach is unhelpful and inappropriate."). Nor can an expert witness weigh evidence or assess the credibility of witnesses. *Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1179 (11th Cir. 2019); *Kleiman v. Wright*, 18-cv-80176, 2020 WL 6729362, at *23 (S.D. Fla. Nov. 16, 2020).

Expert testimony is helpful to the trier of fact only "if it concerns matters that are beyond the understanding of the average lay person." *Frazier*, 387 F.3d at 1262; *King v. Cessna Aircraft Co.*, 03-cv-20482, 2010 WL 1980861, *5 (S.D. Fla., May 18, 2010). In other words, "[p]roffered expert testimony generally will not help the trier of fact when it offers nothing more than what

lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262–63. "Because of the powerful and potentially misleading effect of expert evidence," courts take care not to allow misleading and prejudicial opinions to influence the finder of fact. *Id.* at 1263; *Cook ex rel. Estate of Tessier*, 402 F.3d at 1111.

ARGUMENT

**I.   URCIA IMPERMISSIBLY SEEKS TO ADVOCATE RJF'S THEORY OF COVERAGE BASED UPON HIS SUBJECTIVE VIEW OF THE EVIDENCE.**

RJF acknowledges the basic elements of its claim in its complaint – to prove that Burstein acted dishonestly and with the intent to financially benefit himself or a conspirator. (D.E. 39, ¶1.) Unable to call percipient witnesses willing to accuse Burstein of dishonesty, RJF seeks to use Urcia as a narrator. Despite lacking any insightful knowledge of the underlying facts, Urcia's purpose is obvious – to narrate and argue RJF's selective view of the facts and package its characterization of Burstein's conduct to support the conclusion that RJF suffered a covered loss.

Urcia's Report (Exh. 3) reveals RJF's strategy. He spends thirty-eight of fifty-one paragraphs (*id.* at ¶¶ 12-50) recounting facts outside his personal knowledge and a single paragraph announcing Burstein to be dishonest. (*Id.* at ¶51). The latter is intended to direct the jury to a conclusion, as his opinion directly tracks Insuring Clause 1:

| Insuring Clause 1 | Scope of Urcia Opinion |
|---|---|
| "[l]oss resulting directly from dishonest or fraudulent acts committed by an Employee, acting alone or in collusion with others, with the intent: (a) to cause the Insured to sustain such loss, or (b) to obtain financial benefit for the Employee, or another person or entity." (*Id.* at Fn. 1); (D.E. 39-1, pg. 23.) | "whether Joel Burstein committed dishonest or fraudulent acts, acting alone or in collusion with others, with the intent to cause Raymond James to sustain a loss and/or to obtain financial benefit for himself, or another person or entity." (*Id.* at ¶1.) |

Urcia makes no effort to conceal his role as a narrator – actively disclosing that RJF hired him to "explain to the jury the mechanics of the fraud." (Exh. 3, ¶1). This "expert" testimony, however, is inadmissible for three reasons.

**A.   URCIA IS UNQUALIFIED**

Urcia possesses no specialized knowledge on any relevant subject. In the words of the Eleventh Circuit, financial institution bonds are a "unique insurance instrument" that have been

"developed in response to and tested by case law."[4] Urcia has no experience with these unique instruments:

> Q:    Okay. So fair to say that you are not providing any opinions with respect to what the financial institution bond that Raymond James had says or means?
> A:    That's correct. I don't read it, and I'm not an insurance person. That's just my layperson's understanding of what firms insure themselves against, or actions.
> Q:    So would you agree that you have no expertise in financial institution bonds or insurance?
> A:    That would be correct.

(Exh. 6, pg. 261:17-262:2.) Nor did Urcia even attempt to educate himself. Incredibly, he did not even read the Bonds themselves: "I didn't read the bond." (Exh. 6, pg. 339:14-18; 261:2-4.)

Urcia confirmed his utter lack of expertise when asked to provide even a basic explanation of a financial institution bond. Revealingly, Urcia argued the first-party insurance coverage afforded by the Bonds was errors and omissions liability:

> Q.    Do you know what a financial institution bond is?
> A.    You know, roughly speaking, it's a – it's insurance against errors, omissions, and that kind of thing.  I mean, if it's the same thing.  I know at Bear we had E and O, errors and omissions, stuff.  So if we messed up, and the firm had to pay monies for acts that were either fraudulent or just mistakes or whatever, that we were insured to some extent.  So I assume that that's the same thing.  I may be wrong, I'm a layperson.  But that's what I believe it to be."

(Exh. 6, pg. 261:6-16.) This testimony is at odds with binding Fifth Circuit precedent set forth in *Everhart v. Drake Management*, 627 F.2d 686, 690-91 (5th Cir. 1980)[5], which rejected the conflation of fidelity insurance with liability insurance. The Fifth Circuit held that "[f]idelity insurance undertakes to protect the assured against loss incurred by the assured or any predetermined specified group." *Id.* at 691-92. "In contrast, liability insurance protects against claims for losses to persons or property (owned by such stranger) not a party to the contract." *Id.*

RJF cannot simply call any witness it discloses to offer opinion testimony about a "unique insurance instrument." Because insurance disputes involve unique terms, courts exclude proposed experts where they lack experience directly relevant to the disputed policy. *Travelers Prop. Cas.*

---

[4] *Beach Comm'y. Bank v. St. Paul Mercury Ins. Co.*, 635 F. 3d 1190, 1195 (11th Cir. 2011).
[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent pre-1981 decisions by the Fifth Circuit.

*Co. of Am. v. Nat'l Union Ins. Co. of Pittsburgh, Pa.*, 557 F. Supp. 2d 1040, 1051 (W.D. Mo. 2008) (excluding expert whose "training is not in this area, he has not worked in this area, [and] he is unaware of any cases that are significantly similar to this one"); *Certain Underwriters at Lloyds v. Inlet Fisheries, Inc.*, 398 F. Supp. 2d 1145, 1152-54, 2005 WL 2335310 (D. Alaska 2005), *aff'd*, 518 F.3d 645 (9th Cir. 2008) (finding expert witness who had forty-five years of experience in the insurance industry was not qualified, because he lacked experience in underwriting the type of policy at issue); *Binghamton-Johnson City Joint Sewage Bd.*, 12-cv-0553, 2015 WL 5023650 at *5–6 (N.D.N.Y. Aug. 25, 2015) (barring expert due to lack of experience in niche industry of policy at issue). Urcia's admitted lack of experience and failure to educate himself renders him unqualified to offer opinions in this case. *See, e.g., Inlet Fisheries, Inc.*, 398 F. Supp. 2d at 1152.

### B. URCIA IS AN IMPERMISSIBLE FACTUAL NARRATOR

Urcia seeks to invade the province of the jury. He does not seek to opine about unique industry standards outside the knowledge of the jury. After adopting a dictionary definition of "fraud" (Exh. 3, pg. 15, Ftn. 17), Urcia impermissibly weighed the evidence and witness credibility – with the stated goal of finding fraud:

> Q.   Did you assess the credibility of any witnesses in the depositions that you reviewed? …
> A.   Yes. (Exh. 6 at 63:3-6).
>                                  ***
> Q    Ultimately by stating that Burstein and Quiros implemented a fraudulent and dishonest scheme, aren't you weighing the evidence that you reviewed to make that determination? …
> A:   Am I weigh -- yes. (*Id.* at 116:05-10).

A party cannot use an expert to narrate its case. "'[A]n expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence.'" *In re Fosamax Prod. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (*quoting Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005)). A party may not offer a purported expert to testify to "simple inferences drawn from uncomplicated facts that serve only to buttress plaintiff's theory of the case." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004); *see also In re Seroquel Prod. Liab. Litig.*, 06-md-1769, 2009 WL 3806436, at *4 (M.D. Fla. July 20, 2009) ("Plaintiffs' counsel may not simply use these expert witnesses to provide a narrative history of [the manufacturer's] marketing and labeling practices, or to make points that are within the province of counsel, rather than an expert witness.").

*Rezulin* excluded an analogous opinion. In that case, a party proffered an expert to offer opinions about the history of regulatory events. The court excluded that testimony because the expert's proposed testimony was a "narrative of the case which a juror is equally capable of constructing." *Rezulin.*, 309 F. Supp. 2d at 551. The witness was simply an advocate for the plaintiff's theory of liability offered under the guise of expert testimony:

> Likewise, the glosses that Dr. Gale interpolates into his narrative are simple inferences drawn from uncomplicated facts that serve only to buttress plaintiffs' theory of the case. As plaintiffs' Rezulin "historian," therefore, Dr. Gale "does no more than counsel for plaintiff will do in argument, i.e., propound a particular interpretation of [defendant]'s conduct."   Accordingly, Dr. Gale's testimony relating to the "history of Rezulin" is inadmissible.

*Id.* at 551; *accord*, *GST Telecommunications v. Irwin*, 192 F.R.D. 109, 111 (S.D. N.Y. 2000) ("the Court should not shift to [expert] witnesses the responsibility to give conclusory opinions and characterizations of the business conduct portrayed.").

That Urcia seeks to couch his opinion in terms of whether he subjectively believes that Burstein acted dishonestly or acted with the intent to personally profit (Exh. 3, ¶ 1) only further demonstrates the inadmissibility of his testimony. (Exh. 6, pg. 270:9-22 and 271:16-19). Opinions about the existence of a fraud, collusion, or intent are not subjects of admissible expert testimony. *St. Louis Condo. Ass'n, Inc.*, 2019 WL 2012966, at *8 (opinion that "Plaintiff has not engaged in any concealment or fraud" is impermissible legal conclusion that wrongly instructs the jury on what result to reach); *United States v. Long*, 300 F. App'x 804, 814–15 (11th Cir. 2008) (noting statement that the payday loan company "was an artifice or scheme to defraud" was "plainly inadmissible"); *U.S. ex rel. Armfield v. Gills*, 07-cv-2374, 2013 WL 371457, at *3 (M.D. Fla. Jan. 30, 2013) (expert "not be permitted to … testify to whether Defendants committed Medicare fraud or fraud in general."); *Simon v. Healthsouth of Sarasota Ltd. P'ship*, 12-cv-236, 2021 WL 268496, at *4 (M.D. Fla. Jan. 27, 2021) ("expert witnesses are prohibited from testifying as to … the legality of conduct."); *Clarke v. Healthsouth Corp.*, 14-cv-778, 2021 WL 129821, at *6 (M.D. Fla. Jan. 14, 2021) (excluding expert witness from opining on whether defendant acted "fraudulently" because an expert "may not testify to the legal implications of conduct"); *Tindall v. H & S Homes, LLC*, 10-cv-044, 2012 WL 3241885, at *13 (M.D. Ga. Aug. 7, 2012) (expert not permitted to "make any legal conclusions as to whether Defendants' conduct was unlawful or fraudulent…."); *Amari Co. v. Burgess*, 07-cv-01425, 2012 WL 5389787, at *15 (N.D. Ill., Nov. 2, 2012) (opinion on whether someone participated in a fraud "is a legal conclusion … which is not properly the

subject of expert testimony").

Urcia's putative expert testimony is a direct affront to this Court's precedent and common sense. Urcia seeks to offer an opinion on Burstein's intent (Exh. 3, ¶1), even though this Court has conclusively held that an expert cannot offer opinions on intent since "[i]nferences about the intent or motive of parties or others lie outside of the bounds of expert testimony." *Kaufman v. Pfizer Pharms., Inc.*, 02-cv-22692, 2011 WL 7659333, at \*9, n.8 (S.D. Fla. Aug. 4, 2011); *King v. Cessna Aircraft Co.,* 03-cv-20482, 2010 WL 1980861, at \*6 (S.D. Fla. May 18, 2010) ("[An expert] cannot so blatantly opine as to the pilot's state of mind that motivated those actions."). Courts do not allow such improper testimony because a jury does not need expert assistance to weigh evidence and the credibility of witnesses. Indeed, credibility determinations are "exclusively for the determination by the jury." *U.S. v. Scop*, 846 F.2d 135, 142 (2d Cir. 1988).

Urcia is no more qualified than an ordinary juror to weigh the evidence and credibility of the witnesses. Allowing RJF to call him as a witness transforms purported "expert" testimony into bald advocacy. His intrusion into the province of the jury renders his opinions inadmissible and more prejudicial than probative. *Id.* (striking expert opinion dependent upon weighing of the evidence because of "the prejudicial effect such testimony could have on the jury.").

### C.     URCIA SEEKS TO OFFER IMPERMISSIBLE LEGAL CONCLUSIONS

Because Urcia seeks to opine on the existence of fraud and dishonesty, his opinions depend upon and are intertwined with impermissible legal opinions. Urcia concedes the point, admitting that his opinion depends upon his own uninformed and admittedly inexpert legal conclusion about the meaning of "fraud" and "dishonesty." As Urcia acknowledges, the Bonds do not define those terms. (Exh. 3). Urcia therefore interposes a dictionary definition and applies the evidence to his own self-chosen definitions.  (Exh. 3, pg. 15, Ftn 17).

Because the meaning of the words "fraud" and "dishonesty" are legal in nature, the Court (not Urcia) should instruct the jury on their meaning.  Allowing Urcia's purported opinion would supplant the Court's role and interpose an inadmissible legal opinion on the scope of coverage. *Ramjeawan v. Bank of Am.*, 09-cv-20963, 2010 WL 1645097, at \*1 (S.D. Fla., Apr. 21, 2010) ("[e]xpert opinion testimony regarding the meaning(s) of contractual provisions [is] irrelevant and hence inadmissible"); *Herman v. Seaworld Parks & Entertainment*, 14-cv-3028, 2017 WL 1304302, at \*5 (M.D. Fla., Mar. 10, 2017) ("Courts regularly exclude expert opinions that opine on the interpretation of written contracts."); *Asokan v. Am. Gen. Life Ins. Co.*, 15-cv-2048, 2017

WL 4542889, at *2 (M.D. Fla., Aug. 29, 2017) ("[A]n expert witness who is also an attorney is not permitted to construe the terms of a contract, opine on what the law requires, or testify as to the governing law.").

The same is true for Urcia's subjective allegation of collusion. *City of Tuscaloosa v. Harcros Chems., Inc.,* 158 F.3d 548 (11th Cir. 1999) held that that an expert's "characterizations of documentary evidence as reflective of collusion" are unhelpful to the trier of fact, as "the trier of fact is entirely capable of determining whether or not to draw such conclusions without any technical assistance from … [the] expert." (*Id.* at 565). As in *City of Tuscaloosa*, RJF is free to present the factual basis for its allegations to the jury through percipient witnesses and admissible evidence. The jury can then weigh that factual evidence and the credibility of the fact witnesses, and then reach an independent conclusion about whether RJF established a loss covered under the Bonds. However, a slanted presentation of the facts from a hired witness who possesses no specialized knowledge, experience, or qualifications is unreliable, inadmissible, and unhelpful especially under the guise of being "expert" testimony. Such testimony invades the fundamental role of the jury and allows advocacy to masquerade as opinion testimony.

## II.    RJF PRODUCES BAEZ TO CIRCUMVENT THE TERMS OF THE BONDS.

RJF purchased defined peril coverage for the theft of specific property. The Bonds codify that agreement, providing coverage only for: "loss of Property (1) owned by the Insured; (2) held by the Insured in any capacity; or (3) for which the Insured is legally liable." (D.E. 39-1, pg. 18). RJF must therefore prove the theft of property to which had title, possession or custody. *Cooper Indus. v. Nat'l Union Fire Ins. Co.*, 876 F.3d 119, 129-130 (5th Cir. 2017); *3M Company v. Nat'l Union Fire Ins. Co.,* 858 F.3d 561, 567-68 (8th Cir. 2017); *RealPage v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 19-cv-1350, 2021 WL 718366 at *8 (N.D. Tex., Feb. 24, 2021).

*Cooper* explained RJF's burden of proof.  In that case, the insured alleged that an employee induced it to invest in partnerships and thereafter stole funds from the partnerships. Even though the insured originally owned the funds, the Fifth Circuit ruled that the insured could not establish an insurable interest because the insured "gave up possession and control of the funds." *Cooper*, 876 F.3d at 129-31. In so doing, the panel recognized that the insured's prior interest did not trigger coverage because an insured must establish an insurable interest at the time of the theft.  *Id.* at 131-32.

*RealPage* applied the same analysis.  There, an insured sought coverage for the theft of

12

funds from a third-party's bank account.  While the insured claimed its clients owned and had a future right to disbursement of the funds, the insured did not hold title to the funds or possess the funds at the time of the theft.  2021 WL 718366 at *8.  Because the stolen funds were on deposit in a third-party account, such funds were not in the possession of or held by the insured:

> RealPage's authority to direct the transfer of the funds does not amount to holding the funds. The funds, until diverted to the bad actors' accounts, remained in an account at Wells Fargo Bank in Stripe's name—not RealPage's. … RealPage had no rights to the funds in the account and could not withdraw these funds. … Under these circumstances, RealPage did not possess the funds in any manner; thus, RealPage did not hold the funds.

*Id.* (citations omitted.)

RJF cannot satisfy its burden of proof on this central issue because Quiros did not steal funds on deposit at RJF; in fact, he ensured that the total disbursements to the partnerships' accounts at People's United Bank exceeded the deposits into the partnership accounts at RJF. Unable to dispute such crucial facts, RJF disclosed Baez to offer an irrelevant opinion divorced from the language of the Bonds it purchased.  (Exh. 4.) Even though the Bonds cover property owned or held by RJF (D.E. 39-1, pg. 18), Baez did not limit his analysis to the loss of such property.  Instead, he ignored the Bonds and computed the total loss – regardless of where the loss occurred:

> Q.    Did you limit your analysis to money taken while on deposit at Raymond James?  It's a yes or a no.
> A.    I think my analysis is tracing the whole flow of funds.  I don't know how to answer it differently.
> Q.    Okay.  When you say the whole flow of funds, you agree with me that the whole flow of funds involves deposits at lots of different financial institutions, correct?
> A.    Yes.

(Exh. 7, pg. 45:9-21.)  That analysis, Baez conceded, included transfers to/from a multitude of financial institutions:

> Q.    Okay. When you say the whole flow of funds, you agree with me that the whole flow of funds involves deposits at lots of different financial institutions, correct?
> A.    Yes.
> Q.    You agree with me there were deposits at People's United Bank, correct?
> A.    Yes.
> Q.    You agree with me there were deposits at HSBC, correct?
> A.    Yes.
> Q.    You agree with me there were deposits at Chase, correct?

> A.    Yes.
>
> Q.    You agree with me there were deposits at Citibank, correct?
>
> A.    Yes.

(*Id.*, pg. 45:16-46:12.) Baez could have focused his analysis on the alleged loss sustained at RJF, but chose not to do so – despite the plain terms of the Bonds and RJF's burden of proof – because he did not deem it to be helpful:

> Q:    In the context of your analysis in this case, is it true that you did not limit your analysis to funds that were diverted from a partnership account at Raymond James to a non-partnership account wherever? ….
>
> A.    I'll give you the same answer. As an economist, I don't think that doing that exercise would be useful to understanding how the flow of funds worked.

(*Id.*, pg. 53:4-14.) Baez's opinion constitutes a patent attempt at obfuscation designed to create confusion. (Exh. 4.)  RJF seeks to call Baez to discuss theft generally, without regard to whether the theft occurred at RJF, with the hope that the jury will ignore the plain terms of the Bonds and RJF's obligation to prove a theft of money it owned or held. (D.E. 39-1, pg. 18).

The Insurers did not agree to cover theft of any funds on deposit in any institution. (*Id.*) To the contrary, the Bonds require a specific analysis and specific determination – the theft of money owned or held by RJF. (*Id.*) RJF cannot now offer Baez as a means of confusing the jury and wrongly suggest that the jury can find coverage so long as Quiros stole from an account located at ***any*** financial institution. Such an opinion is not admissible because it does not comport with the Bonds and is more prejudicial than probative, because it will confuse the jury about RJF's burden of proof and the dispositive coverage issues. *Frazier,* 387 F.3d at 1266 (excluding opinion that "easily could serve to confuse the jury, and might well have misled it".) In short, Baez's opinions are not directed to the coverage provided by the Bonds, but rather to his understanding of a much broader "flow of funds" analysis. Such an analysis, however, is not helpful to the jury in this case.

Courts agree that parties to a written contract cannot offer damage computations that fail to adhere to the contract because allowing such testimony encourages the jury to ignore the governing contract.  To that end, federal courts routinely exclude expert testimony where the expert offers an opinion that does not comport with the governing documents. *See Winn-Dixie Stores, Inc.,* 746 F.3d at 1028; *Haddad v. Rev Bahamas, Ltd.*, 589 F. Supp. 2d 1302, 1308 (S.D. Fla. 2008); *accord, Lock Realty v. U.S. Health,* 707 F.3d 764, 771 (7th Cir. 2013); *Emerald Investments Ltd. P'ship v. Allmerica Fin. Life Ins. & Annuity Co.,* 516 F.3d 612, 617 (7th Cir. 2008); *Meterlogic, Inc. v. KLT, Inc.*, 368 F.3d 1017, 1019 (8th Cir. 2004).

The Eleventh Circuit has confirmed that an expert's opinion on the wrong damages methodology is inadmissible. In *Winn-Dixie Stores*, the proposed expert calculated damages for harm caused by competing stores within Winn-Dixie's market area. The Eleventh Circuit rejected the expert opinion as both unreliable and unhelpful to the trier of fact because it was not based on the contract underlying the dispute. 746 F.3d at 1027-30. Because the expert did not opine on the specific damages that were recoverable based on the parties' contract, the Eleventh Circuit upheld the district court's exclusion of her opinion. *Id.*

*Haddad* reached the same conclusion. There, the expert calculated damages as of August 2008, despite the fact that the alleged breach occurred during a different period. 589 F. Supp. 2d at 1307-1308. The district court refused to admit his testimony, finding his opinion about the loss during an irrelevant timeframe inadmissible: "[t]he August 2008 premise used in Mr. Mukamal's report is irrelevant and therefore unhelpful to the jury's task of determining Plaintiff's damages." *Id.* at 1308. Finding that the expert's analysis was based on an assumption that was "legally irrelevant to the measure of damages," the district court excluded his entire report and testimony. *Id.*

The Seventh Circuit has also confirmed that an expert's opinion on the wrong damage model is inadmissible. In *Lock Realty*, the expert calculated damages for lessee's breach of a lease for a nursing home. The Seventh Circuit rejected the opinion as both unreliable and unhelpful to the trier of fact because the expert did not address the material issue (i.e., fair market value of the home.) *Lock Realty*, 707 F.3d at 771. Because the expert did not address the correct issue, the Seventh Circuit upheld the district court's exclusion of her opinion. *Id.*

In sum, Baez consciously chose not to tether his opinions to the Bonds. He could have determined whether Quiros stole money and property within the scope of the Bonds' ownership clause, but chose not to do so because he did not personally view that exercise as "useful." (Exh. 7, pg. 53:4-14.) While Baez's opinion might have been helpful in calculating the damages suffered by Quiros' victims in an action against RJF, or some other party allegedly jointly and severally liable for Quiros' actions, RJF agreed to specific terms and a specific scope of coverage under the Bonds (D.E. 39-1, pg. 18) that are the subject of this action. RJF cannot now circumvent that agreement by offering a damages computation (Exh. 4) that is divorced from the requirements for coverage under the Bonds. Under *Winn-Dixie*, such a computation will only serve to confuse the jury, and is more prejudicial than it is probative. Accordingly, Baez's opinion should be barred

and he should be excluded from testifying at trial. *Meterlogic, Inc. v. KLT, Inc.*, 368 F.3d 1017, 1019 (8th Cir. 2004) (barring opinion because it was untethered to the contract).

## III.   GRUMKE INFRINGES ON THE JURY'S ROLE AS ARBITER OF FACT.

RJF purchased "discovery" bonds – meaning policies that cover conduct first discovered during the effective time period covered by the bonds. The Bonds define Discovery as occurring

> when the Vice President of Corporate Insurance and/or Legal Department of the Insured first becomes aware of facts which would cause a reasonable person to assume that a loss of a type covered by this bond has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

(D.E. 39-1, Amended Discovery Rider, pg. 53.) This definition adopts a mixed standard – first requiring identification of the facts known to the VP of Corporate Insurance of the Legal Department and then requiring an objective analysis of whether a "reasonable person" would assume from those facts that a loss of a type covered by this bond has been or will be incurred. *ABCO Premium Fin. LLC v. Am. Int'l Group, Inc.*, No. 11-23030-CIV, 2012 WL 3278628, at *8-10 (S.D. Fla. Aug. 9, 2012), *aff'd*, 518 F. App'x 601 (11th Cir. 2013); *see also Royal Trust Bank, N.A. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 788 F.2d 719, 721 (11th Cir. 1986).

The latter analysis does not depend upon any specialty or expertise.  The Bonds adopt a "reasonable person" standard – meaning that it requires the jury to analyze what they would assume from the facts disclosed to the legal department. Such analysis does not require insight into any specific specialty, require specific education or otherwise implicate a matter of expert testimony.  A jury is perfectly capable of making this factual determination. Yet, RJF seeks to disclose an expert on this issue. Why?  Because it was aware of the conduct in, at the latest, 2014 that it now characterizes as dishonest (Exh. 9, pg. 83:3-18, 84:22-85:2, 88:2-20) – over a year before the inception of the Bonds. (D.E. 39-1). Yet, instead of providing notice when it learned of Burstein's alleged misdeeds, RJF delayed notice of a claim until it received service of a formal lawsuit two years later. (D.E. 27, ¶ 8).

Courts reject such strategies, holding that an insured must provide notice under a fidelity bond upon learning of the conduct underlying its claim.  *Utica Mut. Ins. Co. v. Fireman's Fund Ins.*, 748 F.2d 118, 123 (2d Cir. 1984); *Alfalfa Elec. v. Travelers Indem. Co.*, 376 F. Supp. 901, 906 (W.D. Okla. 1973); *St. Paul Fire & Marine Ins. Co. v. Bank of Stockton*, 213 F. Supp. 716, 719–20 (N.D. Cal. 1963); *USLIFE Savings & Loan Assoc. v. Nat'l Sur. Corp.*, 115 Cal. App. 3d 336, 344–45 (Cal. Ct. App. 1981).  Seeking to circumvent these cases and evade the terms of the

Bonds, RJF offers Grumke to narrate its view of the facts known to its legal department and offer an opinion on the conclusions a "reasonable person" would draw from those facts. (Exh. 5, pg. 3).

First, Grumke has freely admitted that he lacks any insurance expertise. (Exh. 8, pg. 249:19-21). He has never worked for an insurance company, has no prior experience with financial institution bonds and made no effort to educate himself on financial institution bonds:

> Q:     Prior to your engagement in this matter, have you ever reviewed a financial institution bond like the bonds issued to Raymond James?
> A:     No.  Other than I had reviewed bonds as an in-house counsel, but not – not to opine on or testify about but simply in conjunction with my performance of my duties as in-house counsel. (*Id.* at 15:17-23).
>                                    ***
> Q:     So you have no experience or expertise regarding how notice or the phrase "potential claim" would be construed under a financial institution bond; correct?
> A:     I've not – I've not worked for an insurance company, nor have I practiced in that area, worked in that area.
> Q.     So was my statement correct, that you have no –
> A.     Yes.

(*Id.* at 28:5-16). Now, RJF seeks to offer Grumke to place his imprimatur on its untimely notice and inaction in the face of conduct it now characterizes as dishonest. Grumke has no relevant expertise on which to offer such opinion and should be excluded on that basis alone.

Second RJF disclosed Grumke as an expert to infringe on the role of the jury. The jury could readily hear percipient testimony about the facts disclosed to the legal department and determine whether a reasonable person would assume a loss of the type covered by the Bonds has been or will be incurred. RJF does not, however, trust the jury to independently weigh the evidence. Rather as with Urcia, RJF seeks to narrate the facts it deems important, exclude or minimize others and advocate a result under the guise of expert testimony. Such testimony is not admissible because it is not based upon any specialized knowledge and does not offer anything "more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262-63. Accordingly, Grumke's opinions are not helpful to the jury and are not admissible.  *See Umana-Fowler*, 49 F. Supp. 3d at 1123; *Pyznski v. Thomas & Betts, Corp.*, 16-cv-1998, 2018 WL 3390243, at *3 (M.D. Fla., June 15, 2008); *Everett v. Georgia Pacific Corp.*, 949 F. Supp. 856, 858-59 (S.D. Ga. 1996).

*Pyznski* excluded an expert on this ground.  In that case, the expert reviewed a series of documents and then sought to opine on his view of the evidence. The Middle District of Florida

excluded his opinion because the expert did not offer any specialized knowledge or expertise: "The Court is unable to discern how an average citizen would be unable to perform a review of the documents listed in Mr. Ward's report and form an opinion as to whether Plaintiff would be unable to safely carry the items expected in his position with only one arm. The Court thus finds that Mr. Ward's testimony would not aid the trier of fact and offers 'nothing more than what lawyers for the parties can argue in closing arguments.'" *Pyznski*, 2018 WL 3390243 at *3.

This Court reached the same conclusion in *Umana-Fowler*. There, an expert purported to opine on the cause of an accident, despite performing no independent scientific analysis or other studies. Instead, he simply reviewed deposition testimony and offered opinions based upon his view of the evidence.  Such opinions, this Court concluded, were inadmissible because they were not substantiated by documented analysis:

> Jaques used the information he reviewed—mostly deposition testimony of Plaintiff's family—and "conducted an analysis" of Plaintiff's accident, but he does not elaborate as to how that analysis was conducted, how his experience informed that analysis, and what steps he took to verify the results of his analysis.

*Umana-Fowler*, 49 F. Supp. 3d at 1123.

Other courts agree, holding that an expert cannot direct the jury on how to interpret the evidence or the conclusions a reasonable person would reach from specific facts.  *Ruiz v. Safeco Insurance Company of Illinois*, No. 18-21036-CV, 2019 WL 2061093 at *4 (S.D. Fla. 2019); *Burkhart v. Washington Metropolitan Area Transit Authority,* 112 F.3d 1207, 1212-13 (D.C. Cir. 1997); *In re Air Crash Disaster at New Orleans, La.,* 795 F.2d 1230, 1233 (5th Cir. 1982).

In conclusion, Grumke does not possess any specialized knowledge or expertise about how a reasonable person would view the facts known to RJF's legal department. (Exh. 8, pg. 249:19-21, 15:17-23, 28:5-16). Like Urcia, Grumke is a paid advocate designed to narrate RJF's view of the facts and theory of coverage. Such an opinion is not predicated upon any expertise, infringes on the role of the jury, and is more prejudicial than probative. The jury is perfectly capable of determining what a reasonable person would conclude from the facts known to the legal department, without expert assistance.

## CONCLUSION

RJF's retained experts each lack the necessary relevant qualifications and seek to circumvent the jury's role in evaluating the evidence and determining whether RJF can establish a loss covered under the Bonds. RJF's expert selection reveals its attempted strategy of presenting

evidence of employee dishonesty under the Bonds – not through its current and former employees who worked with the alleged dishonest employee, but through carefully controlled "experts." Such strategy does not pass muster under *Daubert* and will serve only to lure the jury into adopting unfounded legal opinions offered by individuals with no helpful expertise. Therefore, the Court should exercise its gatekeeper function and bar RJF's retained experts from testifying at trial and grant Insurers such further and other relief the Court deems just and appropriate.

### CERTIFICATE OF CONFERENCE

Counsel for Federal Insurance Company hereby certifies that in accordance with local rule 7.1(a)(3) they have conferred with Plaintiff's counsel in a good-faith effort to resolve the issues raised in the instant motion and are unable to resolve these issues.


Dated:  September 2, 2021                     Respectfully submitted,

                                              */s/ Kristina L. Marsh*
                                              Kristina L. Marsh, Esq.
                                              Florida Bar No. 0311080
                                              **GORDON REES SCULLY MANSUKHANI**
                                              601 S. Harbor Island Blvd., Suite 109
                                              Tampa, FL  33602
                                              Telephone (Main):  813-444-9700
                                              Telephone (Direct)  813-523-4937
                                              Facsimile:  813-377-3505
                                              kmarsh@grsm.com

                                              and

                                              Scott L. Schmookler, Esq.
                                              Sarah Riedl Clark, Esq.
                                              **GORDON REES SCULLY MANSUKHANI**
                                              One North Franklin, Suite 800
                                              Chicago, IL  60606
                                              Telephone:  312-980-6779
                                              sschmookler@grsm.com
                                              srclark@grsm.com

                                              *Counsel for Federal Insurance Company*

                                              */s/ Ryan J. Weeks*
                                              E.A. "Seth" Mills, Jr., Esq.
                                              Florida Bar No. 339652
                                              Ryan J. Weeks, Esq.
                                              Florida Bar No.  5 7 8 9 7

**MILLS PASKERT DIVERS**
100 N. Tampa Street, Suite 3700
Telephone: (813) 229-3500
Facsimile: (813) 229-3502
smills@mpdlegal.com
rweeks@mpdlegal.com
csoltis@mpdlegal.com

*Counsel for Travelers Casualty and Surety
Company of America*

*/s/ James M. Kaplan*
James M. Kaplan
Florida Bar No. 921040
**KAPLAN ZEENA LLP**
2 South Biscayne Boulevard, Suite 3050
Miami, Florida  33131
Telephone: (305) 530-0800
Facsimile: (305) 530-0801
James.kaplan@kaplanzeena.com
Elizabeth.salom@kaplanzeena.com
service@kaplanzeena.com

and

Michael Keeley
*Admitted Pro Hac Vice*
John R. Riddle
*Admitted Pro Hac Vice*
**Clark Hill Strasburger**
901 Main Street, Suite 6000
Dallas, Texas  75202-3794
Telephone:  (214)  651-4718
Facsimile:  (214) 659-4121
mkeeley@clarkhill.com
jriddle@clarkhill.com
*Counsel for Beazley Insurance Company, Inc.*

*/s/ Dustin C. Blumenthal*
Dustin C. Blumenthal
Florida Bar No. 0149871
**Goldberg Segalla**
222 Lakeview Avenue, Suite 800
West Palm Beach, FL  33401
Telephone: (561)  618-4485
Facsimile:  (561)  618-4549

20

dblumenthal@goldbergsegalla.com
lparker@goldbergsegalla.com

and

Stephen N. Dratch, Esq.
*Admitted Pro Hac Vice*
**Franzblau Dratch, P.C.**
354 Eisenhower Parkway
Livingston, New Jersey 07039
Telephone: (973) 992-3700

*Counsel for Great American Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties in the manner specified, either via transmissions of Notices of Electronic Filing generated by CM/ECF or in some authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

| | |
|---|---|
| Jason S. Mazer, Esq.<br>Joshua R. Alhalel, Esq.<br>Cimo Mazer Mark PLLC<br>100 S.E. Second Street, Suite 3650<br>Miami, FL 33131<br>Email:<br>jmazer@cmmlawgroup.com<br>jalhalel@cmmlawgroup.com<br>kshaw@cmmlawgroup.com<br>*Counsel for Raymond James Financial, Inc.* | Kristina L. Marsh, Esq.<br>Gordon Rees Scully Mansukhani<br>601 S. Harbour Island Blvd., Suite 109<br>Tampa, FL 33602<br>Email:<br>kmarsh@grsm.com<br>*Co-Counsel for Federal Insurance Company* |
| Sarah Riedl Clark, Esq.<br>Scott L. Schmookler, Esq.<br>Angela Lewosz, Esq.<br>Gordon Rees Scully Mansukhani, LLP<br>One North Franklin, Suite 800<br>Chicago, IL 60606<br>Email:<br>srclark@grsm.com<br>sschmookler@grsm.com<br>alewosz@grsm.com<br>*Co-Counsel for Federal Insurance Company*<br>*(Admitted Pro Hac Vice)* | Dustin C. Blumenthal, Esq.<br>Goldberg Segalla LLP<br>222 Lakeview Avenue, Suite 800<br>West Palm Beach, FL 33401<br>Email:<br>dblumenthal@goldbergsegalla.com<br>ppowers@goldbergsegalla.com<br>pborges@goldbergsegalla.com<br>*Co-Counsel for Great American Insurance Co.* |

21

Stephen N. Dratch, Esq.
Franzblau Dratch, P.C.
354 Eisenhower Parkway
Livingston, NJ 07039
Email:
sdratch@njcounsel.com
*Co-Counsel for Great American Insurance Co.*
*(Admitted Pro Hac Vice)*

James M. Kaplan, Esq.
Kaplan Zeena LLP
2 S. Biscayne Blvd., Suite 3050
Miami, FL 33131
Email:
james.kaplan@kaplanzeena.com
elizabeth.salom@kaplanzeena.com
service@kaplanzeena.com
*Co-Counsel for Beazley Insurance Company, Inc.*

John R. Riddle, Esq.
Michael Keeley, Esq.
Clark Hill Strasburger
901 Main Street, Suite 6000
Dallas, TX 75202
Email:
abrinkley@clarkhill.com
jriddle@clarkhill.com
mkeeley@clarkhill.com
*Co-Counsel for Beazley Insurance Company, Inc.*
*(Admitted Pro Hac Vice)*

_____*/s/ Ryan J. Weeks*_____
Attorney

22