**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 20-CV-21707-MARTINEZ-BECERRA**

**RAYMOND JAMES FINANCIAL, INC.,**

   **Plaintiff,**

**vs.**

**FEDERAL INSURANCE COMPANY;
TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA; GREAT
AMERICAN INSURANCE COMPANY;
BEAZLEY INSURANCE COMPANY, INC.;
AND ST. PAUL MERCURY INSURANCE
COMPANY**

   **Defendants.**

_____

**DEFENDANTS' MOTIONS IN LIMINE AND
INCORPORATED MEMORANDUM OF LAW**

# TABLE OF CONTENTS

BACKGROUND ................................................................................................................1

ARGUMENT ...................................................................................................................1

    I. ................. MOTION IN LIMINE #1: BAR COMPLAINTS AGAINST RJF AND THE SETTLEMENT THEREOF ARE IRRELEVANT AND INADMISSIBLE UNDER THE BONDS AND FEDERAL RULES OF EVIDENCE. ........................................................2

    II. ...MOTION IN LIMINE #2: BAR SEC'S COMPLAINT AGAINST BURSTEIN AND EVIDENCE OF THE SETTLEMENT AS IRRELEVANT, VIOLATIVE OF RULE 408 AND MORE PREJUDICIAL THAN PROBATIVE UNDER RULE 403. ......................5

    III. ........................... MOTION IN LIMINE #3: BAR TESTIMONY REGARDING RJF'S INVESTIGATION AND SETTLEMENT NEGOTIATIONS IN LIGHT OF RJF'S PRIVILEGE OBJECTIONS. ..........................................................................................6

    IV. ... MOTION IN LIMINE #4: BAR REFERENCES TO BAD FAITH ALLEGATIONS AND CLAIMS HANDLING. ............................................................................................8

    V. ........... MOTION IN LIMINE #5: BAR ADMISSION OF RJF'S PROOF OF LOSS AS INADMISSIBLE HEARSAY AND MORE PREJUDICIAL THAN PROBATIVE .......10

    VI. ............... MOTION IN LIMINE #6: BAR MARK BARRACCA FROM TESTIFYING ABOUT THE PROPRIETY OF JOEL BURSTEIN'S CONDUCT ...............................11

    VII. ............... MOTION IN LIMINE #7: BAR ADMISSION OF UNAUTHENTICATED HEARSAY COMMUNICATIONS BETWEEN QUIROS AND BURSTEIN AS INADMISSIBLE HEARSAY AND MORE PREJUDICIAL THAN PROBATIVE .......12

    VIII. .................... MOTION IN LIMINE #8: BAR TESTIMONY FROM UNDISCLOSED WITNESSES ....................................................................................................................14

    IX. ... MOTION IN LIMINE #9: BAR INTRODUCTION OF UNDISCLOSED OPINION TESTIMONY .....................................................................................................................15

    X. ....... MOTION IN LIMINE #10: BAR ADMISSION OF A BURSTEIN JUNE 16, 2008 EMAIL, AND IMPROPER EXPERT TESTIMONY THEREON, AS INADMISSIBLE HEARSAY, MISLEADING AND UNFAIRLY PREJUDICIAL. ..................................16

    XI. ...MOTION IN LIMINE #11: BAR ADMISSION OF A BURSTEIN FEBRUARY 29, 2012 LETTER, AND IMPROPER EXPERT TESTIMONY THEREON, LABELED AS THE "NO ENCUMBRANCE LETTER" BECAUSE IT IS MISLEADING. .................19

CONCLUSION ..................................................................................................................20

REQUEST FOR HEARING ............................................................................................21

CERTIFICATE OF GOOD-FAITH CONFERENCE ..................................................21

# TABLE OF AUTHORITIES

## Cases

*1550 Brickell Associates v. QBE Ins. Corp.*, No. 07-22283-CIV, 2010 WL 5392654, at *2 (S.D. Fla. Dec. 22, 2010)..................................................................................................................10

*A.T.O. Golden Constr. Corp. v. Allied World Ins. Co.*, No. 17-24223-CIV, 2018 WL 5891494, at *4 (S.D. Fla. Nov. 9, 2018).................................................................................................16

*Adrion v. Knight*, No. CIV.A. 07-11277-RGS, 2009 WL 3254342, at *17 (D. Mass. Sept. 9, 2009)........................................................................................................................................14

*Am. Empire Ins. Co. of S. D. v. Fid. & Deposit Co. of Md.*, 408 F.2d 72, 76-77 (5th Cir. 1969)...3

*Arch Specialty Ins. Co. v. Balzebre*, No. 10-23775-CIV, 2013 WL 12065533, at *1 (S.D. Fla. Jan. 16, 2013)..........................................................................................................................2

*Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) ........................................6

*Bowe v. Public Storage*, 106 F. Supp.3d 1252, 1261 (S.D. Fla. 2015)...........................................15

*Burgess v. Allstate Ins. Co.*, 334 F. Supp. 2d 1351, 1354–55 (N.D. Ga. 2003) ...........................11

*Cajule Cedant, Plaintiff, v. United States of Am., Defendant.*, No. 19-24877-CIV, 2021 WL 2895714, at *3 (S.D. Fla. July 9, 2021).................................................................................15

*Caldently v. Pace Enterprises of S. Florida, Inc.*, No. 06-80383-CIV, 2007 WL 9706957, at *3 (S.D. Fla. Oct. 18, 2007) ....................................................................................................15

*Cambra v. Restaurant School*, No. CIV.A.04-2688, 2005 WL 2886220, at *4-5 (E.D. Pa. Nov. 2, 2005).......................................................................................................................................11

*Carpenters Health & Welfare Fund v. Coca-Cola Co.*, No. 1:00-CV-2838, 2008 WL 9358563, at *3 (N.D. Ga. Apr. 23, 2008) .................................................................................................5

*Castellanos v. Portfolio Recovery Associates, LLC*, No. 1:17-CV-20593-UU, 2017 WL 7796303, at *3 (S.D. Fla. Oct. 31, 2017) ...............................................................................................6

*City of Baton Rouge/E. Baton Rouge Par. v. Bank of Am., N.A.*, No. CV 19-725-SDD-RLB, 2021 WL 1201664, at *3 (M.D. La. Mar. 30, 2021) .....................................................................14

*Dahlgren v. First Nat. Bank of Holdrege*, 533 F.3d 681, 699 (8th Cir. 2008) .............................6

*Dallis v. Aetna Life Ins. Co.*, 768 F.2d 1303, 1306 (11th Cir. 1985).............................................4

*Diamond Resorts Int'l, Inc. v. Aaronson*, No. 17-cv-1394, 2019 WL 1974833, at *5 (M.D. Fla. Mar. 13, 2019)....................................................................................................................14

*Dillon v. Sunbelt Rentals, Inc.*, 464 F. Supp. 3d 1333, 1337 (S.D. Fla. 2020)...........................19

*Domako v. Rowe*, 438 Mich. 347, 475 N.W.2d 30, 33 (Mich. 1991) ............................................8

*El-Ad Residences at Miramar Condo. Ass'n, Inc. v. Mt. Hawley Ins. Co.*, No. 09-CV-60723, 2011 WL 13174642, at *4 (S.D. Fla. Feb. 23, 2011).................................................................4

*Enwonwu v. Fulton-Dekalb Hosp. Auth.*, 286 F. App'x 586, 596 (11th Cir. 2008) ....................13

*Everhart v. Drake Mgmt., Inc.*, 627 F.2d 686, 690-91 (5th Cir. 1980)..........................................3

*Fed. Ins. Co. v. Axos Clearing LLC*, 982 F.3d 536, 541 (8th Cir. 2020)........................................3

*GAB Bus. Services, Inc. v. Syndicate 627*, 809 F.2d 755, 762 (11th Cir. 1987)............................7

*Gasslein v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 918 F. Supp. 373, 377 (M.D. Fla. 1995) ......3

*Goussen v. Mendez Fuel Holdings LLC*, No. 18-20012-CIV, 2018 WL 5831084, at *2 (S.D. Fla. Nov. 7, 2018) ...................................................................................................................4

*Gregury v. Greguras*, 2018 PA Super 261, 196 A.3d 619, 628-31 (2018)....................................8

*Herrick Co., Inc. v. Vetta Sports, Inc.*, 94 CIV. 0905 (RPP), 1998 WL 637468, at *3 (S.D.N.Y. Sept. 17, 1998)………………………………………………………………………………..8

*Hi Ltd. P'ship v. Winghouse of Fla., Inc.,* No. 6:03–cv–116, 2004 WL 5486964, at *10 (M.D. Fla. Oct. 5, 2004) ................................................................................................................14

*In re Harmony Holdings, LLC*, 393 B.R. 409, 414 (Bankr. D.S.C. 2008) ................................11

*In re Liquid Toppings Dispensing Sys. ('447) Patent Litig.*, No. 1:18-MD-02832, 2021 WL 2410344 (S.D. Fla. June 14, 2021) .................................................................................16

*In re Tenet Healthcare Corp. Sec. Litig.*, No. CV 02-8462, 2007 WL 5673884, at *2 (C.D. Cal. Dec. 5, 2007) ....................................................................................................................5

*Int'l Tel. & Tel. Corp. v. United Tel. Co. of Fla.*, 60 F.R.D. 177, 186 (M.D. Fla. 1973) ..............8

*Jetport, Inc. v. Landmark Aviation Miami, LLC*, No. 1:16-CV-23303-UU, 2017 WL 7734085, at *2–3 (S.D. Fla. July 26, 2017) .........................................................................................4

*Kennedy v. Provident Life and Accident Insurance Company*, No. 07-cv-81218, 2009 WL 3048683, at *2 (S.D. Fla. Sept. 18, 2009) ................................................................10

*Kramas v. Security Gas & Oil, Inc.*, 672 F.2d 766, 772 (9th Cir. 1982) ......................................6

*Lafarge N. Am., Inc. v. Matraco-Colorado, Inc.*, No. 07-80112-CIV, 2008 WL 2474638, at *5 (S.D. Fla. June 19, 2008) ...............................................................................................12

*Lakin v. Prudential Sec., Inc.*, No. 01-4163-CV-C-NKL, 2002 WL 35649393, at *4 (W.D. Mo. Aug. 22, 2002) ..............................................................................................................17

*Lane v. Provident Life & Acc. Ins. Co.*, 71 F. Supp. 2d 1255, 1256 (S.D. Fla. 1999) ..................9

*Lumpuy v. Scottsdale Ins. Co.*, No. 8:11-CV-2455-T-24, 2013 WL 1775048, at *3 (M.D. Fla. Apr. 25, 2013) .................................................................................................................9

*Lynch Properties, Inc. v. Potomac Ins. Co. of Illinois*, 140 F.3d 622, 629 (5th Cir. 1998) ...........3

*McInnis v. A.M.F., Inc.*, 765 F.2d 240, 247 (1st Cir. 1985) ........................................................4

*Molinos Valle Del Cibao, C. por A. v. Lama*, No. 07-23066, 2008 WL 11333562, at *2-4 (S.D. Fla., Oct. 30, 2008) ........................................................................................................4

*Myers v. Bowman*, 713 F.3d 1319, 1332 (11th Cir. 2013) .......................................................14

*Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005) ................................................18

*Palma v. Am. Airlines, Inc.*, No. 09-23212-CIV, 2011 WL 13099886, at *1 (S.D. Fla. Jan. 14, 2011) ..............................................................................................................................13

*Reyes v. Aqua Life Corp.*, No. 10-23548-CIV, 2012 WL 12892213, at *1 (S.D. Fla. July 9, 2012) ...............................................................................................................................4

*Rogers v. Bank of America, N.A.*, No. 13-cv-1333, 2014 WL 4681031, at *6 (D. Kan. Sept. 19, 2014) ..............................................................................................................................15

*Royal Bahamian Ass'n v. QBE Ins. Corp.*, 745 F. Supp. 2d 1380, 1381 (S.D. Fla. 2010) ............9

*Rutgard v. Haynes*, 185 F.R.D. 596, 601 (S.D. Cal. 1999) ...........................................................8

*Seattle Nw. Sec. Corp. v. SDG Holding Co., Inc.*, 812 P.2d 488, 499 (Wash. Ct. App. 1991) .......8

*Securian Fin. Group, Inc. v. Wells Fargo Bank, N.A.*, No. CV 11-2957 (DWF/HB), 2015 WL 13637330, at *5 (D. Minn. Feb. 10, 2015) ......................................................................6

*Thornton v. J Jargon Co.,* 580 F. Supp. 2d 1261, 1287 (M.D. Fla. 2008) ..................................14

*Tim Hortons USA, Inc. v. Singh,* No. 16-23041-CIV, 2017 WL 4837552, at *13–16 (S.D. Fla. Oct. 25, 2017) ................................................................................................................16

*Tindall v. H & S Homes, LLC*, No. 5:10-CV-044 CAR, 2012 WL 3242128, at *6 (M.D. Ga. Aug. 7, 2012)...........................................................................................................................17

*United States v. Arias*, 431 F.3d 1327, 1337–38 (11th Cir. 2005) ...............................................4

*United States v. Cochran*, 546 F.2d 27, 29 (5th Cir. 1977) ........................................................12

*United States v. Cook*, 557 F.2d 1149, 1155 (5th Cir. 1977) .......................................................6

*United States v. Fernetus*, 838 F. App'x 426, 432 (11th Cir. 2020) ............................................2

*United States v. Frazier,* 387 F.3d 1244, 1263 (11th Cir. 2004) ...................................................19

*United States v. Goad*, 739 F. Supp. 1459, 1461 (D. Kan. 1990).................................................11

*United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005)...........................................16

*United States v. Riddle*, 103 F.3d 423, 429 (5th Cir. 1997) ........................................................17

*Universal Mortg. Corp. v. Wurttembergische Versicherung AG*, 651 F.3d 759, 760 (7th Cir. 2011)............................................................................................................................................3

*Vision Power, LLC v. Midnight Express Power Boats, Inc.*, No. 18-CV-61700, 2020 WL 770547, at *4 (S.D. Fla. Feb. 18, 2020)..............................................................................................4

*Vons Companies, Inc. v. Fed. Ins. Co.*, 212 F.3d 489, 492 (9th Cir. 2000) ...................................3

*Walker v. NationsBank of Fla. N.A.*, 53 F.3d 1548, 1554-55 (11th Cir. 1995)...........................20

Federal Insurance Company, Travelers Casualty and Surety Company of America, Great American Insurance Company, Beazley Insurance Company, and St. Paul Mercury Insurance Company (collectively, the "Insurers") move to exclude inadmissible evidence, bar Raymond James Financial, Inc. ("RJF") from citing to, referencing or relying upon such evidence or otherwise offering any argument based upon such evidence. In support thereof, Insurers submit the following memorandum of law.

## BACKGROUND

From 2008 through 2016, Ariel Quiros ("Quiros") solicited investments in eight partnerships associated with the Jay Peak Ski Resort. (ECF No. 39, ¶¶ 10-24). Although Quiros completed six of the eight phases, the SEC ultimately intervened after concluding that Quiros misused partnership funds. (*Id.* at ¶ 63). A court-appointed receiver and third-party investors thereafter pursued civil claims against various third parties, including RJF. *Id.* After conducting an investigation into those allegations, RJF denied any wrongdoing and represented to the Insurers that it "does not feel that the broker/dealer, the branch manager or the financial advisor participated in the alleged fraud in the complaints" (ECF No. 130-8 at p. 1) and "no employee has engaged in any fraudulent activity as a result of this matter." (ECF No. 130-8 at p. 8).

Contradicting its representation to Insurers, RJF reversed course after it settled its civil liability and, for the first time, accused Joel Burstein ("Burstein"), a former financial advisor, of conspiracy with Quiros. It did so because its financial institution bonds require proof of loss resulting directly from employee dishonesty (as opposed to liability incurred to a third party). (ECF No. 39, ¶ 79). Despite its allegations, RJF has not identified any employees willing to support its false narrative or to testify that they ever witnessed Burstein commit a dishonest act. Instead, RJF manufactured a claim by relying upon inadmissible hearsay, self-serving and misleading characterizations of disclosed transactions, unproven allegations in third-party lawsuits, and inadmissible settlement agreements. Because these materials are inadmissible under the Federal Rules of Evidence and more prejudicial than probative, Insurers ask this Court to exclude such evidence at trial, preclude RJF from referencing or relying upon such evidence, and bar RJF from raising any argument based thereupon.

## ARGUMENT

"A motion in limine generally refers to a motion to exclude anticipated prejudicial evidence before the evidence is actually offered." *United States v. Fernetus*, 838 F. App'x 426, 432 (11th

Cir. 2020). Such motions "give the trial judge notice" and opportunity to avoid references to otherwise inadmissible evidence as admission of such evidence may "irretrievably affect the fairness of the trial." *Arch Specialty Ins. Co. v. Balzebre*, No. 10-23775-CIV, 2013 WL 12065533, at *1 (S.D. Fla. Jan. 16, 2013). Application of these principles mandates exclusion of:

(1)     the complaints against RJF and RJF's settlement agreement with the Receiver because such complaints and settlement are not admissible evidence of dishonesty, collusion or loss;

(2)     any complaints against Burstein or reference to the settlement of those claims because such complaints and settlement are not admissible evidence of dishonesty and contain no admission of any wrongdoing;

(3)     testimony about RJF's investigation into the allegations against Burstein and settlement negotiations because RJF objected to discovery of these subjects during discovery;

(4)     any discussion of claim handling or suggestion of bad faith because such issues are irrelevant to the sole issue for trial – RJF's ability to prove a covered loss;

(5)     RJF's proof of loss because it represents a hearsay narrative prepared by its counsel, not admissible evidence of the allegations therein;

(6)     testimony from undisclosed trial witnesses because RJF failed to timely disclose such witnesses in discovery;

(7)     undisclosed expert opinion testimony because RJF failed to timely disclose such opinion testimony in discovery;

(8)     emails between Burstein and Quiros because they are inadmissible hearsay;

(9)     accurate communications about Quiros' purchase of the Jay Peak ski resort because such evidence is likely to confuse the jury and is more prejudicial than probative;

(10)    accurate communications about the status of the Jay Peak accounts because such evidence is likely to confuse the jury and is more prejudicial than probative.

**I.     MOTION IN LIMINE #1: BAR COMPLAINTS AGAINST RJF AND THE SETTLEMENT THEREOF ARE IRRELEVANT AND INADMISSIBLE UNDER THE BONDS AND FEDERAL RULES OF EVIDENCE.**

Quiros did not steal from RJF. Accepting RJF's allegations, Quiros stole from the Jay Peak partnerships. As a result, RJF did not suffer the claimed loss until the Receiver and investors filed civil actions, and RJF later chose to settle its potential civil liability to those third parties. RJF's financial institution bonds, however, do not provide liability insurance. *Gasslein v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 918 F. Supp. 373, 377 (M.D. Fla. 1995). Instead, the Bonds require

2

proof of a "loss resulting directly from dishonest [ ] acts committed by an **Employee**….." (ECF No. 39, ¶ 75). No such direct loss occurs where, as here, the insured settles a third-party claim because the third party suffered the direct loss, while any loss to the insured arises incidentally after settling its potential liability. *Everhart v. Drake Mgmt., Inc.*, 627 F.2d 686, 690-91 (5th Cir. 1980); *Am. Empire Ins. Co. of S. D. v. Fid. & Deposit Co. of Md.*, 408 F.2d 72, 76-77 (5th Cir. 1969); *Fed. Ins. Co. v. Axos Clearing LLC*, 982 F.3d 536, 541 (8th Cir. 2020); *Lynch Properties, Inc. v. Potomac Ins. Co. of Illinois*, 140 F.3d 622, 629 (5th Cir. 1998); *Universal Mortg. Corp. v. Wurttembergische Versicherung AG*, 651 F.3d 759, 760 (7th Cir. 2011); *Vons Companies, Inc. v. Fed. Ins. Co.*, 212 F.3d 489, 492 (9th Cir. 2000).

Nonetheless, RJF's complaint references the allegations in civil actions against it and its settlement of those actions. (ECF No. 39, ¶¶ 63-71). Insurers anticipate that RJF will attempt to admit the complaints and settlement agreement in hope the jury will treat undocumented allegations as proof of dishonesty and the settlement as proof of a loss. Under the Bonds, the claims against RJF (whether alleging misconduct by Burstein or others) and any settlement of those claims is irrelevant and inadmissible. The Bonds expressly state that "….neither a judgment against the Insured, nor a settlement of any legal proceeding by the Insured, shall determine the existence, extent or amount of coverage under this bond for loss sustained by the Insured…." (ECF No. 39-1, General Agreement F at pg. 8). Any reference to the claims against RJF, the allegations in those claims or the settlement of RJF's alleged liability is inadmissible under Rule 408, Federal Rules of Evidence, and more prejudicial than probative under Rule 403, Federal Rules of Evidence.

Even absent a contractual agreement precluding the use of the settlement agreements, RJF could not use the claims against it or a settlement agreement to advance its case because a settlement is not admissible evidence of wrongdoing. A "settlement may well reflect a desire for peaceful dispute resolution rather than the litigants' perceptions of the strength or weakness of their relative positions." *McInnis v. A.M.F., Inc.*, 765 F.2d 240, 247 (1st Cir. 1985). To that end, this Court often excludes evidence of settlement on the basis that the prejudice outweighs any probative value. *Vision Power, LLC v. Midnight Express Power Boats, Inc.*, No. 18-CV-61700, 2020 WL 770547, at *4 (S.D. Fla. Feb. 18, 2020) (excluding evidence of confidential settlement communications); *Goussen v. Mendez Fuel Holdings LLC*, No. 18-20012-CIV, 2018 WL 5831084, at *2 (S.D. Fla. Nov. 7, 2018) (excluding defendant's settlement agreements); *Jetport, Inc. v. Landmark Aviation Miami, LLC*, No. 1:16-CV-23303-UU, 2017 WL 7734085, at *2–3 (S.D. Fla.

July 26, 2017) (precluding any testimony by defendant as to any settlement with former defendant); *Reyes v. Aqua Life Corp.*, No. 10-23548-CIV, 2012 WL 12892213, at *1 (S.D. Fla. July 9, 2012) (excluding settlement demand letter and response thereto); *Molinos Valle Del Cibao, C. por A. v. Lama*, No. 07-23066, 2008 WL 11333562, at *2-4 (S.D. Fla., Oct. 30, 2008) (excluding evidence of settlement in other lawsuit "because it would have the undue tendency to suggest to the jury that Defendants must be guilty of the accusations made in this proceeding….").

Any use of the settlement agreement would directly violate Rule 408 of the Federal Rules of Evidence. Under Rule 408, evidence of a compromise "is not admissible – on behalf of any party – either to prove or disprove the validity or amount of a disputed claim.…" The Eleventh Circuit enforces that mandating, because a jury could interpret the settlement as indicative of liability or wrongdoing: "[i]t does not tax the imagination to envision the juror who retires to deliberate with the notion that, if the defendants had done nothing wrong, they would not have paid the money back." *United States v. Arias*, 431 F.3d 1327, 1337–38 (11th Cir. 2005); *see also Dallis v. Aetna Life Ins. Co.*, 768 F.2d 1303, 1306 (11th Cir. 1985);

*El-Ad Residences at Miramar Condo. Ass'n, Inc. v. Mt. Hawley Ins. Co.*, No. 09-CV-60723, 2011 WL 13174642, at *4 (S.D. Fla. Feb. 23, 2011), excluded an analogous agreement in a coverage dispute. In that case, the plaintiff settled with a third party, but nonetheless sought to introduce the agreement to support its remaining claims. Excluding the agreement under Rule 408, this Court held that the plaintiff could not use the existence of a compromise agreement to establish (or imply) liability. Plaintiff's arguments to the contrary were "tantamount to offering the settlement agreement to demonstrate the validity of its claims under the policy . . . precisely what Rule 408 proscribes—the introduction of settlement negotiations or agreements offered to prove liability or the validity of a claim." *Id.* A contrary result would be "highly prejudicial … because a jury might mistakenly believe that it has bearing on the validity of the [party's] claims." *Id.*

As in *El-Ad Residences*, RJF cannot offer undocumented allegations and a settlement agreement to imply the existence of wrongdoing, coverage and loss. The plain terms of the bonds and Rule 408 prohibit that strategy. Any reference to, discussion or argument about the allegations against RJF, the allegations against Burstein or the settlement of a disputed claim will only confuse the issue before the jury and wrongly imply liability without support. Consistent with this Court's precedent and the plain terms of the Bonds, Insurers ask this Court to exclude the admission of any lawsuits against RJF or Burstein, any discussion of RJF's alleged exposure or settlement of

RJF's alleged liability or claims arising from Burstein's alleged conduct, and to bar RJF from asserting any argument predicated upon the filing of, allegations in or settlement of any lawsuits.

## II. MOTION IN LIMINE #2: BAR SEC'S COMPLAINT AGAINST BURSTEIN AND EVIDENCE OF THE SETTLEMENT AS IRRELEVANT, VIOLATIVE OF RULE 408 AND MORE PREJUDICIAL THAN PROBATIVE UNDER RULE 403.

RJF's complaint alleges that the SEC filed an action against Burstein and that Burstein amicably settled that action through entry of a "consent order." (ECF No. 39, ¶ 72). Burstein never admitted any wrongdoing. Instead, he entered into a settlement. To that end, the "consent order" expressly states Burstein and the SEC consented to enter a final judgment "without admitting or denying the allegations of the Complaint…." (Exh. 1, Final Judgment As To Defendant Joel N. Burstein, pg. 1).[1] Because the consent order is not an admission of the SEC allegations or an acknowledgment of wrongdoing, RJF cannot now use or reference the SEC's unproven allegations and the settlement of that action to imply wrongdoing and impugn Burstein.

Courts acknowledge consent orders as a settlement agreement inadmissible under Rule 408, irrelevant under Rule 401 and more prejudicial than probative under Rule 403. *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, No. 1:00-CV-2838, 2008 WL 9358563, at *3 (N.D. Ga. Apr. 23, 2008) (because "the SEC Order is itself a document memorializing a settlement agreement", the court held that it "falls squarely into the class of evidence deemed inadmissible pursuant to Rule 408"); *In re Tenet Healthcare Corp. Sec. Litig.*, No. CV 02-8462, 2007 WL 5673884, at *2 (C.D. Cal. Dec. 5, 2007) (finding the SEC consent orders were unreliable as "offers of settlement may be motivated by a desire for peace"). Courts refuse to admit such evidence because the admission of evidence that a defendant settled a claim with a third party carries the risk that "such a concession of liability is almost sure to be taken as an admission of fault." *Dahlgren v. First Nat. Bank of Holdrege,* 533 F.3d 681, 699 (8th Cir. 2008); *Kramas v. Security Gas & Oil, Inc.*, 672 F.2d 766, 772 (9th Cir. 1982) (affirming exclusion of the SEC consent decree because it "involved no finding of culpability and no judgment of wrongdoing, and contained a recitation that it did not constitute evidence of wrongdoing in the enforcement proceeding[.]"); *Securian Fin. Group, Inc. v. Wells Fargo Bank, N.A.*, No. CV 11-2957 (DWF/HB), 2015 WL 13637330, at *5 (D. Minn. Feb. 10, 2015) ("The SEC Consent Order shall be presumptively inadmissible pursuant to the Court's Article 4 analysis, including Rule 403.").

---

[1] The Consent To Final Judgment of Defendant Joel N. Burstein is attached to Exh. 1 (Burstein entered a consent "without admitting" the "allegations", at ¶ 1).

The Fifth Circuit addressed the admissibility of a consent order resolving an SEC complaint in *United States v. Cook*, 557 F.2d 1149, 1155 (5th Cir. 1977).[2] The Fifth Circuit held that the consent order was "inadmissible under FRE 403" because "…the injunctions [contained in the SEC consent order] were obtained by compromise, with the defendants neither admitting nor denying any wrongdoing." *Id.*; *see also Castellanos v. Portfolio Recovery Associates, LLC*, No. 1:17-CV-20593-UU, 2017 WL 7796303, at *3 (S.D. Fla. Oct. 31, 2017) (evidence of consent order inadmissible under FRE 403).

RJF cannot use the SEC's unproven allegations against Burstein, or agreement to settle those allegations, as substantive evidence or to imply wrongdoing. Accordingly, Insurers ask this Court to bar the entry of the SEC's complaint against Burstein and the consent order settling that complaint, and prohibit RJF from referencing or raising any argument relating to the SEC's complaint against Burstein or the settlement of that complaint.

## III.   MOTION IN LIMINE #3: BAR TESTIMONY REGARDING RJF'S INVESTIGATION AND SETTLEMENT NEGOTIATIONS IN LIGHT OF RJF'S PRIVILEGE OBJECTIONS.

RJF's initial disclosures identified a series of attorneys (both in-house and outside counsel) as potential witnesses, and reserved the right to call them to testify about the defense of RJF, the allegations against RJF and negotiation of RJF's settlement with the receiver. (Exh. 2, Amended Rule 26(a)(1) Disclosures, pgs. 6 & 9). However, when Insurers sought discovery on these subjects, RJF interposed broad privilege objections:

> Just so everybody is clear, Mr. Schmookler, thank you for that, Ms. Corbishley and her law firm were outside counsel for Raymond James in an underlying lawsuit brought by the receiver as well as the class case. And Raymond James will be instructing her not to answer any questions that invade either the attorney-client privilege, work-product immunity, the mediation privilege or any joint defense privilege that exists.

(Exh. 3, Corbishley Dep., pg. 8:01-10). RJF then objected to questions about conversations with Burstein (*Id.* at 26:10-26:20); RJF's approval of the transactions it now characterizes as fraudulent (*Id.* at 27:21-28:02); settlement negotiations with the Receiver (*Id.* at 35:08-35:15); the basic terms of the settlement (*Id.* at 42:21-44:15); the computation of the settlement payment (*Id.* at 63:10-63:19); factual data provided by the receiver (*Id.* at 67:01-67:09); documentation of the claimed

---

[2] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent pre-1981 decisions by the Fifth Circuit.

loss (*Id.* at 70:17-71:02); the basis for RJF's decision to settle (*Id.* at 96:08-96:12); and the results of RJF's factual investigation. (*Id.* at 104:02-104:16).

Having asserted these privileges, RJF cannot now call witnesses to testify about its investigation into Burstein, the results of that investigation or its settlement negotiations: "if a party is free to shield himself with the privilege during discovery, while having the full benefits of his testimony at trial, the whole process of discovery could be seriously hampered." C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 2018, at 149 (1970). To that end, the Eleventh Circuit prohibits a party that objects to discovery from introducing the withheld evidence on the subject. *GAB Bus. Services, Inc. v. Syndicate 627*, 809 F.2d 755, 762 (11th Cir. 1987).

The Eleventh Circuit rejected RJF's strategy in *GAB*. That case centered on a dispute over the defendant's settlement negotiations with a third party. *Id.* at 758. The defendant objected during discovery to questioning about the settlement negotiations on the basis that the negotiations were not discoverable. *Id.* at 762. Refusing to allow the defendant to use privilege as a sword and shield, the Eleventh Circuit held that the defendant could not introduce evidence of the negotiations because it refused to provide full disclosure of those negotiations during discovery. *Id.* In short, the court held that the defendant could not "hide behind the shield of privilege to prevent GAB from effectively challenging such evidence." *Id.*

Other courts agree, holding that a party that objects to the discovery of information based upon privilege may not then introduce that information at trial.

> [I]t is patently unfair for a party to assert a privilege during pretrial proceedings, frustrate rightful discovery by the other party, and then voluntarily waive that privilege at trial, thereby catching the opposing party unprepared, surprised, and at an extreme disadvantage. Thus the rule requires that a party choose between the existing privilege and the desired testimony. The party may not have both.

*Domako v. Rowe,* 438 Mich. 347, 475 N.W.2d 30, 33 (Mich. 1991); *see also Int'l Tel. & Tel. Corp. v. United Tel. Co. of Fla.*, 60 F.R.D. 177, 186 (M.D. Fla. 1973) ("Fundamental fairness and justice requires that if the defendant intends to waive the privilege at trial by the introduction of evidence within that privilege, then the defendant will be required to allow discovery with regard to matters material to that testimony"); *Gregory v. Greguras*, 2018 PA Super 261, 196 A.3d 619, 628-31 (2018) (cannot waive attorney-client privilege at trial after asserting it throughout discovery and pre-trial processes); *Seattle Nw. Sec. Corp. v. SDG Holding Co., Inc.*, 812 P.2d 488, 499 (Wash. Ct. App. 1991) ("Allowing a party to sit on the fence and not specify whether a potential witness will testify in order to preserve the advantages of not testifying while enjoying the future possibility

of allowing that testimony frustrates the other party's attempt to construct an adequate case.").

As in *GAB*, RJF cannot object to discovery into its pre-suit investigation and settlement discussions, and then call witnesses (including in-house counsel and outside counsel) to testify about their investigation, factual information they uncovered or settlement negotiations. Since Insurers could not delve into those subjects and could not obtain the information necessary to prepare cross-examination, RJF should not now be allowed to call any witnesses to testify about these subjects, including any testimony about the results of RJF's investigation, settlement discussions with the Receiver or basis for its settlement. Allowing such testimony would inherently prejudice Insurers because they were not allowed to develop sufficient factual information to address the issues at trial and cross-examine RJF's potential trial testimony. To the extent the Court permits such tactics it must permit Insurers the opportunity to take discovery (documentary and otherwise) on all of these topics as the listing of such witnesses is a waiver of RJF's attorney-client privilege. *Rutgard v. Haynes*, 185 F.R.D. 596, 601 (S.D. Cal. 1999) (plaintiff waived attorney-client privileged by indicating use of counsel as witness); *Herrick Co., Inc. v. Vetta Sports, Inc.*, 94 CIV. 0905 (RPP), 1998 WL 637468, at *3 (S.D.N.Y. Sept. 17, 1998) (designative attorney as expert witness waived attorney-client and work product protections).

## IV.   MOTION IN LIMINE #4: BAR REFERENCES TO BAD FAITH ALLEGATIONS AND CLAIMS HANDLING.

During discovery, RJF repeatedly asked representatives of Insurers about claims handling practices and "good faith." For example, RJF asked Federal's 30(b)(6) representative about general claim handling practices and application of those practices to RJF's claim. (Exh. 4, Kenneth West Deposition, pg. 34:2-9; 39:9-12; 45:7-10; 46:13-17; 58:6-10; 60:3-6; 66:19-22). Because RJF filed a breach of contract action and has not brought a bad faith action (ECF No. 39), any discussion of, reference to or testimony about claims handling (whether as to general practices or application of those practices to RJF's claim) is irrelevant and more prejudicial than probative.

Any mention of or discussion of claim handling is premature. RJF must first prove coverage (which it cannot) before asserting any extra-contractual claims. *Lane v. Provident Life & Acc. Ins. Co.*, 71 F. Supp. 2d 1255, 1256 (S.D. Fla. 1999) (under Florida's statutory law, a party's bad faith claim against an insurer does not accrue until after insured proves liability in underlying contractual claim) (citing FLA. STAT. § 624.155(1)(b)(1)). Accordingly, evidence of, or discussion of, an insurer's claim handling practices and procedures is not relevant in the absence of a bad-faith insurance claim. *Lumpuy v. Scottsdale Ins. Co.*, No. 8:11-CV-2455-T-24, 2013 WL

1775048, at *3 (M.D. Fla. Apr. 25, 2013); *Royal Bahamian Ass'n v. QBE Ins. Corp.*, 745 F. Supp. 2d 1380, 1381 (S.D. Fla. 2010).

*Lumpuy* excluded analogous evidence in a coverage dispute. In that case, the insured pursued a breach of contract action, but nonetheless sought to admit evidence of the insurer's claim handling. 2013 WL 1775048, at *3. The insurer filed a motion in limine to preclude any discussion of or reference to claims handling. *Id*. Granting that motion, the United States District Court for the Middle District of Florida held that evidence relating to claim handling practices was not relevant to a breach of contract action: "evidence of an insurance company's claims handling procedures is irrelevant to the determination of coverage and damages." *Id*.

*Royal Bahamian* held that such information is not even discoverable in a breach of contract action. 745 F. Supp. 2d at 1382. *Royal Bahamian* addressed whether an insured can conduct discovery into an insurer's claim handling in the context of an insurance dispute. This Court held that the insured could not even conduct discovery into claim handling (let alone admit such evidence at trial) because claim handling is irrelevant to whether RJF suffered a covered loss:

> The primary trial issues here are straightforward: whether Defendant withheld payment to the Plaintiff for covered damages caused by Hurricane Wilma and, if so, whether QBE proved its affirmative defenses. Evidence pertaining to any issue other than the ones at bar would be irrelevant and therefore inadmissible.…

*Id*. The insured suggested that claim handling was relevant to whether the insurer fulfilled its contractual duties when evaluating the claim, but this Court rejected that argument and held that claim handling was irrelevant because it did not bear on proof of coverage:

> This testimony would be relevant to the instant case only if it made it more or less probable that the Defendant failed to make the correct payments under the insurance policy or that Royal Bahamian violated its obligations under the policy. See FED. R. EVID. 401. Evidence pertaining to QBE's handling of the claim at issue, and indeed all other handling practices and claims, is irrelevant. (DE # 121.)

*Id.*

RJF seeks to discuss claim handling in hopes of creating the illusion of wrongdoing – thereby distracting from the reality that RJF cannot prove a covered loss. Insurers' claim handling practices are irrelevant to this case and discussion of claim handling practices will prejudice insurers by falsely misleading the jury. *1550 Brickell Associates v. QBE Ins. Corp.*, No. 07-22283-CIV, 2010 WL 5392654, at *2 (S.D. Fla. Dec. 22, 2010). *1550 Brickell* barred such evidence in a coverage dispute because "[s]uch evidence carries a high risk of prejudice and could very easily confuse the issues for the jury." *Id.*; *See Royal Bahamian Ass'n, Inc.*, 745 F. Supp. 2d at 1383

(danger that the admission of testimony about claims handling could "morph the proceeding into a not-yet filed bad faith claim, thereby unfairly prejudicing [the insurer]"); *Kennedy v. Provident Life and Accident Insurance Company*, No. 07-cv-81218, 2009 WL 3048683, at *2 (S.D. Fla. Sept. 18, 2009) (Insurer "would be prejudiced by having to defend its claim practices, procedures and general business practices when the sole issue is whether [the insured] can meet his burden of proof of establishing that he is totally disabled under the [disability] Policy.").

Because RJF filed a coverage action, any evidence of, discussion of or reference to claims handling practices, or violation of claims handling practices, is irrelevant under Rule 401, Federal Rules of Evidence, and more prejudicial than probative under Rule 403, Federal Rules of Evidence. Accordingly, Insurers ask the Court to bar evidence or testimony regarding claim handling, or reference to, discussion of or testimony about claim handling practices or suggestion of bad faith.

## V.   MOTION IN LIMINE #5: BAR ADMISSION OF RJF'S PROOF OF LOSS AS INADMISSIBLE HEARSAY AND MORE PREJUDICIAL THAN PROBATIVE.

Prior to filing suit, RJF's counsel prepared a narrative explanation of its case, advocating therein RJF's theory of coverage and support for that claim. (Exh. 5 – Proof of Loss).[3] RJF cannot admit its counsel's written advocacy as evidence because the narrative constitutes inadmissible hearsay and its prejudicial effect outweighs any probative value. Accordingly, Insurers move this Honorable Court to bar RJF from admitting its proof of loss as evidence or otherwise citing to the proof of loss as proof of a covered loss.

First, RJF's narrative explanation of its claim is hearsay inadmissible for the truth of the statements contained therein.[4] RJF cannot rely upon a self-serving presentation of its claim and arguments in favor of coverage to prove the existence of a loss or the elements of coverage because the statement reflects counsel's subjective interpretation of events – not the statement of a percipient witness. *Burgess v. Allstate Ins. Co.*, 334 F. Supp. 2d 1351, 1354–55 (N.D. Ga. 2003) (insured's doctor's letter concerning presence of mold was inadmissible hearsay as it was offered to show that mold was in the home); *United States v. Goad*, 739 F. Supp. 1459, 1461 (D. Kan. 1990) ("statement of proof of loss" was inadmissible hearsay); *In re Harmony Holdings, LLC*, 393

---

[3] Insurers admit to the submission, and date of the submission. RJF does not therefore need to admit the narrative to demonstrate the submission of a proof of loss.

[4] The narrative was by an attorney, Jason Mazer. Mr. Mazer lacks personal knowledge of the facts contained therein and his statements are double hearsay inadmissible under Rule 805 of the Federal Rules of Evidence.

B.R. 409, 414 (Bankr. D.S.C. 2008) ("[S]tatements within the proofs of claim are hearsay."). Because none of the hearsay exceptions apply, RJF's narrative explanation of its claim is inadmissible and should be excluded at trial.

Second, the Insurers anticipate that RJF will seek to use its Proof of Loss to narrate its version of the facts and present needlessly cumulative evidence to the jury to confuse them and prejudice the Insurers. To the extent that RJF has evidence of dishonesty, it must introduce that evidence through percipient witnesses. An attorney's characterization of any such evidence is cumulative and more prejudicial than probative because the jury may place unnecessary weight on counsel's advocacy. *Cambra v. Restaurant School*, No. CIV.A.04-2688, 2005 WL 2886220, at *4-5 (E.D. Pa. Nov. 2, 2005), excluded an analogous letter under Rule 403 of the Federal Rules of Evidence, on the basis that it repeated facts the parties sought to prove at trial, thus had little probative value and was mostly cumulative; (2) could cause the jury to give undue weight to it due to its authorship; and (3) contained legal conclusions likely to prejudice the jury. As in *Cambra*, the proof of loss repeats RJF's allegations. Admitting such advocacy will unduly sway the jury and given the impression that RJF's allegations suffice to prove a covered loss.

Accordingly, Insurers move to bar the admission of the proof of loss on the basis that it constitutes and contains inadmissible hearsay and the prejudicial impact of its admission outweighs its prejudicial value in violation of Rule 403 of the Federal Rules of Evidence.

## VI.    MOTION IN LIMINE #6: BAR MARK BARRACCA FROM TESTIFYING ABOUT THE PROPRIETY OF JOEL BURSTEIN'S CONDUCT.

Prior to initiating a receivership, the SEC conducted an examination under oath of Burstein. During that examination, RJF's in-house attorney (Mark Barracca)[5] represented both RJF as a corporation and Burstein individually during that examination. (Exh. 6, Barracca's Vol. I Dep, pg. 64:1-14). Pursuant to a signed retention letter appointing Barracca as Burstein's attorney, Barracca agreed to the creation of the attorney-client relationship. (*Id.*) Consistent therewith, Barracca defended Burstein during his SEC deposition (Exh. 6, Barracca's Vol. I Dep, at pg. 75:12-18) and received confidential information from Burstein. (Exh. 6, Barracca's Vol. I Dep, at pg. 49:17-24).

Even though Barracca represented Burstein, RJF disclosed Barracca as a witness and suggested an intention to call Barracca as a witness at trial. (Exh. 2, Amended Rule 26(a)(1) Disclosures, pg. 2). Barracca can testify to events he witnessed prior to representing Burstein and

---

[5] Barracca was Associate Corporate Counsel at RJF. (Exh. 6, Barracca's Vol. I Dep, pg. 16:5-6).

public information disclosed during Burstein's examination, but he cannot testify to: (1) any confidential information he received from Burstein after his retention as Burstein's counsel or any conclusions he reached about confidential information shared thereafter because any such information is protected by the attorney-client privilege, *Lafarge N. Am., Inc. v. Matraco-Colorado, Inc.*, No. 07-80112-CIV, 2008 WL 2474638, at *5 (S.D. Fla. June 19, 2008);[6] or (2) opinions about Burstein because any such opinion violates an attorney's ethical duties. *United States v. Cochran*, 546 F.2d 27, 29 (5th Cir. 1977) ("The mere appearance of an attorney testifying against a former client… is distasteful and should only be used in rare instances.").

RJF can only call Barracca to testify about events he personally witnessed prior to his retention as Burstein's attorney and non-privileged events he personally witnessed (such as Burstein's testimony at his SEC examination). It cannot call him to disclose confidential communications from Burstein or to offer damning opinions about his prior client. Accordingly, Insurers ask this Court to enter an order limiting Barracca's testimony to events he witnessed or information he gathered prior to his retention by Burstein, and to public events he witnessed thereafter, and to bar him from offering any opinions about Burstein's conduct, including any opinion that he acted dishonestly or colluded with Quiros. *Cochran*, 546 F.2d at 29 (finding that former attorney's testimony did not violate attorney-client privilege as attorney only testified "to matters of public record or to matters which took place in open court" as "communications divulged to strangers or outsiders can scarcely be considered confidential communication between attorney and client.").

## VII.   MOTION IN LIMINE #7: BAR ADMISSION OF UNAUTHENTICATED HEARSAY COMMUNICATIONS BETWEEN QUIROS AND BURSTEIN AS INADMISSIBLE HEARSAY AND MORE PREJUDICIAL THAN PROBATIVE.

RJF's claim presentation cited two unauthenticated communications between Quiros and Burstein as supposed evidence of collusion. First, RJF cited an email from Quiros to Burstein (dated April 27, 2012) as alleged proof of collusion, despite the fact that Burstein never responded to that email or expressly agreed with its content. (Exh. 7, April 27, 2012 email). Second, RJF cited a February 24, 2012 email from Burstein to Quiros as proof of collusion on the theory that

---

[6] Because Burstein retained Barracca as his attorney, only Burstein can waive privilege. *See In re Se. Banking Corp. Sec. & Loan Loss Rsrvs. Litig.*, No. 95-2602-CIV, 1996 WL 34491908, at *4 (S.D. Fla. July 8, 1996) (client can waive attorney-client privilege, attorney cannot); *Smith v. Armour Pharm. Co.*, 838 F. Supp. 1573, 1576 (S.D. Fla. 1993) (in Florida, the client needs to intentionally waive his rights for privilege to be deemed waived).

Burstein vaguely referenced "the original plan." (Exh. 8, February 24, 2012 email). Insurers intend to contest the admission of these unauthenticated communications based upon foundation, but even if RJF can authenticate the communications, they are inadmissible hearsay and cannot be offered as substantive evidence of dishonesty and collusion.

The Federal Rules of Evidence broadly prohibit the admission of any hearsay – defined as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." FRE 801(c). Given this definition, this Court routinely excludes emails as hearsay where, as here, a party seeks to admit such emails as proof of wrongdoing. *See Palma v. Am. Airlines, Inc.*, No. 09-23212-CIV, 2011 WL 13099886, at *1 (S.D. Fla. Jan. 14, 2011) (excluding as hearsay with no applicable exceptions emails describing potential job offers); *Enwonwu v. Fulton-Dekalb Hosp. Auth.*, 286 F. App'x 586, 596 (11th Cir. 2008) (affirming the exclusion of emails as hearsay finding that plaintiff appeared to offer the contents of the emails for the truth of the matter asserted therein without identifying any applicable hearsay exception). As in *Palma* and *Enwonwu*, the alleged communications between Burstein and Quiros are hearsay because they are out-of-court statements offered for the truth of the matter asserted – namely proof of collusion and dishonesty. Accordingly, they are inadmissible for that purpose.

Admission would unduly prejudice Insurers in violation of Rule 403 of the Federal Rules of Evidence because the communications from Quiros to Burstein contain one-way statements without Burstein's acknowledgment or agreement. Given the lack of acceptance, agreement or acknowledgment, the jury could wrongly imply wrongdoing from silence. Courts therefore refuse to admit such prejudicial communications, finding that they may mislead the jury into wrongly implying that silence equates to agreement. *Myers v. Bowman*, 713 F.3d 1319, 1332 (11th Cir. 2013) (finding police officer's silence did not support inference of conspiracy); *Adrion v. Knight*, No. CIV.A. 07-11277-RGS, 2009 WL 3254342, at *17 (D. Mass. Sept. 9, 2009), *report and recommendation adopted in part, rejected in part,* No. CIVA07-11277, 2009 WL 3152885 (D. Mass. Sept. 28, 2009) (finding email without reply was not proof of conspiracy); *City of Baton Rouge/E. Baton Rouge Par. v. Bank of Am.,* No. CV 19-725-SDD-RLB, 2021 WL 1201664, at *3 (M.D. La. Mar. 30, 2021) (finding chatroom conversation failed to show conspiracy).

Consistent with the Federal Rules of Evidence, Insurers move this Honorable Court to bar RJF from introducing or referencing out-of-court statements between Burstein and Quiros,

13

suggesting or arguing that such communications prove dishonesty or collusion or otherwise referencing such communications at trial.

## VIII. MOTION IN LIMINE #8: BAR TESTIMONY FROM UNDISCLOSED WITNESSES

RJF's initial disclosures contained a catchall, purporting to reserve the right to call "[a]ll witnesses identified through the discovery process, listed in any pleading or documents, or identified in any deposition." (Exh. 2, RJF's Amended Rule 26 Disclosures, pg. 10). Seeking clarity, Insurers issued interrogatories asking RJF to identify the witnesses it intended to call at trial. RJF refused to provide a disclosure of its anticipated trial witnesses and referenced its initial Rule 26 disclosures. (Ex. 9, RJF's Responses to Federal's First Set of Interrogatories, pg. 15-16).

RJF's vague reservation, combined with its refusal to identify trial witnesses in answers to interrogatories, violates the terms and spirit of the Rules of Civil Procedure. RJF cannot vaguely reserve the right to call any witness identified throughout discovery, thereby leaving Insurers to guess as to who it may call to testify in support of its claim. *Thornton v. J Jargon Co.*, 580 F. Supp. 2d 1261, 1287 (M.D. Fla. 2008); *Diamond Resorts Int'l, Inc. v. Aaronson*, No. 17-cv-1394, 2019 WL 1974833, at *5 (M.D. Fla. Mar. 13, 2019); *Hi Ltd. P'ship v. Winghouse of Fla., Inc.,* No. 6:03–cv–116, 2004 WL 5486964, at *10 (M.D. Fla. Oct. 5, 2004). Courts reject such tactics and gamesmanship because "use of generic categories of unnamed individuals… does not advance the goal of exchanging basic discoverable information about individuals… [that a party] may use to support its claims or defenses." *Rogers v. Bank of America, N.A.*, No. 13-cv-1333, 2014 WL 4681031, at *6 (D. Kan. Sept. 19, 2014).

*Thornton* rejected an analogous reservation of rights and refused to allow a party to call witnesses not affirmatively disclosed in its Rule 26 disclosures. 580 F. Supp. 2d at 1287. In that case, the initial disclosures purportedly reserve the right to call "corporate representatives" of The Tampa Bay Performing Arts Center and various theaters, but did not identify the witnesses by name. *Id*. The district court held that such a disclosure did not comply with Rule 26: "identifying witnesses by reference to corporate name is insufficient." *Id.*; *see also Diamond Resorts*, 2019 WL 1974833, at *5 (failure to identify witnesses by name violates FRCP 26(a)(1)(A)); *Hi Ltd. P'ship,* 2004 WL 5486964, at *10 (identifying witnesses by reference to corporate name is insufficient).

"The requirements of Rule 26 are not merely aspirational, rather, they are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise." *Cajule Cedant, Plaintiff, v. United States of Am., Defendant.*, No. 19-24877-CIV, 2021 WL 2895714, at *3 (S.D.

14

Fla. July 9, 2021). Any attempt to introduce surprise testimony violates RJF's discovery obligations and unduly prejudices Insurers by depriving them the opportunity to prepare for trial. *Caldently v. Pace Enterprises of S. Florida, Inc.*, No. 06-80383-CIV, 2007 WL 9706957, at \*3 (S.D. Fla. Oct. 18, 2007) (failure to disclose harmed defendants as they did not have chance to depose and failure was not substantially justified); *Bowe v. Public Storage*, 106 F. Supp.3d 1252, 1261 (S.D. Fla. 2015) (finding plaintiffs were prejudiced by the late disclosure because they were "unable to depose [him] during discovery"). Accordingly, Insurers ask this Court to prohibit RJF from calling any witnesses not identified by name in its initial disclosures.

## IX.  MOTION IN LIMINE #9: BAR INTRODUCTION OF UNDISCLOSED OPINION TESTIMONY.

Although RJF disclosed a series of retained experts, RJF did not identify any non-disclosed experts who will offer opinion testimony under FRE 702, 703, and 705. Given the absence of such a disclosure RJF cannot now ask any of its employees or other non-retained witnesses to offer any opinion testimony under FRE 702, 703, and 705. Accordingly, Insurers move *in limine* to bar RJF from introducing any opinion testimony from non-retained witnesses on the basis that RJF failed to disclose any such opinions during discovery and therefore waived its right to present such testimony at trial.

Rule 701(c) of the Federal Rules of Evidence allows a non-retained witness to provide opinion testimony to the extent that is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FRE 701(c); *see United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005) ("Subsection (c) was added … in an attempt to rein in the admission of expert testimony under the guise of lay opinion."). To offer such testimony, a party must provide "a summary of the facts and opinions to which the [non-retained expert] witness is expected to testify." FRCP 26(a)(2)(B)(ii).[7] Failure to provide such a disclosure requires exclusion of such testimony at trial. *A.T.O. Golden Constr. Corp. v. Allied World Ins. Co.*, No. 17-24223-CIV, 2018 WL 5891494, at \*4 (S.D. Fla. Nov. 9, 2018) (granting motion *in limine* to exclude project manager's testimony and spreadsheets related to the specific valuation because the testimony

---

[7] Pursuant to Local Rule 16.1(b)(6), the parties must comply with the Court's deadlines for expert disclosures, including pretrial orders. Expert testimony (from retained and non-retained ones) must be disclosed "at the times and in the sequence that the court orders," otherwise they must be made at least 90 days before trial. FRCP 26(a)(2)(D)(i).

represented undisclosed opinion testimony); *Tim Hortons USA, Inc. v. Singh,* No. 16-23041-CIV, 2017 WL 4837552, at *13–16 (S.D. Fla. Oct. 25, 2017) (striking testimony regarding plaintiff's future lost profits as it was undisclosed opinion testimony).

*In re Liquid Toppings Dispensing Sys. ('447) Patent Litig.*, No. 1:18-MD-02832, 2021 WL 2410344 (S.D. Fla. June 14, 2021), applied this principle to a lay witness offering opinion testimony. In that case, the executive purported to opine on testing of vehicles based on his perceptions. *Id.* at *2. This Court rejected defendants' characterization and determined that the testimony was opinion testimony based on a methodology employed in reliance on his technical expertise. *Id.* The Court found that defendants' failure to disclose the CEO as a non-retained opinion witness prejudiced plaintiff because plaintiff could not propound discovery related to the tests or engage a rebuttal witness. *Id.*

RJF's claim implicates complex financial transactions dependent upon specialized knowledge. Testimony about RJF's business inherently implicates opinions dependent upon specialized knowledge: "[I]n a case such as this, which appears to involve complex financial transactions that may not be easily understandable to lay persons, the Court believes that expert testimony may be important in the development of the Plaintiffs' claims and Prudential's defenses." *Lakin v. Prudential Sec., Inc.*, No. 01-4163-CV-C-NKL, 2002 WL 35649393, at *4 (W.D. Mo. Aug. 22, 2002); *Tindall v. H & S Homes, LLC*, No. 5:10-CV-044 CAR, 2012 WL 3242128, at *6 (M.D. Ga. Aug. 7, 2012). Allowing RJF to now call its own employees or other percipient witnesses to offer undisclosed opinions prejudices Insurers because they were not able to conduct discovery on such opinions and if necessary, disclose responsive witnesses. *United States v. Riddle*, 103 F.3d 423, 429 (5th Cir. 1997) (reversing the judgment and remanding the matter for a new trial because court admitted undisclosed opinion testimony).

Because RJF did not disclose any non-retained opinion witnesses, it should be barred from eliciting any opinion evidence from percipient witnesses at trial. Accordingly, Insurers move this Honorable Court to prohibit RJF from offering any undisclosed opinion testimony under FRE 702, 703, and 705 at trial, and for any other relief that this Court deems necessary and appropriate.

## X.   MOTION IN LIMINE #10: BAR ADMISSION OF A BURSTEIN JUNE 16, 2008 EMAIL, AND IMPROPER EXPERT TESTIMONY THEREON, AS INADMISSIBLE HEARSAY, MISLEADING AND UNFAIRLY PREJUDICIAL.

RJF persists with allegations against Burstein regardless of their merits and even if objective facts conclusively refute such allegations. In essence, RJF seeks to volley an avalanche

of accusations in hope that the mere volley will convince the jury. Insurers are prepared to litigate the merits of this claim, but should not be required to rebut false accusations as the mere reference to discussion of these allegations creates the illusion of merit and will potentially confuse the jury.

RJF's complaint references a June 16, 2008 email exchange between Jeff Tyler and Burstein. (Exh. 9, June 16, 2008 email). RJF alleges Burstein states that the prior owner of the resort (MSSI) "sold all of their holdings to Q Resorts" and there was "a stock transfer agreement showing all assets being transferred over to Q resorts date[d] as of last Friday [June 13, 2008]." (ECF No. 39, ¶ 32). The email was in fact accurate. MSSI executed a stock transfer agreement on June 13, 2008. The Jay Peak receiver confirmed MSSI's agreement to transfer real estate and assets through the June 13, 2008 stock transfer agreement. (ECF No. 162-6, pg. 63:09-16) (objections omitted).

RJF cannot therefore deny that Burstein accurately relayed the existence of a valid agreement, RJF (ECF No. 39, ¶ 32) and its expert, Steve Urcia ("Urcia") appear to challenge Burstein's understanding of the agreement. Urcia wrongly characterizes the email as follows:

> On June 16, 2008, Burstein reached out to Jeff Tyler ("Tyler"), a Raymond James customer accounts supervisor, regarding the documentation needed to transfer the funds in the MSSI accounts to Q Resorts. In his email to Tyler, Burstein described MSSI as having "sold all of their holding to Q.Resorts" and there being "a stock transfer agreement that shows all assets being transferred over to Q.Resorts dated as of last Friday [June 13, 2008]." Burstein knew this was false. As of June 16th, the transaction had not yet closed.

(ECF No. 164-3, ¶ 28).

The grounds for exclusion of this evidence are twofold. First, the email is hearsay, for which no fact witness has laid any foundation whatsoever for admission, whether to authenticate the document, or for any exclusion from the hearsay rule. Second, and more importantly, the mischaracterization of the email, by an expert witness, will be unfairly prejudicial, confusing and misleading to the jury. Urcia "twists" the words and meaning of the email into a misleading conclusion that Burstein "knew [his statements] [were] false." (ECF No. 164-3, ¶ 28). There is literally no truth, or proof of this unsupported conclusion espoused by Urcia. Importantly, there is no evidence in the record to suggest Burstein "knew" or believed the statement to be false. In fact, the statement is true. Moreover, this expert's opinion about the credibility of another witness is blatantly improper, unfairly prejudicial and misleading in violation of Fed. R. Evid. 403. *See Nimely v. City of New York*, 414 F.3d 381, 398 (2nd Cir. 2005). In *Nimely* an expert forensic

pathologist was improperly permitted to opine on the credibility of other witnesses, by testifying about involved police officers' diminished tendencies for lying. *Id*. The Second Circuit held that, even when such an opinion is grounded in science, it is inadmissible. *Id*. That court also held if such evidence was probative, its probative value was substantially outweighed by the danger of unfair prejudicial impacts of misleading or confusing the jury. *Id*. The same is true here.

The email in question (Exh. 9) merely advises Mr. Tyler, an accounts manager at RJF, that a stock transfer agreement dated "as of June 13, 2008" was executed between MSSI and Q Resorts. This statement is undisputed and absolutely true. (Exh. 10, p. 2). The email is dated three days after the stock transfer agreement's execution and expressly advises Mr. Tyler that "*the account*" [which is the subject of the email] *"is currently owned by MSSI*." (Exh. 9). This too is undisputedly true and refutes any suggestion that the email was false, or that Burstein knew it was false. Rather the email expressly states that MSSI is the "current owner" of the account. *Id*.

Next, the email says that "MSSI has sold all of its holdings to Q Resorts, Inc." (also true - this was part of the assets being transferred under the terms of the agreement dated three days earlier). *Id*. Urcia and RJF, however, mischaracterize this document, to confuse and mislead the jury. Urcia improperly opines Burstein "knew" these statements were "false" because the closing on the stock transfer agreement had not yet occurred. (ECF No. 164-3, ¶28). Such a misleading characterization is refuted by the email itself, which unequivocally states the account "*is currently owned by MSSI*" and that "*the assets are **being** transferred*." (Exh. 9)(emphasis added). The transfer was *ongoing* and Burstein was neither misrepresenting when closing would occur, nor suggesting the transfer of the assets had already occurred. Any reference to the "as of June 13th" date is merely a correct statement of the date of the agreement requiring the transfer of the account.

Moreover, Urcia and RJF know that the stock transfer agreement does *not* provide that the account would be transferred at "Closing." Rather, it provides for the "Asset Transfer," which includes the subject account, to occur pre-Closing. (Exh. 10, p. 21, Article 5.1). Regardless, the mischaracterization of the email is laid bare when one reads the email *in its entirety*. Burstein is not inaccurate, hiding or misrepresenting anything in the email. Burstein merely asks Tyler to tell him what documents Tyler will need to effectuate the account transfer and then asks him to provide the list of required documents to his assistant, who could then relay the list to Burstein. There is nothing in this email that is false. To portray it otherwise is misleading and confusing to the jury and such evidence should be inadmissible under Rule 403. Moreover, as noted above, it constitutes

an inadmissible comment on another witness' credibility by an expert. *Nimely v. City of New York*, 414 F.3d 381, 398 (2nd Cir. 2005).

Citing Rule 403, the Eleventh Circuit held in *United States v. Frazier,* 387 F.3d 1244, 1263 (11th Cir. 2004), that "expert testimony may be assigned talismanic significance in the eyes of lay jurors, and therefore, district courts must take care to weigh the value of such evidence against the potential to mislead or confuse." *Id*. Citing *Daubert*, 509 U.S. at 595, the court held it is sometimes proper to exclude relevant evidence under Rule 403, because of the powerful and potentially misleading effect of expert testimony on the jury. *Id*.; *accord Dillon v. Sunbelt Rentals, Inc.*, 464 F. Supp 3d 1333, 1337 (S.D. Fla. 2020) (noting the powerful and potentially misleading impact of expert testimony and the additional scrutiny required by Rule 403). Here, opinions, including Urcia's, about Burstein allegedly knowing that statements in the email were "false" is unsupported in the record and inadmissible as an improper comment on another witness' credibility. Finally, such evidence must also be excluded given its potential to unfairly mislead and confuse the jury and because its probative value is substantially outweighed by its unfair prejudicial effect.

## XI.   MOTION IN LIMINE #11: BAR ADMISSION OF A BURSTEIN FEBRUARY 29, 2012 LETTER, AND IMPROPER EXPERT TESTIMONY THEREON, LABELED AS THE "NO ENCUMBRANCE LETTER" BECAUSE IT IS MISLEADING.

Unable to identify a single percipient witness to support its claim, RJF's trial strategy is to conflate the complexity and numerosity of transactions with dishonesty – in hopes that the mere allegation of wrongdoing (regardless of its merits) will create the illusion of wrongdoing. RJF's citation to Burstein's February 29, 2012 letter (labeled by RJF as the "No Encumbrance Letter") illustrates that strategy. The letter plainly states that "as of February 27, 2012 there are no encumbrances on any of the Jay Peak Partnership accounts," and proceeds to list six (6) separate limited partnership accounts. (Exh. 11). Burstein's representation was true. As RJF's own expert concedes "…the letter accurately states that the accounts listed were not encumbered as of February 27, 2012…." (ECF No. 164-3, ¶ 47).

Despite admitting the accuracy of the letter, RJF intends to admit it in hopes that its expert can spin an accurate statement as dishonest. To that end, RJF's expert (Urcia) opined that truthful and accurate statements were false and part of an allegedly dishonest scheme.[8] RJF's "heads I win,

---

[8] Urcia claims Burstein's statement is "misleading and deceptive" because at least one of the six limited partnership accounts was encumbered as of February 24, 2012 when Quiros paid off a prior margin loan and, the following day, Quiros signed a credit agreement for a new loan encumbering

tails you lose" strategy is bound to, and designed to, confuse the jury. Documents and testimony in furtherance of that strategy should be deemed inadmissible under Rule 403. *Walker v. NationsBank of Fla. N.A.*, 53 F.3d 1548, 1554-55 (11th Cir. 1995) (affirming district court's exclusion of conflicting EEOC right to sue letters on grounds that it would tend to cause jury confusion). Courts commonly exclude demonstrably false testimony and evidence when the admission of such evidence is more prejudicial than probative and likely to confuse the jury. *Companhia Energetica Potiguar v. Caterpillar Inc.*, No. 14-CV-24277, 2016 WL 7507848, at *11 (S.D. Fla. Aug. 1, 2016) ("It is proper for courts to exclude opinions based on incorrect facts because they are not helpful to the trier of fact.").

Insurers should not be required to rebut accurate statements – as the jury could wrongly interpret the mere act as suggesting that RJF's allegations have credence. This is especially true since RJF fails to identify anyone who was actually misled by the letter. RJF's expert could not point to any evidence that that the letter was reviewed by anyone at RJF, and neither he nor RJF has been able to identify any other person who was allegedly "misled" by Burstein's accurate statement. (*See Id.* ¶¶ 42-47).[9] However, even if Urica could identify someone who was misled, an expert witness' commentary on the credibility of another witness as "false" or "misleading" is wholly inadmissible and improper. *Nimely v. City of New York*, 414 F.3d 381, 398 (2nd Cir. 2005).

In sum, RJF seeks to put itself in a position where anything Burstein said or did with respect to Quiros or Jay Peak proves his dishonesty, even statements its expert concedes were true, and even though RJ cannot identify anyone who might have been misled by the supposed "as of date" which is the bases of those statements. Rather, the only persons who might be misled by the letter, and Urcia's improper comments thereon, are members of the jury. As Rule 403 supports, the Court should rule *in limine* that document and Urcia's improper comments about Burstein are inadmissible, and exclude the admission of or any reference to this letter.

## CONCLUSION

For all of the foregoing reasons, the Insurers request that the Court grant this Motion and enter an Order barring the inadmissible evidence described above.

---

some of the accounts in the letter. *Id.* This statement is no different than steps an accountant takes on December 31 of a given year to portray the status of accounts being examined "as of that date."
[9] Stenger, the recipient of the letter, later plead guilty to felony charges in connection with the Jay Peak Project and could not have therefore been misled.

**REQUEST FOR HEARING**

Pursuant to Local Rule 7.1(b)(2), the Defendants respectfully request a hearing on the Motion. The Defendants believe the time required for hearing is one (1) hour.

**CERTIFICATE OF GOOD-FAITH CONFERENCE**

During the course of discovery, counsel for Federal, Scott Schmookler, conferred in good faith about Raymond James' reservation of right to call its attorney's as witnesses, use of text messages, the "no encumbrance" and email with Jeff Tyler.  Despite those conferrals, the parties were unable to resolve their difference as to Raymond James' right to call these witnesses and introduce these materials.  Counsel made a reasonably effort to confer on the remaining issues but due to the Jewish holidays, counsel was unavailable to confer prior to the deadline to file this motion.  Defendants will withdraw this motion to the extent Plaintiff agrees to the relief therein.

Dated: September 7, 2021                          Respectfully submitted,

*s/ Chantel Wonder*_____
Chantel C. Wonder
Florida Bar No. 0087601
**GORDON REES SCULLY MANSUKHANI**
Miami Tower
100 SE Second Street, Suite 3900
Miami, FL 33131
Telephone: 813-523-4945
Facsimile: 813-377-3505
cwonder@grsm.com


and

Scott L. Schmookler, Esq.
Sarah Riedl Clark, Esq.
**GORDON REES SCULLY MANSUKHANI**
One North Franklin, Suite 800
Chicago, IL 60606
Telephone: 312-980-6779
sschmookler@grsm.com
srclark@grsm.com

*Counsel for Federal Insurance Company*

*/s/ Ryan J. Weeks*
E.A. "Seth" Mills, Jr., Esq.
Florida Bar No. 339652
Ryan J. Weeks, Esq.
Florida Bar No.  5 7 8 9 7

21

**MILLS PASKERT DIVERS**
100 N. Tampa Street, Suite 3700
Telephone: (813) 229-3500
Facsimile: (813) 229-3502
smills@mpdlegal.com
rweeks@mpdlegal.com
csoltis@mpdlegal.com

*Counsel for Travelers Casualty and Surety*
*Company of America & St. Paul Mercury Insurance*
*Company*

*/s/ James M. Kaplan*
James M. Kaplan
Florida Bar No. 921040
**KAPLAN ZEENA LLP**
2 South Biscayne Boulevard, Suite 3050
Miami, Florida 33131
Telephone: (305) 530-0800
Facsimile: (305) 530-0801
James.kaplan@kaplanzeena.com
Elizabeth.salom@kaplanzeena.com
service@kaplanzeena.com

and

Michael Keeley
*Admitted Pro Hac Vice*
John R. Riddle
*Admitted Pro Hac Vice*
**Clark Hill Strasburger**
901 Main Street, Suite 6000
Dallas, Texas 75202-3794
Telephone: (214) 651-4718
Facsimile: (214) 659-4121
mkeeley@clarkhill.com
jriddle@clarkhill.com
*Counsel for Beazley Insurance Company, Inc.*

*/s/ Dustin C. Blumenthal*
Dustin C. Blumenthal
Florida Bar No. 0149871
**Goldberg Segalla**
222 Lakeview Avenue, Suite 800
West Palm Beach, FL 33401
Telephone: (561) 618-4485

22

Facsimile: (561) 618-4549
dblumenthal@goldbergsegalla.com
lparker@goldbergsegalla.com

and

Stephen N. Dratch, Esq.
*Admitted Pro Hac Vice*
**Franzblau Dratch, P.C.**
354 Eisenhower Parkway
Livingston, New Jersey 07039
Telephone: (973) 992-3700

*Counsel for Great American Insurance Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 7, 2021, a true and correct copy of the foregoing was E-Filed with the Clerk of Court using CM/ECF, which will send a notice of electronic filing to counsel for all parties of record.

*/s/ Ryan J. Weeks*
E.A. "Seth" Mills, Jr., Esq.
Florida Bar No. 339652
Ryan J. Weeks, Esq.
Florida Bar No.  5 7 8 9 7
**MILLS PASKERT DIVERS**
100 N. Tampa Street, Suite 3700
Telephone: (813) 229-3500
Facsimile: (813) 229-3502
smills@mpdlegal.com
rweeks@mpdlegal.com
csoltis@mpdlegal.com
*Counsel for Travelers Casualty and Surety Company of America & St. Paul Mercury Insurance Company*