**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO: 20-21707-CV-MARTINEZ-BECERRA**

**RAYMOND JAMES FINANCIAL, INC.,**

           **Plaintiff,**

**vs.**

**FEDERAL INSURANCE COMPANY;**
**TRAVELERS CASUALTY AND SURETY**
**COMPANY OF AMERICA; GREAT**
**AMERICAN INSURANCE COMPANY;**
**BEAZLEY INSURANCE COMPANY, INC.;**
**AND ST. PAUL MERCURY INSURANCE**
**COMPANY**

           **Defendants.**

_____

**DEFENDANTS' REPLY IN SUPPORT OF**
**THEIR MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF CONTENTS ...............................................................................................I

TABLE OF AUTHORITIES ....................................................................................... II

INTRODUCTION.........................................................................................................1

ARGUMENT.................................................................................................................1

I.        APPLICATION OF RJF'S OWN TRACING PRECLUDES COVERAGE. .......1

II.       RJF CONCEDES THE ABSENCE OF NET LOSS OF PARTNERSHIP
          DEPOSITS INTO PARTNERSHIP ACCOUNTS. ................................................6

III.      RJF'S ADMISSION THAT BURSTEIN NEVER WITHDREW FUNDS FROM
          THE JAY PEAK PARTNERSHIP ACCOUNTS PRECLUDES COVERAGE. ..7

IV.       RJF CANNOT AVOID SUMMARY JUDGMENT BY CONTRADICTING ITS
          ALLEGATIONS OF DISHONESTY........................................................................9

CONCLUSION AND RELIEF SOUGHT ...........................................................................10

# TABLE OF AUTHORITIES

**Cases**

*3M v. Nat'l Union Fire Ins. Co.,* 858 F.3d 561 (8th Cir. 2017) .........................................2, 4, 5, 6

*Am. Empire Ins. v. Fid. & Dep. Co.,* 408 F.2d 72 (5th Cir. 1969).........................................................1

*Ameritas v. Fed. Ins. Co.,* 2017 U.S. Dist. LEXIS 7048257 (D. Neb. 2017)................................5

*Avon State Bank v. Bancisure,* 787 F.3d 952 (8th Cir. 2015)................................................................2

*Calcasieu–Marine v. Am. Employers' Ins. Co.,* 533 F.2d 290 (5th Cir. 1976) .............................1

*Cedar Lake Homeowners v. Nw. Empire Cmty.,* 2015 WL 9690846 (D. Or. 2015) ....................2

*Cooper v. Nat'l Union Fire Ins. Co.,* 876 F.3d 119 (5th Cir. 2017) ........................................2, 4, 6

*Deni v. State Farm Fire Ins.,* 711 So.2d 1135 (Fla. 1998)....................................................................8

*Direct Gen. Ins. v. Houston Cas.,* 139 F. Supp. 3d 1306 (S.D. Fla. 2015) ....................................8

*East Fla. Hauling v. Lexington Ins. Co.,* 913 So.2d 673 (Fla. App. 2005) ....................................7

*Empire Bank v. Fid. & Dep. Co. of Md.,* 828 F. Supp. 675 (W.D. Mo. 1993), *aff'd,* 27 F.3d 333
    (8th Cir. 1994).............................................................................................................................10

*Evanston Ins. Co. v. Gaddis,* 145 F. Supp. 3d 1140 (S.D. Fla. 2015)...........................................1

*Everhart v. Drake,* 627 F.2d 686 (5th Cir. 1980) ...................................................................................1

*FDIC v. United Pac. Ins.,* 20 F.3d 1070 (10th Cir. 1994).....................................................................7

*Fid. Nat'l Fin. v. Nat. Union Fire Ins. Co.,* 2014 WL 4909103 (S.D. Cal. 2014) ........................2

*First Defiance v. Progressive Ins. Co.,* 688 F. 3d 265 (6th Cir. 2012)......................................2, 9

*Globe & Rutgers Fire Ins. v. U.S.,* 202 F.2d 696 (5th Cir. 1953).......................................................2

*Hinkle v. Matthews,* 337 F. Supp. 3d 674 (S.D. W.V. 2018) ...............................................................8

*Horowitz v. Am. Intern. Grp.,* 2010 WL 3825737 (S.D.N.Y. 2010), *aff'd,* 498 Fed. App'x 51 (2d
    Cir. 2012).........................................................................................................................................6

*In re Chase & Sanborn Corp.,* 848 F.2d 1196 (11th Cir. 1988).........................................................4

*In re Colombian Coffee Co., Inc.,* 59 B.R. 643 (Bankr. S.D. Fla. 1986) .........................................4

*Lynch v. Potomac Ins.,* 140 F.3d 622 (5th Cir. 1998) ...................................................................2, 4, 5

*O'Halloran v. First Union Nat'l Bank,* 350 F.3d 1197 (11th Cir. 2003).......................................3

*Pantropic v. Fireman's Fund Ins.,* 141 F. Supp. 2d 1366 (S.D. Fla. 2001) ...............................10

*Posco Daewoo v. Allnex USA, Inc.,* 2017 WL 4922014 (D. N.J. 2017) ...........................................5

*RealPage v. Nat'l Union Fire Ins. Co,* 2021 WL 718366 (N.D. Tex. 2021) ............................2, 4

*Rothschild Inv. v. Travelers Cas. & Sur. Co. of Am.,* 2006 WL 1236148 (N.D. Ill. 2006) ...........8

*Royal Trust Bank v. Nat'l Union Fire Ins. Co.,* 788 F.2d 719 (11th Cir. 1986)..........................10

*State Farm Fla. Ins. Co. v. Crispin,* 290 So.3d 150 (Fla. App. 2020) ...........................................1

*Taurus v. USF&G,* 913 So.2d 528 (Fla. 2005) .........................................................................................8

*Tex. Ass'n of Sch. Boards v. Travelers Cas. Ins.,* 2016 WL 4257748 (W.D. Tex. 2016)...............2

*Tonelli v. NCL,* 428 F. Supp. 3d 1313 (S.D. Fla 2019).......................................................................3

*U.S. v. Takata,* 2017 WL 3390594 (V.I. Super. 2019) .........................................................................8

*USLIFE Savings v. Nat'l Sur.,* 115 Cal. App. 3d 336 (Cal. App. 1981)........................................10

*Utica Mut. Ins. v. Fireman's Fund Ins.,* 748 F.2d 118 (2d Cir. 1984)..........................................10

*Winn-Dixie v. Dolgencorp,* 746 F. 3d 1008 (11th Cir. 2014)..............................................................3

*Zucker v. U.S. Spec. Ins.,* 856 F.3d 1343 (11th Cir. 2017)..................................................................8

**Other Authorities**

Withdrawal | Definition of Withdrawal by Merriam-Webster ........................................................7

www.merriam-webster.com/dictionary/transaction .......................................................................7

## INTRODUCTION

Raymond James Financial ("RJF") devotes virtually its entire brief to accusing its customer, Ariel Quiros, of conspiring with Joel Burstein to steal from the Jay Peak Partnerships. Insurers' motion did not attack those allegations because even if true, RJF still cannot prove coverage under its financial institution bonds ("Bonds"). Contrary to RJF's suggestion, these issues are not dependent upon a battle of the experts, debates about an "intricate web of transfers" or the product of disputed facts. RJF's immaterial allegations cannot diminish the reality that (1) RJF seeks coverage for funds allegedly stolen from another bank; (2) rudimentary arithmetic shows that the partnerships suffered no loss at RJF; (3) Burstein never illegally withdrew funds from any accounts; and (4) RJF failed to pursue a claim upon learning of Burstein's alleged misconduct. RJF cannot prove a covered loss if the Court applies the undisputed facts to the plain terms of the Bonds. It is as straightforward as that.

## ARGUMENT

Before addressing the legal flaws in RJF's response, Insurers must correct RJF's inaccurate characterization of policy construction. First, the standard rules of construction do not apply because RJF seeks coverage under financial institution bonds, not personal lines insurance. The Bonds, unlike personal insurance, were jointly drafted by trade groups and are neutrally construed. *Calcasieu–Marine v. Am. Employers' Ins.*, 533 F.2d 290, 295 n. 6 (5th Cir. 1976). Second, a disagreement about coverage does not prove ambiguity. No ambiguity exists where, as here, terms are have pain, commonly understood meaning. *State Farm Fla. Ins. v. Crispin*, 290 So.3d 150, 153 (Fla. App. 2020). Third, RJF wrongly states that "exclusions are fundamentally contrary to" insurance. (ECF 160-1, pg. 4). Exclusions stand on equal footing with other terms and are enforced as written – even though they limit coverage. *Evanston Ins. v. Gaddis*, 145 F. Supp. 3d 1140, 1146 (S.D. Fla. 2015). Application of the correct principles refutes RJF's claim as a matter of law.

## I.    APPLICATION OF RJF'S OWN TRACING PRECLUDES COVERAGE.

The Bonds are not liability insurance. Applying Florida law, the Fifth Circuit twice held that the Bonds do not cover settlement of a liability, even if due to employee dishonesty, because the settlement is an indirect loss outside the scope of coverage. *Everhart v. Drake*, 627 F.2d 686, 690-91 (5th Cir. 1980); *Am. Empire Ins. v. Fid. & Dep. Co.,* 408 F.2d 72, 76-77 (5th Cir. 1969). Confirming that result, RJF's own cases found coverage only after the insured proved a theft of money in the physical possession of the insured. *Avon State Bank v. Bancisure*, 787 F.3d 952, 957

(8th Cir. 2015) (funds in account at insured bank); *Fid. Nat'l Fin. v. Nat. Union Fire Ins. Co.*, 2014 WL 4909103, *9 (S.D. Cal. 2014) (funds insured held in escrow); *Cedar Lake Homeowners v. Nw. Empire Cmty.*, 2015 WL 9690846, *4 (D. Or. 2015) (escrow funds held by insured).

RJF's primary authority does not alter this conclusion. *First Defiance v. Progressive Ins. Co.*, 688 F. 3d 265 (6th Cir. 2012), did not find coverage because the insured bore a liability. Instead, the court found coverage because the bond therein, unlike RJF's Bonds,[1] covered property "owned and held by someone else under circumstances which make the [i]nsured responsible for the [p]roperty prior to the occurrence of the loss." *Id.* at 268. Applying that provision, the court upheld coverage because the stolen property fell within that provision: "If property qualifies as 'covered property,' and a dishonest employee steals it, the employee 'directly' causes the loss...." *Id.* at 270. Accordingly, RJF's rote allegations of collusion and dishonesty do not create a genuine issue of material fact unless and until RJF proves that the Bonds covered the stolen funds.

Unlike the bond in *First Defiance*, RJF did not purchase coverage for anything owned by the Jay Peak Partnerships or coverage whenever RJF "is responsible for the property." (ECF 160-1, pg. 5). It purchased coverage for "loss of Property (1) owned by the Insured; (2) held by the Insured in any capacity; or (3) for which the Insured is legally liable." (ECF 128, ¶ 11.) The phrase "legally liable" does not equate to civil liability. Under binding Fifth Circuit precedent, it encompasses property held by as custodian. *Globe & Rutgers Fire Ins. v. U.S.*, 202 F.2d 696, 697 (5th Cir. 1953). RJF must therefore to prove that it – not a third party – had title to, possession of, or custody of partnership funds at the time of the alleged theft. *3M v. Nat'l Union Fire Ins. Co.,* 858 F.3d 561, 567-68 (8th Cir. 2017); *Cooper v. Nat'l Union Fire Ins. Co.*, 876 F.3d 119, 129-130 (5th Cir. 2017); *Lynch v. Potomac Ins.*, 140 F.3d 622, 627-28 (5th Cir. 1998).

Despite its specific burden of proof, RJF never documents when Quiros stole from the Jay Peak Partnerships. Instead, RJF seeks to create the illusion of an issue by falsely painting the dispute as a "battle of the experts" over an "intricate web of transfers." [ECF 160-1, pg. 7-9). However, its sole support is the opinion of a hired economist who, by design, made no attempt to identify the amount stolen at RJF. On the contrary, he openly admitted that he computed the total

---

[1] RJF did not purchase coverage with this broad language, but instead purchased a standard form bond without that provision. Courts distinguish *First Defiance* when interpreting the language in RJF's Bonds. *See RealPage v. Nat'l Union Fire Ins. Co*, 2021 WL 718366 at n. 10 (N.D. Tex. 2021); *Tex. Ass'n of Sch. Boards v. Travelers Cas. Ins.*, 2016 WL 4257748, *7 (W.D. Tex. 2016).

loss to the partnerships, regardless of when and where they suffered that loss. (ECF 162-5, pg. 376:13-377:20). He consciously chose not to compute the amount stolen at RJF because he deemed the calculation "useless." (*Id.* at pg. 53:4-14). Opinions divorced from the Bonds are "useless" and do not create a material question of fact. *Winn-Dixie v. Dolgencorp,* 746 F. 3d 1008, 1028 (11th Cir. 2014) (opinion that contradicts contract is inadmissible); *Tonelli v. NCL*, 428 F. Supp. 3d 1313, 1318 (S.D. Fla 2019) (irrelevant expert opinion did not create genuine issue of material fact).

Resisting RJF's distractions, the Court should focus on objective facts documented by RJF's own economist. The issue is neither complex nor disputable. RJF's economist identified eight alleged thefts (identified as Transactions A through H and totaling $64.2M). (ECF 162-1, pg. 3). While disputing coverage for other reasons, Insurers acknowledged that this one transaction (identified as Transaction A and totaling $21.9M) involved a partial disbursement from a partnership account at RJF. Because RJF possessed the funds in a partnership account when allegedly stolen, Insurers did not dispute that Transaction A involved covered property. Insurers challenged the remaining transactions (identified as Transactions B through H, and totaling $42.3M) because RJF did not possess the partnership funds at the time of their alleged theft.

Transactions B through H stand in stark contrast to Transaction A. Unlike Transaction A, Transactions B through H (totaling $42.3M) did not involve a disbursement of funds from a partnership account at RJF. Instead, Quiros removed funds from partnership accounts at People's United Bank ("PUB"). **There is no dispute on that point**, as RJF admits that (1) funds were transferred from "a People's Bank operating account…." (ECF 161-1, ¶ 51); and (2) Quiros fraudulently induced transfers of partnership funds from accounts at PUB to his corporate accounts. (ECF 161-1, ¶ 97-8). These concessions refute RJF's claim because the transfer of partnership funds from partnership accounts at PUB to Quiros' accounts was theft.

The theft occurred whether Quiros removed the funds from the rightful owner to his accounts. The Eleventh Circuit's decision in *O'Halloran v. First Union Nat'l Bank*, 350 F.3d 1197 (11th Cir. 2003), confirms that result. *O'Halloran* held that a thief's transfer of funds from a partnership account to a corporate account resulted in an immediate loss to the partnership (such that the bank in possession of the funds at that time was liable). *Id.* at 1203-04. Under *O'Halloran*, Quiros stole partnerships funds when he transferred them from partnership accounts at PUB to his accounts. That occurred, according to RJF's economist, while the funds were on deposit at PUB and accordingly, that alleged theft is not covered under RJF's Bonds.

RJF insinuates that Quiros then commingled funds stolen from accounts at PUB into accounts he controlled at RJF. The fact that RJF received stolen funds and acted as a conduit[2] for such funds does not create coverage. RJF must show an insurable interest in the funds (ownership or possession) at the time of the theft. For example, *3M* held that a prior owner of stolen funds could not recover, despite allegations of fraud, because the insured relinquished ownership prior to the theft. 858 F.3d at 567; *see also Cooper,* 876 F.3d at 129-31 (despite prior ownership, insured lacked insurable interest because it "gave up possession and control of the funds" before theft). In this case, the theft occurred when Quiros took partnership funds by transferring funds from partnership accounts at PUB. Because RJF admits that fact, it cannot recover for Transactions B through H. Funds held by PUB are insured under PUB's insurance, not RJF's insurance.

That analysis is logical – an insured cannot recoup funds stolen from another bank simply because it temporarily possessed the funds before/after the theft. RJF's argument multiplies a single theft into multiple claims by multiple banks. Multiple banks could claim the singular theft (resulting in repetitive recovery of the same funds despite a single theft) simply because a thief passed stolen funds through multiple banks. That occurred here, as Quiros moved funds between accounts at PUB, RJF, Citibank, HSBC and Chase. (ECF 162-1, pg. 41). Under RJF's analysis, each such bank could claim a singular theft. Limiting coverage to the institution in possession of the funds at the time of the theft ensures a single recovery of a single loss – by the institution in the best position to prevent the loss and one with an insurable interest in the funds.

Even though this analysis reduces the claimed loss from $64.2M to (at most) $21.9M, RJF's economist paints this analysis "economically meaningless." This issue reduces RJF's claimed loss by $42.3M and eliminates its claim on the third and fourth excess bonds because those bonds only apply to loss in excess of $30M. (ECF 128, ¶ 8). Reduction of the claimed loss by 66% and dismissal of claims on two bonds is economically meaningful! More important, it is legally meaningful and conclusive. Courts enforce the Bonds as written and grant summary judgment where, as here, funds are stolen while on deposit at another bank because the insured did not own or hold the funds at the time of the theft. *Lynch*, 140 F.3d at 627-8; *RealPage*, 2021 WL 718366 at *8; *Ameritas v. Fed. Ins. Co.,* 2017 U.S. Dist. LEXIS 7048257, at *5 (D. Neb. 2017);

---

[2] At most, RJF acted as a conduit for Quiros' fraud, but a conduit acquires no interest in such funds. *In re Chase & Sanborn Corp.*, 848 F.2d 1196, 1200 (11th Cir. 1988); *In re Colombian Coffee Co., Inc.*, 59 B.R. 643, 645 (Bankr. S.D. Fla. 1986).

*Posco Daewoo v. Allnex USA, Inc.*, 2017 WL 4922014, at *6-7 (D. N.J. 2017).

Recognizing the illogical and legal flaws of its arguments, RJF raises an immaterial factual wrinkle. RJF argues that Quiros fraudulently induced transfers from partnership accounts at PUB to a "commingled" account at RJF in the name of Jay Construction Management ("JCM"), and stole the funds when he transferred funds from JCM to his personal benefit. Quiros, however, controlled JCM and its accounts. The transfer to that account was a theft – a fact amply proven by Quiros plea agreement and RJF's admission that Quiros fraudulently induced those transfers. (ECF 161-1, ¶ 97). Fraudulently induced transfers from the rightful owner to his accounts is theft. Because that occurred while the funds were held at PUB, they are not covered by RJF's insurance.

However, even if the Court applied RJF's premise, Insurers are nonetheless entitled to partial summary judgment. RJF's analysis wrongly implies that Quiros disbursed funds from a JCM account at RJF. RJF's own economist debunked that notion. His tracing confirmed that six of the eight claimed transactions (totaling $35.3M) either (1) did not involve a disbursement from a JCM account; or (2) involved a disbursement from a JCM account at another bank. (ECF 163-6, pgs. 19-41). Those transactions, under RJF's own analysis, are not covered.

First, RJF did not limit its claim to amounts disbursed by JCM. Per RJF's economist, RJF claimed (1) two transactions (labeled Nos. C and D) where Quiros disbursed funds through his personal account (not a JCM account); and (2) one transaction (labeled No. E) where Quiros disbursed funds from a corporate account at PUB. (ECF 163-6, pgs. 26-32, 39-41). RJF agrees and concedes this fact! (ECF 161-1, ¶ 59, 63). Therefore, even if the Court applied RJF's immaterial distinction, Transactions C, D and E are not covered, and Insurers are entitled to summary judgment thereon – reducing the claimed loss by $15.8M!

Second, RJF ignores when the disbursement from JCM occurred and falsely implies a disbursement from a JCM account *at RJF*. RJF, however, admits that JCM held accounts at multiple banks. (ECF 161-1, ¶ 67, 71). Per RJF's own economist, Quiros used those non-RJF accounts to disburse the allegedly stolen funds. For example, Transaction E involved a $6M disbursement from Chase; Transaction F involved a $5.5M disbursement from HSBC; and Transaction G involved $6.2M in disbursements from JCM accounts at Chase, Merrill Lynch and Citibank. (ECF 163-6, pg. 32-9). Therefore, these transactions are not covered under RJF's own analysis and Insurers are entitled to summary judgment thereon (a $17.7M reduction of the claim).

With one $21.9M exception, RJF cannot prove a theft of funds held in a partnership account

because Quiros stole partnership funds while on deposit at PUB. The Bonds do not cover theft of funds at PUB. RJF distracts with a legally flawed distinction, but even under that flawed analysis, RJF cannot claim Transactions C through H (totaling $35.3M). Accordingly, RJF's own flawed analysis limits the maximum claimable loss to $28.9M (the amount claimed in Transactions A and B) and does not trigger the third and fourth excess bonds as they attach to loss in excess of $30M. (ECF 128, ¶ 8). Therefore, in either event, Insurers are entitled to partial summary judgment, and the claims under the third and fourth excess bonds must be dismissed.

## II.   RJF CONCEDES THE ABSENCE OF NET LOSS OF PARTNERSHIP DEPOSITS INTO PARTNERSHIP ACCOUNTS.

Despite portraying the Bonds as covering the Jay Peak Partnerships from loss, RJF never computed whether the partnerships in fact suffered a loss of funds at RJF. RJF's economist admitted he never calculated whether the total deposits into partnership accounts at RJF exceeded the total disbursements to partnerships accounts. (ECF 162-5, pg. 376:13-377:20). Insurers did so and the computation shows no loss to the partnerships at RJF because RJF's disbursements to the partnerships exceeded the deposits into partnership accounts at RJF. (ECF 130, ₱ 17-41).

That computation, contrary to RJF's portrayal, is not complex, but instead is basic math based upon bank statements. (ECF 130-2). Accordingly, courts routinely perform rudimentary arithmetic to compute the existence of a loss – subtracting the total disbursements from the total deposits. Where (as here) such a computation reveals that the total disbursements exceed the total deposits, the insured suffered no loss and is entitled to summary judgment. *Cooper*, 876 F.3d at 124-25; *3M*, 858 F.3d at 567; *Horowitz v. Am. Intern. Grp.*, 2010 WL 3825737, at *7, 24 (S.D.N.Y. 2010), *aff'd*, 498 Fed. App'x 51 (2d Cir. 2012). Using basic subtraction, the partnerships suffered no loss at RJF because the total disbursements exceeded the partnerships' deposits.

Unable to dispute this basic computation, RJF vaguely alleges an intricate fraud, other deposits by other entities,[3] and an irrelevant settlement.[4] Therein lies the fundamental flaw in RJF's claim – it wrongly treats the Bonds as liability coverage. RJF claims a loss of partnership funds, but the distributions to the partnerships exceeded deposits in partnership accounts. Accordingly,

---

[3] RJF does not dispute Insurers' math, but instead suggests that Quiros' deposited stolen funds in other accounts. Those deposits do not alter the analysis because as discussed above, they were not partnership funds and the Bonds do not cover previously stolen funds merely deposited at RJF.
[4] The Receiver sought the return of all investments. RJF paid all investors even if they never deposited anything at RJF or had funds stolen at RJF. (ECF No. 162-6, pg. 138:13-23).

there could be no loss to the partnerships at RJF and no covered loss, under RJF's own theory. *FDIC v. United Pac. Ins.*, 20 F.3d 1070, 1080 (10th Cir. 1994).

## III.   RJF'S ADMISSION THAT BURSTEIN NEVER WITHDREW FUNDS FROM THE JAY PEAK PARTNERSHIP ACCOUNTS PRECLUDES COVERAGE.

RJF concedes a dispositive fact mandating summary judgment – it did not identify any instances where Burstein withdrew funds from the Jay Peak Partnership Accounts. While RJF attempts to create the illusion of a material dispute by accusing Burstein of dishonesty, dishonesty alone does not trigger coverage or raise a triable issue of fact because the Bonds exclude coverage for "loss resulting directly or indirectly from transactions in a customer's account, whether authorized or unauthorized, except the unlawful withdrawal and conversion of Money, securities or precious metals, directly from a customer's account by an Employee provided such unlawful withdrawal and conversion is covered under Insuring Agreement A...."[5] (ECF 128, ₱ 15).

RJF concedes the factual predicate for this exclusion - the transfer of funds from customer accounts. First, it admits that partnerships were "customers." (ECF 128, ¶¶25, 29, 33, 37, 41, 45 49, 53). Second, it admits that its alleged loss arises from "transfers to and from Raymond James accounts...." (ECF 162-1, pg. 4 ¶15). Its brief accuses Quiros of "… convert[ing] *from limited partnership accounts at Raymond James*." (ECF 160-1, pg. 2) (emphasis added). The latter triggers the exclusion because "transactions" encompasses "an exchange or transfer of goods, services, or funds...." www.merriam-webster.com/dictionary/transaction.

Given these admissions, RJF cannot simply allege dishonesty; it bears the burden of proving Burstein engaged in specific conduct – the unlawful withdrawal and conversion … directly from a customer's account by an Employee. *East Fla. Hauling v. Lexington Ins. Co.*, 913 So.2d 673, 678 (Fla. App. 2005) ("burden once again is placed on the insured to demonstrate the exception to the exclusion"). Withdrawal means "removal from a place of deposit or investment." Withdrawal | Definition of Withdrawal by Merriam-Webster. Accordingly, RJF must prove that Burstein illegally removed funds in the Jay Peak Partnership accounts. That simply never occurred, as RJF admits it could not identify any instances were Burstein ever approved a single transfer (let alone a unlawful transfer) from the partnership accounts. (ECF 161-1, ¶ 92-93). Thus, RJF cannot satisfy its burden of proof and Insurers therefore are entitled to summary judgment.

---

[5] The exclusion does not apply to loss covered under the Fraudulent Transfer Instruction Insuring Clause. RJF does not seek coverage thereunder, and therefore it is irrelevant to this case.

Unable to prove a covered loss, RJF asks the Court to ignore the plain terms of the Bonds because that application of the exclusion would preclude coverage in a totally different circumstance and Burstein acted dishonestly. Neither can create a genuine issue of material fact.

First, RJF argues that the exclusion is limited to "the purchase and sale of securities." No such language appears in the Bonds. This argument makes no sense. By its plain words, the exclusion applies to "the unlawful withdrawal and conversion of Money, securities or precious metals, directly from a customer's account by an Employee." That language never limits itself to and nothing to do with "the purchase and sale of securities." The word "transactions" is a common term that broadly encompasses "an exchange or transfer of goods, services, or funds." *U.S. v. Takata*, 2017 WL 3390594, n. 255 (V.I. Super. 2019) (adopting definition of transaction); *Hinkle v. Matthews*, 337 F. Supp. 3d 674, 683 (S.D. W.V. 2018) (same). Even RJF's authority rejected RJF's proposed limitation as textually untenable. *Rothschild Inv. v. Travelers Cas. & Sur. Co. of Am.*, 2006 WL 1236148, at *7 (N.D. Ill. 2006).

Second, RJF creates an immaterial hypothetical to distract from the flaws in its claim. It argues that the exclusion does not apply because it would preclude coverage if a thief stole funds through forgery – a risk covered under a different insuring agreement (Insuring Agreement D). RJF predicates this analysis in *Rothschild*. But, that case involved a forgery claim – not an employee dishonesty claim. *Id. Rothschild* never addressed the application or enforceability of the exclusion to an employee dishonesty claim. *Direct Gen. Ins. v. Houston Cas.*, 139 F. Supp. 3d 1306, 1318 (S.D. Fla. 2015) (hypothetical does not render policy illusory or negate terms)

Unlike in *Rothschild*, RJF did not bring a forgery claim. RJF's inapplicable hypothetical is sleight of hand clumsily designed to mislead the Court to ignore the plain terms of the Bonds. Florida law forbids that result. A court may not "rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." *Taurus v. USF&G*, 913 So.2d 528, 532 (Fla. 2005). RJF, a sophisticated insured, purchased the Bonds knowing of exclusion (i) and cannot object to its enforcement to unilaterally expanding coverage. The fact that an exclusion may preclude coverage for a forgery loss (not at issue here) provides no grounds to invalidate the parties' agreement. *Zucker v. U.S. Spec. Ins.*, 856 F.3d 1343, 1352 (11th Cir. 2017) (exclusion enforceable even if it excludes "subset of claims that would ordinarily fall within the policy's insuring clause"); *Deni v. State Farm Fire Ins.*, 711 So.2d 1135, 1139 (Fla. 1998) (court may not "place limitations upon the plain language of a policy exclusion simply because we may think it

should have been written that way").

The Bonds provide specific coverage for losses involving customer accounts – instances where an employee directly withdraws and converts customer funds. Such loss can occur, as illustrated by *First Defiance*, 688 F.3d at 268. RJF's argument that the exclusion might theoretically preclude forgery coverage is a red herring. RJF did not purchase coverage against all forms of theft of customer funds; it purchased coverage where its employee illegally withdrew and converted funds from a customer account, a plausible risk that did not occur here.

Third, RJF tries to sow confusion by accusing Burstein of dishonesty. That argument ignores the plain terms of the exclusion. The exclusion applies absent an "unlawful withdrawal and conversion of Money, securities or precious metals, directly from a customer's account by an Employee" and only if "such unlawful withdrawal and conversion is covered under Insuring Agreement A…." (ECF 128, ¶ 15). The plain language imposes two requirements: first, proof of an unlawful withdrawal and conversion by an Employee; and second, proof that such unlawful withdrawal and conversion is covered under Insuring Agreement A. It is therefore not enough for RJF to allege that it can prove dishonesty covered under Insuring Clause A. It must first prove that Burstein unlawfully withdrew and converted directly from a customer account. Because that did not occur, RJF's claim fails even if it otherwise could prove general dishonesty.

RJF purchased coverage where an employee directly steals funds from a customer account by illegally withdrawing and converting customer funds. Because RJF admits that did not occur, Exclusion (i) applies and the Insurers are entitled to summary judgment as to RJF's entire claim.

## IV.   RJF CANNOT AVOID SUMMARY JUDGMENT BY CONTRADICTING ITS ALLEGATIONS OF DISHONESTY.

RJF admits that its Legal Department knew about that very transaction it now characterizes as dishonest in March 2014, but RJF nonetheless chose not to provide notice of loss until more than two years later – in May 2016. That fact is undisputed, as RJF admits that (1) it claims that Burstein dishonestly allowed Quiros to use partnership funds to purchase the resort (ECF 1, ¶ 35; ECF 39, ¶36); and (2) its in-house counsel learned that Burstein allowed Quiros to use partnership funds to purchase the resort on March 27, 2014. (ECF 161-1, ¶¶ 86-89).

The Bonds do not allow an insured aware of alleged dishonesty to sit idle and renew coverage without disclosing its potential claim. The Bonds apply to a loss first "discovered" during the bond period. (ECF 128, ¶¶ 12-13). They define Discovery as occurring when RJF's Legal Department "first becomes aware of facts which would cause a reasonable person to assume that

a loss of a type covered by this bond has been or will be incurred…." (*Id.*, ¶14). Once RJF learns of such conduct, it then had 60 days to provide notice or forever waive its claim. *Pantropic v. Fireman's Fund Ins.*, 141 F. Supp. 2d 1366, 1369 (S.D. Fla. 2001) (untimely notice precludes coverage regardless of prejudice because an insured owes a duty to timely report a claim).

RJF cannot create a question of fact by contradicting its current allegations and disclaiming that it subjectively considered Burstein's conduct to be dishonest at the time of its initial disclosure. The Bonds' definition of Discovery does not employ a subjective standard; it employs an objective standard. As a result, RJF cannot therefore now claim conduct to be dishonest and deny that prior knowledge of the same conduct is Discovery. Either such conduct of which RJF was aware is not dishonest (in which case RJF is not entitled to coverage) or it is dishonest (and knowledge is Discovery and required written notice to the Insurers). *Royal Trust Bank v. Nat'l Union Fire Ins. Co.*, 788 F.2d 719, 721 (11th Cir. 1986); *Utica Mut. Ins. v. Fireman's Fund Ins.*, 748 F.2d 118, 123 (2d Cir. 1984); *USLIFE Savings v. Nat'l Sur.*, 115 Cal. App. 3d 336, 344–45 (Cal. App. 1981).

RJF ignores these cases because they demonstrate that knowledge of the conduct RJF characterizes as dishonest constitutes Discovery and triggered its obligation to provide notice. That RJF did not learn of third-party lawsuits until 2016 is immaterial. Discovery can occur upon either receipt of a third-party lawsuit or learning facts that would cause a reasonable person to assume that a loss of a type covered by the Bonds. (ECF 128, ¶14). The question is not whether RJF's legal department learned of a lawsuit in 2016, but whether *prior to 2016* it learned facts that would cause a reasonable person to assume that a loss of a type covered by the Bonds has been or will be incurred. *Empire Bank v. Fid. & Dep. Co. of Md.*, 828 F. Supp. 675, 677, 679 (W.D. Mo. 1993), *aff'd*, 27 F.3d 333 (8th Cir. 1994) (knowledge of alleged dishonesty triggered obligation to provide notice, even though insured did not receive complaint until later).

RJF cannot now claim that Burstein's conduct was dishonest while disclaiming an obligation to report its claim in 2014. In light of RJF's admitted knowledge, its claim is not covered because either RJF failed to timely report its claim or Burstein's conduct was not dishonest. In either event, Insurers therefore entitled to summary judgment.

**CONCLUSION AND RELIEF SOUGHT**

There is no genuine issue of material fact. For the reasons set forth herein and in their motion for summary judgment, Insurers ask this Court to grant summary judgment in their favor, and any other relief the Court deems appropriate.

Dated: September 10, 2021                    Respectfully submitted,

                                            _s/ Chantel Wonder_____
                                            Chantel C. Wonder
                                            Florida Bar No. 0087601
                                            **GORDON REES SCULLY MANSUKHANI**
                                            Miami Tower
                                            100 SE Second Street, Suite 3900
                                            Miami, FL 33131
                                            Telephone: 813-523-4945
                                            Facsimile: 813-377-3505
                                            cwonder@grsm.com

                                            and

                                            Scott L. Schmookler, Esq.
                                            Sarah Riedl Clark, Esq.
                                            **GORDON REES SCULLY MANSUKHANI**
                                            One North Franklin, Suite 800
                                            Chicago, IL 60606
                                            Telephone: 312-980-6779
                                            sschmookler@grsm.com
                                            srclark@grsm.com

                                            *Counsel for Federal Insurance Company*


                                            _/s/ Ryan J. Weeks_
                                            E.A. "Seth" Mills, Jr., Esq.
                                            Florida Bar No. 339652
                                            Ryan J. Weeks, Esq.
                                            Florida Bar No. 5 7 8 9 7
                                            **MILLS PASKERT DIVERS**
                                            100 N. Tampa Street, Suite 3700
                                            Telephone: (813) 229-3500
                                            Facsimile: (813) 229-3502
                                            smills@mpdlegal.com
                                            rweeks@mpdlegal.com
                                            csoltis@mpdlegal.com

                                            *Counsel for Travelers Casualty and Surety*
                                            *Company of America & St. Paul Mercury Insurance*

                                            _/s/ James M. Kaplan_
                                            James M. Kaplan
                                            Florida Bar No. 921040
                                            **KAPLAN ZEENA LLP**

2 South Biscayne Boulevard, Suite 3050
Miami, Florida 33131
Telephone: (305) 530-0800
Facsimile: (305) 530-0801
James.kaplan@kaplanzeena.com
Elizabeth.salom@kaplanzeena.com
service@kaplanzeena.com

and

Michael Keeley
*Admitted Pro Hac Vice*
John R. Riddle
*Admitted Pro Hac Vice*
**Clark Hill Strasburger**
901 Main Street, Suite 6000
Dallas, Texas 75202-3794
Telephone: (214) 651-4718
Facsimile: (214) 659-4121
mkeeley@clarkhill.com
jriddle@clarkhill.com
*Counsel for Beazley Insurance Company, Inc.*

*/s/ Dustin C. Blumenthal*
Dustin C. Blumenthal
Florida Bar No. 0149871
**Goldberg Segalla**
222 Lakeview Avenue, Suite 800
West Palm Beach, FL 33401
Telephone: (561) 618-4485
Facsimile: (561) 618-4549
dblumenthal@goldbergsegalla.com
lparker@goldbergsegalla.com

and

Stephen N. Dratch, Esq.
*Admitted Pro Hac Vice*
**Franzblau Dratch, P.C.**
354 Eisenhower Parkway
Livingston, New Jersey 07039
Telephone: (973) 992-3700
*Counsel for Great American Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties in the manner specified, either via transmissions of Notices of Electronic Filing generated by CM/ECF or in some authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Jason S. Mazer, Esq.
Joshua R. Alhalel, Esq.
Cimo Mazer Mark PLLC
100 S.E. Second Street, Suite 3650
Miami, FL 33131
Email:
jmazer@cmmlawgroup.com
jalhalel@cmmlawgroup.com
kshaw@cmmlawgroup.com
*Counsel for Raymond James Financial, Inc.*

Kristina L. Marsh, Esq.
Gordon Rees Scully Mansukhani
601 S. Harbour Island Blvd., Suite 109
Tampa, FL 33602
Email:
kmarsh@grsm.com
*Co-Counsel for Federal Insurance Company*

Sarah Riedl Clark, Esq.
Scott L. Schmookler, Esq.
Angela Lewosz, Esq.
Gordon Rees Scully Mansukhani, LLP
One North Franklin, Suite 800
Chicago, IL 60606
Email:
srclark@grsm.com
sschmookler@grsm.com
alewosz@grsm.com
*Co-Counsel for Federal Insurance Company
(Admitted Pro Hac Vice)*

Dustin C. Blumenthal, Esq.
Goldberg Segalla LLP
222 Lakeview Avenue, Suite 800
West Palm Beach, FL 33401
Email:
dblumenthal@goldbergsegalla.com
ppowers@goldbergsegalla.com
pborges@goldbergsegalla.com
*Co-Counsel for Great American Insurance Co.*

Stephen N. Dratch, Esq.
Franzblau Dratch, P.C.
354 Eisenhower Parkway
Livingston, NJ 07039
Email:
sdratch@njcounsel.com
*Co-Counsel for Great American Insurance Co.
(Admitted Pro Hac Vice)*

James M. Kaplan, Esq.
Kaplan Zeena LLP
2 S. Biscayne Blvd., Suite 3050
Miami, FL 33131
Email:
james.kaplan@kaplanzeena.com
elizabeth.salom@kaplanzeena.com
service@kaplanzeena.com
*Co-Counsel for Beazley Insurance Company, Inc.*

John R. Riddle, Esq.
Michael Keeley, Esq.

13

Clark Hill Strasburger
901 Main Street, Suite 6000
Dallas, TX 75202
Email:
abrinkley@clarkhill.com
jriddle@clarkhill.com
mkeeley@clarkhill.com
*Co-Counsel for Beazley Insurance Company, Inc.*
*(Admitted Pro Hac Vice)*

_____/s/ Ryan J. Weeks_____
Attorney