UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: 1:20-CV-21707-JEM

RAYMOND JAMES FINANCIAL, INC.,

      Plaintiff,

v.

FEDERAL INSURANCE COMPANY;
TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA;
GREAT AMERICAN INSURANCE
COMPANY; BEAZLEY INSURANCE
COMPANY, INC.; and ST. PAUL MERCURY
INSURANCE COMPANY,

      Defendants.

_____/

**DEFENDANTS, TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA'S AND ST. PAUL MERCURY INSURANCE
COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFF, RAYMOND
JAMES FINANCIAL, INC.'S MOTION TO COMPEL DOCUMENTS AND
ASSOCIATED TESTIMONY AND INCORPORATED MEMORANDUM OF LAW AND
<u>REQUEST TO FILE PRIVILEGED DOCUMENTS UNDER SEAL FOR INSPECTION</u>**

Defendants, TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA and ST. PAUL MERCURY INSURANCE COMPANY (collectively "Travelers"), pursuant to the Paperless Order Memorializing Discovery Hearing [ECF No. 144], hereby file this Response in Opposition to Plaintiff, RAYMOND JAMES FINANCIAL, INC.'s ("RJF"), Motion to Compel Documents and Associated Testimony from Defendants and Supporting Memorandum of Law [ECF No. 158][1] and Request to File Privileged Documents Under Seal if the Court determines that it wants to perform an in-camera inspection.

## INTRODUCTION

This matter is an insurance coverage dispute between RJF and Federal Insurance Company, Travelers, Great American Insurance Company, and Beazley Insurance Company (collectively the "Insurers") related to a $60-million financial institution bond tower with a Policy Period of October 13, 2015 through October 13, 2016 (the "Bonds"). In its Motion to Compel, RJF seeks to compel the Insurers, including Travelers, to produce attorney-client communications, some of which contain attorney and client work-product, located in the claim files, as well as to provide deposition testimony concerning these documents if the Court orders them produced.

RJF seeks documents and testimony beyond the scope of discovery permitted by Rule 26(b)(1), Fed. R. Civ. P.: "any *nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case*, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." (emphasis added) This is an insurance coverage dispute *and nothing more*. [ECF No. 39, ¶¶ 1, 79-83, 101-107]. It does not – and under Florida law cannot – concern Travelers' claims handling practices or issues of bad faith. *Id*. Thus, the documents sought are outside the scope of discovery permitted by Rule 26(b)(1).

Florida does not recognize a cause of action for first-party common law bad faith. However, it has a statutory scheme governing bad faith litigation against insurers. § 624.155, Fla. Stat. As a condition precedent to filing a lawsuit for bad faith, the Florida Department of Insurance and the insurer are entitled to sixty days written notice of an alleged violation, as a safe harbor period. The existence of the insurer's contractual liability and the determination of the extent of

---

[1] In support of this Memorandum, Travelers files the Affidavit of Matthew C. Kalin ("Kalin Aff.") as **Exhibit "1."**

contractual damages are elements of a statutory bad faith action and, therefore, must be established by final judgment *prior to* the bringing any claim of bad faith. Only after RJF would prevail both at trial and on appeal is such a claim even permissible. Because the documents sought under the Motion to Compel relate to Travelers' claims handling they are not properly discoverable in this case even if RJF only sought work-product documents.

Moreover, the discovery sought is not proportional to the needs of the case. The parties are currently proceeding under an Order Setting Civil Trial Date and Pretrial Schedule setting trial on October 25, 2021 and requiring numerous pretrial filings in September and October. [Doc. 96]. The discovery deadline was July 21, 2021. Given these dates, the discovery sought imposes an unnecessary burden on Travelers, on the eve of trial, Further, the court would need to perform an *in camera* inspection of over 80 documents.[2] There is simply no good reason to order the production of the documents and deposition testimony in this lawsuit. Any such discovery should occur, if at all, in a *subsequent* lawsuit brought under § 624.155, Fla. Stat. Even then, under Florida law, attorney-client privileged communications would not be discoverable.

In May 2016, RJF first provided notice to Travelers on the Bonds about allegations from a class action lawsuit asserting that one of RJF's employees allegedly assisted two non-employees in misusing, commingling, and stealing investor partnership funds. Travelers assigned a claims handler to the matter to review documents, communicate with the insured and its counsel, and otherwise manage the claim. In February 2018, after various extensions, RJF submitted its proof of loss (the "Claim") and over the next two years produced in excess of 150,000 pages of documents to the Insurers to assist in the Insurers' investigation of the Claim.

RJF predicated its Motion to Compel on the false premise that Travelers' *outside* coverage attorneys acted in the capacity of insurance adjusters or claim handlers, and not as legal counsel. This is neither true nor supported by the record. [*See*: Kalin Aff., ¶ 12; ECF No. 126-5, 77:17-25, 78:20-22; 108:14-22]. It is appropriate for insurance companies, like Travelers here, to engage outside coverage counsel to provide legal advice in connection with the coverage issues and to coordinate the flow of information between counsel for the claimant and the insurer. Given the complexity of this Claim, coupled with the anticipation that RJF might file suit before Travelers

---

[2] To the extent the Court would like to perform an *in camera* inspection of Travelers' protected documents, Travelers requests that the Court enter an order permitting Travelers to file the documents under seal.

could conclude its investigation into the claim, Travelers retained the law firm of Mills Paskert Divers ("MPD") in May 2018. MPD did not take on Travelers' claim management duties, which Travelers always maintained. Rather, Travelers retained MPD as outside counsel to provide legal advice on the Claim and to prepare for possible litigation if RJF decided to file suit. For over one year after retaining MPD, Travelers maintained the direct communications with RJF's counsel and the other Insurers' counsel. Meanwhile, MPD provided legal advice to Travelers on, among other things, the documents still needed from RJF, the documents RJF produced, and the coverage defenses that may exist on the Claim if litigated.

RJF misstates Florida law on the issue of the discoverability of an insurer's communications with its outside legal counsel. As explained below, current Florida law holds that attorney-client privileged documents are not discoverable in a first-party action such as this. Moreover, this Court's most recent authority holds that such discovery is an impermissible intrusion into attorney-client and work product privileged materials. Correctly applying the more recent authority and § 90.502(2), Fla. Stat., all of the documents sought from Travelers are protected by the attorney-client privilege. Moreover, the work product privilege applies to portions of the documents already protected by the attorney-client privilege. The privileged documents also expressly fall outside the scope of discovery in federal civil actions – when, as here, they are not relevant to the parties' claims or defenses.

This Court should deny RJF's request to compel production. Alternatively, the Court should review each of the documents sought from Travelers on an *in camera* basis prior to ordering any of them to be produced in this case.

## RELEVANT BACKGROUND

The Insurers issued the $60-million in Bonds to RJF. [Kalin Aff., ¶ 4]. In May 2016, RJF first provided notice of its potential claim to Travelers and the other insurers. That notice suggested one of RJF's employees, Joel Burstein ("Burstein"), had allegedly assisted two non-employees, Ariel Quiros ("Quiros") and William Stenger, in misusing, commingling, and stealing partnership funds. [Kalin Aff., ¶ 5]. Shortly after receipt of the notice, Travelers assigned Matthew C. Kalin ("Kalin") as the in-house claims counsel on the Claim and acknowledged receipt of the Claim. [Kalin Aff., ¶ 6]. Kalin handled all communications on behalf of Travelers for the next three years until Travelers requested that MPD take over direct communications with counsel for RJF and the other Insurers in September 2019. [Kalin Aff., ¶¶ 6, 12].

In February 2018, RJF, through its retained counsel, provided its proof of loss to Travelers with five exhibits, referencing numerous lawsuits, and later provided a consultant's report (the "Proof of Loss"). [Kalin Aff., ¶ 7]. The Proof of Loss claimed a loss in excess of the Bonds' $60-million coverage. [Kalin Aff., ¶ 7]. Following the Proof of Loss, all of the Insurers, other than Travelers, retained counsel. [Kalin Aff., ¶ 8].

In April 2018, Travelers held internal discussions and concluded that RJF's proof of loss raised several coverage issues and, absent RJF's production of documents to overcome the coverage issues, litigation was likely. [Kalin Aff., ¶ 9]. As a result, Travelers retained outside legal counsel to obtain informed legal advice and to prepare for any future litigation. [Kalin Aff., ¶ 10]. Following this decision, RJF's counsel acknowledged the Insurers' need to retain outside legal counsel. [Kalin Aff., ¶ 11].

On May 29, 2018, Travelers retained MPD. [Kalin Aff., ¶ 12]. Travelers retained MPD to provide legal services and advice to Travelers related to RJF's Claim. [Kalin Aff., ¶ 12]. Between May 2018 and September 2019, MPD provided these legal services to Travelers. [Kalin Aff., ¶ 12]. In December 2018, Kalin also prepared a memo related to Travelers' retention of MPD and addressing Travelers' anticipation of litigation in 2018. [Kalin Aff., ¶ 13].

On September 24, 2019, Travelers requested that MPD expand its representation to include direct communications with counsel for RJF and the other Insurers. [Kalin Aff., ¶ 14]. Thereafter, MPD contacted the Insurers' counsel and RJF's counsel to advise them of MPD's representation. [Kalin Aff., ¶ 14]. From that point forward, MPD relayed information and documents received from the other counsel directly to Travelers and advised Travelers of MPD's analyses and legal impacts of the information and documents. [Kalin Aff., ¶ 14].

On April 20, 2020, the primary insurer, Federal Insurance Company, issued its coverage decision letter denying coverage. [Kalin Aff., ¶ 15]. On April 22, 2020, Travelers followed up with its own coverage decision letter incorporating Federal's position on coverage. [Kalin Aff., ¶ 15]. On the next day, RJF filed the subject litigation. [ECF No. 1].

On June 28, 2020, RJF served Travelers with its first request for production of documents. On July 29, 2020, Travelers served RJF with its objections and responses to the request for production of documents. Travelers objected to producing documents based upon the attorney-client privilege and work-product doctrine. Travelers served RJF with privilege logs and, following conferences with counsel, RJF noticed an informal discovery conference before the

Court, asserting, among other things, that Travelers be compelled to produce its attorney-client and work-product privilege documents. Following the January 2021 hearing, the Court requested briefing from the parties. [ECF No. 71]. RJF wanted to delay briefing until it had the opportunity to depose the Insurers' corporate representatives. Knowing of the discovery deadline in July 2021, RJF did not move forward on deposing the Insurers' corporate representative until June and July 2021, over five months following the previous hearing. Now, on the eve of trial, RJF wants to pursue its claim for these irrelevant and privileged communications.

## ARGUMENT AND INCORPORATED MEMORANDUM OF LAW

### I.     *The Scope of Discovery is Governed by Rule 26(b)(1)*

"Rule 26(b), Fed. R. Civ. P., governs the scope of discovery." *S.E.C. v. BankAtlantic Bancorp, Inc.*, 285 F.R.D. 661, 665 (S.D. Fla. 2012). "Requested discovery must be relevant, and it must not impose an undue burden." *Jeld-Wen, Inc. v. Nebula Glass Int'l Inc.*, No. 07-22326-CIV, 2008 WL 11333261, at \*2 (S.D. Fla. Apr. 10, 2008). Rule 26(b)(1) first limits discovery in civil actions to "any non-privileged matter that is relevant to any party's claim or defense." RJF fails to acknowledge that the documents and testimony it seeks have absolutely no relevance at this stage of the litigation, where there is no bad faith claim and where the materials it seeks could only be relevant, if at all, to such a claim. Indeed, RJF fails to demonstrate their relevance.

RJF also ignores the fact that it seeks to compel the production of documents and testimony almost two months after the passing of the discovery deadline and only weeks before trial. RJF elected to delay its deposition of Travelers' corporate representative until the end of discovery. RJF now seeks this untimely relief, which would effectively extend the discovery deadline. RJF's lack of urgency in pursuing timely relief is an implicit admission that the privileged documents now sought are irrelevant to this litigation.

### II.     *The Documents and Testimony That RJF Seek Have No Relevance to this Litigation*

This lawsuit concerns RJF's claim for insurance coverage *and nothing else*. [ECF No. 39, ¶¶ 1, 79-83, 101-107]. Travelers' handling of RJF's claim, and whether Travelers acted in good faith in doing so, has no probative value on the issues in dispute in this case. *Id.* Thus, the documents and testimony sought are completely outside the scope of discovery permitted by Rule 26(b)(1), Fed. R. Civ. P. The Motion to Compel makes no effort to demonstrate their relevance. Rather, RJF **assumes** the documents are discoverable if they are not privileged, and merely offers a **conclusory assertion** that the "documents and communications are relevant and presumed

discoverable." [ECF No. 158, p. 11]. However, "[w]hen the relevancy of information sought cannot be discerned from a review of the discovery request,…the party seeking to compel responses must demonstrate relevancy." *S.E.C. v. BankAtlantic Bancorp, Inc.*, 285 F.R.D. 661, 666 (S.D. Fla. 2012); *see also Am. Federation of State, Cnty., & Mun. Emps. (AFSCME) Council 79 v. Scott*, 277 F.R.D. 474, 477 (S.D. Fla. 2011). RJF has made no such showing and cannot demonstrate that the materials sought are relevant to the pending insurance coverage dispute. Instead, RJF seeks documents and testimony that can only be relevant to a non-existent bad faith claim, despite the fact that RJF has only filed a breach of contract claim. For the purposes of the Motion to Compel, it does not matter whether the documents are privileged – they are simply not relevant to the parties' claims or defenses *in this case*. For this reason alone, the Court should deny the Motion to Compel.

Florida does not recognize a common law cause of action for bad faith involving first-party insurance. *Allstate Indem. Co. v. Ruiz*, 899 So. 2d 1121, 1125-26 (Fla. 2005). However, it does have a statutory scheme governing bad faith litigation against insurers. *See* § 624.155, Fla. Stat. Sixty days' written notice of a bad faith claim is a condition precedent under this statute. *See*: § 624.155(3), Fla. Stat. The prior establishment of both the existence of the insurer's contractual liability and the determination of the extent of contractual damages in the underlying coverage dispute are necessary elements of any statutory bad faith action. *Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1275 (Fla. 2000). (Bringing a cause of action for a violation of § 624.155, Fla. Stat., is premature until there is a determination on liability and the extent of damages owed on the first-party insurance contract. *Id.*; *see also*: *Imhof v. Nationwide Mut. Ins. Co.*, 643 So. 2d 617, 618 (Fla. 1994); *Mutual Ins. Co. v. The Farm, Inc.*, 754 So. 2d 865, 866 (Fla. 3rd DCA 2000)).

RJF must also prevail on appeal to assert a bad faith claim. *See Old Republic Nat'l Title Ins. Co. v. Home American Credit, Inc.*, 844 So. 2d 818, 819 (Fla. 5th DCA 2003). Thus, "an insured is not entitled to discover an insurer's claim file or documents relating to the insurer's business policies or claims practices until coverage has been determined." *Hartford Ins. Co. v. Mainstream Constr. Group, Inc.*, 864 So. 2d 1270, 1272 (Fla. 5th DCA 2004) citing *Old Republic Nat'l Title Ins. Co. v. Home American Credit, Inc.*, 844 So. 2d 818 (Fla. 5th DCA 2003); *see also The Farm*, 754 So. 2d at 866 (quashing a trial court order requiring the insurer to respond to discovery directed to the issue of its alleged bad faith because "[s]uch discovery is premature until such time as the claim for statutory bad faith has accrued and been filed"). Thus, the documents

and deposition testimony that RJF seeks to compel from Travelers are simply not relevant to RJF's claim or to Travelers' defenses and are outside the scope of permissible discovery in this lawsuit.

In *MRM Restaurant Group, LLC v. Frontline Insurance Unlimited Co.*, No. 3:20cv1872-MCR-HTC, 2020 WL 5881050 (N.D. Fla. May 29, 2020), the court noted that the "elements of a breach of contract claim are (1) a valid contract, (2) a material breach, and (3) damages" and held that "[i]n proving a breach of contract claim, an insured must demonstrate such things as the existence and terms of the contract, that the contract provides that the insurer will indemnify against any covered loss, that it paid the premiums, that it satisfied all conditions under the contract, that it sustained a loss covered by the policy while it was in effect, that it made a claim under the policy and submitted a proof of loss, and the insurer failed to pay the claim." *Id.*, at *1. The court held that the insured's documents relating to its investigation and claim handling were "not relevant in this action because the claims and defenses in this case depend upon the language of the individual policies issued by Defendants and whether these policies cover Plaintiff's losses," and "[w]hether Defendants' failure to pay the claims constitutes bad faith is simply not an issue at this stage." *Id.*, at *2 citing *Bartram, LLC v. Landmark American Ins. Co.*, No. 1:10–cv–00028–SPM–GRJ, 2011 WL 528206, at *4 (N.D. Fla. Feb. 4. 2011). The court then noted that Florida and federal courts have both held such documents irrelevant in an insurance coverage case:

> … numerous Florida courts have consistently held that the type of documents requested by MRM are not relevant to a breach of contract claim. *See*, *e.g.*, *State Farm Florida Ins. Co. v. Gallmon*, 835 So. 2d 389, 390 (Fla. 2d DCA 2003) (claim and underwriting files, investigative reports, adjuster notes, company policies and manuals, estimating manuals, marketing materials, and other documents not relevant to first party breach of contract); *State Farm v. Valido*, 662 So. 2d 1012, 1013 (Fla. 3rd DCA 1995) (insurer's claims files, manuals, guidelines, and documents concerning its claim handling procedures not relevant to first party breach of contract action relating to alleged hurricane property damage). Similarly, relying on Florida state court decisions, Florida federal courts have reached a similar conclusion. *See e.g.*, *Kennedy v. Provident Life and Acc. Ins. Co.*, 2009 WL 3048683, at * 2 (S.D. Fla. Sept. 18, 2009) (granting motion *in limine* under Fed. Rule of Evid. 401 on admissibility of evidence related to claim handling practices and general business practices, because "[u]nder both Florida and Kentucky law, documents and testimony regarding the insurer's claims handling or general business practices are irrelevant to the issue of whether the insured is entitled to the coverage claimed and may only be relevant to a claim of bad faith"); *Simone*, 2015 WL 12866988, at *4 ("Florida state and federal courts do not permit discovery of claim handling policies and procedures in an insurance action where the issues of coverage and liability have not been resolved").

*Id.*; *see also: Lumpuy v. Scottsdale Ins. Co.*, No. 8:11-CV-2455-T-24, 2013 WL 1775048, at *3 (M.D. Fla. Apr. 25, 2013) (holding that insurer's claims handling practices and procedures are not relevant in a breach of contract action); *Doe v. Onebeacon Am. Ins. Co.*, No. 1:11-cv-275-MP-GRJ, 2012 WL 5876566, at *4 (N.D. Fla. Nov. 21, 2012) (holding that "where the only issue is whether the claims are covered under the relevant policy," the insured was not entitled to discovery of privileged communications). *Royal Bahamian Ass'n v. QBE Ins. Corp.*, 745 F. Supp. 2d 1380, 1381 (S.D. Fla. 2010) (holding that an insurance company's claims handling procedures are irrelevant to the determination of coverage and damages).

Here, the Motion to Compel makes it clear that RJF seeks documents and testimony related solely to the Insurers' investigation and claims handling. At the outset of the Motion, it lists seven alleged "non-delegable obligations pertinent to handling insurance claims" and "industry standards," references the "duty to undertake a good faith claim investigation," and argues that it is entitled to "information relating to the [Insurers'] claim investigation." [ECF No. 158, pp. 1-3]. This is outside the scope of permitted discovery in this case and the Motion should be denied.

### III.     *The Discovery Sought is Not Proportional to the Needs of the Case*

Rule 26(b)(1), Fed. R. Civ. P., also limits discovery in civil actions to any nonprivileged, relevant matters that are "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." While the total lack of relevance of the discovery sought merits denial of the Motion, it also lacks the further requirement that the discovery also be "proportional to the needs of the case." Here, there is no need for the irrelevant materials being sought.

The parties are currently proceeding under an Order Setting Civil Trial Date and Pretrial Schedule entered on June 22, 2021. [ECF No. 96]. Although extended for a few days, the discovery deadline passed on July 21, 2021. [ECF No. 106]. The parties' Joint Pretrial Stipulation must be filed by September 27, 2021, with additional pretrial filings due on October 18 and 20, 2021. [ECF No. 96]. The case is set for trial on October 25, 2021. *Id*. According to the Court's Paperless Order Memorializing Discovery Hearing [ECF No. 144], RJF's reply, however, to the Insurers' Opposition Memoranda is not due until October 1, 2021.

Given these dates, the discovery sought, which has no value whatsoever in resolving the coverage issues in the case,[3] imposes an unnecessary burden on the Insurers, and the documents could not be timely included in RJF's listing of trial exhibits. Moreover, the Court would need to conduct an *in camera* inspection of the more than 80 documents RJF seeks. Such also imposes a substantial and unnecessary burden on the Court given the irrelevance of the materials sought.

There is simply no good reason to order the production of these documents, and an additional four depositions in this lawsuit, while the parties are preparing for pretrial and trial (Oct 21 and 25 respectively). At this late stage in the litigation, both the Insurers and the Court would be unduly burdened by a last-minute production "during a time that [the Insurers are] presumably making preparations for the trial of this case." *See Jeld-Wen, Inc.*, 2008 WL 11333261, at *12; *see also E.E.O.C. v. Doherty Group, Inc.*, No. 14-cv-81184-MARRA/MATTHEWMAN, 2017 WL 878705, at *3 (S.D. Fla. Feb. 28, 2017) (holding that the "burden and expense of Plaintiff's requested discovery clearly outweigh its benefit" considering that discovery was closed, the parties had already filed motions for summary judgment, and "it is now time for this case to be resolved by summary judgment, trial, or otherwise").

RJF has no good reason to pursue, in this action, the discovery it moves to compel. *See Maryland Casualty Co. v. Alicia Diagnostic, Inc.*, 961 So.2d 1091, 1092 (Fla. 5th DCA 2007) ("an insurer would be prejudiced by having to litigate either a bad faith claim or an unfair settlement practices claim in tandem with a coverage claim, because the evidence used to prove either bad faith or unfair settlement practices could jaundice the jury's view on the coverage issue"); Discussion of claim handling practices at the trial of this case would unfairly prejudice the Insurers. *See Kennedy v. Provident Life & Accident Ins. Co.*, No. 07-cv-81218, 2009 WL 3048683, at *2 (S.D. Fla. Sept. 18, 2019) (holding the insurer "would be prejudiced by having to defend its claim practices, procedures and general business practices when the sole issue is whether [the insured] can meet his burden of proof of establishing that he is totally disabled under the [disability] Policy."); *1550 Brickell Associates v. QBE Ins. Corp.*, No. 07-22283-CIV, 2010 WL 5392654, at

---

[3] Raymond James deposed Rule 30(b)(6) representatives of each of the Insurers concerning their coverage positions. Motion to Compel, p. 6; *see also* ECF No. 126-2, 126-3, 126-4, and 126-5 (transcripts of the Insurers' depositions). Numerous topics listed in the Notices for these depositions concern the Insurers' respective interpretation of the Bonds and the reasons for their respective coverage positions. No further discovery is sought from the Insurers' as to anything relevant to the parties' claims or defenses, including coverage issues.

*2 (S.D. Fla Dec. 22, 2010) ("Such evidence also carries a high risk of prejudice and could very easily confuse the issues for the jury."); *Royal Bahamian Ass'n,* 745 F. Supp. 2d at 1383 (recognizing the "real danger" that testimony about claim handling could "morph the proceeding into a not-yet-filed bad faith claim, thereby unfairly prejudicing [the insurer]").

### IV.   *Attorney-Client Privilege*

In a federal diversity action, Florida law governs the attorney-client privilege. *Bradt v. Smith*, 634 F.2d 796, 800 (5th Cir. 1981). Under Section 90.502, Fla. Stat., communications between an attorney and client are confidential and not subject to discovery by third parties.

In the insurance context, the case law in the Southern District of Florida has evolved over time regarding the issue of whether an insurance company must anticipate litigation for privilege to attach to communications between the insurance company and its attorneys. In *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 694 n.2 (S.D. Fla. 2007), which RJF relies upon through its motion, the insured rear-ended the plaintiff. The insured made a claim with her insurer, who denied coverage. The plaintiff settled with the insured. As part of the settlement, the insured assigned its rights to the plaintiff to bring a cause of action against the insurer for allegedly failing to defend, indemnify, and/or settle the claim within the policy limits. *Id.*

Pursuant to that assignment, plaintiff sued the insurer for breach of contract. In discovery, the plaintiff sought communications between the insurer and the insurer's attorney regarding plaintiff's lawsuit and the corporate representative's deposition. *Id.* at 697. The insurer objected to the production based on attorney-client privilege and work product immunity. *Id.* at 694. The plaintiff argued that the communication was discoverable because it was not rendered for the purpose of providing legal services, but rather was part of the insurer's investigation of the claim. *Id.* at 697.

The court noted, "[i]n an insurance context, the attorney-client privilege only attaches when an attorney performs acts for an insurer in his processional capacity and in anticipation of litigation." *Id.* citing *Bankers Ins. Co. v. Fla. Dep't of Ins. & Treasurer*, 755 So. 2d 729, 729 (Fla. 1st DCA 2000). The court found critical the issue of when the insurer contemplated legal action. *Milinazzo*, 247 F.R.D. at 697. It ruled that, "at the very least," all documents after the date of the coverage denial are privileged and that the two documents predating the coverage denial where privileged because "they were clearly litigation oriented." *Id.*

Some other decisions in this Court followed the "anticipation of litigation" rule as stated in *Milinazzo*. *See*: *Seacoast 5151 Condo. Ass'n v. Great Am. Ins. Co. of New York*, No. 17-23820-CIV, 2018 WL 6653342, at *3 (S.D. Fla. Sept. 21, 2018), *report and recommendation adopted*, No. 17-23820-CIV, 2018 WL 6653071 (S.D. Fla. Nov. 6, 2018); see also *Atriums of Palm Beach Condo. Assn., Inc. v. QBE Ins.*, Co., No. 08-80543-CIV, 2009 WL 10667478, at *3 (S.D. Fla. June 17, 2009).

However, four years after *Milinazzo* the Florida Supreme Court entered a ruling nullifying *Milinazzo*'s holding on the discoverability of attorney-client privilege documents in a first-party action. In *Genovese v. Provident Life & Accident Ins. Co.*, 74 So. 3d 1064 (Fla. 2011), as revised on denial of reh'g (Nov. 10, 2011), the Florida Supreme Court addressed a certified question about whether the "holding in *Allstate Indem. Co. v. Ruiz*, 899 So. 2d 1121 (Fla. 2005), permitting the discovery of work product in first-party bad faith actions…also applies to attorney-client privileged communications in the first-party bad faith context." *Genovese* at 1066. The court, following a reasoned discussion on the purpose of the attorney-client privilege, held that "attorney-client privileged communications are not discoverable in a first-party action." *Id*. The ruling reveals that, under Florida law, a party is not able to obtain attorney-client privileged documents *for any reason*, including in a subsequent bad-faith lawsuit, as long as the communications involve the rendering of legal advice. There is no requirement that the insurer anticipate litigation and the date that the insurer issued coverage decision is not considered. *Id*. All the court needs to consider is whether the attorney-client documents involved communications with a lawyer in their professional capacity as a lawyer. *Id*. at 1067. If so, the documents are privileged and non-discoverable, even in a bad faith action.

Moreover, recently this Court distinguished *Milinazzo*. In *Ranger Constr. Indus., Inc. v. Allied World Nat'l Assurance Co.*, No. 17-81226-CIV, 2019 WL 436555 (S.D. Fla. Feb. 4, 2019), the insured sued its insurer for breach of contract and bad faith. The insured brought a lawsuit after the insurer made an adverse coverage determination in an underlying state court action between a third-party and the insured. In discovery, insured's counsel inadvertently disclosed (1) emails between the insurer and insurer's coverage counsel in the state court action and (2) emails between the insurer and its counsel in the current litigation. *Id.* at *1.

The insured refused to return the inadvertent production of privileged material, arguing that attorney-client privilege did not apply. *Id.* at *3. Specifically, the insured argued that the

11

insurance company must have reasonably anticipated litigation in order for attorney-client privilege to apply. *Id.* Further, the insured argued that, since the insurer's representative testified that it did not anticipate litigation until after the insured filed the lawsuit, the claim of attorney-client privilege, for documents exchanged prior to that date must fail. *Id.*

In ruling on attorney-client privilege, the Southern District of Florida refused to follow *Milinazzo*. First, the court rejected *Milinazzo*'s reliance on *Bankers Ins. Co.* for misinterpreting the holding in the state court case. The court explained:

> Interestingly, *Bankers Ins. Co.*, the Florida state case relied upon by *Milinazzo* for this holding, does not so hold. A careful reading of the *Bankers Ins. Co.* case shows that it does <u>not</u> state that an insurance company must reasonably anticipate litigation in order to assert a claim of *attorney-client privilege.* To the extent *Milinazzo* may have relied upon *Bankers Ins. Co.* for that purported holding, and to the extent Plaintiff Ranger relies on *Bankers Ins. Co.* to urge such a holding from this Court, such reliance is rejected.(emphasis added)

> What the short, two-page *Bankers Ins. Co.* opinion states is as follows:

>> However, we REVERSE the trial court's finding that an attorney-client privilege attaches to communications between the appellant and George K. Delano with respect to the investigation of the Department's employee. The evidence demonstrates that Delano serves as the appellant's secretary and general counsel, but the appellant presented only argument, and no evidence, **that he undertook the investigation of the Department's employee in his professional capacity as general counsel, or that he undertook the investigation in anticipation of litigation in which the appellant would be a party**....

> *Id.* at 729-30 (Fla. Dist. Ct. App. 2000) (emphasis added). It appears that the "or" in the bold sentence above has been overlooked by some courts and by Plaintiff. Clearly, the "or" language in *Bankers Ins. Co.* means that a corporate insurance company can claim the attorney-client privilege if counsel was retained or tasked with providing an opinion in his or her professional capacity as an attorney <u>or</u> if counsel's investigation was undertaken in anticipation of litigation. Plaintiff['s] argument effectively changes the "or" to an "and" in *Bankers Ins. Co.*, something the Court rejects.

*Ranger Constr. Indus., Inc.*, 2019 WL 436555, at *3-4 (emphasis in original).

This Court then ruled that it "simply cannot follow *Milinazzo* to the extent it requires that an insurance company to anticipate litigation in order for the attorney-client privilege to attach." *Id.* at *4. Rather, the court looked to the Florida Statue on attorney-client privilege and explained:

> The statute defining attorney-client privilege also states that a "client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communication because they were made in the rendition of legal services to the client." Fla. Stat. § 90.502(2). The statute does not require that a corporation—such as an insurance company—establish that it anticipated litigation at the time it retained counsel or received legal advice in order to invoke the attorney-client privilege.

*Id.* The court recognized the heightened scrutiny for claims of attorney-client privilege by corporations and the proper inquiry of whether (a) "the communication would not have been made but for the contemplation of legal services" and (b) whether the "content of the communication relates to the legal services being rendered." *Id.* quoting *Arlen House E. Condo. Ass'n, Inc. v. QBE Ins. (Eur.) Ltd.*, No. 07-23199-CIV, 2008 WL 11333859, at *4 (S.D. Fla. Aug. 27, 2008). However, the court clarified:

> [T]his heightened scrutiny does not mean that a corporation doing business as an insurance company must anticipate litigation in order to be able to claim or assert the attorney-client privilege. The Court believes that requiring an insurance company to anticipate litigation in order for it to assert an attorney-client provide would not only constitute a misreading of the applicable Fla. Stat. § 90.502 and case law, it would also partially, and improperly, eviscerate the attorney-client privilege for insurance companies who retain legal counsel for legal advice when litigation is not yet anticipated.
>
> Moreover, it is clear that, in the insurance context, "no privilege attaches when an attorney performs investigative work in the capacity of an insurance claims adjuster, rather than as a lawyer, [but] simply because [the attorney's] assigned duties were investigative in nature" does not preclude an assertion of the attorney-client privilege. Therefore, "[t]he relevant question is not whether [the attorney] was retained to conduct an investigation, but rather, whether this investigation was related to the rendition of legal services. If it was ... the privilege is not waived."

*Ranger Constr. Indus., Inc.*, 2019 WL 436555, at *5 (citations omitted).

RJF, of course, advocates that the Court follow *Milinazzo* rather than *Ranger*. But *Ranger* uses a much sounder, policy-driven and fairer approach than *Milinazzo*, which *is poorly-reasoned and* essentially rewrites the attorney-client privilege statute, as to insurance companies. Such an approach conflates the test for attorney-client privilege with that for the work-product exemption. *Ranger* also could have taken a simpler approach in looking at the *Genovese* ruling. Either way, the result is the same. Attorney-client privileged documents are not discoverable in a first-party action

as long as the attorney-client documents involved communications with a lawyer in their professional capacity as a lawyer.

Accordingly, "the relevant question [in determining whether the attorney-client privilege applies] is whether an attorney was retained to render legal services." *St. Joe Co. v. Liberty Mut. Ins. Co.*, 3:05-CV-1266J-25MCR, 2006 WL 3391208, at *5 (M.D. Fla. 22, 2006). In the context of insurers, the "real test… is whether the attorney functioned as a mere conduit, claims adjustor or claim investigator, or rather, whether the attorney functioned in the attorney's professional capacity in dispensing legal advice." *Ranger*, 2019 WL 436555, at *6. "[S]imply because [the attorney's] assigned duties were investigative in nature[] does not preclude an assertion of the attorney-client privilege." *Arlen House E. Condo. Ass'n, Inc. v. QBE Ins. (Europe) Ltd.*, No. 07-23199-CIV, 2008 WL 11333859, at *5 (S.D. Fla. Aug. 27, 2008).

### a. The Documents RJF Seeks are Protected by the Attorney-Client Privilege

RJF seeks to recover 80 different documents, and related attachments[4], protected by the attorney-client privilege. To assist the Court in its review, Travelers segregated the 80 questioned documents into six categories: (1) 4 emails providing proposed revisions to the Insurers' document requests to RJF [Exhibit "2"][5]; (2) 14 emails between MPD and Travelers discussing documents and letters related to, or from, RJF [Exhibit "3"]; (3) 8 emails or documents regarding the detailed memorandum MPD prepared that provides its legal analysis concerning defenses and strategy for the impending litigation [Exhibit "4"]; (4) 5 emails regarding the draft coverage letters [Exhibit "5"]; (5) 38 emails involving strategy discussions between MPD and Travelers [Exhibit "6"]; and (6) 11 emails between MPD and Travelers discussing the impressions about various documents [Exhibit "7"]. All 80 documents are attorney-client documents that involve communications with a lawyer in their professional capacity as a lawyer while some, as addressed below, involve another element of work-product. [Kalin Aff., ¶ 17].

RJF argues that a "review of the privilege logs and the portions of the claim files each produced, coupled with the Rule 30(b)(6) deposition testimony from [Travelers]" make clear that Travelers conducted its claim investigation through counsel, "with counsel acting as a claims investigator." [ECF No. 158, p. 14]. However, as the Kalin Aff. makes clear, two separate facts

---

[4] Travelers produced all attachments that did not include MPD's mental impressions as part of it providing legal services for Travelers.

5 The exhibits referenced in this paragraph are the relevant entries from Travelers' privilege log separated out for the Court's ease of reference.

support upholding Travelers' attorney-client privilege objections. First, Travelers anticipated litigation in April 2018 before it retained MPD. [Kalin Aff., ¶¶ 10-11]. Second, and regardless of Travelers' anticipation of litigation, MPD provided legal analysis and advice to Travelers, and was retained specifically to provide legal services. *See Ranger*, 2019 WL 436555, at *6 (finding the seven documents at issue were protected under the attorney-client privilege where the insurer's coverage counsel provided "legal advice and legal services to Defendant in its capacity as outside coverage counsel" and was "clearly retained by Defendant in the contemplation of legal services."); *Genovese*, 74 So. 3d at 1066 (attorney-client communications are never discoverable in first party action). Travelers retained MPD to provide legal analysis and advice regarding RJF's Claim and potential coverage for the Claim under the Bonds, not to handle, adjust, or investigate the claim. [Kalin Aff., ¶ 12-14]. This is shown in reviewing the six categories of documents.

First, the emails and documents related to the proposed revisions to the Insurers' documents requests to RJF [Exhibit 2] are instances where Travelers requested MPD's legal services and input on the additional document requests going to RJF on three different occasions. The first occurred in June 2018, the second in December 2018, and the third in January 2019. These communications were in contemplation of litigation and sought the providing of legal services and advice. Travelers has already produced the documents that do not include MPD's mental impressions and legal analysis on the document requests. RJF is not entitled to these further protected communications. *See Ranger*, 2019 WL 436555, at *4; *Genovese*, 74 So. 3d at 1066.

Second, the emails and documents to, or from, RJF [Exhibit 3] are protected from disclosure because they are both classic attorney-client communications and were made in anticipation of litigation. In those communications, MPD and Travelers discussed the substance of the various documents and RJF letters being produced and their impact on MPD's analysis. The emails start at the beginning of MPD's retention in 2018 and continued through early 2020. Again, Travelers produced all of the underlying email attachments to RJF. The only documents withheld, or redacted, are the attorney-client communications. MPD is only involved in these communications because Travelers' retained it to provide legal services and the content of these communications relate solely to MPD rendering legal services. These documents must remain privileged. *Id*.

Third, the emails and documents regarding MPD's detailed memorandum [Exhibit 4] provide MPD's legal analysis on potential defenses and strategy related to the anticipated and

impending litigation (which was filed by the Plaintiff only two days after Travelers' denied the claim). MPD's memorandum, which is also attorney work-product, was not made as part of claims handling, but was created for the purpose of MPD's preparation for litigation. This matter involved over 150,000 pages of documents, an expert report analyzing hundreds of millions of dollars in transfers at different banks and between numerous accounts, various allegations of theft, and numerous elements of coverage on the related policy language/exclusions. MPD needed to be ready to assert all of Travelers' various defenses, based upon the known facts, if RJF filed a lawsuit before the Insurers could conclude their investigation, as its counsel alluded to in April 2018 [Kalin Aff., ¶ 11]. MPD prepared this memorandum as part of the rendition of legal services. Both the content of the memorandum and all communications about the memorandum, relate directly to the provision of legal services and contain the attorneys' mental impressions and conclusions about various documents, defenses and the like. *See Ranger*, 2019 WL 436555, at *4; *Genovese*, 74 So. 3d at 1066.

Fourth, the emails regarding the draft coverage letters [Exhibit 5] are discussions between Travelers and MPD regarding the legal impacts of the coverage denial letters and counsel's legal advice on recommended changes (again reflecting counsel's mental impressions and conclusions). RJF received the final versions of these letters and asked Travelers' corporate representative about these documents. [ECF No. 126-5, 71:21-85:18]. However, the drafts, along with the discussions about the drafts, are protected because MPD was providing legal services and advice. These communications are thus attorney client and work product privileged communications. *See Ranger*, 2019 WL 436555, at *4; *Genovese*, 74 So. 3d at 1066.

Fifth, the emails involving strategy discussions between MPD and Travelers [Exhibit 6] are communications related to mental impressions about documents, draft documents, and communications between the Insurers and RJF. These communications relate to some production related items, FOIA requests and appeals with the SEC, and other litigation against third-parties. Again, Travelers produced all of the underlying email attachments to RJF that did not include revisions on draft exchanges. MPD's communications on these topics relate to its rendering of legal services. *Id.* Again, these communications are protected by both the attorney client and work product privileges.

Sixth, and similar to the strategy discussions, the emails involving MPD's and Travelers' impressions about various documents [Exhibit 7] are protected from disclosure because they relate

to MPD's rendition of legal services. Travelers produced the attachments, which MPD did not prepare. However, attorney-client discussions and mental impressions of counsel are privileged and protected from disclosure. *Id.*

Ultimately, all of the documents RJF seeks are protected by the attorney-client privilege and not subject to discovery in this case. The communications between MPD and Travelers were all part of the rendition of legal services. As Mr. Kalin testified, as Travelers' corporate representative, he remained responsible for RJF's claim and did not delegate the claim handling responsibilities to anyone else within, or outside of, Travelers. [ECF No. 126-5, 77:17-25; Kalin Aff., ¶ 12]. Because the content of the communications relate to legal services rendered, and because Travelers did not delegate its claim handling duties to MPD, the documents must remain protected by the attorney-client privilege. *See Ranger*, 2019 WL 436555, at *4; *Genovese*, 74 So. 3d at 1066.

### V.   *Work-Product Doctrine*

Federal law governs the work-product privilege. *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 698-700 (S.D. Fla. 2007). The work-product doctrine is set forth under Rule 26(b)(3), Fed. R. Civ. P. It provides, in pertinent part: "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation, or for trial by, or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Rule 26(b)(3), Fed. R. Civ. P.

. While the Southern District of Florida does not follow *Milinazzo* on attorney client communications, it still follows its reasoning relating to work-product privilege. *See Ranger Constr. Indus., Inc. v. Allied World Nat'l Assurance Co.*, 17-81226-CIV, 2019 WL 436555, at *4 (S.D. Fla. Feb. 4, 2019) ("*Milinazzo* provides an excellent, well-reasoned framework to analyze the work product privilege in an insurance company context….").

In reviewing an insurer's documents for the application of work-product privilege a court must examine the "when" and "why" questions. *See*: *Milinazzo* at 698. When was the document created must be compared to when litigation was reasonably anticipated and the coverage denial date. *Milinazzo* addresses these questions below stating:

Therefore, we need to determine *when* the document was created, and *why* it was created. *See, e.g. In re Sealed Case*, 146 F.3d 881, 884 (D.C.Cir.1998) ("The 'testing question' for the work-product privilege ... is 'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'"); *Moye, O'Brien, O'Rourke, Hogan & Pickert v. National R.R. Passenger Corp.*, 2003 WL 21146674, *14 (M.D. Fla. May 13, 2003) ("The testing question for the work product privilege, ... is whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.") (internal quotations omitted); *Guidry v. Jen Marine LLC*, 2003 WL 22038377, *2 (E.D.La. Aug. 25, 2003) ("in determining whether a document was made in anticipation of litigation, the primary focus is the reason or purpose for creating the document.").

*Id*. at 698. (emphasis in original).

### a.   *The Documents RJF Seeks are Protected by the Work-Product Doctrine*

RJF currently seeks to compel three emails that include communications between Travelers employees that are work-product documents discussing internal strategy and revisions for the FOIA appeal letter to the SEC.[6] While Travelers did produce its FOIA appeal letter that it sent to the SEC, it did not produce the internal communications discussing revisions to the letter because these communications are not related to the analysis of RJF's claim and are protected. [Kalin Aff., ¶ 18]. RJF also seeks to compel the production of six emails and documents related to the memorandum that MPD prepared providing legal positions and defenses on the strategy of the impending litigation.[7] These are protected by the attorney-privilege and are properly withheld from production as addressed in the previous section. However, independent from the attorney-client privilege that attaches to these documents, they also involve an element of attorney work-product related to the memorandum itself.

Based upon *Milinazzo's* work product framework, the Court must first look to whether the Travelers' emails and documents were created before or after it issued the coverage denial letter. Since the work-product documents predate the April 2020 coverage denial letter, the Court must move on to the "why" stage of the analysis to determine if the documents are entitled to work-product protection. This entails looking at specific evidentiary proof of whether the documents

---

[6] Labeled as Control Numbers MPD_00000695, 698, and 699 within Exhibit 6.
[7] Labeled as Control Numbers MPD_00000003, 10, 29, 80, and 153 within Exhibit 4 and Control Number MPD_00000036 within Exhibit 5.

were: (1) prepared because a reasonable anticipation of litigation existed; and (2) created to prepare for litigation and not to arrive at a claim decision.

RJF relies upon *Milinazzo* in claiming that the documents are not privileged because they were drafted before the claim denial and not prepared in anticipation of litigation. (ECF No. 158, p. 3]. However, as part of RJF's position, it mistakenly assumes that the documents were prepared to arrive at a claim decision and in the ordinary course of Travelers' business. This is incorrect.

The Kalin Affidavit sets forth the specific evidentiary proof meeting both *Milinazzo's* requirements to declare the documents are protected by the work-product privilege. First, Travelers anticipated litigation prior to retaining MPD on May 29, 2018. Travelers' anticipation of litigation was reasonable because Travelers perceived a likelihood that RJF could not overcome the same coverage issues, now before the Court, and RJF's counsel had already mentioned likely coverage litigation. [Kalin Aff., ¶¶ 7-13]. Moreover, all of the other parties involved, including RJF, Federal, Beazley, and Great American, had previously retained counsel. [Kalin Aff., ¶ 8]. The matter appeared, and would appear objectively, to be proceeding towards litigation prior to Travelers' retention of MPD.

Most of the coverage issues are the same ones now before this Court. For RJF to recover under the Bonds' Employee Dishonesty Insuring Agreement, that dealt with a Loan or Trading, it needed to show that it suffered a loss directly from dishonest or fraudulent acts committed by an Employee with the intent to cause RJF a loss and to obtain a financial benefit for the Employee. [ECF No. 39-1, p. 23, Bond, End. No. 3]. Based upon what RJF provided, no clear proof existed that Burstein committed dishonest or fraudulent acts, with the intent to cause RJF a loss, or that he financially benefited from those acts. The documents initially presented did not show an intent to cause a loss and it was unlikely, in 2018, that other produced documents would prove such coverage existed.

Moreover, RJF needed to show that it held a sufficient ownership interest in, or was legally liable for, all of the funds that it claimed were part of the loss. [ECF No. 39-1, p. 18, Bond, Conditions and Limitations, Section 10]. This matter is currently pending as a basis for summary judgment and requires the funds be held by RJF as a Bailee. Since it was unlikely that RJF could meet this standard, litigation was likely (if RJF's counsel's threats were to be believed). Given this, Travelers' reasonably anticipated litigation before MPD was retained. As set forth in RJF's Complaint, hundreds of millions of dollars flowed through numerous bank accounts at RJF and

other banking entities. [ECF No. 39]. The ownership condition added another layer of complexity for RJF to prove entitlement to coverage. Given this unlikely event, and the amount of time necessary to conduct an investigation into the complex claim that included hundreds of millions of dollars in transactions and numerous allegations of theft and financial benefit[8], Travelers' anticipation of litigation was objectively reasonable.

Second, the work-product documents were prepared solely for the anticipated litigation and not for making Travelers' coverage determination on the Claim. The documents did not involve Travelers' factual inquiry into the Claim, or any actions undertaken to arrive at a claim decision. [Kalin Aff., ¶ 18]. Given RJF's assertions about coverage litigation in April 2018, Travelers retained MPD so that counsel could prepare to defend Travelers from the threatened lawsuit.

Travelers has met its burden by producing the Kalin Aff. The facts establish an objectively reasonable anticipation of litigation. While RJF ultimately waited to file suit until two days after the coverage decision, the speed and complexity of the Complaint and its filing clearly demonstrate it had already decided to bring the action. Simply put, the record establishes sufficient facts to meet Travelers' burden to demonstrate the existence of the privilege. The documents sought are irrelevant and protected by both the attorney-client and work product privileges.

## CONCLUSION

Travelers hereby requests, for all of the aforementioned reasons, that the Court deny RJF's Motion to Compel Travelers' protected documents.

Dated: September 17, 2021                MILLS PASKERT DIVERS

                                         _____/s/ Ryan J. Weeks_____
                                         */s/ Ryan J. Weeks*
                                         E.A. "Seth" Mills, Jr., Esq.
                                         Florida Bar No. 339652
                                         smills@mpdlegal.com
                                         Ryan J. Weeks, Esq.
                                         Florida Bar No. 57897
                                         rweeks@mpdlegal.com
                                         100 N. Tampa Street, Suite 3700
                                         Tampa, FL 33602
                                         Secondary: csoltis@mpdlegal.com
                                         Telephone: (813) 229-3500
                                         Facsimile: (813) 229-3502
                                         *Attorneys for Travelers Casualty and Surety*

---

[8] Many of the allegations included within Raymond James' Proof of Loss are the same allegations included within Raymond James Complaint [ECF No. 1] and Amended Complaint [ECF No. 39].

*Company of America*

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties in the manner specified, either via transmissions of Notices of Electronic Filing generated by CM/ECF or in some authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Jason S. Mazer, Esq.
Joshua R. Alhalel, Esq.
Cimo Mazer Mark PLLC
100 S.E. Second Street, Suite 3650
Miami, FL 33131
Email:
jmazer@cmmlawgroup.com
jalhalel@cmmlawgroup.com
kshaw@cmmlawgroup.com
*Counsel for Raymond James Financial, Inc.*

Kristina L. Marsh, Esq.
Gordon Rees Scully Mansukhani
601 S. Harbour Island Blvd., Suite 109
Tampa, FL 33602
Email:
kmarsh@grsm.com
*Co-Counsel for Federal Insurance Company*

Sarah Riedl Clark, Esq.
Scott L. Schmookler, Esq.
Angela Lewosz, Esq.
Gordon Rees Scully Mansukhani, LLP
One North Franklin, Suite 800
Chicago, IL 60606
Email:
srclark@grsm.com
sschmookler@grsm.com
alewosz@grsm.com
*Co-Counsel for Federal Insurance Company*
*(Admitted Pro Hac Vice)*

Dustin C. Blumenthal, Esq.
Goldberg Segalla LLP
222 Lakeview Avenue, Suite 800
West Palm Beach, FL 33401
Email:
dblumenthal@goldbergsegalla.com
ppowers@goldbergsegalla.com
pborges@goldbergsegalla.com
*Co-Counsel for Great American Insurance Co.*

Stephen N. Dratch, Esq.
Franzblau Dratch, P.C.
354 Eisenhower Parkway
Livingston, NJ 07039
Email:

James M. Kaplan, Esq.
Kaplan Zeena LLP
2 S. Biscayne Blvd., Suite 3050
Miami, FL 33131
Email:

21

sdratch@njcounsel.com
*Co-Counsel for Great American Insurance Co.*
*(Admitted Pro Hac Vice)*

james.kaplan@kaplanzeena.com
elizabeth.salom@kaplanzeena.com
service@kaplanzeena.com
*Co-Counsel for Beazley Insurance Company, Inc.*

John R. Riddle, Esq.
Michael Keeley, Esq.
Clark Hill Strasburger
901 Main Street, Suite 6000
Dallas, TX 75202
Email:
abrinkley@clarkhill.com
jriddle@clarkhill.com
mkeeley@clarkhill.com
*Co-Counsel for Beazley Insurance Company, Inc.*
*(Admitted Pro Hac Vice)*

_____*/s/ Ryan J. Weeks*_____
Attorney