# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

RAYMOND JAMES FINANCIAL, INC.

      Plaintiff,                        CASE NO. 20-21707
                                             MARTINEZ-BECERRA

v.

FEDERAL INSURANCE COMPAY, et al.

      Defendants.
_____/

## GREAT AMERICAN INSURANCE COMPANY'S
## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO
## <u>COMPEL DOCUMENTS AND ASSOCIATED TESTIMONY FROM DEFENDANTS</u>

      Defendant Great American Insurance Company ("Great American"), respectfully this Memorandum of Law In Opposition to Plaintiff's Motion to Compel Documents and Associated Testimony from Defendants ("Pl. Motion") (D.E. 158).

### PRELIMINARY STATEMENT

      As the Court is aware, this action involves plaintiff Raymond James Financial, Inc.'s ("RJF") attempt to recover $60,000,000 it claims it is owed under a "tower" of financial institution bonds (the "Bonds") arising out of alleged liability that RJF settled with third-parties who claimed they were defrauded by non-party Ariel Quiros ("Quiros") in connection with various real estate projects associated with the Jay Peak ski resort in Vermont (the "Jay Peak Project"). Great American and the other defendants hereto (collectively, the "Insurers") denied coverage for a host of reasons, some, but not all of which are the basis of their summary judgment motion. (*See* D.E. 129, 166). In the midst of summary judgment briefing (since concluded), RJF filed the instant motion that seeks disclosure of communications had during the investigation of its claim that Great American withheld as privileged. RJF's demand for documents and deposition testimony reflecting those communications at this stage of the proceedings fails on virtually every level.

      RJF's motion should be rejected at the threshold on relevance grounds. At this juncture, RJF has only asserted claims sounding in breach of the Bonds, which turn solely on whether the

facts underlying RJF's insurance claim (over which there is no material dispute or that might require resolution by a jury) give rise to coverage.  Thus, the communications of counsel for the Insurers with their respective clients and one another – none of whom have any personal knowledge of the events giving rise to RJF's claim – during the claim investigation have no relevance to the causes of action that RJF has currently asserted.  While those communications, at most, might have some relevance to RJF's insinuations of bad faith claims handling, such claims are not ripe for adjudication under Florida law as there has been no finding of coverage.  Thus, the discovery RJF's motion seeks is plainly irrelevant.  *See* Point I, *infra*.

But even if RJF could get past the threshold issue of relevance, Great American has properly withheld the documents RJF seeks on privilege grounds.  RJF seeks to subvert the privilege claim by arguing that because Great American's outside counsel, the Dratch Law Firm, P.C. (the "Dratch Firm"), literally "investigated" RJF's claim prior to the issuance of a coverage letter, essentially all communications by its outside counsel up to that date must be disclosed. RJF's overall position misstates the law.  Rather, Florida law, as elucidated by this Court, holds that an insurer's communications with an outside lawyer retained to assist in an investigation of a claim are privileged so long as the lawyer's primary objective was to provide legal advice to the client.  That is exactly what happened here.  As described below, Great American retained its own outside counsel when it was apparent that RJF was itself pursuing its own claim through outside counsel.  During that time, Great American's counsel reviewed tens of thousands of pages of documents in order to assess whether a series of allegedly interrelated financial transactions were covered under the terms of the Bonds as interpreted by a wide body of caselaw.  Thus, what the Dratch Firm provided to Great American was, at all times, quintessentially legal advice, as opposed to other types of insurance investigations where legal advice is, at most, peripheral, such as the cause of a fire or an automobile accident, whether a medical conditions was not disclosed in an application for life insurance, etc.  *See* Point II, *infra*.

**FACTUAL BACKGROUND**

On or about May 16, 2016, RJF provided notice of a lawsuit it claimed might potentially give rise to coverage under the Bonds (the "Claim").  (Declaration of Stephen N. Dratch ("Dratch Declaration" or "Dratch Dec." at ¶ 3).[1]  The lawsuit (and others RJF would face) sought to hold

---

[1] Great American is a co-surety on what RJF has labeled the Third Excess Bond pursuant to which Great American is required to pay half of any single loss between $30,000,000 and $50,000,000

RJF liable for fraud allegedly committed by Quiros against investors in connection with the Jay Peak Project on the grounds that RJF allegedly acted as a conduit for the misappropriation of investor funds.  On or about February 27, 2019 RJF submitted its Proof of Loss to the Insurers. (*Id.* ¶ 4).  The Proof of Loss, which was signed by Jason Mazur, Esq., RJF's counsel herein, sought indemnification for amounts RJF had paid in settlements of lawsuits referenced above on the grounds that Quiros's actions were knowingly and dishonestly aided by its employee, Joel Burstein. (*Id.*)

On or about April 5, 2018, Great American retained Stephen Dratch, Esq. of the law firm of Franzblau Dratch, P.C. (now The Dratch Law Firm, P.C.) to assist in connection with the investigation of RJF's claim and to provide legal advice in connection therewith.  (Dratch Dec. ¶ 5).  Mr. Dratch was assisted by his colleague, Daniel Lebersfeld, Esq.  (*Id.*)  The nature of the legal representations is detailed in Mr. Dratch's declaration submitted herewith, and need not be repeated at length here.  (*See id.* ¶¶ 6-10).  In brief, the Dratch Firm reviewed the Proof of Loss and tens of thousands of pages of documents produced by RJF to determine whether the acts of Burstein, which allegedly took place over the period of approximately six years, gave rise to coverage under the Bonds.  (*Id.* ¶ 6).  During the course of the representation, Messrs. Dratch and Lebersfeld would communicate with Great American personnel (mainly Senior Claim Director, Tracey Archbold) regarding the facts revealed in the Proof of Loss and documents produced thereafter and gave their assessments of whether they gave rise to coverage under the terms of the Bonds and applicable common law doctrines.  (*Id.*)  Ultimately, it was Great American's decision to determine whether the Claim was covered.  (*Id.* ¶ 12).

Counsel for the Insurers communicated with one another during the course of investigation. (Dratch Dec. ¶ 11). To avoid excessive duplication of effort and cost, counsel for defendant Federal Insurance Company ("Federal"), generally took the lead with respect to interfacing with RJF's counsel to collect documents relevant to RJF's claim.  (*Id.*)  Later, Federal's outside counsel took the lead in drafting a declination letter while later incorporating comments and listening to input from counsel for the other insurers.  (*Id.*)  Great American issued its own separate declination letter.  (*Id.* ¶ 12).

The main grounds for the Insurers' denial of RJF's claim – as  elaborated in detail in their summary judgment motion – were that:  (i) the Bonds do not provide coverage for RJF's liability to the third-parties; (ii) RJF did not suffer a loss of covered property because allegedly Quiros stole

funds from a different bank; (iii) no funds were illegally withdrawn from RJF customer accounts by Burstein; and (iv) RJF was aware of the acts of Burstein it has claimed to have been dishonest prior to the inception of the Bonds.  RJF filed its opposition to Insurers' summary judgment motion on August 27, 2021 in accordance with an Order of the Court granting extension of time to do so. (D.E. 139, 160-62).

RJF served its Request for Production ("Requests") on Great American on or about June 28, 2020.  (*See* Exhibit A hereto).  The Requests demanded all documents in Great American's claim file and all documents otherwise reflecting its coverage position.  Great American withheld or redacted communications reflected on the privilege log that accompanies RJF's motion.  (D.E. 158-1 at pgs. 91-109).  As discussed in the accompanying Dratch Declaration, these communications entailed Messrs. Dratch and/or Lebersfeld communicating with Great American personnel regarding their mental impressions of the legal significance of facts disclosed in RJF's Proof of Loss and later by the documents RJF produced during the Insurers' investigation.  (Dratch Dec. ¶¶ 6-8).  Great American also withheld communications between its attorneys and counsel for the other Insurers in which they discussed "procedural" matters; *e.g.* what documents to request from RJF, proposed search terms that RJF should use to recover electronically stored information the Insurers' counsel anticipated would return relevant information, the setting of deadlines, the negotiation of a confidentiality agreement and tolling agreement, among other things.  (*Id.* ¶¶ 9-11).  Other communications among counsel for the Insurers' were substantive in nature; what the documents RJF produced revealed about RJF's factual allegations and the Bond provisions counsel believed were implicated by those facts.  (*Id*. ¶ 10).  Later, counsel for the Insurers would discuss and provide comments to the declination letter drafted by Federal's counsel.  (*Id.* ¶ 11).

**LEGAL ARGUMENT**[2]

## I.    THE DOCUMENTS AND INFORMATION RJF'S MOTION SEEKS ARE NOT RELEVANT

Pursuant to Fed. R. Civ. P. 26(b), "[r]equested discovery must be relevant, and it must not impose an undue burden." *Jeld-Wen, Inc. v. Nebula Glass Int'l Inc.*, No. 07-22326-CIV, 2008 WL 11333261, at *2 (S.D. Fla. Apr. 10, 2008).  Specifically, Rule 26(b)(1) limits discovery in civil actions to "any nonprivileged matter that is relevant to any party's claim or defense."  This Court has observed that "[w]hen the relevancy of information sought cannot be discerned from a review

---

[2] Great American incorporates the legal arguments raised by the other Insurers in response to RJF's motion.

of the discovery request . . . the party seeking to compel responses must demonstrate relevancy." *S.E.C. v. BankAtlantic Bancorp, Inc.*, 285 F.R.D. 661, 666 (S.D. Fla. 2012); *see also American Fed. of State, County, & Mun. Emps. (AFSCME) Council 79 v. Scott*, 277 F.R.D. 474, 477 (S.D. Fla. 2011) ("when relevancy is not apparent, the burden is on the party seeking discovery to show the relevancy of the discovery request").

Here, RJF's Amended Complaint alleges that the Claim is covered under the terms of the Bonds and the Insurers therefore improperly concluded that it was not, *i.e.* that the Insurers breach their contracts with RJF in denying coverage.  (D.E. 39).  The Amended Complaint does not seek relief based on the manner in which the Insurers conducted their investigations, only the conclusions they reached as a result of those investigations. RJF does not, because it cannot, ultimately explain how the information its motion seeks will help it prove to a jury that its Claim is covered under the Bonds, which is the overarching issue presented for the upcoming trial here.

Instead, RJF insinuates that the documents will uncover that Great American and the other Insurers acted in bad faith in denying the Claim and that Great American did not conduct a truly independent investigation.  (Pl. Motion 9).  Under Florida law, however, allegations of bad faith in connection with an investigation and adjustment of an insurance claim are "not relevant . . . because the claims and defenses in this case depend upon the language of the individual policies issued by [the insurers] and whether these policies cover [the insured's] losses[.]" *MRM Restaurant Group, LLC v. Frontline Insurance Unlimited Co.*, No. 3:20cv1872-MCR-HTC, 2020 WL 5881050, at *2 (N.D. Fla. May 29, 2020).  Thus, "[w]hether Defendants' failure to pay the claims constitutes bad faith is simply not an issue at this stage." *Id*.

Indeed, Florida does not recognize a common law cause of action for bad faith involving first-party insurance. *Allstate Indem. Co. v. Ruiz*, 899 So. 2d 1121, 1125-26 (Fla. 2005). Rather bad faith claims are governed by statute.  *See* § 624.155, Fla. Stat.  The existence of the insurer's contractual liability and the determination of the extent of contractual damages are elements of a statutory bad faith action and, therefore, both must be established prior to the bringing of a bad faith action.  *Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1275 (Fla. 2000). Thus, bringing a cause of action in Florida for a violation of Section 624.155 is premature until there is a determination on liability *and* the extent of damages owed on the first-party insurance contract. *Id.*; *Imhof v. Nationwide Mut. Ins. Co.*, 643 So. 2d 617, 618 (Fla. 1994).  Until then, RJF "is not entitled to discover [Great American's] claim file or documents relating to the insurer's business policies or

claims practices until coverage has been determined." *Hartford Ins. Co. v. Mainstream Constr. Group, Inc.*, 864 So. 2d 1270, 1272 (Fla. 5th DCA 2004) (citing *Old Republic Nat'l Title Ins. Co. v. Home American Credit, Inc.*, 844 So. 2d 818 (Fla. 5th DCA 2003)). Thus, the motion's insinuation of bad faith is simply a red herring.

In sum, the lack of relevance of the documents RJF's motion seeks to its breach of contract claims is readily apparent. Either the facts that give rise to the Claim are covered under the terms and conditions of the Bonds, or they are not. If and until a jury makes that determination in RJF's favor, how Great American came to conclude that the Bonds do not cover the Claim is simply not relevant. Florida law recognizes this sensible and logical proposition. Accordingly, the Court should deny RJF's eleventh hour motion to compel at the threshold on relevance grounds.

## II.   THE DOCUMENTS RJF'S MOTION SEEKS ARE PRIVILEGED

Even if RJF could articulate the relevance of the documents it seeks, which it cannot, Great American properly withheld documents on the bases of attorney-client privilege and common interest doctrine, which are discussed, in turn, below.

### A.   Attorney-Client Privilege

Pursuant to Federal Rule of Evidence 501, a federal court sitting in diversity must apply the state law that governs the underlying dispute when dealing with questions of, and the application of, the attorney-client privilege. *Clena Invs., Inc. v. XL Specialty Ins. Co.*, No. 0:10-CV-62028, 2011 WL 13217140, at *1 (S.D. Fla. Sept. 2, 2011). Thus, § 90.502(2), Florida Statutes, is applicable and sets forth the parameters of the attorney-client privilege. *See Burrow v. Forjas Taurus S.A.*, 334 F. Supp. 3d 1222, 1233 (S.D. Fla. 2018). Under § 90.502(2), "[a] client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client."

Naturally, the privilege applies to an insurer's communications with its attorneys, so long as the communications involve the attorney rendering legal advice. *Genovese v. Provident Life & Accident Ins. Co.*, 74 So.3d 1064, 1068-69 (Fla. 2011). Florida law, in turn, recognizes that insurer-attorney communications made during the claim investigation period are privileged when the attorney simultaneously renders legal advice and investigates a claim. *Id.* at 1068. In this scenario:

no privilege attaches when an attorney performs investigative work in the capacity of an insurance claims adjuster, rather than as a lawyer, but simply because the attorney's assigned duties were investigative in nature does not preclude an assertion of the attorney-client privilege. Therefore, the relevant question is not whether the attorney was retained to conduct an investigation, but rather, whether this investigation was related to the rendition of legal services.  If it was the privilege is not waived.

*Curtale Citrus Juices USA, Inc. v. Zurich American Ins. Group*, No. 5:03-cv-420, 2004 WL 5215191, at *3 (M.D. Fla. Jan. 7, 2014) (quotation and alterations in original omitted); *Ranger Constr. Indus., Inc. v. Allied World Nat'l Assur. Co.*, No. 17-81226-CIV, 2019 WL 43655, at *5 (S.D. Fla. Feb. 4, 2019) ("*Ranger*") (same).

Here, there is no doubt that while Great American retained the Dratch Firm to conduct an "investigation," that investigation and the services the Dratch Firm performed in connection therewith were "related to," and indeed inextricably intertwined with "the rendition of legal advice."  Specifically, shortly after he was retained, Mr. Dratch reviewed RJF's Proof of Loss and publicly available materials that shed further light on the Claim and provided Great American personnel with his initial impressions of the Claim, including what Bond terms and common law doctrines might apply.  (Dratch Dec. ¶ 7).  Thereafter, Mr. Dratch and his colleague, Mr. Lebersfeld, would refine that analysis based on the voluminous materials reviewed during the investigation as well as other developments related to the Claim, such as Mr. Quiros's indictment. (*Id.* ¶ 6).  Other communications between Great American and the Dratch Firm involved the negotiation of a confidentiality agreement and tolling agreement, as well as a discussion of what documents to request from RJF.  (*Id.* ¶ 10).  These communications are quintessentially legal in nature and should be deemed privileged, in contrast to an attorney who investigates the cause of a slip and fall incident during the claims process where legal advice plays no role.  *See Branch v. Victory II, LLC*, No. 3:16-cv-920, 2017 WL 8310905, at *2 (M.D. Fla. Dec. 6, 2017) (attorney-client privilege did not apply where attorney "was retained in his capacity as a claims investigator and a medical care administrator" for slip and fall claim).

RJF, relying primarily on *Milinazzo v. State Farm Ins. Co.* 247 F.R.D. 691 (S.D. Fla. 2007), argues that an insurer's communications with counsel that performs anything resembling investigatory work are only privileged at the point that litigation is reasonably anticipated.  (Pl. Motion 13).  Simply put, *Milinazzo* – and therefore subsequent cases adhering to it – are not good

law, or at least do have the broad reach that RJF assigns to them.  As a recent decision of this Court in *Ranger* pointed out, *Milinazzo* appeared to formulate that incorrect rule based on a misreading of the Florida First District Court of Appeals' perfunctory decision in *Bankers Ins. Co. v. Fla. Dept. of Ins.*, 755 So.2d 729 (Fla. 1st DCA 2000), holding that while *Milinazzo* provides an "excellent and well-reasoned work product analysis" it should not be followed "to the extent it requires that an insurance company anticipate litigation in order for the attorney-client privilege to attach."  2019 WL 436555, at *4.  *Ranger*, moreover, reflects the holding of the Florida Supreme Court in *Genovese*, *supra* that attorney-insurer communications made during the course of a claim investigation are discoverable only if they "did not involve the rendering of legal advice."  77 So.3d at 1068.  As legal advice was the purpose of Great American's retention of the Dratch Firm, confidential communications between them during the claim investigation are protected from discovery by the attorney-client privilege.

      **B.**    <u>**Common Interest Doctrine**</u>

"The common interest doctrine, also known as the joint defense doctrine, allows litigants with common interests to exchange privileged information without losing the privilege, as long as certain requirements are met." *Guarantee Ins. Co. v. Heffernan Ins. Brokers, Inc.*, 300 F.R.D. 590, 596 (S.D. Fla. 2014).  Thus, to the extent that Great American or any of the other Insurers have rightfully assigned an applicable underlying privilege – either attorney-client or work product – to a particular communication, the communication retains the privilege if made to any of the other Insurers.  *Visual Scene, Inc. v. Pilkington Bros., plc.*, 508 So.2d 437, 442 (Fla. 3d DCA 1987) ("The common interests privilege relates not only to attorney-client materials . . . but also to an attorney's work product.") (citation omitted). This is so, as the Insurers obviously had a common interest in their communications with one another, since each of the Bonds to which they were a party follow form to the Primary Bond underwritten by Federal.  Indeed, RJF submitted its Proof of Loss to all of the Insurers simultaneously and its suit argues that each of the Bonds provides coverage for the same underlying acts.  Thus, no waiver of the attorney-client privilege and the work-product exemption occurred for communications and documents they shared relating to the Claim.

**CONCLUSION**

As demonstrated above, Great American's communications with its counsel will not help prove or disprove to the jury that RJF's Claim is covered, and therefore necessarily lack relevance.

But even so, those communications were made in connection with the rendering of legal advice, and are therefore privileged.  Accordingly, the Court should deny RJF's motion to compel.

Dated: September 17, 2021
      West Palm Beach, Florida

                Respectfully submitted,

                */s/ Dustin C. Blumenthal*
                Dustin C. Blumenthal, Esq.
                Florida Bar No. 083799
                **Goldberg Segalla LLP**
                222 Lakeview Avenue, Suite 800
                West Palm Beach, FL 33401
                Tel: (561) 618-4485
                Fax: (561)618-4549
                dblumenthal@goldbergsegalla.com
                ppowers@goldbergseglla.com

                Stephen N. Dratch, Esq.
                *Admitted Pro Hac Vice*
                **Franzblau Dratch, P.C.**
                354 Eisenhower Parkway
                Livingston, NJ 07039
                Tel: (973) 992-3700
                sdratch@njcounsel.com
                Counsel for Great American Insurance Company

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on September 17, 2021, I electronically filed the attached with the Clerk of Court using CM/ECF which will serve a copy on all counsel or parties of record.

                */s/ Dustin C. Blumenthal*
                Dustin C. Blumenthal, Esq.