**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

RAYMOND JAMES FINANCIAL, INC.

       Plaintiff,                        CASE NO. 20-21707
                                                  MARTINEZ-BECERRA

v.

FEDERAL INSURANCE COMPAY, et al.

       Defendants.

_____/

**DECLARATION OF STEPHEN N. DRATCH**

Pursuant to 28 U.S.C. § 1746, I, Stephen N. Dratch, hereby declare as follows:

1.      I am an attorney admitted to practice law in the states of New Jersey and New York. I have been admitted *pro hac vice* as counsel to defendant Great American Insurance Company ("Great American") in the above-captioned action.  (D.E. 16).  As such, I am fully familiar with the facts set forth herein.  I respectfully submit this Declaration in opposition to the motion of plaintiff Raymond James Financial ("RJF") that seeks disclosure of documents Great American has withheld on the basis of the attorney-client, attorney-work product and common interest privileges.

2.      As the Court is aware, RJF filed this lawsuit to recover under a Financial Institution Bond and Excess Bonds (collectively, the "Bonds") for losses it alleges it incurred as a result of a scheme orchestrated by an individual named Ariel Quiros ("Quiros") in connection with the Jay Peak ski resort in Vermont.  RJF alleges that its former employee, Joel Burstein ("Burstein"), colluded with Quiros to defraud individuals that invested in certain development projects

associated with Jay Peak.  Great American is a co-surety on what RJF has labeled the Third Excess Bond pursuant to which Great American is required to pay half of any single loss between $30,000,000 and $50,000,000.

3.      In May of 2016, RJF provided notice of a potential loss to Great American (and the other insurers herein) arising out of Quiros's activities in when it was served with a complaint in an action titled *Daccache, et. al. v. Raymond James & Associates, Inc., et al.*, Case No. 1:16-CV-21575-FAM.  At that time, Great American did not retain outside counsel.

4.      Almost two years later, on or about February 27, 2018, RJF provided Great American and the other insurers with a detailed proof of loss (the "Proof of Loss") that was accompanied by a report from NERA Economic Consulting ("NERA") that purported to detail a complicated scheme orchestrated by Quiros in collusion with Burstein.  The Proof of Loss was signed and submitted by Jason S. Mazer, Esq. who is RJF's lead counsel herein.

5.      On or about April 5, 2018, Great American retained my firm to assist in connection with the investigation of RJF's claim and to provide legal advice in connection therewith.  In the course of the representation, I was assisted by my colleague, Daniel Lebersfeld, Esq., an attorney admitted to practice law in New Jersey and New York.

6.      In addition to the Proof of Loss, my firm independently reviewed more than tens of thousands of pages of documents RJF (mostly emails and attachments) provided to the insurers during the investigation of its claim.  My firm's communications with Great American personnel (primarily Tracey Archbold, Senior Claim Director) consisted mainly of conveying the mental impressions of myself and Mr. Lebersfeld concerning the underlying facts revealed in the Proof of Loss and the documents RJF provided thereafter.  I would also discuss developments related to the criminal prosecution of Ariel Qurios with Ms. Archbold as reflected in document numbers 346

and 229 on Great American's privilege log.  (Great American's privilege log is available at pages 91-109 of D.E. 158-1).

7.      For example, after thoroughly reviewing RJF's proof of loss and documents from RJF's litigation with third-party arising out of its relationship with Quiros, I spoke with Ms. Archbold about my initial impressions as to what Bond terms and common law doctrines might apply to the claim.  These impressions are reflected in document number 151 on Great American's privilege log, among others.  Throughout investigation, I would also keep Ms. Archbold apprised of discussions with RJF's counsel, Jason Mazur, as reflected in document numbers 453 and 247, among others.  Ms. Archbold's notation of legal advice I conveyed to her was redacted from a claim file document that has been bates stamped GAIC0004356-57, specific entries of which are listed on Great American's privilege log.

8.      Later on, Mr. Lebersfeld or I would convey our thoughts to Ms. Archbold as to what the post-Proof of Loss documents RJF produced revealed; for example, what other RJF employees knew about Burstein's activities with respect to Quiros and when they knew it.  I would, in turn, discuss the substance of these documents with Ms. Archbold and Bond provisions that I believed were implicated by these documents.  This aspect of my firm's representation was no different, in substance, than reviewing an adversary's voluminous document production in litigation.

9.      As Great American's privilege log reveals, the review of RJF's claim was also a collaborative effort between the four insurers ("Insurers") on the coverage "tower," sometimes, in insurance parlance, referred to as the "market."  As such, Mr. Lebersfeld and I would communicate with counsel for the other Insurers who I understood to be conducting their own independent review of RJF's Proof of Loss and documents submitted by RJF.

10.     As reflected on Great American's privilege log, these communications, at times, involved "procedural" matters; *e.g.* what documents to request from RJF, proposed search terms that RJF should use to recover electronically stored information the Insurers' counsel anticipated would return relevant information, the setting of deadlines, the negotiation of a confidentiality agreement and tolling agreement, among other things.  Other communications among counsel for the tower were more "substantive" in nature, discussing what the documents RJF produced revealed and the Bond provisions counsel believed were implicated.

11.     To avoid excessive duplication of effort and cost, counsel for defendant Federal Insurance Company ("Federal"), Scott Schmookler, Esq. and Sarah Riedl Clark, Esq., generally took the lead with respect to interfacing with RJF's counsel.  I considered this arrangement appropriate in light of the fact that Federal issued the Primary Bond and had the most potential exposure among all the Insurers.  Accordingly, counsel for Federal took the lead in drafting a declination letter while later incorporating comments from counsel for the other insurers.  Mr. Lebersfeld and I, in turn, would share these drafts and comments with Great American.  Examples of these communications are listed as document numbers 119 and 409 and on Great American's privilege log

12.     Great American authored its own declination letter.  This letter was drafted by myself and Mr. Lebersfeld, incorporating comments we received from Great American personnel.  (RJF does not appear to seek disclosure of these communications).  Ultimately, however, the coverage decision Great American's.

13.     As the foregoing demonstrates, while my firm performed an "investigation" of RJF's claim in a literal sense, the primary purpose of the representation was to provide legal advice to Great American.  My firm reviewed RJF's claim, which RJF presented as a complicated

financial fraud that had eluded detection for several years, and voluminous documents that shed light on the circumstances surrounding that alleged fraud.  I applied those facts to the terms of the Bonds and legal authorities that elaborate on the meaning of those terms, and formulated opinions as to coverage or the lack thereof, which I conveyed to my client.  I respectfully submit that this is different than an insurance investigation where legal advice is generally not expected to come into play; for example, an investigation that seeks to reveal the cause of a fire or an automobile accident, whether the insured was diagnosed with a terminal illness before applying for life insurance, or whether a medical procedure was necessary.

14.     Accordingly, I respectfully request that the Court deny RJF's motion to compel with respect to Great American.

Dated: September 17, 2021

/s/   Stephen N. Dratch

Stephen N. Dratch